UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:20-cv-24649-KMW

ELIE NEHME,

      Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

      Defendant.

_____/

### DEFENDANT FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES' MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

The Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU" or "University"), by and through undersigned counsel, pursuant to the Federal Rules of Civil Procedure and Southern District of Florida Local Rules, hereby files this Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law, and states:

1.     This is a purported disability discrimination action arising from Plaintiff being involuntarily dismissed from FIU's Herbert Wertheim College of Medicine ("HWCOM") following his failure to pass the Psychiatry Subject Shelf Exam. Plaintiff brings this action pursuant to the Americans with Disabilities Act ("ADA") or Rehabilitation Act ("RA"). FIU has six counts against it under various theories of liability found in the ADA and RA: Counts I and II for failure to accommodate; Counts III and IV disparate treatment predicated on a wrongful dismissal; Counts V and VI are based upon retaliation. The Complaint is substantively deficient as a matter of law and must be dismissed.

2.      Plaintiff's disparate treatment and failure to accommodate claims fail in Counts I-IV because a *prima facie* case of discrimination cannot be made. *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019). In general, a plaintiff seeking recovery for violation of either statute must allege that (1) he is a qualified individual with a disability; (2) he was denied benefits of or excluded from participation in a public service, program, or activity, or was otherwise discriminated against; and (3) the denial, exclusion, and/or other discrimination was on the basis of his disability. *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)). The claims for disparate treatment in Counts III and IV fail on the account that Plaintiff has not sufficiently pled he is otherwise qualified or that he was discriminated against because of his disability, and he failed to reference any adequate comparators. As it is clear that Plaintiff was incapable of meeting the academic and technical standards required to participate and succeed in HWCOM, it cannot be said that Plaintiff is "otherwise qualified." *Zainulabeddin,* 749 Fed. Appx. at 781. Moreover, the Exhibits demonstrate that Plaintiff was dismissed because of his pattern of poor academic performance and not because of his disability.

3.      In the same vein, Counts I and II similarly fail because the alleged accommodations requested were not pled with specificity, but also Plaintiff was provided with reasonable accommodations. The Complaint presents two purported accommodations that Plaintiff claims FIU failed to provide: (a) a minimal distraction testing room without windows and free from any outside noise and distractions; and (b) extra time for "readiness assignments" or in-class pop quizzes. There is no case to support that either of these requests or accommodations would be considered "reasonable" and University reasonably accommodated Plaintiff's disability. *Forbes v, St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012). Absent from the

Complaint is any explanation how the requested "accommodations" would allow Plaintiff to meet the essential requirements of the medical school program at FIU and therefore Plaintiff's failure to accommodate claims do not state a cause of action under the ADA or RA. *Zainulabeddin,* 749 Fed. Appx. at 781-82.

4.      Counts V and VI fail to state a cause of action because the allegations lack the requisite causal and connection and failure of a "but-for" causation pled for a valid retaliation claim. *Frazier-White v. Gee,* 818 F.3d 1249, 1258 (11th Cir. 2016) *citing Univ. of Tex. SW Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013). To state a claim for retaliation, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Satchel v. Sch. Bd.*, 251 Fed. App'x. 626, 629 (11th Cir. 2004). The alleged protected activity is Plaintiff's internal disability discrimination complaint filed *after* the Dean affirmed the MSEPC's decision to dismiss Plaintiff. Devoid from the Complaint is any allegation that the Plaintiff would not have been dismissed "but-for" his complaint to the IDEA. Furthermore, Plaintiff fails to satisfy the causation element of retaliation because no adverse action took place *after* the alleged protected activity, and the University's decision to affirm withdrawal did not subject him to any change in status that constitutes an adverse action. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). As a matter of law, this is insufficient to state a retaliation claim. *McCullough v. Board of Regents of the University System of Georgia*, 623 Fed. Appx. 980 (11th Cir. 2015).

5.      Absent from the Complaint is any allegation demonstrating that Plaintiff's alleged disability was the *sole reason* for in order to state a valid claim under the RA in Counts II, IV, and VI. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016);

*Zainulabeddin v. Univ. of South Florida Bd. Of Trustees,* 749 Fed. Appx. 776, 781 (11th Cir. 2018). The face of the Complaint not only fails to allege that Plaintiff's disability is the sole reason for FIU's denial, but reviewing the Complaint as a whole does not even suggest that his alleged disability is the only reason for dismissal in light of his retaliation claims.

6.       As the Supreme Court has instructed, when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225 (1985); *See also J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 925 (11th Cir. 2016). It is equally clear that: "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students...." *Id.* at 225 n. 11.   Decisions based on poor academic performance  require "an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making"  *Board of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 90 (1978) (noting that "Courts are particularly ill-equipped to evaluate academic performance"). This deference must be applied to meet the pleading requirements under the Federal Rules of Civil Procedure and to state a valid cause of action under ADA and RA.

7.       Finally, any claim for relief seeking damages under the RA and ADA require intentional discrimination or deliberate indifference. *See Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005); *Liese v. Indian River County Hosp. Dist.,* 701 F.3d 334, 342 (11th Cir. 2012). The Complaint fails to sufficiently allege this requirement. Additionally, such a finding cannot be made based on the circumstances presented related to the University's lack of deliberate indifference. Dismissal is appropriate.

## MEMORANDUM OF LAW

### *Dismissal Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The facts found in the complaint must "state a claim to relief that is plausible on its face." *Id*.

This pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Ashcroft*, 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1224 (S.D. Fla. 2013). "Factual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## I.   DISPARATE TREATMENT CLAIMS UNDER ADA AND RA CANNOT BE ESTABLISHED.

In general, a plaintiff seeking recovery for violation of either statute must allege that (1) he is a qualified individual with a disability; (2) he was denied benefits of or excluded from

participation in a public service, program, or activity, or was otherwise discriminated against; and (3) the denial, exclusion, and/or other discrimination was on the basis of his disability. *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)). The claims for disparate treatment in Counts III and IV fail on the account that Plaintiff has not sufficiently pled he is otherwise qualified or that he was discriminated against because of his disability, and he failed to reference any adequate comparators.

### A.    Plaintiff is not an Otherwise Qualified Individual.

The claims in Count III and IV fail on the threshold element that the Plaintiff is otherwise qualified for the benefit in question and is not specifically pled. An individual is "otherwise qualified" for the benefit in question only if he is "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979). Notwithstanding Plaintiff's conclusory allegations that he would have passed the Psychiatry Subject Shelf exam had he been given a distraction-free room and thus not been involuntarily withdrawn, the Complaint, taken as a whole, fails to plausibly to allege that the Plaintiff was an "otherwise qualified" individual. *See* Complaint at ¶¶ 27, 39, 42. To the contrary, the Complaint shows rather plausibly that the Plaintiff does not satisfy the "otherwise qualified" element of a cognizable claim under either statute.

On February 17, 2020, Plaintiff took and failed the Psychiatry Subject shelf exam, the final exam required to successfully complete his Psychiatric Clerkship.[1] *See* Complaint at ¶ 11. He was permitted to retake the exam on March 3, 2020. *See* Complaint at ¶¶ 11, 12. Plaintiff was provided with the accommodation of a minimal distraction room, albeit not a distraction-free

---

[1] Plaintiff does not allege that the University failed to provide a distraction free testing room. *See* generally Complaint; Exhibit B.

room, for the retake. *See* Complaint at ¶ 12. Plaintiff contends that due to noisy neighbors and windows in the room, he once again failed the Psychiatry Subject shelf exam. *See Id*. Due to his academic failure, Plaintiff was called to appear at an MSEPC hearing held on April 9, 2020, where the Committee recommended that Plaintiff either voluntarily withdraw or be involuntarily withdrawn. *See* Complaint at ¶ 13. Plaintiff advised the Committee that on the day of the retake, his neighbor's apartment caught on fire, and this incident affected his performance. *See* Exhibit A at p. 3. Moreover, nowhere in the Complaint does Plaintiff explain how providing a "minimal distraction room" without windows or any distractions would have qualified him to pass his exam. As it is clear that Plaintiff was incapable of meeting the academic and technical standards required to participate and succeed in HWCOM, it cannot be said that Plaintiff is "otherwise qualified." Dismissal of Counts III and IV is appropriate. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. at 927 (dismissing amended complaint and holding as a matter of law the student was not "otherwise qualified" where it was clear that plaintiff's disability rendered him incapable to participate in Nova's medicine program).

     **B.    Plaintiff was Not Dismissed from Medical School Because of his Disability.** Counts III and IV contain allegations that Plaintiff was wrongfully dismissed from medical school because he failed to pass the Psychiatric Subject Shelf Exam, a failure that resulted exclusively from HWCOM's not affording him a distraction-free room. *See* Complaint at ¶¶ 27, 35, 42. However, Plaintiff fails to set forth any basis for Plaintiff's contention that the involuntary dismissal was because of his disability. Without any allegations establishing a causal link between Plaintiff's disability and involuntary dismissal, Counts III and IV must be dismissed for failure to state a cause of action.

Plaintiff was dismissed from HWCOM because the MSEPC determined that Plaintiff showed a pattern of poor academic performance. *See* Exhibit A. Firstly, the Committee determined that Plaintiff showed a pattern of poor performance in his Clerkship shelf exams. *See* Exhibit A at p. 3-4. Plaintiff had to take both the Family Medicine, Surgery, and Neurology shelf exam and the Psychiatry Subject shelf exam twice. *See Id*. The Committee also noted that he scored very low on the Obstetrics and Gynecology shelf exam. Additionally, Plaintiff failed the following courses: Cardiovascular and Respiratory Systems (BMS 6622) and the remediation; Genes, Molecules, and Cells (BMS 6001); Systems Based Practice (BMS 6067); and the Psychiatry Clerkship (MDC 7830). *See* Exhibit A at p. 4-5; *see also* Complaint at ¶ 9. Plaintiff was first placed on academic probation in July of 2017. *See* Exhibit A at p. 4. Due to Plaintiff's continued academic failure, the University granted Plaintiff's request for medical leave of absence and allowed him to repeat Period 2. *See* Exhibit A. Notably, in regard to the lack of reasonable accommodations for in-class quizzes and readiness assignments, Plaintiff admits that he **passed** the quizzes, albeit with a lower score, taken without any accommodations. *See* Complaint at ¶¶ 8, 10. Thus, even if Plaintiff was provided with such accommodations, it is clear that Plaintiff did not fail on account of FIU's alleged failure to provide reasonable accommodations for such assignments.

Similarly, the plaintiff in *Zainulabeddin* took four years to complete two years of coursework due to repeated failure of courses and was still struggling to pass the medical school curriculum even with disability accommodations for her ADHD, including increased time for exams and a distraction-free environment. *See Zainulabeddin v. University of South Florida Board of Trustees*, 749 Fed. Appx. 776, 782-783 (11th Cir. 2018). The Court held that the district court properly granted summary judgment to university where record, consisting of

ample evidence of plaintiff's academic difficulties throughout her four years of study at the medical school, made clear that student was dismissed from medical school for academic performance. *See Id.* Accordingly, Dismissal of Counts III and IV is appropriate because the exhibits make clear that Plaintiff was dismissed from medical school due to poor academic performance.

### C.   Plaintiff Has Not Referenced Any Adequate Comparator.

The Court in *Datto v. University of Miami, et al.* noted that Plaintiff failed to "point to any other instance where the University denied admission to other disabled persons who had not been dismissed from another medical school." 1:18-cv-21053-DPG, ECF 266 at p. 17 (citing *J.A.M.,* 2015 WL 4751149, at *3). Here, there is no evidence, nor does the Plaintiff allege, that he was held to a different standard than any other repeating student who is similarly situated to him in all relevant aspects, whether disabled or not. *See generally* Complaint. Counts III and IV must be dismissed for failure to establish a *prima facie case* of discrimination because the Complaint failed to identify any comparator who has been involuntarily dismissed from HWCOM for failure to receive the aforementioned accommodations.

## II.   PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM MUST BE DISMISSED BECAUSE HE WAS GIVEN REASONABLE ACCOMMODATIONS AND THE SPECIFIC ACCOMMODATIONS REQUESTED WERE NOT REASONABLE.

To state a *prima facie* claim for failure to accommodate, Plaintiff "must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). The Eleventh Circuit has repeatedly held that, "[i]n the context of postsecondary education, an 'otherwise qualified' individual must be able to meet the academic

and technical standards requisite to admission or participation in the education program or activity, in spite of his handicap." *J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) and 34 C.F.R. § 104.3(l)(3)). There is "no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Goldberg v. Florida Int'l Univ. Bd. of Trustees*, 18-20813-CIV, 2020 WL 1815360, at *5 (S.D. Fla. Apr. 10, 2020) *citing J.A.M.*, 646 Fed. Appx. at 926.  Where the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make "major adjustments" to its program does not amount to disability-based discrimination. *Zainulabeddin,* 749 Fed. Appx. at 782 (citing *Southeastern Community College v. Davis,* 442 U.S. 397, 412-413 (1979)).

In addition to the reasons previously provided establishing Plaintiff's failure to show a *prima facie* case of discrimination based upon disparate treatment, Counts I and II should be dismissed because the proposed accommodations were not reasonable. The Complaint presents two purported accommodations that Plaintiff claims FIU failed to provide. First, Plaintiff claims FIU should have provided reasonable accommodations, such as extra time and a minimal distraction room, for in-class quizzes and readiness assignments. *See* Complaint at ¶ 8. Second, Plaintiff alleges that he was entitled to a minimal distraction testing room without windows and free from any outside noise and distractions. *See* Complaint at ¶ 7. No case exists in the Eleventh Circuit supporting the specific propositions pled by Plaintiff.

The Plaintiff bears the burden of identifying an accommodation. *Bagwell v. Morgan Cty. Comm'n,* 676 F. App'x 863, 865 (11th Cir. 2017). The "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."

*Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363-64 (11th Cir. 1999). Plaintiff did not request accommodations for in-class quizzes, nor did he report a failure to provide such accommodations until he filed his internal complaint with IDEA in May of 2020. *See* Exhibit B.1. at p. 20; *see generally* Exhibit B.1. pp. 1-34. FIU was not obligated to accommodate him before he requested such accommodations. *See Gaston,* 167 F.3d at 1363 ("[A] plaintiff cannot establish a claim under the RA alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation"); *see also Zainulabeddin,* 749 Fed. Appx. at 781-82. Moreover, students were not given accommodations for quizzes or readiness assignments because the University's ADA Committee determined that it would compromise the activity; it was only a very low percentage of the cumulative grade, a total of less than 15% (sometimes as low as only 1%); and it would be a challenge to implement. *See* Exhibit B.1. at pp. 13, 18, 21, 23.

Furthermore, Plaintiff properly contends that the University, specifically the Disability Resource Center ("DCR"), agreed that Plaintiff *should* be given the following reasonable accommodations when taking *tests and exams*: (1) 50% extra time to take his exams; and (2) a minimal distraction testing room. *See* Complaint at ¶ 7; Exhibit B.1. at p. 39. The Complaint alleges that Plaintiff was not provided reasonable accommodations on one occasion because the room provided contained windows and was located near other crowded rooms, causing considerable noises and distractions. *See* Complaint at ¶ 12.  However, Plaintiff is under the mistaken contention that a "minimal distraction room" is equivalent to an entirely distraction-free testing room. *See* Complaint at ¶ 7. In support of his contention, Plaintiff provided the IDEA's investigation result which substantiated his claims that HWCOM failed to provide him with reasonable accommodations for in-class quizzes and with a distraction-free room to retake

his Psychiatric Subject Shelf Examination. *See* Complaint at ¶ 15; Exhibit B. However, according to the DCR, "a minimal distraction room creates an environment which *minimizes* distractions for the student. Each student has different levels of distractibility and different stimuli which may distract them. Typically, students need an environment which minimizes both auditory and visual distractions. A distraction reduced environment does not necessitate the student's testing in a private room, **nor does it mean that an environment is completely distraction free**." *See* Exhibit B.1. at pp. 31 & 9, n.12. The IDEA investigation indicated that Plaintiff was placed in this particular room, which had previously been used as a minimal distraction room without complaints, because it was the only room available. *See* Exhibit B.1. at p. 17. It also demonstrated that a note stating "Quiet Please Testing in Progress" was posted on the door of the exam room, indicating that a student was testing to ensure the area remained quiet. *See* Exhibit B.1. at pp. 17, 26. In fact, there is no case law supporting such a proposition, and requiring a room entirely free from any distractions would be unreasonable.

In *Forbes v, St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012), the plaintiff argued that she was entitled to a private examination room. However, she failed to provide any information that her alleged disability required a private room and she did not complain about taking her examinations in a room with other classmates and a proctor. *See Id.* The University provided her with the same accommodations provided to her from another university, which were extended time for examinations and a "distraction-reduced location" to take exams.[2] *See Id.* at 811. The Court ruled the University accommodated Plaintiff's alleged disability and that those accommodations were reasonable. *See Id.*

---

[2] Notably, no definition of the phrase "distraction reduced location" was provided. *See Id.* at 811.

Similar to *Forbes*, here, the University provided Plaintiff with the reasonable accommodations of extra time and a minimal distraction room for all major or significantly weighty examinations. *See generally* Exhibit B.1. pp. 1-34, 39. Furthermore, the University granted Plaintiff's requests for medical leave of absent and to repeat his second year of medical school. *See* Complaint at ¶ 9; Exhibit A at p. 4. Plaintiff failed to voice concerns of any alleged issues with the room provided on March 3, 2020 to the Proctor or of a failure to provide accommodations for in-class quizzes. *See* Exhibit B.1. at p. 26. There is no support, as a matter of law, that Plaintiff was entitled to a room completely distraction-free and Plaintiff is not entitled to specific requests of accommodation.

Lastly, absent from the Complaint is any explanation how the requested "accommodations" would allow Plaintiff to meet the essential requirements of the medical school program at FIU. *See Zainulabeddin,* 749 Fed. Appx. at 781-82. Interestingly, Plaintiff was provided with extra time and a minimal distraction room for each of the examinations he failed. *See generally* Exhibit B.1. pp. 1-34. For these reasons, Plaintiff's failure to accommodate claims do not state a cognizable cause of action under the ADA or RA.

III. **RETALIATION COUNTS FAIL AS A MATTER OF LAW BECAUSE PLAINTIFF DID NOT ENGAGE IN PROTECTED ACTIVITY PRIOR TO ANY ADVERSE ACTION, LACKING CAUSATION ELEMENT.**

The RA incorporates the anti-retaliation provision from the ADA Title V and a prima facie case for retaliation under the RA is the same as one under the ADA. *Albra v. City of Ft. Lauderdale*, 232 Fed. App'x 885, 891 (S.D. Fla. 2006). Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This anti-retaliation provision is similar to Title VII's prohibition on retaliation. *See Stewart v. Happy*

*Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). To state a claim for retaliation, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Satchel v. Sch. Bd.*, 251 Fed. App'x. 626, 629 (11th Cir. 2004).

More importantly, any retaliation claim requires a "but-for" causation which cannot be established in the Complaint. *Frazier-White v. Gee,* 818 F.3d 1249, 1258 (11th Cir. 2016) *citing Univ. of Tex. SW Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013). "But-for" causation means that the unlawful retaliation would not have occurred in the absence of the protected activity. *Id.* This Complaint fails to plead just that. It is reasonable to conclude that the Dean's decision to dismiss Plaintiff would have been affirmed in the absence of his internal disability discrimination complaint. An internal discrimination complaint filed *after* the MSEPC recommended adverse action of withdrawal and *after* the Dean upheld the adverse cannot be the sole or only reason Plaintiff was involuntarily withdrawn from HWCOM. Plaintiff can therefore not satisfy the but-for causation requirement of a retaliation claim. *See Frazier-White,* 818 F. 3d at 1258; s*ee also McCullough v. Board of Regents of the University System of Georgia,* 623 Fed. Appx. 980.

The MSEPC hearing rendered its adverse recommendation on April 16, 2020. *See* Complaint at ¶ 13; Exhibit A. The Dean upheld and affirmed the adverse recommendation on May 8, 2020. *See* Complaint at ¶ 14. On May 13, 2020, subsequent to the University's adverse decision, Plaintiff submitted an internal complaint of disability discrimination with the University's Office of Inclusion, Diversity, Equity, & Access ("IDEA"). *See* Complaint at ¶ 15. The Office of the Provost rendered its final decision affirming the Dean's decision and MSEPC recommendation to dismiss Plaintiff from medical school on September 30, 2020, a decision made prior to any protected activity, and determined that Plaintiff's substantiated discrimination

allegations did not have an adverse impact on Plaintiff's poor academic performance. *See* Complaint at ¶ 16; Exhibit C. Despite Plaintiff's contentions that he was involuntarily dismissed because he engaged in the protected activity of filing a discrimination complaint, it is clear that Defendant did not engage in retaliatory activity because the adverse activity occurred **prior** to Plaintiff engaging in any protected activity. *See* Complaint at ¶¶ 47, 53.

"For an action to be 'adverse,' it must be one which 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *See Atchinson v. Board of Regents of University System of Georgia*, 802 Fed. Appx. 495, 505 (11th Cir. 2020) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). In *Atchinson*, the Court found it difficult to see "how the Board's decision not to reconsider and overturn Atchison's five-year old expulsion would dissuade a reasonable person from making complaints about the accommodations that Atchison received five years ago." *See Id.* Similarly, the University's decision not to overturn the Dean's decision affirming the MSEPC recommendation to withdraw Plaintiff would not dissuade a student from engaging in protected activity. Thus, Plaintiff fails to satisfy the causation element of retaliation because no adverse action took place *after* the alleged protected activity, and the University's decision to affirm withdrawal did not subject him to any change in status that constitutes an adverse action. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (finding plaintiff could not prevail on her retaliation claim where she failed to satisfy a causal relationship between her harassment complaint and her transfers or termination because the protected expressions occurred after her employment ended and, thus, the adverse employment decisions could not have been based on the protected expressions).

*McCullough v. Board of Regents of the University System of Georgia*, 623 Fed. Appx. 980 (11th Cir. 2015) is instructive here. Like Plaintiff, McCollough failed to plead sufficient facts to establish a causal connection between his protected activity and the denial into Virginia State University. *Id.* McCullough alleged only that "[u]pon information and belief" the Board forwarded false records to VSU, which resulted in the denial of admission there. *Id.* at 983. According to the Eleventh Circuit, "this statement alone is insufficient to allege a causal link that would support a claim of retaliation". *Id. citing Twombly,* 550 U.S. at 551, 557 (1955) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible). Notwithstanding Plaintiff's conclusory allegations that FIU's final decision to dismiss Plaintiff from HWCOM is wholly because of his substantiated disability discrimination complaint, the Complaint fails to demonstrate any kind of causal connection related to his internal discrimination complaint. *See* Complaint at ¶¶ 48, 54. Accordingly, Counts V and VI should be dismissed as a matter of law.

## IV.   RA COUNTS MUST BE DISMISSED AS WITHDRAWAL IS NOT SOLELY BASED ON DISABILITY.

"Disability discrimination claims under the ADA and Section 504 are subject to a similar legal analysis…because both statutes are generally construed to impose the same legal requirements." *Forbes v. St. Thomas University, Inc.,* 768 F.Supp.2d 1222, 1227 (S.D. Fla. 2010) (citing *Wilbourne v. Forsyth County Sch. Dist.,* 306 Fed. Appx. 473, 476 (11th Cir. 2009); *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019) ("Given the textual similarities between the two statutes, the same standards govern claims under both, and we rel[y] on cases construing [Title II and § 504] interchangeably" (citing *T.W. ex rel. Wilson v. Sch. Bd. Of Seminole Cty., Fla.,* 610 F.3d 588, 604 (11th Cir. 2010)).

While the general requirements of a disability discrimination claim under the ADA and the RA are the same, the standard of causation is not.  Under the ADA, Plaintiff is required to show that he was denied admission "by reason of his disability" 42 U.S.C. § 12132, but the RA requires Plaintiff to show that he was denied admission "solely by reason of…his disability." 29 U.S.C. 794(a); *see also J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016).

Here, the Complaint speculates that FIU involuntarily withdrew Plaintiff for one of two reasons: (1) in retaliation for Plaintiff filing an internal complaint with the IDEA; or (2) due to alleged intentional disability discrimination based on his failure to pass Psychiatry Subject Shelf Exam. *See* Complaint at ¶¶ 39, 42, 48, 54. The Complaint fails to allege that plaintiff's disability was *the sole reason* for the involuntary withdrawal consistent with RA causation standard. Nowhere in the Complaint does Plaintiff allege that he was only withdrawn or solely involuntarily withdrawn from HWCOM because of his disability. *See J.A.M.*, 646 F. App'x at 927 (dismissing RA claim where plaintiff "alleged no other facts suggesting that Nova dismissed him because of his mental disability, let alone that his mental disability was the *sole* reason for dismissal") (emphasis in original); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776 (11th Cir. 2018) (affirming that RA claim was insufficient where "[n]o reasonable jury could conclude that [plaintiff] was discriminated against solely by reason of her disability"); *Datto v. Florida International University Board of Trustees*, 2020 WL 3963713 at *6 (S.D. Fla. July 23, 2020) (finding all counts asserting claims under the RA "insufficient because the Complaint fail[ed] to allege that his disability was the sole reason for the denial of his applications"). Therefore, dismissal is appropriate on Counts II, IV, and VI.

## V.      DEFERENCE TO ACADEMIC DECISIONS MUST BE GIVEN.

The Eleventh Circuit has been clear to follow the deference given to university decisions articulated by the Supreme Court when it flows from an academic decision. *J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 925 (11th Cir. 2016). The Supreme Court has repeatedly admonished courts to respect the academic judgment of universities. *See, e.g., Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making."); *See also Wood v. President and Trustees of Spring Hill College in City of Mobile,* 978 F.2d 1214, 1222-23 (11th Cir. 1992) (affirming judgment for college and holding that academic institutions are entitled to deference in their determination of qualifications for their programs in an action alleging violations of the Rehabilitation Act by schizophrenic student). This deference must be applied to meet the pleading requirements under the Federal Rules of Civil Procedure and to state a valid cause of action under ADA and RA.

## VI.     COMPENSATORY DAMAGES ARE NOT PROPERLY PLED AS A CLAIM FOR RELIEF.

To recover under the ADA and RA, Plaintiff must demonstrate "intentional discrimination or bad faith." *Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005) (*citing Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992)). Discriminatory intent may be established by showing the defendant was deliberately indifferent to the claimant's statutory rights. "Deliberate indifference," is an "exacting standard." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (*citing* J.S, 877 F.3d at 987). It requires proof that "the defendant knew that harm to a federally protected right was

substantially likely and ... failed to act on that likelihood." *Liese v. Indian River County Hosp. Dist.,* 701 F.3d 334, 344 (11th Cir. 2012). Here, the Complaint seeks damages such as "lost monies invested in his medical school education with HWCOM, the principal and interest that he will have to repay on any loans taken to attend the HWCOM, and the lost future income he would have been expected to earn as a physician had he not been dismissed and had been able to graduate from the HWCOM . . . emotional distress, and the exacerbation of pre-existing mental and medical conditions." *See* Complaint at ¶¶ 18, 28, 36, 40, 43, 49. He also seeks out-of-pocket losses and expenses incurred in attending medical school until his dismissal and other damages and. *See* Complaint at pp. 11, 13, 15, 17, 19, 21.

The Complaint merely provides conclusory allegations that "Defendant's disability discrimination was intentional and in deliberate indifference to and disregard for Plaintiff's rights under the ADA and RA." *See* Complaint at ¶¶ 28, 36, 40, 43. Albeit, Plaintiff claims that he was knowingly and with deliberate indifference provided a room that did not meet his satisfaction as to a distraction-free environment. *See* Complaint at ¶ 12. Assuming that the Complaint actually alleged the sufficient buzz-words, it would still fail as a matter of law because there is no case law that would support the Plaintiff's position that denying him an entirely distraction-free environment is a violation of his rights under the ADA or RA. Furthermore, it is clear that the University did not act with deliberate indifference in using that particular room as a minimal distraction testing room as it had previously been used as such without complaint, and despite Plaintiff's contention, the Proctor took reasonable steps to ensure the area remained quiet by providing notice on the door of the exam room, indicating that a student was testing and instructing any passersby to remain quiet. *See* Exhibit B.1. at pp. 17, 26. The face of the Complaint and in its totality, does not state a cause of action for damages under the ADA or RA.

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant its motion to dismiss any other relief it deems appropriate.

I hereby certify that on this 7 day of December, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MARRERO & WYDLER
*Attorneys for Defendant FIU BOT*
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

BY __/s/ Lourdes E. Wydler_____
    OSCAR E. MARRERO
    F.B.N.:  372714
    oem@marrerolegal.com
    LOURDES E. WYDLER
    F.B.N.:  719811
    lew@marrerolegal.com

## **SERVICE LIST**

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN:  435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*