UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,

    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12 and Southern District of Florida Local Rule 7.1, hereby files this Motion to Dismiss Count II of Plaintiff's Amended Complaint and Incorporated Memorandum of Law, and states:

1. This is a purported disability discrimination action where Count II arises from Plaintiff being involuntarily dismissed from FIU's Herbert Wertheim College of Medicine ("HWCOM") following his failure to pass the Psychiatry Subject Shelf Exam. Plaintiff brings this action pursuant to the Americans with Disabilities Act ("ADA").

2. The Amended Complaint along with its Exhibits establish that Plaintiff was not an otherwise qualified individual who met the technical standards of FIU's HWCOM due to a history of poor performance with accommodations offered under the ADA. [D.E. #12-1 and #12-2]. The Amended Complaint does not reference any adequate comparator who was similarly situated that was treated favorably and does not sufficiently plead that his dismissal was due to

disability discrimination.. *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)). As it is clear that Plaintiff was incapable of meeting the academic and technical standards required to participate and succeed in HWCOM, it cannot be said that Plaintiff is "otherwise qualified." *Zainulabeddin v. University of South Florida Board of Trustees,* 749 Fed. Appx. 776, 781 (11th Cir. 2018). In detail, the initial findings of the Medical Student Evaluation and Promotion Committee which reviewed Plaintiff's medical school career performance show he was dismissed because of his pattern of poor academic performance and not because of his disability. D.E. #12-1.

3. As the Supreme Court has instructed, when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225 (1985); *see also J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 925 (11th Cir. 2016). It is equally clear that: "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students...." *Id.* at 225 n. 11. Decisions based on poor academic performance require "an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making" *Board of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 90 (1978) (noting that "Courts are particularly ill-equipped to evaluate academic performance"). This deference must be applied to meet the pleading requirements under the Federal Rules of Civil Procedure and to state a valid cause of action under ADA.

4. Finally, any claim for relief seeking damages under the ADA requires intentional discrimination or deliberate indifference. *See Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005); *Liese v. Indian River County Hosp. Dist.,* 701 F.3d 334, 342 (11th Cir. 2012). The

Amended Complaint fails to properly allege this requirement. Additionally, such a finding cannot be made based on the circumstances presented related to the University's lack of deliberate indifference. Dismissal of Count II is appropriate.

## **MEMORANDUM OF LAW**

### *Dismissal Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The facts found in the complaint must "state a claim to relief that is plausible on its face." *Id*.

This pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Ashcroft*, 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1224 (S.D. Fla. 2013). "Factual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## I. DISCRIMINATION CLAIMS UNDER THE ADA CANNOT BE ESTABLISHED

In general, a plaintiff seeking recovery for violation of the ADA must allege that (1) he is a qualified individual with a disability; (2) he was denied benefits of or excluded from participation in a public service, program, or activity, or was otherwise discriminated against; and (3) the denial, exclusion, and/or other discrimination was on the basis of his disability. *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)). The claims in Count II for wrongful dismissal in violation of the ADA fail on the account that Plaintiff has not sufficiently pled he is otherwise qualified or that he was discriminated against because of his disability, and he failed to reference any adequate comparators. To the contrary, a careful review of the exhibits supports that the dismissal was based on non-discriminatory reasons. *See* D.E. #12-1; #12-2. FIU's decision to withdraw Plaintiff from HWCOM was based on his poor academic performance and academic decisions should be given deference. Moreover, Plaintiff has not established deliberate indifference as required for compensatory relief, and equitable declaratory relief is unavailable due to Plaintiff's dismissal.

### A. Plaintiff is not an Otherwise Qualified Individual.

The claims in Count II fail on the threshold element that the Plaintiff is otherwise qualified for the benefit in question and is not specifically pled. Title II of the ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979) (concluding that an individual is "otherwise qualified" for the benefit in question only if he is "able to meet all of a program's requirements in spite of his handicap"); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072,

1081 (11th Cir. 2007). Notwithstanding Plaintiff's conclusory allegations that he would have passed the Psychiatry Subject Shelf exam had he been given an "actual" or "approved" minimal distraction room, without windows or any distractions, and thus not been involuntarily withdrawn, the Amended Complaint, taken as a whole, fails to plausibly allege that the Plaintiff was an "otherwise qualified" individual. *See* D.E. #12 at ¶¶ 13, 28, 34. To the contrary, the Amended Complaint shows rather plausibly that the Plaintiff does not satisfy the "otherwise qualified" element of a cognizable claim under the statute.

First and foremost, Plaintiff has a history of poor academic performance throughout his entire time at FIU, to be discussed in detail below, and has only claimed an issue with the accommodation provided for **one** examination.[1] *See generally* D.E. #12-1, Exhibit A. Moreover, on February 17, 2020, Plaintiff took and failed the Psychiatry Subject shelf exam, the final exam required to successfully complete his Psychiatric Clerkship. *See* D.E. #12 at ¶ 12. Plaintiff does not allege that the University failed to provide a "minimal distraction" testing room that satisfied his definition of a minimum distraction room when he took and failed the initial Psychiatry Subject Shelf Exam on February 17, 2020. *See id*. He was permitted to retake the exam on March 3, 2020. *See Id.* at ¶¶ 12, 13. Plaintiff was provided with the accommodation of a minimal distraction room, albeit not a "distraction-free" room, for the remediation. *See at* D.E. #12 ¶ 13. Plaintiff contends that due to noisy neighbors and windows in the room, he once again failed the Psychiatry Subject Shelf exam. *See Id*. Notably, the Amended Complaint does not and cannot

---

[1] In addition, Plaintiff claims that he was often not provided with the approved reasonable accommodations when taking in-class quizzes and/or readiness assignments. *See* D.E. #12 at ¶¶ 8, 11, 16. However, Plaintiff states that he always passed such quizzes and thus, could not be determinative of failing grades. *See* D.E. #12 at ¶¶ 8, 11. Importantly, Plaintiff does not allege that he ever requested such accommodation or engaged in any interactive process regarding a request for such accommodation as it relates to readiness assignments.

allege that the minimal distraction room complained of was not private, as it was overseen by a single proctor and although exposed to outside noises, was devoid of distraction within. *See Id*.

Due to his academic failure, Plaintiff was called to appear at an MSEPC hearing held on April 9, 2020, where the Committee recommended that Plaintiff either voluntarily withdraw or be involuntarily withdrawn. *See* D.E. #12 at ¶ 14. Plaintiff advised the Committee that on the day of the remediation, his neighbor's apartment caught on fire, and this external factor affected his academic performance. *See* D.E. #12-1 at p. 3. Accordingly, the Amended Complaint establishes that despite the provision of a private room that limited auditory and visual interruptions for the Psychiatry Subject Shelf Examination on two occasions, both the initial February examination and the remedial March examination, Plaintiff failed the subject examination. As it is clear that Plaintiff was incapable of meeting the academic and technical standards required to participate and succeed in HWCOM even with the provision of reasonable accommodations, it cannot be said that Plaintiff is "otherwise qualified." Dismissal of Count II is appropriate. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. at 927 (dismissing amended complaint and holding as a matter of law the student was not "otherwise qualified" where it was clear that plaintiff's disability rendered him incapable to participate in Nova's medicine program).

**B.   Plaintiff was Not Dismissed from Medical School Because of his Disability.** The Amended Complaint, specifically Count II, contains allegations that Plaintiff was wrongfully dismissed from medical school because he failed to pass the Psychiatric Subject Shelf Exam, "a failure that resulted exclusively from HWCOM's not affording him an approved reasonable accommodation of a minimal distraction room." *See* D.E. #12 at ¶ 34. However, Plaintiff fails to set forth any basis for Plaintiff's contention that the involuntary dismissal was because of his disability. Without any allegations establishing a causal link

between Plaintiff's disability and involuntary dismissal, Count II must be dismissed for failure to state a cause of action.

To the extent that the Amended Complaint pleads a causal link, Plaintiff has not sufficiently established that his dismissal was because of his disability. Plaintiff was dismissed from HWCOM because the MSEPC determined that Plaintiff showed a pattern of poor academic performance despite mitigating circumstances. *See* D.E. #12-1. Firstly, the Committee determined that Plaintiff showed a pattern of poor performance in his Clerkship shelf exams. *See* D.E. #12-1 at p. 3-4. Plaintiff had to take both the Family Medicine, Surgery, and Neurology shelf exam and the Psychiatry Subject shelf exam **twice**. *See Id*. The Committee also noted that he scored very low on the Obstetrics and Gynecology shelf exam. Additionally, Plaintiff **failed** the following courses: Cardiovascular and Respiratory Systems (BMS 6622) and the remediation; Genes, Molecules, and Cells (BMS 6001); Systems Based Practice (BMS 6067); and the Psychiatry Clerkship (MDC 7830). *See* D.E. #12-1 at p. 4-5; *see also* Amended Complaint at ¶¶ 10, 12, 14. Plaintiff was first placed on academic probation in July of 2017. *See* D.E. #12-1 at p. 4. Due to Plaintiff's continued academic failure, the University granted Plaintiff's request for medical leave of absence and allowed him to **repeat** Period 2*. See* D.E. #12-1. Notably, in regard to the lack of reasonable accommodations for in-class quizzes and readiness assignments, Plaintiff admits that he **passed** the quizzes, albeit with a lower score, taken without any accommodations. *See* D.E. #12 at ¶¶ 8, 11. Thus, even if Plaintiff was provided with such accommodations, it is clear that Plaintiff did not fail on account of FIU's alleged failure to provide reasonable accommodations for such assignments.

Similarly*,* the plaintiff in *Zainulabeddin* took four years to complete two years of coursework due to repeated failure of courses and was still struggling to pass the medical school

curriculum even with disability accommodations for her ADHD, including increased time for exams and a distraction-free environment. *See Zainulabeddin v. University of South Florida Board of Trustees*, 749 Fed. Appx. 776, 782-783 (11th Cir. 2018). The Court affirmed summary judgment to the university where the record, consisting of ample evidence of plaintiff's academic difficulties throughout her four years of study at the medical school, made clear that student was dismissed from medical school for academic performance. *See Id*. Accordingly, dismissal of Count II is appropriate because the exhibits make clear that Plaintiff was dismissed from medical school due to poor academic performance and not by reason of disability. *See Pritchard v. Florida High School Athletic Association, Inc.*, 2019 WL 1993511 (M.D. Fla. May 6, 2019) (court concluded plaintiff was not discriminated against because of his disability and granted dismissal of disability discrimination claim under the ADA); *L.S. ex rel. K.S. v. School Bd. of Broward County, Fla.*, 2007 WL 2827575 (S.D. Fla. Sept. 26, 2007) (dismissing complaint under the ADA where Plaintiff did not sufficiently allege that Defendant's actions-denial of residential placement-were motivated solely by reason of plaintiff's disability); *see also Andrews v. City of Hartford*, 700 Fed.Appx. 924 (11th Cir. 2017) (dismissal of ADA claim affirmed where complaint did not sufficiently establish that plaintiff was fired on the basis of his disability).

   **C.**  **Plaintiff Has Not Referenced Any Adequate Comparator.**

  The Court in *Datto v. University of Miami, et al.* noted that Plaintiff failed to "point to any other instance where the University denied admission to other disabled persons who had not been dismissed from another medical school." 1:18-cv-21053-DPG, ECF 266 at p. 17 (citing *J.A.M.,* 2015 WL 4751149, at *3). Here, there is no evidence, nor does the Plaintiff allege, that he was held to a different standard than any other repeating student who is similarly situated to

him in all relevant aspects, whether disabled or not. *See generally* Amended Complaint. Count II must be dismissed for failure to establish a *prima facie case* of discrimination because the Amended Complaint failed to identify any comparator who has been involuntarily dismissed from HWCOM for failure to receive the aforementioned accommodations.

### D. Compensatory Damages are not Properly Pled as a Claim for Relief.

To recover compensatory damages under the ADA, Plaintiff must demonstrate "intentional discrimination or bad faith." *Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005) (*citing Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992)). A plaintiff may establish discriminatory intent, entitling him or her to monetary relief, by showing that the defendant was deliberately indifferent to his statutory rights; this is an "exacting standard," which requires proof that "the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134-35 (11th Cir. 2019) (citing *Liese v. Indian River County Hosp. Dist.,* 701 F.3d 334, 344 (11th Cir. 2012)). Here, the Amended Complaint seeks damages such as "lost monies invested in his medical school education with HWCOM, the principal and interest that he will have to repay on any loans taken to attend the HWCOM, and the lost future income he would have been expected to earn as a physician had he not been dismissed and had been able to graduate from the HWCOM . . . emotional distress, and the exacerbation of pre-existing mental and medical conditions." *See* D.E. #12 at ¶¶ 19, 29, 35. He also seeks out-of-pocket losses and expenses incurred in attending medical school until his dismissal and other damages and. *See id.* at pp. 12, 14.

The Amended Complaint merely provides conclusory allegations that "Defendant's disability discrimination was intentional and in deliberate indifference to Plaintiff's rights under

the ADA." *See id.* at ¶¶ 29, 35. Plaintiff claims that he was "knowingly" and with "deliberate indifference" provided a room that did not meet his satisfaction of a minimal distraction room and "deliberately denied and refused" his approved reasonable accommodations. *See* D.E. #12 at ¶ 13, 27, 28, 34. Assuming that the Amended Complaint actually alleged the sufficient buzz-words, it would still fail as a matter of law because there is no case law that would support the Plaintiff's position that denying Plaintiff a minimal distraction room, a term which has not been defined, eliminating all auditory and visual distractions constitutes a deliberate violation of his rights under the ADA. Furthermore, it is clear that the University did not act with deliberate indifference in using that particular room as a minimal distraction testing room as it entailed of a private testing room with reduced auditory and visual distractions, albeit unsatisfactory to Plaintiff's outrageous distraction-free standards.

Moreover, Defendant must demonstrate that an official with authority to address the alleged discrimination had actual knowledge of the entity's programs and failed to adequately respond. *See Silberman*, 927 F.3d at 1134-35 (affirming dismissal of complaint and finding that plaintiffs could not state a claim for compensatory damages under Title II because bus drivers were not "officials"). Plaintiff does not allege that he complained of any discriminatory practices prior to lodging the complaint with the IDEA, which occurred after the Dean's decision to affirm the MSEPC recommendation to withdraw Plaintiff from HWCOM, that would have provided an official with knowledge of any alleged discrimination. The face of the Amended Complaint, in its totality, does not state a cause of action for damages under the ADA. As such, Plaintiff's discrimination claims must be dismissed. *See E.W. v. School Bd. of Miami-Dade County Florida*, 307 F.Supp.2d 1363 (S.D. Fla. 2004) (dismissing ADA claim for failure to state a claim under Title II where allegations that the school board intentionally discriminated against minor child

because individual educational plans (IEPs) for profoundly deaf, mobility-impaired minor provided minor with verbotonal (VT), rather than auditory-verbal (AV), therapy, did not suggest school board acted with bad faith or gross misjudgment).

### E.  Deference to Academic Decisions Must Be Given.

The Eleventh Circuit has been clear to follow the deference given to university decisions articulated by the Supreme Court when it flows from an academic decision. *J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 925 (11th Cir. 2016). The Supreme Court has repeatedly admonished courts to respect the academic judgment of universities. *See e.g., Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making."); *see also Wood v. President and Trustees of Spring Hill College in City of Mobile,* 978 F.2d 1214, 1222-23 (11th Cir. 1992) (affirming judgment for college and holding that academic institutions are entitled to deference in their determination of qualifications for their programs in an action alleging violations of the Rehabilitation Act by schizophrenic student). This deference must be applied to meet the pleading requirements under the Federal Rules of Civil Procedure and to state a valid cause of action under ADA. As Defendant's decision to dismiss Plaintiff from HWCOM was purely academic, deference should be given to its judgment on Plaintiff's poor academic performance and inability to meet the University's academic requirements despite the provision of reasonable accommodations.

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant the Motion to Dismiss Count Two of the Amended Complaint and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 8th day of February, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      MARRERO & WYDLER
      *Attorneys for Defendant FIU BOT*
      2600 Douglas Road, PH-4
      Coral Gables, FL 33134
      (305) 446-5528
      (305) 446-0995 (fax)

      BY __/s/ Lourdes Espino Wydler_____
       OSCAR E. MARRERO
       F.B.: 372714
       oem@marrerolegal.com
       LOURDES ESPINO WYDLER
       F.B.: 719811
       lew@marrerolegal.com

## SERVICE LIST

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*