UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF FLORIDA

CASE NO. 1:20-cv-24649-CANNON

ELIE NEHME,

  **Plaintiff,**

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

  **Defendant.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff ELIE NEHME, through undersigned counsel, for his response in opposition to Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint [ECF No. ], states as follows:

### I.  Standard for Motion to Dismiss

Defendant's Motion to Dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of Count II of the Amended Complaint for failure to state a claim for relief.  In deciding the Motion, the Court's analysis is limited to the four corners of the Amended Complaint and the attached exhibits. *Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir.2000).  The Court must also accept Plaintiff's well pled facts as true, draw all reasonable inferences from those facts in Plaintiff's favor, and overall construe the Amended Complaint in the light most favorable to Plaintiff. *Caravello v. American Airlines, Inc.*, 315 F.Supp.2d 1346, 1348 (S.D.Fla.2004) (citing *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir.1999) (en banc)); *Hernandez v. American Federation of Police, Inc.,* No. 13-24002-Civ-WILLIAMS, 2014 WL 12600144 at *1

(S.D. Fla. Mar. 7, 2014) (citing *Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)).

To survive Defendant's Motion, the four corners of the Amended Complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Said another way, Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id*. Ultimately, the issue for the Court to decide is not whether Plaintiff will ultimately prevail on his claims, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L.Ed.2d 139 (1984).

In this regard, in deciding the pending Motion to Dismiss, it would be improper for the Court to make any credibility determinations, weigh the evidence for either side, or determine the strength of the parties' competing claims and positions. *Kovacs v. National Hebrew Glatt, Inc.*, No. 05–23125–CIV,  2008 WL 4621756 at *2 (S.D. Fla. Oct. 17, 2008); *Alan L. Frank Associates, P.C. v. OOO RM Invest*,  NO. 16-22484-CIV, 2016 WL 9383606 at *8 (S.D. Fla. Dec. 1, 2016). Put simply, in adjudicating a motion to dismiss, the district court may not resolve factual disputes. *See Chappell v. Goltsman*, 186 F.2d 215, 218 (5th Cir.1950); cf. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes the district court from granting a motion to dismiss).

Here, the well-pled facts of Count II of the Amended Complaint, coupled with the exhibits attached thereto, raise numerous fact-intensive issues as to whether Plaintiff would have been discharged from Defendant's medical school had he been properly accommodated for his known disability and been allowed to pass the retake of the required Psychiatric Subject Shelf Exam.

Viewing the facts pled in support of Count II of the Amended Complaint in a light favorable to Plaintiff – as this Court must do -- had Plaintiff been properly accommodated for his disability and passed the Shelf Exam (and the Psychiatry Clerkship), he would not have been called in front of the Medical Student Evaluation and Promotion Committee ("MSEPC") and would not have been discharged from the medical school.  Defendant, however, improperly requests this Court to view the Amended Complaint and its exhibits in a light favorable only to Defendant and to resolve factual issues, make factual determinations, and reach conclusions against Plaintiff based wholly on the allegations of the Amended Complaint.  Here, Plaintiff clearly has pled enough facts, taken as true, to demonstrate that he "is entitled to offer evidence to support the claims."

Plaintiff's factual allegations also are sufficient in that, if true, they would support Plaintiff's claim under Count II that Defendant acted with deliberate indifference to his disability and his need to be accommodated therefor in connection with the events that led to his discharge from the medical school.

Finally, Defendant's argument that this Court should dismiss Count II because it must give deference to Defendant's "academic decision" to discharge Plaintiff from the medical school must fail at the motion to dismiss stage, as this Court cannot view Defendant's articulated grounds for its discharge decision has  to be unquestionable.  Plaintiff should be able to prove that any non-discriminatory reasons Defendant has given for its decision were pretextual and were, in fact, caused by disability discrimination.

**II.      Plaintiff has adequately pled a plausible claim for disability discrimination under the ADA for Defendant's decision to discharge him from the medical school.**

**A.      Plaintiff has pled facts that establish he was a qualified individual with a disability.**

Defendant first argues that Plaintiff has not pled sufficient facts in Count II of the Amended Complaint to demonstrate that he was an "otherwise qualified" individual with a disability, because, according to Defendant, the Amended Complaint conclusively establishes that Plaintiff was discharged for non-discriminatory reasons, i.e., his allegedly poor academic performance. This is not so as the well-pled facts in the Amended Complaint, together with the exhibits thereto, demonstrate that, had Plaintiff been properly accommodated for his disability with an appropriate minimum distraction room to retake his Psychiatry Subject Shelf Exam and thereby have passed the Psychiatry Clerkship, he would not have been called before the MSEPC and would not have been discharged from the medical school.

To "present a valid cause of action [under Title II of the ADA], [a plaintiff] must show that she: (1) is disabled; (2) is a 'qualified individual'; and (3) was subjected to unlawful discrimination because of the disability." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010). Defendant does not argue that Plaintiff was not disabled but argues instead that Plaintiff has not pled sufficient facts to demonstrate that he was "otherwise qualified" to remain in the medical school because of his allegedly poor academic performance. In doing so, Defendant relies on the content of Exhibit "A" to the Amended Complaint, which is a copy of Defendant's discharge decision and its purported rationale underlying that decision, which included Plaintiff's failure to pass the Psychiatry Clerkship. Defendant in essence argues that this Court should not question Defendant's rationale for its discharge decision and instead take it at face value, and that any factual allegations made by Plaintiff in the body of the Amended Complaint to the contrary should be discredited and discounted. Defendant thus is asking this Court to make factual determinations and to weigh evidence and the inferences to be drawn therefrom wholly in Defendant's favor, which would be improper when ruling on a Rule 12(b)(6) motion to dismiss.

Significantly (but not surprisingly), in asking this Court to make all factual determinations in its favor, Defendant misstates and exaggerates Plaintiff's actual factual assertions in the Amended Complaint.  First, Defendant mischaracterizes Plaintiff's factual allegations regarding the reasonable accommodation of a minimal distraction room to retake the Psychiatry Subject Shelf Exam.  Specifically, Defendant incorrectly states that Plaintiff has alleged that he should have been provided a "distraction-free" room or one that was completely "devoid of distraction". *See* Motion to Dismiss at pp. 5 - 6.[1]  Rather, as clearly set forth in paragraph 9 of the Amended Complaint, "minimal distraction rooms were ones that were separate from general classrooms and offices *in a quiet area*, were specifically set up to create *a quiet test-taking environment with limited auditory, visual, and movement interruptions from outside the rooms*, and were set up to allow control over lighting and noise levels." Am. Cmplt. ¶ 9 (emphasis supplied).  Defendant's mischaracterizations of Plaintiff's Amended Complaint allegations in this regard should not be countenanced and should not sway this Court into adopting wholescale Defendant's version of what transpired in connection with Plaintiff's discharge from the medical school.

A review of the Amended Complaint's detailed factual allegations demonstrate – and certainly raise issues of material fact requiring the development and presentation of evidence and testimony – that when he retook the Psychiatry Subject Shelf Exam, Plaintiff was assigned not to a "minimal distraction" room as Defendant was obligated to do to accommodate Plaintiff's disability, but "to a room that had substantial and continuous distractions, including windows that looked out onto a hallway where other rooms and offices were located and from which numerous

---

[1] Defendant continues this gross mischaracterization of Plaintiff's allegations as to a minimal distraction room at page 10 of its Motion by suggesting that Plaintiff in the Amended Complaint alleged a minimal distraction room as one "eliminating all auditory and visual distractions.  That is not what Plaintiff has alleged.

people would regularly and noisily enter and exit, causing considerable noises and distractions." Am. Cmplt. ¶ 13.  The Amended Complaint further alleges that these substantial distractions caused Plaintiff "to continuously lose his concentration and increased his anxiety and stress", which resulted in his failing the Exam and the required Psychiatry Clerkship. *Id.*  Furthermore, and significantly, both the Amended Complaint allegations and Exhibit "A" thereto, viewed in a light favorable to Plaintiff, demonstrate that, had Plaintiff not failed the Exam and the Clerkship, he would not have been called before the MSEPC and hence would not have been discharged. Am. Cmplt. ¶ 14 ("As a direct and proximate result of failing the Psychiatry Clerkship, Plaintiff was called into a hearing before the MSEPC on April 9, 2020 to determine his future as a medical student with the HWCOM"; "As a result of the MSEPC hearing – ***which would never have occurred had Plaintiff passed the Psychiatry Subject Shelf Exam*** -- the MSEPC issued a recommendation that Plaintiff either voluntarily withdraw from the medical school or be involuntarily withdrawn.") (emphasis supplied); Am. Cmplt. Ex. "A" [ECF No. 12-1] at p. 3 ("Mr. Nehme understood he was appearing before the MSEPC ***because he did not pass the Psychiatry Clerkship***.") (emphasis supplied).  Finally, the Amended Complaint contains allegations that Plaintiff's internal complaints of disability discrimination, including Defendant's failure to provide him with the reasonable accommodation of a minimal distraction room to take the Psychiatry Subject Shelf Exam, were investigated by Defendant and were substantiated.  Am. Cmplt. ¶ 16.

Notwithstanding these factual allegations that Plaintiff was "otherwise qualified" to continue his education at the medical school had he been provided the reasonable accommodation of a minimal distraction room to take and pass the Psychiatry Subject Shelf Exam and thereby pass the Psychiatry Clerkship, Defendant in its Motion focuses only on the MSEPC's statements

regarding Plaintiff having a "pattern" of poor academic performance as being an undisputed non-discriminatory rationale for its discharge decision.  However, it would be improper at the motion to dismiss stage for this Court to adopt the Defendant's spin on the pled facts and Amended Complaint exhibits, weigh evidence in Defendant's favor, and make factual determinations in Defendant's favor that the MSEPC's rationale for its discharge decision was valid and beyond reproach. *See, e.g., Datto v. Florida International University Bd. of Trustees,* No. 20-cv-20360-BLOOM, 2020 WL 3963713 at \*5 (S.D. Fla. July 13, 2020) (rejecting similar argument that at motion to dismiss stage court should view "university or faculty's judgments as unquestionable."). This Court must view the factual allegations in the Amended Complaint as true and in Plaintiff's, not Defendant's, favor, and thus should deny the Motion to Dismiss.

**B.      Plaintiff has pled sufficient facts to show that he was dismissed because of his disability.**

Defendant next argues that Count II must be dismissed because Plaintiff has not pled sufficient facts to demonstrate that his discharge from the medical school was "because of his disability."  To support this argument, Defendant again improperly calls upon this Court to act not only as judge but also as the fact finder, and view all of the pled facts and decide all of the factual issues arising from the Amended Complaint and its exhibits against Plaintiff and in Defendant's favor. Specifically, Defendant posits that the rationale for Plaintiff's discharge ultimately annunciated by the MSEPC in it discharge recommendation decision – i.e., Plaintiff's "pattern" of poor academic performance -- should be taken as the gospel truth and be viewed as beyond dispute. However, as pointed out above, this Court cannot at this juncture weigh the evidence and cannot view the Amended Complaint allegations wholly in Defendant's favor when ruling on the Motion to Dismiss.  Instead, Plaintiff should be given the opportunity to develop and present evidence and testimony to support his claims and to attack the MSEPC's articulated rationale for the discharge

recommendation as being pretextual.  This can only be done by denying the Motion and allowing the Count II claim to proceed.

Indeed, the Amended Complaint contains sufficient factual allegations that, taken as true, establish that the MSEPC's discharge recommendation and the Provost's ultimate discharge decision based thereon were "because of" Plaintiff's disability.  Specifically, the Amended Complaint alleges that Defendant's administrators and management were well aware of Plaintiff's disability and that Defendant was required to provide Plaintiff with a minimal distraction room as an approved reasonable accommodation for all exam taking.  Am. Cmplt. ¶¶ 7 – 9, 13.  The Amended Complaint further alleges that, with full knowledge of Plaintiff's disability and his need to be accommodated with a minimal distraction room for his exam taking, Defendant deliberately placed Plaintiff in a room where the distractions were not minimal, but were substantial and ongoing, in order to retake the Psychiatry Subject Shelf Exam. *Id.* ¶ 13.  The Amended Complaint then alleges that because Plaintiff was denied his reasonable accommodation for his known disability, he failed the Exam and the Psychiatry Clerkship, which led directly to his being called before the MSEPC and his discharge from the school. *Id.* ¶¶ 14, 34.

Indeed, the MSEPC's written discharge recommendation attached to the Amended Complaint as Exhibit "A" supports the causal string between Plaintiff's known disability and his eventual discharge as it clearly references Plaintiff's failure of the Exam and Psychiatry Clerkship as being the reason for his being called before the MSEPC. Am. Complaint. Ex. "A" [ECF No. 12-1] at p. 3.  Moreover, that same recommendation decision evidences that the MSEPC's discharge rationale included Plaintiff's failure to pass the Psychiatry Clerkship, an event directly caused by Defendant's knowing failure to properly accommodate Plaintiff for his disability. *Id.* at pp. 4 - 5.

Thus, there are ample facts pled in the Amended Complaint to support a direct causal connection between Plaintiff's disability and Defendant's eventual discharge decision, and the Motion to Dismiss must be denied.

Significantly, Defendant cites to a variety of cases that suggest that under the ADA, Plaintiff's disability must be the "sole cause", rather than just a "but-for" cause, of his discriminatory discharge. This position, however, has been squarely rejected by the Eleventh Circuit and other Florida district courts. *See McNely v. Ocala Star-Banner Corp.,* 99 F.3d 1068, 1076-77 (11th Cir. 1996) (rejecting "sole cause" standard and adopting "but-for" standard for liability under ADA, because "[i]n everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome."); *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (citing to *McNely* and recognizing "but-for" as opposed to "sole cause" as being causation standard for ADA claim); *Cragg v. Dist. Bd. of Trustees of Miami-Dade College,* NO. 17-20300-CIV-ALTONAGA, 2018 WL 8334585 at *7 (S.D. Fla. Nov. 30, 2018) (applying *McNely* "but-for" standard in Title II ADA case in denying summary judgment where facts demonstrated that "College's decision to informally suspend Plaintiff was motivated, at least in part, by the College perceiving Plaintiff as disabled.");

Here, Plaintiff has pled sufficient facts that, taken as true and viewed in a light favorable to Plaintiff, would demonstrate that his disability and Defendant's knowing denial of an approved accommodation therefor was the proverbial straw that broke the camel's back and thus a "but-for" cause of Plaintiff's discharge. Accordingly, Defendant's Motion to Dismiss must be denied.

C.      **Plaintiff is not required to plead the existence or identities of comparators to state his ADA claim.**

Defendant next argues that Count II of the Amended Complaint should be dismissed because Plaintiff has failed to allege the existence of any similarly situated comparators who were

held to a difference standard than Plaintiff when it came to remaining or being discharged from the medical school. This argument is nothing but a "red herring" and is contrary to applicable case law. In the Eleventh Circuit, comparator evidence is not a necessary part of an ADA claimant's *prima facie* case of discrimination. *Hargett v. Florida Atlantic University Bd. of Trustees,* 219 F. Supp. 3d 1227, 1242 n. 17 (S.D. Fla. 2016) (citing *Haines v. Cherokee Cty.*, No. 1:08–2916–JOF/AJB, 2010 WL 2821853, at \*26 (N.D. Ga. Feb. 16, 2010)). Thus, Defendant's contention that Plaintiff has not pled or pointed to any non-disabled comparators is irrelevant to whether Plaintiff has pled a plausible claim for relief for discriminatory discharge under the ADA. *Hargett*, 219 F. Supp. 2d at 1242 n. 17. Defendant's comparator argument thus should be rejected and the Motion to Dismiss denied.

> **D**.       **Plaintiff has properly pled a basis for the recovery of compensatory damages.**

Defendant further argues that Plaintiff has not properly pled his entitlement to recover compensatory damages in Count II as he has failed to plead facts that demonstrate "intentional discrimination or bad faith" by Defendant. In making this argument, however, Defendant not only resorts to misrepresenting Plaintiff's factual allegations, but goes so far as to interject its own "facts" that appear nowhere in the Amended Complaint or its exhibits.

Specifically, Defendant again mischaracterizes Plaintiff's position in the Amended Complaint as that he was deliberately denied a minimal distraction room "eliminating all auditory and visual distractions." Motion to Dismiss at p. 10. However, as argued above, this is not the case, as Plaintiff has clearly pled that the minimal distraction room was to be one "separate from general classrooms and offices in a quiet area" and "specifically set up to create a quiet test-taking environment with *limited* auditory, visual, and movement interruptions from outside the rooms." Am. Cmplt. ¶9 (emphasis supplied).

In addition, Defendant adds unpled "facts" to its argument that the room that was actually provided to Plaintiff was a "minimal distraction" room, stating that the room "entailed of a private testing room with reduced auditory and visual distractions." *Id.* However, there are no allegations anywhere in the Amended Complaint or any exhibits that describe the room to which Plaintiff was assigned to take the Exam was one with "reduced auditory and visual distractions."[2] This Court should disregard these unsupported, extraneous factual assertions in ruling on Defendant's Motion.

Instead, the Court should focus on the numerous facts that Plaintiff has ***actually*** pled to show that Defendant intentionally discriminated against him. In this regard, to recover money damages under the ADA, a plaintiff must demonstrate "intentional discrimination or bad faith." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005) (citing *Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992)). This requires a showing of "deliberate indifference.," *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 34 (11th Cir. 2019). Deliberate indifference is shown where "the defendant knew that harm to a federally protected right was substantially likely and...failed to act on that likelihood." *Id.* (citation omitted).

In the instant case, Plaintiff has pled sufficient facts in the Amended Complaint that, if taken as true, demonstrate Defendant acted with deliberate indifference as to Plaintiff's disability and his need for the approved reasonable accommodation of a minimal distraction room to take his Psychiatry Subject Shelf Exam. Plaintiff has pled in the Amended Complaint that Defendant knew of Plaintiff's disability and also knew that he needed the minimal distraction room as a reasonable accommodation for all his exam taking in order to successfully complete his curriculum

---

[2] Indeed, Defendant is further guilty of adding non-pled, self-serving facts to bolster its dismissal argument at page 6 of its Motion where it incorrectly states, as if Plaintiff pled such in paragraph 13 of the Amended Complaint, that the minimal distraction room, "although exposed to outside noises, was devoid of distraction within." Motion to Dismiss at p. 6. This asserted "fact" has been fabricated by Defendant out of whole cloth and has nowhere been pled by Plaintiff.

in the medical school. Am. Cmplt. ¶¶7 – 9, 13.  Plaintiff has also pled that when he went to retake the Psychiatric Subject Shelf Exam, Defendant's administrators and management, who knew of Plaintiff's disability and his need for a minimal distraction room as an accommodation, knowingly assigned him to a room to take the Exam that had substantial, ongoing distractions. *Id.* at ¶13. Moreover, Plaintiff alleged that the proctor who oversaw Plaintiff taking the Exam and who also knew of his disability and need for minimal distraction, took no steps to address or remedy the obvious distractions and noise to which Plaintiff was being exposed, which resulted in Plaintiff losing his concentration and suffering increased anxiety and stress.  *Id.*  As alleged in the Amended Complaint, this deliberate indifference to Plaintiff's situation directly led to Plaintiff failing the Exam and the Psychiatry Clerkship, being called in front of the MSEPC, and being discharged from the medical school. *Id.* at ¶¶14, 34.

Moreover, Defendant's deliberate indifference to Plaintiff's disability and his medical school career is demonstrated by the Office of the Provost's decision, attached to the Amended Complaint as Exhibit "B", to uphold the MSPEC discharge recommendation even though the Provost office had been made aware that Plaintiff's internal complaint of disability discrimination in not providing him a minimal distraction room for the Psychiatry Subject Shelf Exam had been substantiated. *Id* at  ¶¶16 – 17.  Viewed in a light favorable to Plaintiff, as this Court must do, the Provost office's conclusion in its final decision that there was "no indication" that Plaintiff's substantiated discrimination allegations "had an adverse impact on [Plaintiff's] academic performance" could be viewed as false and thus a pretext for deliberate disability discrimination. *Id.* at ¶17; Exh. "B" [ECF 12-2].

The Amended Complaint thus contains ample factual allegations that, if proven, demonstrate Defendant's deliberate indifference to Plaintiff's disability, his need for reasonable

accommodation therefor, and his ability to continue his medical school education, despite an internal investigative finding that Plaintiff had been discriminated against in connection with his exam taking. *See Datto v. Florida International University Bd. of Trustees,* 2020 WL 3963713 at *10 (finding even lesser factual allegations to be sufficient for ADA compensatory damage claim where they show that "FIU's alleged discriminatory actions are not unintentional or grounded in legitimacy."). Plaintiff thus has stated sufficient facts that, if true, support his claim for intentional disability discrimination and the recovery of compensatory damages.[3] Count II of the Amended Complaint should not be dismissed as to its claim for the recovery of compensatory damages.

### III.     It would be improper for the Court to dismiss Count II at this stage based on deference to Defendant's "academic decision" to discharge Plaintiff.

Defendant's final argument for dismissal of Count II is that this Court should give deference to Defendant's "academic decision" to discharge Plaintiff from its medical school. In arguing its position, Defendant accurately recognizes that court deference to academic decisions is a "defense"; as such, it is Defendant's obligation to raise that defense in a pleading such as an answer. It should not be, as Defendant contends, Plaintiff's obligation in his Amended Complaint to plead facts to demonstrate that no deference to Defendant's as-yet unproven justification for its adverse decision is warranted. Indeed, Defendant cites to no case law or rule to support such a heightened pleading requirement in a Title II ADA case.

---

[3] Significantly, Defendant has chosen to answer Count I of the Amended Complaint – the discriminatory denial of reasonable accommodation in connection with his taking of the Psychiatry Subject Shelf Exam – and thus not attack Plaintiff's pleading of intentional discrimination and compensatory damages for that claim. As the intentional discrimination and compensatory damages claims in both Counts rest on the same factual predicates of deliberate indifference, this Court should refrain from striking or dismissing Count II's intentional discrimination allegations to the extent such a decision would have a preemptive effect on Plaintiff's ability to prove the similar factual allegations that underpin Count I.

Instead, Defendant cites to three cases -- *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985), *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978), and *Wood v. President and Trustees of Spring Hill College in City of Mobile*, 978 F.2d 1214 (11th Cir. 1992) -- that have recognized the general obligation of courts, in ultimately deciding cases on the merits, to give deference to academic decisions in considering school discharge decisions.  However, none of the cited cases involved motions to dismiss inasmuch as applying academic decision deference at the motion to dismiss stage would upend this Court's obligation to view the Amended Complaint factual allegations in a light favorable to Plaintiff.  Indeed, Judge Bloom recently rejected a virtually identical argument Defendant and its same counsel made in seeking the dismissal of a complaint in another ADA case  In  *Datto v. Florida International University Bd. of Trustees*, supra, Judge Bloom recognized that the same cases Defendant now cites "do not hold that when reviewing the sufficiency of a pleading at this stage, a court must take the university or faculty's judgments as unquestionable." 2020 WL 3963713 at *5.  Accordingly, whether Defendant's rationale for discharging Plaintiff was for legitimate, non-discriminatory reasons or were because of Plaintiff's disability are presently factual issues, and Plaintiff should be given the opportunity to develop and present evidence to demonstrate that Defendant's purported academic decision is pretextual and thus not worthy of any deference.  Defendant's Motion to Dismiss Count II should, therefore, be denied.

## IV.     Conclusion.

Based on the foregoing arguments and legal authorities, Defendant's Motion to Dismiss Count II of the Amended Complaint must be denied and the case allowed to proceed forward as to all its claims.

14

Respectfully submitted,

RODERICK V. HANNAH, ESQ., P.A.
Attorneys for Plaintiff
4800 N. Hiatus Road
Sunrise, Florida 33351
Telephone:  (954) 362-3800
Facsimile:   (954) 362-3779
Email:  rhannah@rhannahlaw.com


By      /s/ *Roderick V. Hannah*
          Roderick V. Hannah
          Fla. Bar No. 435384


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2021, a true and correct of the

foregoing was electronically filed and served via transmission of Notice of Electronic Filing

generated by CM/ECF on all counsel or parties of record on the Service List below:

Oscar Marrero, Esq.
Email:  oem@marrerolegal.com
Lourdes E. Wydler, Esq.
Email: lew@marrerolegal.com
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

*Attorneys for Defendant FIU BOT*


                              /s/ *Roderick V. Hannah*
                                   Roderick V. Hannah