UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,
    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES
    Defendant.
_____/

## **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT II**

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12 and Southern District of Florida Local Rule 7.1, hereby files this Reply Memorandum of Law in Support of its Motion to Dismiss Count II [ECF No. 20] of Plaintiff's Amended Complaint, and states:

Plaintiff attempted to allege that he was dismissed from the FIU Herbert Wertheim College of Medicine ("FIU HWCOM") based on the failure to provide a minimal distraction room for one examination. However, the exhibits attached to Plaintiff's Amended Complaint [ECF No. 12-1 & ECF No. 12-2] conclusively establish that Plaintiff consistently struggled to meet the academic requirements of the medical program despite reasonable accommodations along the way. Had Plaintiff not attached the Exhibits to this Amended Complaint, discovery may have been necessary to provide the Court with a history of Plaintiff's poor academic performance for his dismissal prior to the exam and not due to discrimination based on any disability. Furthermore, Plaintiff cannot show deliberate indifference as required to state a claim

for compensatory damages under a disparate treatment theory of disability discrimination. Plaintiff mistakenly concludes that this Court should not enter a ruling on the compensatory damages claim grounded on deliberate indifference as it would affect the failure to accommodate claim. [ECF No. 21]. However, a claim for failure to provide reasonable accommodations is a distinct theory that does not require a showing of discriminatory intent. In light of the information available to the Court in the Amended Complaint, a cause of action does not exist under the ADA in Count II. Dismissal of Count II should be granted.

**I.      Exhibits are Accepted as True when they Contradict the Facts Pled**

Defendant does not deny the standard this Court is limited to is the four corners of the Amended Complaint and the attached exhibits as propounded by Plaintiff. [ECF No. 30 at p. 1]. "The Civil Rules provide that an attachment to a complaint generally becomes a part of the pleading for all purposes, Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). In reviewing a motion to dismiss, "when exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill*, 941 F.3d at 514 *citing Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Staggers v. International Longshoremen's Association*, 2021 WL 293209 at *2 (S.D. Fla. Jan. 28, 2021). Therefore, Plaintiff is incorrect to claim "he is entitled to offer evidence to support the claims" in light of the well-settled law on considering exhibits to complaints on a motion to dismiss. [ECF No. 30 at p. 3]. The exhibits detail Plaintiff's academic performance ***prior*** to the material Psychiatry Shelf Exam re-take which he previously failed.

Plaintiff's Response relies on *Datto v. Florida International University Bd. of Trustees*, No. 20-cv-20360-BLOOM, 2020 WL 3963713 (S.D. Fla. July 13, 2020), where the Honorable

Judge Bloom determined that the pleading was sufficient to overcome some arguments in the motion to dismiss. [ECF No. 30 at pp. 7, 13-14][1]. The *Datto* case does not apply since it involved an applicant for admission and not an actual student enrolled in the medical program. The case involved a denial of admission and not dismissal from FIU. It should further be noted that the plaintiff in *Datto* did not attach any exhibits to his initial complaint that demonstrated a pattern of poor performance that could have supported defendant's argument at the dismissal stage, unlike the instant case. Such an exhibit could not have existed as that plaintiff was a prospective student candidate for admission with no academic history at FIU. Nehme's Amended Complaint is different because it shows a medical student on academic probation for years prior to the material exam at issue.

FIU does not seek for this Court to resolve factual issues or to view the Amended Complaint and its exhibits in a light favorable only to Defendant as claimed by Plaintiff. [ECF No. 30 at pp. 3, 4]. Defendant is merely using the facts provided in the Exhibits in support of its argument and asking this Court to view them as true despite Plaintiff's contradictory allegations. Notably, FIU acknowledges that Plaintiff changed his description of a minimal distraction room from "one that has no windows and no outside noise or distractions to interfere with the student's focus and concentration" as previously provided in the initial Complaint [ECF No. 1 at ¶¶ 7, 12] to rooms that are "set up to create a quiet test-taking environment with limited auditory, visual, and movement interruptions from outside the rooms, and to allow control over lighting and noise levels" [ECF No. 12 at ¶ 9]; and recognizes the oversight, not "gross mischaracterization", in using the term "distraction-free" and "devoid of distraction" in its Motion to Dismiss Count II of

---

[1] The undersigned is familiar with the details of that litigation as counsel of record. Interestingly, Plaintiff Datto stipulated to a dismissal prior to the Court ruling on the merits of the pending Motion to Dismiss Second Amended Complaint. *Datto v. Florida International University Bd. of Trustees*, No. 20-cv-20360-BLOOM, ECF No. 84 and 103.

the Amended Complaint as pointed out by Plaintiff. [ECF No. 30 at p. 5]. Nonetheless, the definition and description of a minimal distraction room does affect the analysis because in light of the exhibits attached to the Amended Complaint which establish that Plaintiff was dismissed because of his history of poor academic performance throughout his nearly four (4) years at HWCOM[2], Plaintiff has not pled sufficient facts to withstand a Rule 12(b)(6) motion.

**II.     Plaintiff was not Otherwise Qualified Because He Could Not Meet the Academic Standards Requisite for Continued Participation in Medical School**

Plaintiff is attempting to portray that he was dismissed from the medical school based on the failure to provide a minimal distraction room for this **one** examination on March 3, 2020, but Exhibit A attached to Plaintiff's Amended Complaint [ECF No. 12 at ¶13; 12-1] affirmatively demonstrates Plaintiff is not an "otherwise qualified" individual. "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity in spite of his handicap." *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921, 927 (11th Cir. 2016); *Redding v. Nova Southeastern Univ., Inc.*, 165 F.Supp.3d 1274, 1290 (S.D. Fla. 2016); *see also Ellis v. Morehouse School of Medicine,* 925 F. Supp. 1529 (ND Ga. 1996).

Exhibit A (Memorandum dated April 16, 2020), states that Plaintiff was first placed on academic probation after the first MSEPC Hearing in July of 2017 for failing both Cardiovascular and Respiratory Systems (BMS 6633) and Genes, Molecules, and Cells (BMS 6001). [ECF No. 12-1 at p. 4]. After failing the remediation for Cardiovascular and Respiratory Systems, he was required to take the course again with the class of 2021 while remaining in the

---

[2] Notably, although Plaintiff was considered a period 3 medical student or a third year medical student at the time of his dismissal, he was allowed to repeat his second year of medical school joining the class of 2021; however, he was admitted as a member of the class of 2020. [ECF No. 12 at ¶ 10; ECF No. 12-1 at p. 4].

class of 2020. *Id.* After his second MSEPC Hearing in March of 2018, convened as a result of his failure of the Systems Based Practice course and a Professionalism Incident Report filed against him, it was determined that he was to "remain on academic probation." *Id.* It was also determined that Nehme would repeat his second year of medical school and join the class of 2021. *Id.* Importantly, the facts of Exhibit A indicate the Nehme was on academic probation at the time of the third MSEPC Hearing in April of 2020. [ECF No. 12-1 at p. 3].

Exhibit A further provides a list of approximately ten courses and shelf exams Plaintiff has performed poorly in beginning early 2017. [ECF No. 12-1 at pp. 3-4].

| Title | Score |
|---|---|
| Genes, Molecules, and Cells | **Failed** |
| Genes, Molecules, and Cells Remediation | **Passed** |
| Cardiovascular and Respiratory Systems | **Failed** |
| Cardiovascular and Respiratory Systems Remediation | **Failed** |
| System Based Practice | **Failed** |
| Family Medicine Shelf Exam | **Failed** |
| Surgery Shelf Exam | **Failed** |
| Neurology Shelf Exam | **Failed** |
| Obstetrics and Gynecology Shelf Exam | **Scored low** |
| Psychiatry Subject Shelf Exam | **Failed** |
| Psychiatry Subject Shelf Exam Remediation | **Failed** |
| Psychiatry Clerkship | **Failed** |

In *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921, 927 (11th Cir. 2016), the court concluded that the plaintiff was not "otherwise qualified" where his mental disability caused him to repeatedly fail to meet to meet the university's academic requirements from 2011 to 2014. Similarly, here, from 2017 to 2020, Plaintiff has failed at least two courses and numerous shelf examinations, has been placed on academic probation for at least three terms, and has been summoned to appear for an MSEPC hearing regarding his overall academic progress on three occasions. The attached exhibits conclusively demonstrate that Plaintiff is incapable of meeting the academic and technical standards required to participate FIU's medical

class of 2020. *Id.* After his second MSEPC Hearing in March of 2018, convened as a result of his failure of the Systems Based Practice course and a Professionalism Incident Report filed against him, it was determined that he was to "remain on academic probation." *Id.* It was also determined that Nehme would repeat his second year of medical school and join the class of 2021. *Id.* Importantly, the facts of Exhibit A indicate the Nehme was on academic probation at the time of the third MSEPC Hearing in April of 2020. [ECF No. 12-1 at p. 3].

Exhibit A further provides a list of approximately ten courses and shelf exams Plaintiff has performed poorly in beginning early 2017. [ECF No. 12-1 at pp. 3-4].

| Title | Score |
|---|---|
| Genes, Molecules, and Cells | **Failed** |
| Genes, Molecules, and Cells Remediation | **Passed** |
| Cardiovascular and Respiratory Systems | **Failed** |
| Cardiovascular and Respiratory Systems Remediation | **Failed** |
| System Based Practice | **Failed** |
| Family Medicine Shelf Exam | **Failed** |
| Surgery Shelf Exam | **Failed** |
| Neurology Shelf Exam | **Failed** |
| Obstetrics and Gynecology Shelf Exam | **Scored low** |
| Psychiatry Subject Shelf Exam | **Failed** |
| Psychiatry Subject Shelf Exam Remediation | **Failed** |
| Psychiatry Clerkship | **Failed** |

In *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921, 927 (11th Cir. 2016), the court concluded that the plaintiff was not "otherwise qualified" where his mental disability caused him to repeatedly fail to meet to meet the university's academic requirements from 2011 to 2014. Similarly, here, from 2017 to 2020, Plaintiff has failed at least two courses and numerous shelf examinations, has been placed on academic probation for at least three terms, and has been summoned to appear for an MSEPC hearing regarding his overall academic progress on three occasions. The attached exhibits conclusively demonstrate that Plaintiff is incapable of meeting the academic and technical standards required to participate FIU's medical

school program despite provision of reasonable accommodations. Accordingly, Plaintiff has not established that he is "otherwise qualified" and Count II should be dismissed. *See Zainulabeddin v. Univ. of South Florida Bd. of Trustees*, 749 Fed.Appx. 776, 781 (11th Cir. 2018) (affirming summary judgment in favor of university where student was ultimately dismissed from program for poor academic performance); *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. at 927 (affirming dismissal of plaintiff's amended complaint due to plaintiff's failure to state a claim for disability discrimination); *Redding,* 165 F.Supp.3d at 1290-93 (S.D. Fla. 2016) (finding student failed to meet program's essential requirements, and thus, was not an "otherwise qualified" individual entitled to bring ADA claims arising from her dismissal); *see also Ellis v. Morehouse School of Medicine,* 925 F. Supp. 1529 (N.D. Ga. 1996) (finding medical student was not an "otherwise qualified" individual because he could not meet the essential requirement as a medical student following dismissal in accordance with the university's policies after receiving a failing grade while on probation).

### III. Plaintiff was Dismissed from Medical School Because of his Overall Poor Academic Performance as Evidenced in Exhibits and not Because of His Disability

Although Plaintiff's Response makes conclusory allegations that he would not have been discharged but-for "defendant's knowing denial of an approved accommodation," the exhibits attached to the complaint plainly show that this is not the case.[3] [ECF No. 30 at p. 9]. Considering Exhibits A and B, it is clear that Nehme was dismissed from medical school as a result of his history of poor academic performance described above.

---

[3] In Plaintiff's Response, he states that the Defendant is suggesting that "Plaintiff's disability must be the 'sole cause', rather than just a 'but-for' cause, of his discriminatory discharge" under the ADA. [ECF No. 30 at p. 9]. Plaintiff adds that such position "has been squarely rejected by the Eleventh Circuit and other Florida district courts." Importantly, nowhere in FIU's motion does it argue, reference, or allude that Plaintiff is required to establish that he was dismissed from FIU *solely* by reason of disability as it is aware that this standard of causation is required under the Rehabilitation Act and not under the ADA.

Plaintiff has attributed his pattern of poor academic performance to personal health issues, familial issues, and other external factors. In his Amended Complaint, Plaintiff stated that "because of his poor health and an illness he was suffering from, which had been exacerbated by the stress in attending medical school, Plaintiff failed his Systems Based Practice course." [ECF No. 12 at ¶ 10]. Plaintiff also stated that "the day of his Surgery Clerkship Shelf Exam, he received a call that his dad was being rushed to the hospital and that call affected his performance." [ECF No. 12-1 at p. 3]. Plaintiff attributed his failure of Cardiovascular and Respiratory Systems and Genes, Molecules, and Cells to his own "health issues and family problems during his first year of medical school." [ECF No. 12-1 at p. 3] Thus, it cannot be said that Plaintiff was dismissed by reason of his disability because his pattern of poor academic performance is not attributed to his disability.

In addition, Plaintiff cannot demonstrate that he would have passed the remediation exam for the Psychiatry Subject Shelf Exam if FIU would have provided a "proper" minimal distraction room on the **one** instance alleged that FIU failed to provide the proper accommodations on a high-stakes shelf examination. Plaintiff's own admission of failure on the initial Psychiatry Subject Shelf Exam on February 17, 2020, and his admission that a fire in his neighbor's apartment on the morning of the remediation "stressed him out and affected his performance," negate Plaintiff's conclusory contention that he would pass the exam. [ECF No. 12 at ¶ 12; ECF No. 12-1 at p. 3].

Lastly, after an investigation of discrimination brought by Plaintiff and the IDEA (Office of Inclusion, Equity, and Access) found that Plaintiff's claim was substantiated, the University still determined that there was "no indication that his allegations had an adverse impact on his academic performance." [ECF No. 12-2 at p. 2]. Thus, the University determined that despite the

IDEA's conclusions, a lack of accommodation for **one** examination did not impact the decision that Nehme should be dismissed based on his pattern of poor academic performance. Accordingly, Plaintiff has not established that his dismissal was because of his disability as a result of the failure to provide an appropriate accommodation.

### IV. Despite Plaintiff's Contentions, Failure to Accommodate and Disparate Treatment Claims Differ in that Only the Latter requires Deliberate Indifference

In his Response, Plaintiff mistakenly contends that "[a]s the intentional discrimination and compensatory damages claims in both Counts rest on the same factual predicates of deliberate indifference, this Court should refrain from striking or dismissing Count II's intentional discrimination allegations to the extent such a decision would have a preemptive effect on Plaintiff's ability to prove the similar factual allegations the underpin Count I." [ECF No. 30 at p. 13 n.3]. However, a failure to provide reasonable accommodations is a "distinct, actionable theory of discrimination under the ADA," and it does not require animus or a showing of deliberate indifference. *Redding v. Nova Southeastern Univ., Inc.*, 165 F.Supp.3d 1274, 1294 (S.D. Fla. 2016); *Iaciofano v. School Board of Broward County, Florida*, 2017 WL 564368 at * 5 (S.D. Fla. Feb. 13, 2017). "An ADA discrimination claim can be based on either a conventional 'disparate treatment' theory, or a theory that the defendant failed to make 'reasonable accommodations,' or both. Disparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of her disability. By contrast, a failure to make a reasonable accommodations claim requires no animus and occurs when a covered entity breaches its affirmative duty to reasonably accommodate the known physical or mental limitation of an otherwise qualified person." *See Forbes v. St. Thomas University, Inc.*, 768 F.Supp.2d 1222, 1227 (S.D. Fla. 2010); *Iaciofano v. School Board of Broward County, Florida*, 2017 WL 564368 at * 5 (S.D. Fla. Feb. 13, 2017). Accordingly, this

Court's determination on deliberate indifference will not have any effect on Plaintiff's remaining failure to accommodate claim.

Plaintiff has not pled facts to support the existence of an FIU official who had actual knowledge of the alleged discrimination that allegedly had the authority to address it and failed to adequately respond as required to bring a claim against an entity for deliberate indifference under the ADA. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019); *Estate of Osorio v. Miami Dade County*, 717 Fed.Appx. 957, 958 (11th Cir. 2018). In support of his claims of deliberate indifference, Plaintiff states that "when he went to retake the Psychiatric Subject Shelf Exam, Defendant's administrators and management, who knew of Plaintiff's disability and his need for a minimal distraction room as an accommodation, knowingly assigned him to a room to take the Exam that had substantial, ongoing distractions". [ECF No. 30 at p. 12]. Moreover, Plaintiff claims that the proctor who oversaw him taking the Exam and who also knew of his disability and need for minimal distraction, "took no steps to address or remedy the obvious distractions and noise to which Plaintiff was being exposed, which resulted in Plaintiff losing his concentration and suffering increased anxiety and stress. *Id.* Plaintiff further argues that the Provost office's decision to uphold the MSEPC discharge recommendation despite having been made aware of Plaintiff's complaint of disability discrimination also demonstrates deliberate indifference. *Id.*

However, Plaintiff has not pled facts demonstrating that any of the administrators qualify as a high official to impose liability on FIU *when the alleged discriminatory action occurred* or that FIU failed to adequately respond when the Provost was not made aware of Plaintiff's

allegations until *after* the Dean affirmed his dismissal.[4] Fatal to Count II is that Plaintiff does not allege that at the time of the exam or immediately thereafter, he complained about the lack of accommodation, in other words, the noisy hallway. [ECF No. 12]. In fact, it is not until **after** three institutional acts occurred that Plaintiff lodges a complaint about a failure to accommodate on May 13, 2020 [ECF No. 12 at ¶16]. These acts include the MSEPC hearing on April 9, 2020; the MSEPC Memorandum with recommendations dated April 16, 2020; and the Dean's decision upholding the MSEPC recommendation dated May 8, 2020 [ECF No. 12 at ¶¶14-15]. Notably, the determination of FIU remained "undisturbed" in its final decision dated September 30, 2020, after the conclusion of the IDEA investigation. [ECF No. 12-2].[5] This supports that no one with the authority to take remedial action at the material time at FIU had actual knowledge. Therefore, Plaintiff cannot recover compensatory damages under the ADA. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1135-36 (11th Cir. 2019) (affirming dismissal in favor of entity where plaintiff failed to state a claim for compensatory damages because he had not alleged that any of defendant's "officials" acted with the required deliberate indifference); *Estate of Osorio v. Miami Dade County*, 717 Fed.Appx. 957, 958 (11th Cir. 2018) (affirming dismissal in favor of entity where complaint failed to specify a single official who allegedly had authority to address the alleged discrimination, much less knowledge of and deliberate indifference to the alleged discrimination).

---

[4] Plaintiff appealed the Dean's decision to uphold the MSEPC's recommendation on May 8, 2020. [ECF No. 12 at ¶ 15]. Plaintiff submitted his complaint of disability discrimination with Defendant's Office of Inclusion, Diversity, Equity & Access ("IDEA") on May 13, 2020. [ECF No. 12 at ¶ 16].

[5] Nowhere in the Amended Complaint does Plaintiff allege that he availed himself to the state court remedies available through the certiorari proceedings on the final agency action taken by FIU related to his dismissal. [ECF No. 12-2].

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant the Motion to Dismiss Count II of the Amended Complaint and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 25th day of March, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        MARRERO & WYDLER
        *Attorneys for Defendant FIU BOT*
        2600 Douglas Road, PH-4
        Coral Gables, FL 33134
        (305) 446-5528
        (305) 446-0995 (fax)

        BY   /s/ Lourdes Espino Wydler

            OSCAR E. MARRERO
            F.B.: 372714
            oem@marrerolegal.com
            LOURDES ESPINO WYDLER
            F.B.: 719811
            lew@marrerolegal.com

**SERVICE LIST**

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise, FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*