

Privileged and Confidential

May 8, 2020

Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418

**Defendant's Exhibit 7**

**Witness: ELIE NEHME 12-17-2021**

*<<Via E-Mail to enehm002@fiu.edu >>*

Dear Mr. Nehme:

I am writing to notify you regarding the determination of the Appeals Committee as agreed to by Dean Sackstein.

The Appeals Committee findings were as follows:

1. The Appeals Committee did not find that there was a material failure to provide Mr. Nehme's due process rights as set forth in the *HWCOM Medical Student Handbook*. Mr. Nehme received a hearing notice on April 1, 2020, which listed all MSEPC committee members including Dr. Helen Tempest. He was provided ample time to challenge Dr. Tempest's participation in the MSEPC hearing.

   The *HWCOM Medical Student Handbook* states "Students will be provided a minimum of 5 business days (excluding legal holidays) prior written notice of the MSEPC meeting with the student to consider a matter within its jurisdiction except in cases of emergency or unless waived by the student" (Page A-11). The emergency in this statement does not refer to an external emergency but rather refers to scheduling an emergency meeting. The Student Handbook does not specify that a meeting of the MSEPC needs to be in person.

2. According to the *HWCOM Medical Student Handbook*, the new information must have not been available at the time of the MSEPC hearing and therefore could not be presented. The student must show that the new information is likely to have substantially affected the outcome of the hearing (Page A-15). The Appeals Committee finds that there was no new information presented that was not available at the time of the meeting or that is likely to have substantially affected the outcome of the hearing.

3. In light of Mr. Nehme's overall academic and professional performance, the Appeals Committee finds that the severity of the sanction of providing him the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn is not excessive in light of the nature of the offense and the totality of the student's academic performance including indicia of professionalism.

The Appeals Committee recommendation was as follows:

1. The Appeals Committee recommends adopting the April 9, 2020 recommendations of the MSEPC that Mr. Nehme should be given the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn.

Dean Sackstein has reviewed the Appeals Committee recommendation regarding your appeal and has affirmed the Appeals Committee recommendation.

This letter serves as notification of the outcome of your appeal. You may appeal the determination to the Provost within five (5) business days of the issuance of the decision by the Dean in the event there was a material failure to provide due process rights as set forth in the *HWCOM Medical Student Handbook (see F. Appeals Process, pg. A-16)*.

Sincerely,

Karin Esposito, MD, PhD
Executive Associate Dean for Student Affairs

Enclosure: Appeals Committee Determination

Defendant's Exhibit 8

Witness:  ELIE NEHME 12-17-2021

## I. COMPLAINANT INFORMATION

(any individual who alleges that they experienced discriminatory actions)

| Name | Elie Nehme |
|---|---|
| Email | enehm002@fiu.edu |
| Mobile Phone | (561) 386-9508 |
| Employee/Panther ID | 3121165 |
| Gender | Male |
| Race/Ethnicity | Middle Eastern |
| Affiliation with FIU | - Student |

**To be completed if you are an Employee:**

## II. NATURE OF COMPLAINT

| Have you filed a federal complaint with the following agencies within the last two years? if so, check all that apply | - I have not filed a federal complaint with the above listed agencies within the last two years |
|---|---|
| Basis of Discrimination (check all that apply) | - Disability<br>- Retaliation |

## III. RESPONDENT INFORMATION

(any individual or group who is being accused of engaging in discriminatory actions)

| Name | Nancy Havas |
|---|---|
| Email | nhavas@fiu.edu |
| Phone | (305) 348-9167 |
| Division/Department | Student Affairs |
| Title | Associate Dean for Student Services |
| Date of Discriminatory Action | Feb 24, 2020 |

## IV. DETAILS OF COMPLAINT

**Please provide a detailed description of the incident/concern that is being reported. Be as specific as possible by including date(s), description of incident(s), name of person(s) involved, and name(s) of witness(es). If additional space is needed, it is encouraged to attach supplementary pages or materials that may aid IDEA in the investigative process.**

On February 24, 2020, Dean Havas directed me via phone voicemail at 10:28 am and email invitation at 12:31 pm to meet with her at 2 pm the same day. The voicemail does not indicate why she wanted to meet and neither does the email invitation, apart from the vague subject line "check-in meeting."

This occurred while I was on my pediatrics rotation in the midst of taking care of patients. Dean Havas was fully aware of where I was: In her voicemail to me, Dean Havas states that she had contacted my Pediatric Clerkship Directors regarding the check-in meeting. The required meeting caused me not to attend a mandatory lecture.

The mandatory check in meeting culminated with what I was informed was a "random" drug test. To my knowledge, I am the only one in my clerkship to participate in a random drug test. Dean Havas tells me that she scheduled me for a random" drug test at the FIU Student Health Clinic without my knowledge.

Dean Havas knew I was dealing with numerous stressors at that time, studying for a remediation Shelf Exam for

FIU_000720

Psychiatry Clerkship, and that I receive testing accommodations for my disability.

The reason for this random drug test was never stated or clarified.

She never disclosed to me her systematic assessment which she thought was deserving of me having to do this test. In addition, she stated that if I refuse to take the test, I can be kicked out. Being forced to take this drug test in turn forced me to disclose the medicine I take for my illnesses, information that I would have rather kept private. Instead of helping me as it is her duty being a part of the Student Services, Dean Havas distracted me from my clerkship and the time I was supposed to be focusing on my remediation exam, as well as accused me of being on drugs. I was coerced and forced to take the "random" drug test with fear of retaliation and threat of dismissal. This was harassment resulting in a hostile environment.

According to FIU's HWCOM student handbook "Drug testing may be ordered by the Executive Associate Dean of Student Affairs or MSEPC, as applicable."
The Executive Associate Dean of Student Affairs is Dr. Karin Esposito. Dr. Nancy Havas is the Associate Dean for Student Services, and she is not part of MSEPC.
Dr. Esposito's name was not mentioned once, and I do not believe she ordered or even knew about this "random" drug test.

It is also mentioned in the handbook: "Findings on any drug test are reviewed by the Executive Associate Dean of Student affairs and discussed with the student"

On March 4, 2020, Dean Havas left me a voicemail stating that the results of the drug test were back and they did not find anything they did not expect. As per student handbook, the Executive Associate Dean of Student Affairs is tasked with discussing results of drug tests with student which was not the protocol that Dean Havas followed.
To my knowledge I have not given authorization to discuss results over the phone due to other family members having access to the phone and the voicemail system. Thus, Dean Havas did not follow due process in regards to my results. Most importantly, I was not provided with a copy of my results.


There has been a recurrent pattern of behavior from Dean Havas which I believe is an abuse of power to target students with disabilities.
I was treated unfairly and inappropriately pulled out of the hospital in the middle of taking care of patients in my Pediatric clerkship.

I feel humiliated and embarrassed in front of my peers and faculty. This student mistreatment has caused the adverse event of failing my Psychiatry Shelf Exam remediation and subsequently being called in front of MSEPC, who recommended an adverse dismissal. My disability has not limited my ability to perform but has made me a target for Dean Havas' student mistreatment.

**What are you seeking as a resolution to this complaint?**
A resolution to this complaint is to be treated with equality in order to graduate medical school with my class.

I affirm that, to the best of my knowledge, the information contained in this form is true and accurate. I understand that the filing of a complaint with IDEA does not extend the time for filing a complaint with an outside agency, or in a court of law.

**Date filed**                                    May 18, 2020



May 15, 2020

Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418
enehm002@fiu.edu

Dr. Elizabeth M. Bejar
Academic and Student Affairs
Florida International University
11200 SW 8th Street
PC 526
Miami, FL 33199

### Appeal of the Determination of the Appeals Committee to the Provost

Dear Dr. Bejar:

As you know, I am appealing the decision of the Appeals Committee which upheld the decision to dismiss me from the FIU Herbert Wertheim College of Medicine (HWCM). On May 13, you indicated that my appeal would still be due by the 15th and also that I could send my appeal to your attention.

On April 9, I attended a hearing before HWCM's Medical Student Evaluation and Promotion Committee (MSEPC). The stated reason in the notice was to "evaluate your [my] overall academic progress." The Committee members were noted as the following:

Eneida Roldan, MD – Chair
Gagani Athauda, MD
Daniel Castellanos, MD
Amalia Landa Galindez, MD
Darren Kaufman, MD
Jorge Camilo Mora, MD
Gregory Schneider, MD
Sarah Stumbar, MD
Helen Tempest, PhD
Rebecca Martinez, MD
Dorothy Contiguglia-Akcan, MD

On April 16, I received the Committee's recommendation that I should be given the opportunity to voluntarily withdraw from medical school and that if I did not, I would be involuntarily withdrawn. I would not be eligible to reapply for admission to HWCOM.

On April 27, I filed an appeal with the Appeals Committee. I argued: failure to provide me due process rights as set forth in this *HWCOM Medical Student Handbook* that affected the outcome

1

of the hearing; new information, which was not available at the time of the hearing and therefore could not be presented; and, that the severity of the sanction was excessive in light of the totality of my overall performance. On May 8, I received the Appeals Committee's and Dean's decision, which upheld the dismissal. Therefore, I am now filing this appeal. There are no additional documents that I will be filing other than what is included with this appeal.

### *Some Information and Background about Me*

Before I outline my appeal arguments, I wanted to provide you and the Provost with some relevant information about my background, my academic achievements, and my passion and commitment to science and medicine. As a proud student at the FIU Herbert Wertheim College of Medicine, I, like the rest of my peers, passed through the rigorous selection and entry requirements of our school and my admission to FIU's College of Medicine is no mistake.

My passion for medicine began early. Living in Antelias, Lebanon acquainted me with the precariousness of life, and it is an understatement to claim that access to healthcare and emergency responders was inadequate. I vividly recall an event from when I was 14 years old: embracing my 7-month-old brother and recognizing the fragility of an infant's life, as a bomb detonated, generating a glass-shattering explosion that shook our apartment violently. A Lebanese official and his convoy were passing through Antelias, and terrorists had targeted his convoy, placing an explosive under his car. Fearful of a second explosion, I held my brother tightly, and with my parents ran to a windowless room. When I thought my family was safe, I left their side to view the aftermath, where I was confronted with tortured wails, charred bodies, and limbless neighbors. I wept uncontrollably. I was trapped between wanting to help those injured, and not knowing how to actually do so. Second to my family's well-being, all I could think of were the injured victims and the urgent care they needed. That day's anguish and the feeling of hopelessness left an long mark on my memory, as for most of them, help came too late. However, rather than debilitating me, this mark sowed the seeds of my aspirations to become a doctor, an individual whose primary commitment is to be ready and able to heal others. My traumatic experiences in Lebanon initiated my interest in a career in medicine.

My undergraduate career was both highly successful and consistently dedicated towards medicine. When I became aware there was no pre-med club on campus, a group of students and I to develop a pre-medical organization that we called Future Healthcare Providers of America (F.H.P.A.), of which I became co-founder and Vice President. I joined in my schools' honor society Phi Theta Kappa (PTK), which was exceptionally salient to my intellectual pursuits, community service, and self-improvement. My participation did not go unnoticed. I received an Outstanding Member Award and received two scholarships. One in which, unbeknownst to me, officers and members raised money for a scholarship that was presented to me during a ceremony where outstanding graduating students were recognized. Later, because of my service and performance, I received a two-year scholarship in the amount of $16,000 per year to continue my undergraduate studies at the University of Miami. At the age of 17, I completed my last semester at Palm Beach State College (PBSC), where I received my Associate in Arts degree with Presidential Distinction and an Honors Diploma with a grade point average of 3.98.

PLAINTIFF'S BATES-STAMPED DOCUMENT NOS. 0916 THROUGH 0996

As an undergraduate at the University of Miami, I spent my extra time as a research assistant in the laboratory of Dr. Pochi. After earning my Bachelor's degree from the University of Miami, life events forced me to take a step back from attempting to attend medical school. Rather than sit idly by, I obtained my EMT certification. Later, I became a Research Assistant (RA) at Cardiology Partners Clinical Research Institute (CPCRI). Within two months, I was promoted to Clinical Research Coordinator (CRC). At CPCRI, I became the lead coordinator of two clinical trials, Odyssey Outcomes and Amgen Fourier. Both trials investigate the effects of PCSK9 inhibitor (an antibody) on patients with elevated risk of cardiovascular disease.

I am proud both of my academic and extracurricular record, and I am similarly proud of my what I have learned and accomplishes at FIU's Herbert Wertheim College of Medicine. Like all my peers, I have consistently met the academic and performance criteria set by our institution, in order to proceed through medical school.

Throughout my performance through Periods 1 and 2, all of my course evaluations indicated that I met, exceeded, or was even exemplary of student expectations at the FIU College of Medicine. Similarly, throughout Period 3, I have passed numerous residence clerkships and examinations, of which the *overwhelming majority* are very positive. Consistently highlighted are my professionalism, enthusiasm, and the extent of my knowledge for a student in his third year. These comments are directly at odds with the decision of the committee.

This information is relevant, because despite my many academic accomplishments, consistent professionalism, and multiple glowing reviews, the Student Committee has seen deemed me unfit to continue my life's work of becoming a doctor. As I find my entire academic record under the microscope, with every blemish stripped of its context, and compiled into a hypothesized pattern of poor performance. I find all my significant academic accomplishments, praise and evaluations are glossed over. In highlighting them I intend to demonstrate that this extreme decision is unwarranted, unnecessary, and unjust.

*My Arguments on Appeal*

A student can appeal the decision of the Appeals Committee if there was a material failure to provide the student his or her due process rights as set forth in this *HWCOM Medical Student Handbook* that affected the outcome of the hearing. The following are my arguments in support of my appeal.

1. **Dr. Tempest Should Not Have Served as the MSEPC Chair, nor Was I Provided Advanced Notice of Such.**

When I was sent the notice of hearing, Dr. Eneida Roldan was listed as the chair. However, once the meeting started, Dr. Tempest indicated that she had been appointed as acting Chair. At no time before the hearing, including during a meeting with Dean Jones and Dean Havas, was I ever informed of this change. I did not object to Dr. Tempest serving as chair during the hearing because I felt that I could not out of fear of retaliation. Because I was unable to make such a request in a private setting, I believed it would have come off as confrontational. Further, Dr. Tempest had the authority to refuse my request, which would have created an extremely uncomfortable environment.

3

Respectfully, Dr. Tempest should not have been the one selected as Chair since Dr. Tempest was one of the doctors who previously filed a professionalism incident report against me, which led to a prior MSEPC meeting. Those professionalism issues were then discussed and considered as per the memorandum that accompanied the MSEPC's April recommendation.

Page A-12 of the Handbook states that a challenge to a member's participation must be made in writing, addressed to the Chair of the MSEPC at least 3 business days prior to the scheduled hearing unless the objection is to an ad hoc appointment to the MSEPC in which event it will be the earlier of within 24 hours of the appointment or at the MSEPC hearing. I believe this indicates that I should have been informed of this change at least 24 hours before the hearing. The Handbook further states that "the Chair of the MSEPC will determine whether to grant such challenges at his or her discretion, and such a decision is final." I believe that there is something inherently unfair and contradictory in believing that the Chair of the MSEPC would remove him or herself from the committee.

I believe that Dr. Tempest serving as Chair, and the failure to notify me of this change, was a material failure to provide me my due process rights as set forth in this *HWCOM Medical Student Handbook* that affected the outcome of the hearing.

### 2.   I Was Not Provided A Legitimate Preparatory Meeting.

On April 2, I received an invitation to attend a preparatory meeting to take place on April 8, 2020. This meeting is afforded to every student who appears before the MSEPC. When I arrived for the meeting Dean Jones and Dean Havas were present. Despite asking for advice and specific assistance with how I should address certain points and issues, I was not provided any guidance. Nearly every question I asked was met with the response, "you are your own man, you know what is best." Dean Havas kept on repeating approximately three times, "be ready, you never know, they might dismiss you from the school."

In addition, Dean Jones asked me to text him with my number so that he could keep me updated and text me regarding the start time and invitation for the meeting, as well as if there was any change or problem surrounding the meeting. However, as mentioned in *Argument 1*, I was never informed about the change of the hearing Chair.

Because every student under these circumstances are provided this meeting, the University has adopted such as something that is to be provided uniformly to all students. I believe that the failure to provide me any meaningful preparation was a material failure to provide me my due process rights that affected the outcome of the hearing.

### 3.   Issue of Alleged Unprofessional Conduct Are Inaccurate and Negatively Impacted the MSEPC's Decision.

The information included in the Professionalism Advocacy Reporting System (PARS) regarding alleged unprofessional conduct is inaccurate. These alleged instances were taken into

4

consideration when the MSEPC evaluated my overall academic progress and decided to dismiss me.

In December of 2017, a Professionalism Incident Report (PIR) was submitted by Dr. Obeso. I never had any one-on-one interaction with Dr. Obeso and to this day, I have never met her. Nor did I ever meet with anyone about discussing the claims of unprofessional behavior prior to being sent to the MSEPC. Dr. Obeso reported that I had multiple unexcused absences across several courses, as well as professionalism issues reported by Dr. Tempest, including a quiz in Reproductive Systems. These incidents were discussed in Dr. Tempest's recent April 16 memorandum regarding my history and one must assume that it was taken into consideration regarding the decision to dismiss me.

In the PIR that was attached to the April 16 memorandum, one of the claims of unexcused absences was missing the final exam on December 11, 2017. However, I had been granted an excused absence for that date. I am including documentation of such as ***Exhibit 1***.

Dr. Tempest also noted in a letter she wrote to Dr. Toonkel, that on December 6, 2017, I came into class late and simply sat down on the floor, refused to join a group, and then insinuated that I was late after a morning break. However, I sat on the floor due to a constant lack of chairs in the classroom and was not the only student that day to do so. Further, when asked to join a group, I most certainly did. I have included with this appeal a letter from Dr. Estevao Santos. Dr. Santos was a fellow student at the time and was present in class that day. In his letter he confirms that what Dr. Tempest noted in her report was not accurate. A copy of Dr. Santos' letter is included as **Exhibit 2**. Lastly, the 11:00 to 11:10 break mentioned was a scheduled break for the entire class, not just me.

It is obvious that these incidents were taken into consideration by the most recent MSEPC since they are discussed in the April memorandum. Because they are inaccurate, they did not provide the MSEPC with a true and correct appraisal of what occurred. I believe that a core tenant of a student's due process rights is the right to be evaluated with accurate information. The failure to include an accurate accounting of what occurred regarding alleged professionalism issues was a material failure to provide me my due process rights that affected the outcome of the hearing.

4. **I Was Denied Due Process Regarding the Professionalism Incident Reporting Process.**

As noted under the previous argument, I had a PIR filed against me by Drs. Obeso, Tempest, and Toonkel. However, I do not believe that the process as outlined in the Handbook regarding PIR's was followed correctly, which in turn negatively impacted my most recent MSEPC hearing.

Page A-3 of the Handbook outlines the procedures for when PIR's are filed. Part C. states:

> Initial Determination of Disposition. Professionalism Incident Reports will be reviewed and evaluated by the Executive Associate Deans for Student Affairs and Academic Affairs. The Executive Associate Deans for Student Affairs and Academic Affairs may investigate the facts surrounding the alleged incidents to make a determination regarding whether the matter could constitute a breach of

5

Professionalism Standards and therefore evaluation by the Office of Academic Affairs in accordance with this policy. The following steps *will* be taken to evaluate the allegations in the PIR.

The procedures go on to state that if the allegations are sufficient to constitute a potential violation of Professionalism Standards, the allegations will be provided to the student through the PARS system. It then states that "PIRs will be considered in accordance with the process outlined in this HWCOM Medical Student Handbook." The process outlined then includes:

- First/Second Violation. The Executive Associate Deans for Academic Affairs and Student Affairs will determine whether *prior* PIRs have been filed against the charged student *and resulted in two Consent Agreements*. If the Executive Associate Deans for Academic Affairs and Student Affairs so conclude, the complaint will be referred directly to the MSEPC for evaluation and resolution.

- Student Affairs Referral/Consent Agreement. If the Executive Associate Deans for Student Affairs and Academic Affairs determine that the student has fewer than two Consent Agreements and the alleged violation of Professional Standards is not deemed to be egregious by the Executive Associate Dean for Academic Affairs and the Executive Associate Dean for Student Affairs, the matter may be resolved as part of a Consent Agreement. A student must agree to all terms of a Consent Agreement; in the event that the student does not agree, the matter will be referred to the MSEPC.

In my case, I have no recollection of ever meeting with or hearing from the Executive Associate Deans for Student Affairs and Academic Affairs, and I certainly never received anything indicting that my alleged behaviors were "egregious." I also never had any prior PIR's, so there were never any previous Consent Agreements.

However, I was sent directly to the MSEPC on March 8, 2018. That prior incident was then discussed in the most recent April MSEPC memorandum. Those previous claims of professionalism issues are simply not in line with what I have consistently been told. As will be discussed below, I received a commendation letter for professionalism by Dr. Heidi von Harscher. Further, my evaluations for Periods 1, 2, and 3 demonstrate repeatedly that I exhibit professional behavior and that I have been praised by practicing doctors who think I will be an excellent physician. I am including my evaluations for Periods 1, 2, and 3 as **Exhibit 3**.

I believe that the failure to follow the correct PIR procedures was a material failure to provide me my due process rights. This in turn affected the outcome of my hearing in that the previously PIR was taken into consideration by the MSEPC. Had the correct process regarding PIR's been originally followed, those issues should have been resolved before ever making it to a MSEPC meeting.

5.  **My Prior Professionalism Commendation Was Never Noted by Any MSEPC.**

In 2018, Dr. Heidi von Harscher, wrote me a commendation for professionalism. Dr. von Harscher now serves in the role of the Ombudsman, so she did not have access to the original

6

commendation. However, she was kind enough to provide me a letter. In Dr. von Harscher's letter she wrote:

> I am writing this letter to acknowledge that I wrote a professionalism commendation for Mr. Elie Nehme, an M3 medical student going into his M4 year. This commendation was submitted directly through the HWCOM PARS system. It was written and submitted on July 27, 2018. I received an acknowledgement of the submission.
>
> The student recently requested a copy of this commendation but I no longer have access to the PARS system due to my changing roles within the College. I recollect that it involved his observed professional and selfless behavior, but do not recall all the details.

On May 14, I did confirm with the registrar that they had Dr. von Harscher's commendation. I am including as **Exhibit 4** both Dr. von Harscher's letter and an email confirmation from the registrar.

The Handbook states that commendations may be noted in the Medical Student Performance Evaluation (MSPE). Despite the existence of this document, the MSEPC never made note or reference to such. I believe that the failure to note the existence of this important document was a material failure to provide me my due process rights. This in turn affected the outcome of my hearing in that the MSEPC failed to evaluate my complete record, especially regarding issues of professionalism.

6. **The MSEPC Treated Me Differently than Other Students in that the MSEPC Characterized a "Pattern of Poor Performance" for Taking Two Shelf Exams for Some Courses, something that Medical Students are Permitted to Do.**

In Dr. Tempest's April 16 memorandum, she noted that the MSEPC commented that I showed a "pattern of poor performance" in my Clerkship shelf exams and that I "had to take the Family Medicine, Surgery, and Neurology shelf exam twice" and that I scored low on the Obstetrics and Gynecology shelf exam. The comment about the OBGYN was made despite the fact that I passed the shelf exam on the first attempt and that except for psychiatry, I had passed all the other noted shelf exams on the permitted second attempt.

My understanding is that medical students are always given the opportunity to retake a shelf exam within two weeks if the first attempt is unsuccessful. For example, in the psychiatry syllabus it states, "Students who fail to score equal to or higher than the fifth percentile are required to repeat the examination **within 2 weeks of receiving the results.**" Despite medical students being given this standard opportunity to retake the exam, the MSEPC seems to have incongruously believed that in my case, this showed a "pattern of poor performance." It also commented that I "scored low" on the OBGYN shelf exam, despite me passing it. This is akin to saying that a student is a poor student if he or she maintains the minimum required GPA. Respectfully, if the school believes that retaking exams that students are permitted to retake or

7

passing an exam at the threshold level is not sufficient, then it should increase such standards. However, until then, I fail to see why I was singled out for something that other students are permitted to do per policy.

I believe that the MSEPC taking into consideration the above was improper and a material failure to provide me my due process rights and held me to an unfair and unequal standard as compared to other students. This in turn affected the outcome of my hearing.

### 7. I Did Not Receive My Normal Accommodations for the Psychiatry Remediation Exam.

As a student with registered disabilities with the University, I am to receive certain accommodations, including a quiet place to take my examinations. However, for the Psychiatry remediation exam I did not receive my usual accommodation.

Exams with accommodations are normally taken in building AHC1, Conference Room 335. This is a quite conference room within the administrative offices. However, on the day of the remediation exam, I had to take it in building AHC 2, Conference Room 495. This room is in a busy location/hallway. I am including as **Exhibit 5** documents indicating what my normal accommodations are, vs. the accommodation I received the day of the psychiatry remediation.

The foot traffic was constant, people were loud, and faculty offices and clinical skills rooms are located there as well. I recall vividly that I kept losing focus due to people speaking loudly and the amount of noise.

I believe that the failure to provide me my normal accommodation was improper and a material failure to provide me my due process rights. This in turn affected the outcome of my hearing, since the main reason why I was brought before the MSEPC in April was because of the failure of the psychiatry remediation.

### Conclusion

For all of the above reasons, I am respectfully asking that the decision of the MSEPC to withdraw me from medical school be overturned and that I be permitted to remain a student.

Sincerely,

Elie Nehme

PLAINTIFF'S BATES-STAMPED DOCUMENT NOS. 0922 THROUGH 0996

**FIU | Office of the Provost**
FLORIDA INTERNATIONAL UNIVERSITY

Defendant's Exhibit 10

Witness: ELIE NEHME 12-17-2021

September 30, 2020

Mr. Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418-8178
*Via USPS Certified Mail AND email to* enehm002@med.fiu.edu *(due to COVID-19)*

**RE: Elie Nehme – Appeal**

Dear Mr. Nehme,

This is in response to the appeal you filed with this office by email dated May 15, 2020 and subsequently additional information you submitted on June 4, 2020. You have appealed the recommendation for dismissal which was affirmed by the Dean of the Herbert Wertheim College of Medicine (HWCOM) on May 8, 2020.

As the Provost's designee in this matter, I reviewed your request for an appeal. This review is conducted in accordance with the procedures outlined in the HWCOM Student Handbook. Pursuant to the HWCOM Student Handbook, the basis for appeals are material failure to provide due process, new information not available at the time of the hearings, or severity of the sanction is clearly excessive in light of the offense or academic performance.

I withheld my decision on your appeal until a report was issued by the Office of Inclusion, Diversity, Equity & Access (IDEA) regarding your claims of harassment and differential treatment based on disability in your appeal. As communicated previously to you in June 2020, your appeal was provided to IDEA for review and consideration on those elements. On September 14, 2020 you received an amended copy of IDEA's report. Based upon a subsequent independent review by IDEA, there is no indication that your allegations had an adverse impact on your academic performance. Thus, your dismissal from the HWCOM was the result of your academic performance. The remaining bases for your appeal are without merit. Therefore, the determination of the College remains undisturbed.

This notice constitutes final agency action for Florida International University in accordance with the HWCOM Student Handbook and that no further action will be taken by the University on this matter. You may seek judicial review of this final University decision pursuant to Florida Rule of Appellate Procedure 9.190(b)(3), applicable to review of quasi-judicial decisions of an administrative body not subject to the Administrative Procedure Act, by filing a petition for certiorari review with the appropriate circuit court within thirty (30) days of this final University decision. If you seek review with the court, you must also provide a copy of the petition to: Clerk of the University, Florida International University, Modesto A. Maidique Campus, PC 511, Miami, FL 33199.

Sincerely,

*[signature]*

Elizabeth Bejar, PhD
Senior Vice President for Academic and Student Affairs

C: S. McWhorter, Director, IDEA
   E. Roldan, Associate Dean, Herbert Wertheim College of Medicine
   R. Sackstein, Dean, Herbert Wertheim College of Medicine