UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,

    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.

_____/

## AFFIDAVIT OF VIVIAN T. OBESO

STATE OF FLORIDA
                          )ss
COUNTY OF DADE

    BEFORE ME, the undersigned authority, personally appeared Vivian T. Obeso, who after being first duly sworn, deposes and says:

    1.    This affidavit is based upon my personal knowledge. I am at least eighteen (18) years of age and otherwise sui juris.

    2.    I am currently the Associate Dean for Curriculum and Medical Education for Florida International University's ("FIU") Herbert Wertheim College of Medicine ("COM"), I oversee the Office of Medical Education which encompasses the 4-year medical education program I have served FIU in this capacity since 2018. I am also a former member of FIU's Medical Student Evaluation and Promotion Committee ("MSEPC"). Prior to 2018, I served as the Assistant Dean for Curriculum and Medical Education, Co-Director of the Clinical Medical Courses and Medical Director of the Albert and Debbie Tano Simulation Center. . In that role I

was primarily overseeing the development and implementation of the Clinical Skills training and assessment program for Periods 1 and 2. I was hired by FIU in 2008 as a part-time consultant and was hired full time in 2011. Prior to that I was employed in a similar capacity at the University of Miami Miller School of Medicine. I completed my M.D. degree at the University of Miami Miller School of Medicine in 2000.

3. In my position as Associate Dean for Curriculum and Medical Education and as a former member of the MSEPC, I have personal, first-hand knowledge of information regarding FIU COM students and was aware of Mr. Nehme's academic struggles. Additionally, I have reviewed all of Mr. Nehme's academic records and other students' records, as well as FIU COM's policies and business records, including electronically stored information, relevant to this matter. All such records reviewed and referenced herein were made at or near the time of event, by or from information transmitted by a person with first-hand knowledge,and kept in the ordinary course of a regularly conducted business activity; it is FIU COM's regular practice to make and keep such records.

4. COM has published and maintained a Medical Student Handbook ("The Handbook"). The guidelines contained in the Handbook and other student policies are applicable to all students during the course of their medical school education and all students are responsible for knowing the policies and procedures. Mr. Nehme signed the Medical Student Handbook Consent Agreement like all entering medical students. A copy of the Consent Agreement is attached hereto as "Exhibit 1". The Handbook is subject to periodic amendment and the new revised Handbook is issued to all students and supersedes previous versions. There are five

versions of the Handbook throughout the course of Mr. Nehme's medical school education dated July 29, 2015; June 26, 2017; February 5, 2018; October 12, 2018; and July 24, 2020.[1]

5. The curriculum at COM's four-year program is divided into four (4) successive periods of study: First Year/Period 1 ("P1") focused on the foundations of medicine in core basic sciences, a high degree of competency of which is required to comprehend the curriculum of subsequent periods, and ethics; Second Year/Period 2 ("P2") is organized around in-depth study of human biology, disease, illness and injury in an organ systems-based pathophysiology; Third Year/Period 3 ("P3") involves a rotation of core clinical clerkships in various areas of study designed to develop students' skills in managing patient care; and Fourth Year/Period 4 ("P4") focuses on the study of advanced medicine in specialty areas that best serve the students' long-term career goals.

6. Mr. Nehme matriculated at FIU COM on August 1, 2016. On October 3, 2016, during Period 1, Mr. Nehme failed BMS 6001 Genes, Molecules, and Cells, a basic medical science course introducing the fundamental concepts of biology, when he earned only 73 total points for the course. Pursuant to the Handbook, course grades are determined and assigned on a numeric or pass/fail basis for each course, clerkship, and rotation. The numeric grading scheme uses a 0-100–point scale. In this scale, 75 is the minimum passing grade; grades of 75–79, while passing, indicate marginal competency; a grade of 80 is the minimum grade that designates competency. Excerpts from the Medical Student Handbook relating to course grades are attached hereto as "Exhibit 2" at p. 21.

---

[1] The attached Excerpts of the Handbook are all extracted from the October 2018 version as this was the version in effect at the time of Mr. Nehme's dismissal from COM.

7. Students who fail a course in Periods 1 or 2 due to unsatisfactory academic performance may be offered the opportunity to demonstrate competency with satisfactory performance on a remediation assessment, usually a comprehensive exam. Accordingly, Mr. Nehme was provided the opportunity to remediate the course. Although Mr. Nehme successfully completed the remediation, this attempt at remediation was still counted as an initial failure and a subsequent repeat of the course which is why he was given a "U/75" in the course indicating a successful remediation of a course initially below 75 pursuant to the Handbook. Excerpts from the Medical Student Handbook relating to remediation are attached hereto as "Exhibit 2" at p. 22.

8. Additionally, Mr. Nehme received a score of 79 in three (3) other courses during Period 1, specifically BMS 6500 Integrated Functions of the Human Body, BMS 6400 Pharmacology, and BMS 6603 Pathology and Infectious Disease; thus showing only "marginal competency" in over one-third of the core basic science courses, indicating a significant lack of knowledge in basic sciences. Nonetheless, Mr. Nehme was promoted to Period 2 by the MSEPC. A copy of Nehme's academic transcript is attached hereto as "Exhibit 3."

9. FIU has nine (9) domains of competency. Thus, overall competency is not determined based solely on course grades or GPA. The MSEPC consists of 12 voting members. The purpose of the MSEPC is to ensure that each student who graduates from FIU's medical school program possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor, to evaluate academic performance in the required curriculum, to assess promotion to the next academic period, and to recommend appropriate intervention in the event of unacceptable academic performance. At the end of each academic period, the MSEPC evaluates the academic and professional progress of each student and recommends whether the student should be promoted to the next academic period or graduate, as applicable. This function mandates

that the MSEPC consider each student's aggregate performance and consider all information available regarding both the student's academic performance and fitness to become a physician, including, without limitation, professional behavior. In addition, the MSEPC may evaluate a student's performance at any time based upon poor academic performance and/or alleged unprofessional behavior. Excerpts from the Medical Student Handbook relating to MSEPC are attached hereto as "Exhibit 4" at p. A-9.

10. Nehme's poor academic performance continued in Period 2. On May 24, 2017, early on during his first attempt of Period 2, he failed BMS 6633 Cardiovascular and Respiratory Systems, a basic medical science course introducing foundational concepts of cardiac and pulmonary medicine, when he earned a total score of only 73 for the course. To remediate the failed course, he was permitted to retake the CardioPulm Exam, but he needed a minimum of 75% to pass and scored only 62%. Failure of a remediation assessment or plan is considered equivalent to a second failure of that course. He also received a Remediation Plan by the course director for Cardiovascular and Respiratory Systems after he failed the course. A copy of the Remediation Plan is attached hereto as "Exhibit 5." Thus, this failed remediation constituted Mr. Nehme's second failure of this course and his third course failure overall. All students with failed remediations will be referred to the MSEPC for evaluation of academic progress pursuant to the Handbook. As such, an MSEPC review was triggered and Mr. Nehme was called before the MSEPC on July 17, 2017, in accordance with the MSEPC hearing procedures set forth in the Handbook.

11. Mr. Nehme advised the MSEPC that he was verbally informed that he could benefit from being granted additional time to take exams. The MSEPC placed him on academic probation but allowed him to continue with the class of 2020. As stated in the Handbook, failure of two or

more courses, including remediations, can result in a recommendation for probation. The MSEPC informed him that he would remain on probation through the end of the academic period in which he was placed on probation and through the following academic period in accordance with Handbook. As he was placed on probation during Period 2, Mr. Nehme was expected to remain on probation through Period 3. He was also notified that any further course failure or continued poor academic performance would trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic period or dismissal from the medical school. Academic probation is considered an Adverse Recommendation by the MSEPC and may be appealed. Mr. Nehme was advised of his right to appeal the MSEPC determination as provided in the appeals process section of the Handbook, but he did not exercise this right. The MSEPC Recommendation for hearing dated July 17, 2017 is attached hereto as "Exhibit 6" and Excerpts from the Medical Student Handbook relating to academic probation are attached hereto as "Exhibit 2" at p. 23-24.[2]

12.    On December 15, 2017, still during his first attempt at Period 2, a Professional Incident Report ("PIR") was filed against Mr. Nehme. At the mid-December Period 2 review session, Dr. Rebecca Toonkel, Dr. Ebony Whisenant, and Dr. Helen Tempest each made a separate complaint against Mr. Nehme regarding concern for multiple unexcused absences across courses, multiple requests to delay exams across courses, and a professionalism issue regarding a quiz in one course. In my role as Associate Dean of Curriculum and Medical Education, I compiled the various complaints and filed one PIR on their behalf. The PIR is attached hereto as "Exhibit 7."

13.    Later during his first attempt at Period 2, he failed BMS 6067 Systems Based Practice, a basic medical course providing students with fundamental understanding of United

---

[2] The academic section in the 10/18 version has minor differences from the previous versions which would have been in effective at the time Mr. Nehme was first placed on academic probation.

States healthcare systems and policies, on January 6, 2018. Students who have failed prior courses and/or remediation assessments, or whose overall academic performance is poor, may require review by the MSEPC before being given permission to take remediation assessments. However, shortly thereafter, he was granted a voluntary medical leave of absence ("LOA") beginning January 18, 2018 through April 2018. Per the Handbook, a student may request a medical LOA when he or she has a medical condition that prevents him or her from meeting curriculum requirements, but he or she is encouraged to consult with the Associate Dean for Student Affairs and/or the FIU COM Registrar to review the process and provide awareness of the significant impact a voluntary LOA may have on academic progress. Throughout his time at COM, Mr. Nehme had nine (9) unexcused absences, eight of them during his second year of medical school, and thirty-five (35) excused absence requests which were all approved. A copy of Mr. Nehme's attendance records is attached hereto as "Exhibit 8".

14.     On March 8, 2018, after waiving his right to delay the MSEPC hearing until after he returned from his LOA, Mr. Nehme was called before the MSEPC for a second hearing, , to discuss the failure of the Systems Based Practice course and the PIR filed against him. Mr. Nehme indicated that he was experiencing medical problems which interfered with his ability to attend classes. However, due to the LOA, he was feeling much better and ready to return to medical school at the end of his LOA. The MSEPC determined that despite serious concern with his academic performance, Mr. Nehme would be permitted to repeat Period 2, joining the class of 2021, in order to improve his fund of knowledge but would remain on academic probation consistent with the Handbook. He was once again notified that any further course failure or continued poor academic performance would trigger review by the MSEPC with the possibility of adverse recommendations, including dismissal from the medical school. Also, he was advised of

his right to appeal the MSEPC determination as provided in the appeals process section of the Handbook, but Mr. Nehme again did not exercise this right. The MSEPC Recommendation for hearing dated March 8, 2018 is attached hereto as "Exhibit 9."

15. In addition, Mr. Nehme scored below 80, showing only "marginal competency," in three (3) other courses during his first attempt at Period 2, specifically BMS 6631 Hematopoietic and Lymph Systems, BMS 6632 Endocrine System, and BMS 6635 Musculoskeletal Systems. *See* Exhibit 3.

16. During his second attempt at Period 2, he scored below 80 in two (2) courses: BMS 6632 Endocrine System and BMS 6636 Nervous System and Behavior I. Despite Mr. Nehme passing all courses during Period 2 after joining the class of 2021 with mostly "competent" scores according to the Handbook, several were relatively low scores considering this was Mr. Nehme's second attempt at most of these courses. Even so, Mr. Nehme was promoted to Period 3 but remained on academic probation.

17. A score equivalent to the fifth percentile is required to pass the shelf exams in the Period 3 clerkships. According to the Handbook, scores in the 5-10 percentile range indicate poor shelf exam performance. During Period 3, Mr. Nehme failed a total of five (5) subject shelf exams; scoring in the 3rd percentile on his first attempt of the Family Medicine shelf exam, scoring in the 4th percentile on his first attempt of the Surgery shelf exam, scoring in the 2nd percentile on his first attempt of the Neurology shelf exam, scoring in the 2nd percentile on his first attempt at the Psychiatry shelf exam, and a scoring in the 2nd percentile on the Psychiatry shelf exam retake. It should be noted that Mr. Nehme began the Psychiatry shelf exam retake at 8:28 am and ended the exam at 12:43 pm despite having extra time to complete the exam. In addition, he scored extremely low on the OB/GYN shelf exam, receiving a score equivalent to the 5th percentile, and on the

Neurology shelf exam retake, receiving a score equivalent to the 7th percentile, indicating poor shelf exam performance on two additional shelf exams per the Handbook. A chart indicating Mr. Nehme's shelf exam percentiles is attached hereto as "Exhibit 10."

18. Pursuant to the Handbook, Mr. Nehme's failure of the Psychiatry shelf exam remediation on March 3, 2020 constituted failure of the Psychiatry Clerkship. Shelf exam retakes are scheduled two weeks from the failed exam, so students have adequate time to prepare in light of their demanding schedule. The MSEPC was notified of the failure. Mr. Nehme was subjected to his third MSEPC hearing on April 9, 2020. Mr. Nehme stated that there was a fire in his neighbor's apartment on the morning of the psychiatry shelf exam retake which affected his performance. He did not mention any lack of proper accommodations affecting his performance on the Psychiatry shelf exam retake at the hearing. The MSEPC found that Mr. Nehme's academic performance continued to be of grave concern and recommended that he be given the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn. Mr. Nehme's final cumulative GPA was 82.22. The MSEPC Recommendation for hearing dated April 9, 2020 is attached hereto as "Exhibit 11."

19. Because it was the initiating event, the failure of the Psychiatry Clerkship is provided as the reason for MSEPC referral on the cover page alongside his probationary status. This was not an indication that Mr. Nehme's poor performance on the other shelf exams was not cause for concern requiring MSEPC hearing. Failure of a clerkship alone does not require an MSEPC hearing. As stated in the Handbook, his probationary status signified that the MSEPC was carefully scrutinizing his performance. Students who have passed coursework through remediation of more than one course, or who have demonstrated only marginal performance overall, will be evaluated by the MSEPC and may be required to repeat the period or may be involuntarily

withdrawn from COM. Recommendation will be made by the MSEPC based upon all facts available to it and each student's cumulative progress will be considered during each evaluation.

20.     Mr. Nehme appealed the MSEPC recommendation to the Appeals Committee in accordance with the Handbook's Appeals Process. He again mentioned the fire affecting his poor performance on the psychiatry remediation exam and his father's medical issues affecting his performance on the initial Surgery shelf exam. He also introduced new information relating to a car accident that occurred during the Family Medicine Clerkship that required numerous physical therapy sessions affecting his performance on the initial Family Medicine shelf exam and a random drug test conducted one week prior to the Psychiatry remediation exam adding unnecessary stress while studying for the Psychiatry remediation exam. He further added due process concerns such as the MSEPC hearing being held over Zoom due to the pandemic rather than in person and the fact that Dr. Helen Tempest inappropriately acted as the Chair of the MSEPC during his hearing. Despite being provided the opportunity to once again introduce information that impacted his Psychiatry remediation exam, there is no indication of improper accommodations in Mr. Nehme's appeal. Mr. Nehme's Appeal Letter is attached hereto as "Exhibit 12" and Excerpt from the Handbook relating to the appeals process is attached hereto as "Exhibit 13."

21.     On May 5, 2020, after review, the Appeals Committee found that there was no material failure to provide Mr. Nehme's due process rights as set forth in the Handbook because he received a hearing notice on April 1, 2020, which listed all MSEPC members including Dr. Tempest, providing ample time to challenge Dr. Tempest's participation prior to the hearing in accordance with the Handbook. The Appeals Committee further concluded that there was no new information presented that was not available at the time of the meeting or that was likely to have substantially affected the outcome of the hearing and that the severity of the sanction of providing

him the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn was not excessive in light of the nature of the offense and the totality of the student's academic performance including indicia of professionalism. The Appeals Committee further recommended adopting the April 9, 2020 recommendations of the MSEPC. Dean Sackstein agreed with the Appeals Committee and affirmed its recommendation to adopt the recommendations of the MSEPC from the April 9, 2020 hearing. The Appeals Committee Recommendation is attached hereto as "Exhibit 14," the Letter from Dean Sackstein affirming Appeals Committee recommendation is attached hereto as "Exhibit 15," and the Notice of Hearing Letter dated April 1, 2020 is attached hereto as "Exhibit 16."

22. Mr. Nehme was advised he could appeal the Dean's determination to the Provost as set forth in the Handbook and did so.

23. Although there is no policy limiting the number of retakes or remediations one student is entitled to, numerous remediations raise concern pertaining to the student's knowledge and ability to continue on in the medical program. The MSEPC considers each medical student's cumulative overall performance in the evaluation, including prior disciplinary actions, failures, and/or remediations. If the MSEPC believes a student is unable to meet the technical standards set forth by FIU, it may recommend an adverse action up to and including expulsion from the MD program. Any student who repeats an academic period is not eligible to repeat any other academic period. A student whose academic performance does not improve and who fails to meet the terms of probation may be recommended for dismissal by the MSEPC.

24. As indicated in the Handbook, failure of a clerkship or poor shelf exam performance, such as three shelf scores in the 5-10 percentile range, may result in MSEPC review. Poor clinical performance that does not meet expectations, based on academics and/or

professionalism, can result in a recommendation by the MSEPC for repeating the year or for dismissal. Here, Mr. Nehme failed four (4) initial shelf exams, one (1) shelf exam remediation, and scored in the poor performance range on two (2) additional shelf exams. Accordingly, even if Mr. Nehme passed his Psychiatry shelf exam retake, he would likely have been called before the MSEPC at the time the MSEPC convened to determine eligibility for promotion into Period 4 because he was on academic probation and would have still failed four (4) initial shelf exams and scored extremely low on two (2) final shelf exams. The NBME shelf exams reveal student readiness for licensing exams, and Mr. Nehme's poor performance indicated a lack of readiness for promotion. Mr. Nehme was advised after both prior MSEPC hearings that any further failure or continued poor academic performance would trigger review by the MSEPC with the possibility of adverse recommendations, including dismissal from medical school. As Mr. Nehme had already repeated Period 2, the option to repeat Period 3 to improve fund of knowledge would not have been option of remediation per the Handbook.

25. As made evident in the Handbook, FIU believes in providing struggling students the opportunity to remediate poor academic performance. However, when the MSEPC determines that a student's academic performance has not improved and fails to meet expectations, FIU must dismiss a student who continues to perform poorly. It is COM's practice to allow the student to voluntarily withdraw or be involuntarily dismissed.

26. COM's decision to dismiss Mr. Nehme was based solely on his overall poor academic performance and the determination of the MSEPC, the body responsible to make such judgment on student's fitness to become a physician, and by no means because of any alleged disability. Throughout Mr. Nehme's duration at FIU, he and all other students with disabilities were subject to the same policies set forth in the Handbook as medical students without disabilities.

For example, the following students were either dismissed or withdrew from FIU after recommendations from the MSEPC hearing or were otherwise called to the MSEPC.

27. P.D.[3] was dismissed after the MSEPC determined that her academic performance was unacceptable after being provided the opportunity to repeat Period 2 and failing a total of six (6) courses, two of which were failed remediations. She did not fail any courses in P1, was subjected to four MSEPC hearings before P3, and was placed on academic probation at her first MSEPC hearing.

28. D.G. failed a total of three (3) courses, one course during P2 and two clerkships in P3, and one Objective Structured Clinical Examination ("OSCE"). He also failed the initial Surgery Shelf examination but passed the remediation exam. D.G. was placed on academic probation at his first MSEPC hearing in Period 3. He was provided the opportunity to repeat Period 3, but did not because he was ultimately dismissed as a result of failure to enter into a substance abuse treatment program as recommended by the MSEPC. Additionally, he had one PIR filed against him for missing a practice session.

29. N.L. voluntarily withdrew after repeating Period 2 and failing a total of two (2) courses. Two PIRs were filed against him because he was appearing on website with the title of doctor, and he was subjected to two MSEPC hearings. In addition, he was placed on academic watch after receiving a 75 in Genes, Molecules and Cells in Period 1 and placed academic probation at his first MSEPC hearing during Period 2. Mr. N.L withdrew from COM effective June 19, 2019.

30. L.P. withdrew before reaching Period 3 after repeating Period 1 and failing a total of five (5) courses, including one failed remediation. She was subjected to two MSEPC hearings

---

[3] Other students' names have been redacted for privacy purposes.

and placed on academic probation at her first MSEPC hearing. She was also granted a leave of absence.

31. B.P. withdrew from COM after repeating Period 1 and failing a total of four (4) courses, two courses in Period 1 and two Clerkships in Period 3. In addition, he showed only marginal competency in Period 1 basic science courses during his first attempt and failed the initial Psychiatry Shelf exam but passed the remediation exam. He was subjected to four MSEPC hearings and granted a personal leave of absence. At the time of dismissal, B.P.'s cumulative GPA was 83.71.

32. P.Q. was dismissed after failing a total of six (6) courses, two in each Period, and was subjected to five MSEPC hearings. The MSEPC first recommended dismissal after failure of the Surgery Clerkship, but after new information was provided on appeal, P.Q. was allowed to repeat Period 3. His failure of the Neurology Clerkship was a result of academic misconduct not poor academic performance.

33. R.H. withdrew after repeating Period 2 and failing two (2) courses, one in P1 and one in P2. In addition, during Period 2, he received an incomplete in Hematopoietic and Lymphoreticular Systems and earned only marginal scores in other Period 2 courses.

34. D.S. matriculated at COM on August 1, 2016. He failed a total of six courses, including one remediation, and was called before four MSEPC hearings. D.S. never repeated a period, nor did he have a professionalism report filed against him. He was placed on academic watch after failing his first course during Period 2 and was placed on academic probation after his first MSEPC hearing. He took a personal leave of absence from February 2, 2018 to December 11, 2018. Notably, the third MSEPC hearing was conducted simply to review the evaluation of fitness for duty required recommended in the second MSEPC hearing. The three other hearings were

conducted after course or clerkship failures. D.S. filed an appeal of the MSEPC recommendation for dismissal with the Appeals Committee but was unsuccessful. The Appeals Committee recommended adoption of the January 14, 2021 MSEPC decision and D.S. was ultimately dismissed.

35. W.T. matriculated at COM on August 3, 2015. An MSEPC hearing was conducted on March 8, 2018, hearing after a PIR was submitted by two professors for plagiarism. She admitted to plagiarizing. The MSEPC found that she violated COM's professionalism standards and recommended she be given the opportunity to voluntarily withdraw or be involuntarily withdrawn. However, W.T. successfully appealed the MSEPC recommendation based on lack of due process, among other things. The overturned dismissal was not related to poor academic performance but rather academic misconduct. She did not repeat a period nor did she fail any courses; however, as a result of the plagiarism, she received failing grades for the OB/GYN and Internal Medicine Clerkships. She did not have any academic issues prior to this incident.

36. A.P., a student with disabilities, was dismissed after failing five (5) courses, including two remediations, repeating Period 1, and being subjected to five MSEPC hearings. He was placed on academic probation after the first MSEPC hearing during P1 to remain until the end of P2. Academic probation was later extended through the end of P3. The MSEPC recommended he be dismissed because he demonstrated a pattern of breaches of the professionalism standards as documented by the four (4) PIRs filed against him and because he demonstrated a pattern of poor academic performance. In addition, he received "marginally competent" scores in seven (7) courses throughout his medical school career.

37. M.T., a student with disabilities, was subjected to two MSEPC hearings after failing one course and its remediation in P1. The MSEPC determined that his academic performance was cause for concern but agreed that he should repeat P1. He was placed on academic probation after the first MSEPC hearing, but was removed in July 2020. At his second MSEPC hearing conducted

as a result of a PIR filed against him, he was again placed on academic probation but allowed to continue with the class of 2022.

38.  C.V., a student with disabilities, was subjected to three MSEPC hearings and failed four (4) courses. The first MSEPC hearing was conducted after failing three (3) courses, with remediation for each still pending. the second MSEPC hearing was conducted after failure of one course and two submitted PIRs. His third MSEPC hearing during P2, was a result of multiple PIRs filed against him. FIU assisted C.V. in obtaining a replacement computer to resolve the technological issues he was experiencing. However, C.V. did not follow up to obtain replacement computer in timely manner. C.V. was ultimately dismissed because of pattern of breaches of professionalism and failure to take responsibility for such. His appeal was unsuccessful and the recommendation for dismissal was affirmed by Dean Sackstein.

39.  COM adopts the FIU policies and procedures regarding students with disabilities and there is no written policy on providing accommodations for assessment activities such as quizzes. There have been ongoing changes in assessments especially those delivered prior to active learning activities which are patient-based. COM changed the name of certain activities from quizzes to readiness assignments because the term quiz was not an appropriate name of the activity and the new name better reflected the type of assessment. This action was not done to discriminate or deny any student with disabilities of his or her testing accommodations. These activities are case and/or team-based learning sessions where each student must be assessed for preparedness prior to the start of the activity. They also carry a low-point value. Providing extra time or being placed in a minimal distraction room for these types of assessments was an undue burden because the student would miss a portion of the activity and resources were limited to deliver these assessments in any other fashion due to limited proctors and room availability.

40. After I assumed my new administrative role, FIU initiated a pilot program in the Spring of 2020 providing an alternative for readiness assignments where some students who were eligible for accommodations elect to arrive before the session to have extra time for the readiness assignment before class started in the morning. Adjustments to class scheduling were made to better serve the students. This alternative did not compromise the activity, and FIU has now implemented such practices for all readiness assignments.

FURTHER AFFIANT SAYETH NOT.

_____
VIVIAN T. OBESO, M.D.

STATE OF Florida )
COUNTY OF Miami-Dade ) ss
)

Sworn to and subscribed before me on this 10 day of March, 2022.

_____
Notary Public - State of Florida

Commission Stamp:

ELIANET DEVILLE
MY COMMISSION # HH 050922
EXPIRES: October 8, 2024
Bonded Thru Notary Public Underwriters

Personally known ____ OR Produced Identification
__✓__. Type of Identification Produced:
Florida Driver's License