UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:20-cv-24649-AMC

ELIE NEHME,

     Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

     Defendant.

_____/

## AFFIDAVIT OF ELIZABETH BEJAR, Ph.D

STATE OF FLORIDA

                 )ss

COUNTY OF MIAMI-DADE

     BEFORE ME, the undersigned authority, personally appeared ELIZABETH BEJAR, Ph.D who after being first duly sworn, deposes and says:

     1.     This affidavit is based upon my personal knowledge.  I am at least eighteen (18) years of age and otherwise sui juris.

     2.     I currently serve as the Interim Provost, Executive Vice President and Chief Operating Officer at Florida International University ("FIU"). I previously held the position of Senior Vice President of Academic and Student Affairs since 2018. I held the position of Vice President for Academic Affairs and Student Affairs for approximately 4 to 5 years. Before that, I served as the Vice Provost for Academic Affairs for about two years and I held the position of Assistant Vice Provost for Academic Affairs and Assistance prior to that time. In 2003, I served as the Dean for the former College of Health which no longer exists.

3.      I obtained my doctoral degree in higher education and administration from Boston College in 2008 and also earned a Masters of Arts in education from FIU in 1998 after my Bachelor of Arts degree from the University of Miami in psychology in 1992.

4.      One of my duties when I served as the Senior Vice President of Academic and Student Affairs was to serve as the Provost's designee on student appeals. I have been designated to review university-wide appeals for all disciplines on behalf of the previous Provost since 2014.

5.      Consistent with the College of Medicine Medical Student Handbook, a student may appeal the determination of the Appeals Committee within 5 business days of the issuance of the Dean decision in the event there was a material failure to provide the student due process, new information at the time of the hearings, or the severity of the sanction is clearly excessive in light of the offense or academic performance. If no grounds for exist for the appeal, the Dean's determination is affirmed and the decision will constitute final agency action.

6.      On May 15, 2020, I received Mr. Nehme's appeal of the Dean's decision on May 8, 2020. I permitted him to submit additional information on June 4, 2020. One of the issues Mr. Nehme indicated in his appeal was that he did not receive his normal accommodations for the Psychiatry Shelf Exam Remediation. As a result of his claims of harassment and differential treatment based on his disability,  I brought it to the attention of the Office of Inclusion, Diversity, Equity, and Access ("IDEA") for review. This was communicated to Mr. Nehme in June 2020.

7.      IDEA initiated an investigation into the allegations. I periodically followed-up with IDEA as I withheld my decision on the appeal until the investigation was concluded. IDEA issued a report on August 25, 2020 and an amended report regarding its findings on September 14, 2020. A copy of the Amended Report with its own exhibits is attached hereto as Exhibit 1.

8.      After reviewing the findings that substantiated lack of accommodations on readiness assignments and substantiated providing a non-compliant minimal distraction room along with the record below before me, it prompted me to inquire on whether the lack of accommodations impacted Mr. Nehme's grades while enrolled at FIU. I wanted additional information on the findings regarding Mr. Nehme's lack of accommodations.

9.      Based on my request, IDEA initiated a subsequent investigation. They conducted an audit of all of Mr. Nehme's classes. On readiness assignments or quizzes where he did not obtain extra time, he was awarded a score of 100%, and held him harmless irrespective of accommodations for those course requirements. Even with 100% in those readiness assignments or quizzes, it did not change his course grades significantly due to the low value assigned to the readiness assignments or quizzes. Plus, he also passed some of the readiness assignments or quizzes without the accommodations of extra time or a minimal distraction room.   More importantly, it was clear Mr. Nehme failed multiple exams when all accommodations provided. A copy of the audit is attached hereto as Exhibit 2.

10.      My review of the determination to dismiss Mr. Nehme or allow him to voluntarily withdraw is based on the technical standards of the discipline and the student's performance holistically. At the time of the recommendation for dismissal, he was on academic probation. It was Mr. Nehme's third MSEPC hearing due to multiple failures. Mr. Nehme was given an opportunity to remediate a course with another class, he was granted a medical leave of absence, he was permitted to repeat Period 2 and continue with the class of 2021, and in Period 3, he had repeated failures for the shelf exams of Surgery, Family Medicine, Neurology, Psychiatry and the Psychiatry retake. While on academic probation, continued poor academic performance could result in dismissal.

11.     The issues that he raised on appeal were all available at the time of the final MSEPC hearing and before the Appeals Committee. However, Mr. Nehme failed to raise the issue of a lack of accommodations prior to this final appeal.

12.     On September 30, 2020, I issued the final agency action decision letter where I found that the determination of COM to dismiss Mr. Nehme remained undisturbed. A copy is attached hereto as Exhibit 3. There was no indication that the allegations regarding a lack of accommodations made by Mr. Nehme had an adverse impact on his academic performance as the dismissal was based on his academic performance and the remaining bases for the appeal were deemed without merit.

FURTHER AFFIANT SAYETH NOT.

_____
ELIZABETH BEJAR, Ph.D

STATE OF Florida         )
                              ) ss
COUNTY OF Miami-Dade     )

Sworn to and subscribed before me on this 10th day of March, 2022.

_____
Notary Public - State of Florida

LIZVETTE TORRES
MY COMMISSION # HH 096536
EXPIRES: February 24, 2025
Bonded Thru Notary Public Underwriters

Commission Stamp:

Personally known ✓ OR Produced Identification
_____.  Type of Identification Produced.

# EXHIBIT 1

<u>**AMENDED COPY**</u>

**CASE# 2020-05-054**
**SUMMARY OF THE INVESTIGATION OF THE COMPLAINT OF DISABILITY**
**DISCRIMINATION**

| | |
|---|---|
| **Complainant:** | <u>**Elie Nehme**</u><br><u>**Medical Student – Period 3**</u><br><u>**Herbert Wertheim College of Medicine**</u> |
| **Respondent:** | <u>**Dr. Nancy Havas**</u><br><u>**Associate Dean of Student Services**</u><br><u>**Herbert Wertheim College of Medicine**</u> |

On May 13, 2020, Florida International University (FIU) student, Elie Nehme (Complainant), filed an official complaint with the Office of Inclusion, Diversity, Equity & Access (IDEA) against employee, Dr. Nancy Havas – alleging discrimination based on disability. FIU commenced an investigation into the alleged violations of FIU Regulation 106, the University's Regulation on Non-Discrimination, Harassment and Retaliation (The Regulation).

<u>**PERSONS INVOLVED**</u>

| | |
|---|---|
| Complainant: | Elie Nehme, Medical Student – period 3 |
| Witness 1: | Maria Santacruz, Testing & Assessment Manager |
| Witness 2: | Dr. Rodolfo Bonnin, Director of Assessment and Evaluation |
| Witness 3: | Maritere Williams, Associate Director of Academic Support Services |
| Witness 4: | Dr. Jenny Fortun, Assistant Dean for Foundational Sciences Curriculum |
| Witness 5: | Adrian Jones, Interim Executive Associate Dean of Student Affairs |
| Witness 6: | Dr. Vivian Obeso, Associate Dean for Curriculum and Medical Education |
| Witness 7: | Dr. Stephen Loynaz, Access Consultant Manager, Disability Resource Center |
| Witness 8: | Amanda Niguidula, Director, Disability Resource Center |
| Witness 9: | Teresa "Terry" Reyes-Gavilan, Academic Support Services Administrator |
| Witness 10: | Innah Lachica, Program Coordinator, Academic Affairs |
| Respondent: | Dr. Nancy Havas, Associate Dean of Student Services |

<u>**EXHIBITS**</u>

| | |
|---|---|
| Exhibit 1: | Discrimination Complaint Form completed by Elie Nehme |
| Exhibit 2: | Nehme's Accommodation Letter from the Disability Resource Center |
| Exhibit 3: | Email from Dr. Bonnin addressing Nehme's concerns pertaining to his testing accommodation provided by Dr. Stephen Loynaz |
| Exhibit 4: | HWCOM Student Handbook |
| Exhibit 5: | Audit of Elie Nehme's Testing provided by Maria Santacruz |
| Exhibit 6: | HWCOM Assessment Department Accommodation Procedure provided by Adrian Jones |

FIU_000901

Exhibit 7:           Email documenting Nehme's excused and unexcused absences provided
                     by Dr. Nancy Havas
Exhibit 8:           MSEPC Letter provided to Nehme from April 9, 2020 Meeting provided
                     by Elie Nehme


**SPECIFIC ALLEGATION(S)**

The Complainant made the following specific allegation(s) as addressed in his statement and
(**Exhibit 1**):

- Nehme alleges that the HWCOM administrators changed the language of several in-class professional (CanvasMed) quizzes to "readiness assignments" to avoid providing Nehme DRC-approved testing accommodations. He further contends that, because there was a point value added to the quizzes, the absence of necessary testing accommodations caused burdensome stress to Nehme during period 2 year (this includes the repeat period 2 year as well), which affected his health and academic success.

- Nehme contends that, on March 2, 2020, the HWCOM administrators did not administer the High-Stake Psychiatry shelf[1] (retake) examination in the proper minimal distraction room. Nehme states that he was placed in AHC2, 495, which he believes did not meet the requirements for a proper minimal distraction room, based on his prior experiences taking exams in AHC 1, room 335. Nehme failed the High-Stake Psychiatry shelf examination, which he contends was a primary contributor to HWCOM's recommendation that he voluntarily withdraw from the program. Nehme alleges that from July 28, 2017 to present day (period 2 – period 3), he has been negatively impacted by the lack of testing accommodations provided to him by HWCOM.

- Nehme alleges that on February 24, 2020 he received an email from Dr. Nancy Havas requiring him to leave his pediatric rotation at Nikolas Children Hospital and report to her office for a drug test. According to Nehme, Dr. Havas did this to cause him further stress. Nehme said Dr. Havas knew he was dealing with stress because he was studying for a remediation Shelf Exam for Psychiatry Clerkship.

**STANDARD OF EVIDENCE: PREPONDERANCE OF THE EVIDENCE**

Findings in this investigation report are based on a "**preponderance of the evidence**" standard. In other words, after reviewing all of the evidence, including the relative credibility of the parties and their statements during interviews, whether it is more likely than not that the conduct occurred as alleged. If the conduct did occur as alleged, then an analysis is completed to determine whether the conduct violated University Regulation. (Please note: the report's findings do not make conclusions whether the alleged conduct violated state or federal laws, but instead addresses whether the University's regulations were violated.)

---

[1] High Stake examinations - High-stakes assessment refers to any test given where results lead to major/significant consequences, or any test that is a basis of a major decision.

FIU_000902

**COMPLAINANT STATEMENT – Elie Nehme**

Nehme was interviewed via telephone on May 27, 2020.[2] Nehme was advised of the Regulation, the investigation process, confidentiality, and FIU's prohibition against retaliation. Nehme completed an IDEA Discrimination Complaint Processing Form, in which he alleges that from July 28, 2017 to present day (period 2 – period 3), he has been an active medical student that has been negatively impacted by the lack of testing accommodations, which exacerbated an illness that resulted in him taking a leave of absence (LOA) from school.[3] (**Exhibit 1**) At the time of this report, Nehme  was in the process of completing coursework as part of his period 3.

According to Nehme, he has "done well in medical school and [has] received numerous positive recognitions" from preceptors[4] at hospitals where he has performed his medical rotations. Nehme stated that his health continued to be a factor in his academics, so he requested and was granted a LOA from January 18, 2018 – April 2, 2018. Nehme added that this LOA provided him the opportunity to take care of his ailment.

Nehme stated that when he began his time as a student at HWCOM, he was experiencing difficulties with a primary illness. He indicated this was an illness he was dealing with before he began his time as a student. According to Nehme, the stress affiliated with Medical school exacerbated his illness and, as a result, he obtained numerous excused absences. This ultimately resulted in his three course failures and a referral to the Medical Student Evaluation and Promotion Committee (MSEPC).[5] The failures were due to Nehme not passing the High-Stakes examination administered by the National Board of Medical Examiners (NBME). These exams are proctored by the HWCOM Office of Assessment and Evaluation and overseen by Dr. Rodolfo Bonnin (Witness 2).

Table 1: Elie Nehme timeline submitted July 7, 2020.

| Date | Event | Notes |
|---|---|---|
| August 1, 2016 | Date of matriculation | N/A |

---

[2] Interviews were conducted via telephone, Zoom, and Microsoft Teams because of the university (including faculty, staff, and students) transitioning to remote work on March 16, 2020.

[3] HWCOM identifies a "period" as a year of study. As such, a student in period 3 is in their third year of study.

[4] A practicing physician who gives personal instruction, training, and supervision to a medical student or young physician.

[5] The Medical Student Evaluation and Promotion Committee (MSEPC) is the committee that evaluates all aspects of each medical student's performance for the purpose of promotion and graduation. The assessment includes evaluation of whether a student meets established academic standards and professionalism standards as more fully described in this HWCOM Medical Student Handbook. The MSEPC evaluation includes an assessment of both honors and deficiencies.

FIU_000903

| October 3, 2016 | Student failed Genes, Molecules, and Cells (BMS6001) | N/A |
|---|---|---|
| May 24, 2017 | Failed Cardiovascular and Respiratory Systems (BMS6633) | N/A |
| July 10, 2017 | Failed Cardiovascular and Respiratory System (BMS 6633 remediation) | Passed the final during April 2018, as part of Period 2 remediation. |
| July 19, 2017 | MSEPC Hearing Notice Sent | As a result of failed BMS 6633 |
| July 27, 2017 | MSEPC Hearing #1 | MSEPC Recommendation: allowed to continue with Class of 2020: must meet with Dr. Toonkel to develop a plan for self-study; academic probation |
| December 15, 2017 | PIR filed by Dr. Obeso | Student had multiple issues identified after our mid-period 2 review session.<br><br>1. Multiple unexcused absences across courses<br><br>2. Multiple request to delay exam across course<br><br>3. Professionalism issue regarding a quiz in Reproduction. |
| January 6, 2018 | Student failed System Based Practice (BMS6067) | Nehme did not receive accommodations for the final exam. Nehme confirm that he received accommodations when he retook the final exam as part of his Period 2 Remediation. |
| January 18, 2018 | Nehme began LOA | N/A |
| February 28, 2018 | MSEPC Hearing Notice Sent | N/A |
| March 8, 2018 | MSEPC Hearing #2 | MSEPC Recommendation: Allowed to repeat Period 2; academic probation. Student will now continue with Class of 2021. |
| April 2, 2018 | Nehme returned from LOA | Nehme would begin Period 2 with Class of 2021. |
| February 17, 2020 | Student failed the Psychiatry Subject Exam | N/A |

FIU_000904

| March 3, 2020 | Student failed the Psychiatry Subject Exam retake and as a result, the Psychiatry Clerkship | N/A |
|---|---|---|
| March 4, 2020 | MSEPC Hearing Notice Sent | Student asked the meeting to be postponed.  Hearing notice was rescinded |
| April 1, 2020 | MSEPC Hearing Notice Sent | N/A |
| April 9, 2020 | MSEPC Hearing #3 | MSEPC Recommendation: Nehme was provided the option to voluntarily withdraw from HWCOM; if he does not take this option, he will be involuntarily withdrawn. |

Nehme indicated that his failure in the Cardiovascular & Respiratory Systems course, along with other family stressors, exacerbated his illness. Nehme contends that after this experience, he determined that he needed to request further academic assistance. After the July 2017 MSEPC meeting, Nehme recalled visiting with the Director of the Medical Student Counseling and Wellness Center, Dr. Nathaly Desmarais, numerous times for Testing and Evaluation.[6][7] According to Nehme, the results revealed that Nehme would need ADA accommodations. Dr. Desmarais issued Nehme a letter to seek ADA accommodations assistance from the DRC. Nehme added that he arrived at the DRC to meet with Dr. Stephen Loynaz; at that time, Nehme was told that his testing accommodations were approved, and that the DRC would communicate directly with HWCOM. Nehme was provided his accommodation on July 28, 2017. (**Exhibit 2**)

Nehme stated that days later, he began to worry because he had not heard from the HWCOM Testing and Evaluation department about criteria for his accommodation for his BMS 6643 course final examination, scheduled for August 18, 2017.[8] Nehme recalled sending Dr. Bonnin an email dated August 14, 2017 asking for assistance in discussing "the process of obtaining the approved disability accommodations." In an August 14, 2017 email, Dr. Bonnin addressed Nehme's concerns pertaining to his testing accommodation and advised that "Nehme would have his accommodations on that exam". (**Exhibit 3**) Nehme stated this was his first experience receiving a testing accommodation; he passed that exam and achieved a high score. Nehme added that he was feeling better and it reflected in his grades.

TRANSITION According to Nehme, after failing his System Based Practice course in January 2018, he petitioned the MSEPC Committee to be remediated, which meant that he would repeat period 2. The MSEPC Committee Chairperson (Dr. Sergio Gonzalez Arias) advised Nehme that the committee would consider his request. Nehme mentioned that the MSEPC Committee granted his LOA on January 18, 2018. Nehme stated that while on his LOA, he received a call from Dr.

[6] Nehme was not able to provide an accurate number of visits he has had with the Wellness Center.

[7] Nehme did not recall specific dates when he visited with Dr. Desmarais.

[8] The course title for BMS 6643 is "Integumentary System: The Skin"

FIU_000905

Havas advising him that he must attend a MSEPC hearing on March 8, 2018; this meeting was scheduled to occur during his LOA.  Nehme stated that he attended the MSEPC hearing and was told that his request to repeat his period 2 year had been granted, and upon his return from his leave of absences, he would start with the Class of 2021.

**In-Class Testing:**

According to Nehme, he was neither invited, nor did he participate in any ADA student orientation; therefore, he was unable to address his ADA accommodations, as mentioned in the HWCOM student handbook. (**Exhibit 4**) Nehme commented that this would have been instrumental to his success because he would have known more about the HWCOM ADA testing process. Nehme stated that he never understood the steps or process in making sure that he had his testing accommodations. Nehme further stated that, after he was provided his testing accommodations, he realized that he was not receiving testing accommodations for professional course examinations/quizzes being administered in CanvasMed. Nehme stated that he received notice that the quizzes were now called "readiness assignments," however there was still a graded component for these assessments. Nehme provided a list of courses where he took an in-class quiz and was not provided testing accommodations:

> BMS 6016 Clinical Skills II
> BMS 6633 Cardiovascular & Respiratory Systems[9]
> BMS 6634 Gastrointestinal System and Medical Nutrition
> BMS 6637 Reproductive Systems
> BMS 6067 System-Based Practice
> BMS 6638 Renal System
> BMS 6631 Hematopoietic and Lymphoreticular Systems

As Nehme understands it, courses are built into CanvasMed by the course professor.[10] Nehme added that the readiness assignments are administered on CanvasMed and are typically issued as pop quizzes, flipcharts quizzes and course assignments. Nehme stated that the courses listed quizzes on the various syllabi as point driven; however, he had never received a testing accommodation for these assignments. Nehme stated that although he has never failed a quiz, he has scored low on them, which ultimately affected his final grade. Nehme further stated that he received a testing accommodation in BMS 6066 Evidence-Based Medicine and Complementary

---

[9] This refers to the second instance where Nehme took this exam, which was after he returned from the LOA.

[10] CanvasMed is HWCOM's Learning Management System (LMS) and offers a central location for hosting and accessing learning materials, submitting assignments, proctoring examinations, and connecting instructors and students both online and in the classroom. (https://medicine.fiu.edu/about/administrative-offices/information-technology/services/index.html)

FIU_000906

and Alternative Medicine's Individual Readiness Assurance Test (IRAT) quiz that was worth 15% of his final grade. [11]

According to Nehme, on March 3, 2020, he did not receive his minimal distraction room accommodation for his High-Stake Psychiatry Shelf examination. Nehme stated that he was assigned to AHC2 495, a room he had never been assigned to before; he added that he had no idea what the room looked like until the day of the examination. Nehme indicated that he usually takes his exams in AHC1 335, which he believes was a minimum distraction room, because it has no windows, nor is it positioned in a busy hallway. According to Nehme, AHC2 495 is a conference room that has mirrored windows which you can partially see out of, and that the room was in a main hallway near classrooms.[12] He believes the room was not appropriate because it was in a busy hallway where there were many offices and high student traffic near an elevator. He added that the environment was extremely distracting. Nehme added that on the day of his exam, many students were walking and talking loudly which caused him to become distracted. Nehme stated that he did not inform the proctor of his concerns.

According to Nehme, he attempted to bring up his testing accommodation concerns during his April 9, 2020 MSEPC meeting; however, he contends that the committee members refused to address this matter. Nehme stated that he felt intimidated by the presence of the MSEPC chair (Dr. Helen Tempest); Dr. Obeso had previously submitted a professional incident report (PIR) on behalf of Dr. Tempest against Nehme. Nehme added that because of the PIR, he never felt comfortable mentioning to anyone that he was not receiving his testing accommodations. [13]

**Drug Testing:**

Nehme stated that on February 24, 2020, he received a voicemail message from Dr. Nancy Havas asking him to report to HWCOM for a meeting. Nehme stated that there was an email that followed Nehme stated Dr. Havas's contacted him with a "vague" subject line that read "check in meeting."

---

[11] Nehme further indicated that there was one course where he did get his testing accommodation and that resulted in him getting a high score.

[12] According to DRC a minimal distraction room creates an environment which minimizes distractions for the student. Each student has different levels of distractibility and different stimuli which may distract them. Typically, students need an environment which minimizes both auditory and visual distractions. A distraction reduce environment does not necessitate the student's testing in a private room, nor does it mean that an environment in completely distraction-free.

[13] On August 23, 2020 Nehme stated the MSEPC began asking questions that were unrelated to the shelf examination and that they were asking questions about his previous courses. This was his first-time using zoom and he felt intimidated when Dr. Tempest's photo appeared enlarge on his screen and she would respond to his questions with a frown. Nehme stated that Dr. Tempest also appeared as if she was not interested. Nehme said that he felt that if he would have said anything there was going to be retaliation.

FIU_000907

Nehme felt that this meeting was important, so he left his Pediatric rotation for the meeting. Nehme shared that when he arrived at the meeting, he was told by Dr. Havas that he was selected for random drug testing. Nehme stated that Dr. Havas had not disclosed to him her reason for selecting him for the random drug testing, nor did she disclose the process for taking the test. Nehme stated that since he was already overwhelmed with the stressors of Pediatrics Rotations, he felt embarrassed and worried that everyone knew that he was being drug tested. Nehme added that he went to the Student Health Clinic to take the test. Nehme stated that he received a voicemail on March 4, 2020 from Dr. Havas saying that the results of the drug test were back, and that they did not find anything that they did not expect. Nehme says that he does not know what she meant by that and that he never received a written confirmation of his results.

## WITNESS STATEMENTS

The witnesses were interviewed regarding the complaint. They were informed of the Regulation, the investigation process, confidentiality, and FIU's prohibition against retaliation.

## Witness 1 – Maria Santacruz

Maria Santacruz was interviewed remotely on June 10, 2020. Santacruz currently serves as the Testing & Assessment Manager for HWCOM; Santacruz has served in this capacity for five years. However, she has been an employee at HWCOM for 10 years.

With regards to the assessment and testing accommodation process, Santacruz advised that she receives emails from DRC representatives addressing HWCOM student accommodations. According to Santacruz, in either 2018 or 2019, she started a process that consisted of sending information to students confirming that they would receive their testing accommodations.[14] Santacruz further clarified that she sends students email notifications detailing the type of testing accommodation they will receive. Santacruz indicated that after she sends the email to Director of Testing and Evaluation Dr. Rodolfo Bonnin, Associate Dean of Student Services Dr. Nancy Havas, Associate Dean of Curriculum and Medical Education Dr. Vivian Obeso, Assistant Director of Academic Support Services Janel Fernandez, and Assistant Director of Support Services Maritere Williams.

Santacruz shared she administers the NBME and Examsoft exams. She shared that her primary function is to administer the High-Stakes testing from the National Board of Medical Examiners (NBME). Santacruz stated that exams on CanvasMed had very small weight on a student's grade and were administered by course coordinators.[15]

Santacruz indicated that she uploads and creates examinations in Examsoft based on the information that the faculty provide to her. Santacruz then creates profiles for all students, including those who require testing accommodations. She added that she communicates with students about their testing accommodations before they sit for a test, and she provides them with instructions on the type of testing accommodation(s) that they will be receiving. For example,

---

[14] Santacruz acknowledged that this type of notification had not been previously communicated to students.

[15] According to Santacruz, course coordinators administer/manage course testing or activities.

FIU_000908

Santacruz shared that if a student is to receive extra time for testing, they will receive a message in the Examsoft system advising the student of how much time they will receive. She stated that the process for NBME exams is slightly different because she only creates the profiles, while the professor creates the exams on the NBME website, assigns it to the student, and grades them. Similar to Examsoft, at the start of the exam, students are notified of the extra time they will receive as part of their testing accommodation.

Santacruz stated that she co-manages the work of seven course coordinators who are responsible for periods 1 and 2, Clinical Skills, and Social Sciences (courses that are not basic sciences). She stated that the course coordinators are the test administrators for CanvasMed and also assist as proctors for some examinations. She commented that course coordinators also report to different individuals such as Dr. Jenny Fortun, and some report to Dr. Maria Stevens (Director of Clinical Skills). Santacruz stated that after March 2020, she obtained access to CanvasMed and oversaw testing requirements for HWCOM students using this platform. With regards to accommodations, she (Santacruz) would send coordinators emails reminding them that students who had testing accommodations for extra time should be provided the necessary additional time in the system.

According to Santacruz, a minimal distraction room is a room with no distractions where a student may take an exam. She further clarified that she is not the individual responsible for assigning the student's minimal distraction rooms. Santacruz advised that Maritere Williams or Teresa Reyes Gavilan (Academic Support Services Administrator) assign the distraction rooms for students. Santacruz mentioned that she (Santacruz) has been told that there are new ways of notifying students who are expected to test in a minimal distraction room and that students now receive an email one hour before their exam time; this notification informs students that there will be an activity scheduled for the them and that they (the students) should report to AHC 2 495. Santacruz noted that this is the process for "little quizzes" (e.g., pop quizzes or readiness assignments). Further, considering Santacruz is not responsible for assigning minimal distraction rooms, she stated she is not familiar with the actual testing room locations.

Santacruz commented that, since assessments are being conducted online due to remote learning, students will take CanvasMed tests through Honorlock (where accommodations will be provided) and NBME assessments will be monitored through Zoom.[16]

According to Santacruz, the ADA committee is an ad hoc committee that meets once a month to discuss students with accommodations. She said that the chairperson of the committee is Adrian Jones and the other committee members include Santacruz, Dr. Fortun, Dr. Bonnin, Dr. Obeso, Dr. Havas, Janelle Fernandez, and former Dean of Students Dr. Karin Esposito. Santacruz further stated the following:

> This committee is procedure-based and if there are any student issues that come up, we discuss it as a committee. In Fall 2019, the members of the ADA committee decided to create an ADA procedure manual; I helped to create this manual. It was created for the purpose of streamlining and uniformity in the accommodation process. Before then, I followed some procedures, however there was no manual in

---

[16] Honorlock is a proctoring solution that helps protect the academic integrity of assessments created within your Canvas course while offering students the convenience of taking exams at their convenience (within the time frame allotted by the instructor). (https://online.fiu.edu/faculty/resources/technology/honorlock-proctoring.php)

FIU_000909

place; these procedures were instructed by administration. We had a shared drive that had testing accommodations, so what we decided was to put the documents into a manual. The students did not have any tangible guide to help them through the testing accommodations process. The students were told to go to the DRC for assistance.

Santacruz said that she follows the DRC recommendations, and if there are accommodations she does not understand, she requests assistance from Dean Jones. Santacruz further attested:

My job is to assist with all student requests in an efficient manner. If a student asks me for an accommodation, I will direct them to the DRC for assistance. At the DRC, they would be able to get an official testing accommodation so that (HWCOM) can implement their testing accommodation.

According to Santacruz, if a student says that they are not receiving their time accommodations, there are provisions in place that allow for that student's exam to be stopped, as well as manually adding extra time to that exam. For NBME exams, she can communicate with the proctors to stop the test. She shared that if a student did not get an email advising them of their testing accommodation, "we can rapidly assist them on where to go. We do everything that we can to make sure that the accommodations are granted."

Santacruz stated that she did not know much about the pop quizzes/readiness assignments, because she mostly dealt with High-Stakes testing. She indicated her understanding is that the reason why students were not receiving testing accommodations for pop quizzes/readiness assignments was that it would "disrupt the flow" of the class. According to Santacruz, if a student is taking the pop quiz/readiness assignment with their extended time and the class ends before the student finishes their assignment, they will be late to the next class. She shared that this was the situation for exams that made up a "very low" percentage of a student's total grade; she added that some of the quizzes were team-based and "it would have been complicated [to accommodate students] because they did not know who their partner would be and if they would get the extra time."

Santacruz acknowledged that on March 10, 2020, HWCOM began using the term "Readiness Assignments" for coursework that was previously referred to as "in-class quizzes." Santacruz recalled there being a discussion about student concerns regarding them reportedly not receiving testing accommodations for in-class quizzes. She stated that the explanation provided was that since these examinations had little point value to a student's final grade, there would be no testing accommodations. However, she does not recall who specifically made the statement. Santacruz added that, as of April 2020, the professors began providing testing accommodations for pop quizzes/readiness assignments.

Santacruz shared that students have always been given testing accommodations for NBME examinations. She shared that if a student stated they did not receive their testing accommodations for extra time on the NBME exams, she could verify their claim by contacting the NBME administrators. She also stated that the students had been instructed to inform her via a zoom link immediately so that she can stop and restart the exam with the testing accommodations. Santacruz stated that she was not advised by any student about not receiving minimal distraction room accommodations.

According to Santacruz, she was unsure of the process for the High-Stake shelf exams (High Stake) because Maritere Williams handles these during period 3. Santacruz stated that shelf exams are a part of the period 3 experience in medical school. Santacruz further stated that period 3 is based on clerkships in Psychiatry, Neurology, Family Practice, Gynecology/Obstetrics, and Pediatrics. She (Santacruz) stated that the NBME and Examsoft both have portions of shelf examinations; both testing portals are monitored/proctored by the period 3 administrator Maritere Williams. She advised that her only responsibility for period 3 testing is to communicate the names of students who have testing accommodations.

According to Santacruz, she provides one-to-one assistance to students with testing accommodations. Santacruz added that there are many medical students with accommodations and sometimes this can make the accommodation process difficult;  there are times in which there are large testing cycles and she is the person responsible for inputting  the data for student's testing accommodation.

Santacruz stated that she is familiar with Nehme as a DRC student with testing accommodations. Santacruz noted that she was certain Nehme had received all NBME testing accommodations for period 3. Santacruz mentioned that it is important to state that she recognizes that Nehme did not receive any testing accommodations during periods 1 and 2. Santacruz shared that a testing audit was conducted for Nehme where tests were reviewed; she confirmed that there were some CanvassMed quizzes where Nehme did not receive accommodations, however here were other CanvassMed quizzes he did receive his testing accommodations. (**Exhibit 5**) According to Santacruz, she also conducted an audit in the NBME system, proving that Nehme received his requested testing accommodations for NBME examinations. As it relates to Nehme's minimal distraction room assignment, Santacruz commented that this was facilitated by Maritere Williams. Santacruz added that based upon Nehme's class 2 period, she was also sure that Nehme had not received his testing accommodations for in-class pop quizzes/readiness assignments as indicated by the audit.

According to Santacruz, the ADA committee is currently creating an ADA manual to provide a better understanding of the process for students requiring ADA accommodations.

### Witness 2 – Dr. Rodolfo Bonnin

Dr. Rodolfo Bonnin was interviewed remotely on June 10, 2010. Dr. Bonnin serves as the Director of Assessment and Evaluation for HWCOM. Dr. Bonnin has been employed at the university for 11 years.

According to Dr. Bonnin, his responsibilities consist of reviewing performance outcomes for students in the Physician Assistant (PA) program as well as other HWCOM students. Dr. Bonnin stated that he creates summaries, reports, and recommendations, based on the performance outcomes from the PA and HWCOM students, for professors. Dr. Bonnin indicated that the Office of Assessment and Evaluation is responsible for the High-Stakes "third-party" vendors and advised that the third-party testing vendor is the NBME.

Dr. Bonnin stated that the NBME system has some "limitations" in data collection and flexibility; however, they have not had issues with inputting students' testing accommodations. Dr. Bonnin

FIU_000911

mentioned that it took "three weeks to gain NBME's permission to give tests remotely." He added that NBME's primary concern is the confidentiality of their testing.

Dr. Bonnin stated that he supervises the Testing and Assessment Manager, Maria Santacruz, and her team of course coordinators. Dr. Bonnin stated that Santacruz manages this system "very well" and that it is her responsibility to troubleshoot any student's concerns, including monitoring the student's testing accommodations. According to Dr. Bonnin, Santacruz's primary function is to manage the High-Stakes examinations.  Dr. Bonnin added that Santacruz provides proctors, testing accommodations, and technical support to the medical students. Dr. Bonnin described the testing accommodations process as the following:

- Santacruz receives an email from the DRC detailing students' DRC-approved accommodations.
- Santacruz coordinates scheduling and creates the students' profiles on the testing platform.
- Santacruz informs students that she is in receipt of their DRC-approved testing accommodations and relays this information to the course coordinators.[17]
- Santacruz reserves rooms for those students who need testing accommodations.

According to Dr. Bonnin, the problem with students getting their testing accommodations exists within the CanvasMed system. Dr. Bonnin stated that it was not until one year ago that he gained "any knowledge" about the CanvasMed examinations. Dr. Bonnin added that these examinations (pop quizzes/readiness assignments) were solely monitored by the course coordinators, and they were "never alerted that any particular student was not receiving their testing accommodations." Dr. Bonnin stated that this was a part of a systemic problem, in which he "would take some part of the blame." He continued by saying, "I was not aware of this until all the issues came to the forefront sometime last year."[18] According to Dr. Bonnin, Dr. George Dambach (former Associate Dean of Curriculum and Medical Education) was previously the person who supervised the testing accommodation process. Dr. Bonnin stated that Dr. Dambach was the originator of the testing accommodation process, and that it was he (Dambach) who decided to let the course coordinators have that responsibility for accommodations. Dr. Bonnin added that Dr. Dambach retired in 2017, and that Dr. Karin Esposito was his successor, and, as of June 2019, Dr. Obeso serves in that capacity. Dr. Bonnin further mentioned that the testing accommodations have always been a practice.

Dr. Bonnin shared that at one point, when the ADA committee was made up of Dr. Bonnin, Dr. Bob Dollinger, Dr. Heidi von Harscher (Director of Medical Student Support Services), Dr. Yerko Berrocal, Dr. Karin Esposito (Executive Associate Dean of Student Affairs), and Dr. Rebecca Toonkel (Assistant Dean for Curriculum, Clinical Education), the committee decided that "small assignments that did not have much weight would not receive testing accommodations." Additionally, Dr. Bonnin advised that the ADA committee determined that for "anything related

---

[17] Dr. Bonnin added that the course coordinators monitor CanvasMed for courses, and it is their (course coordinators) responsibility to set up the testing accommodations with the Information Technology (IT) department.

[18] The issue that Dr. Bonnin is referencing is when some students complained about not receiving their testing accommodations.

FIU_000912

to clinical work, students would not receive testing accommodations." Dr. Bonnin added that to his recollection, this was not escalated to the Dean of HWCOM.

Dr. Bonnin recalled that it was not until last year "sometime in October 2019" when students started asking questions about their accommodations. Dr. Bonnin further recalled that while attending an ADA Committee meeting, a committee member brought up a discussion about formulating a plan for students who were not receiving testing accommodations with online, take-home, or essay exams. Dr. Bonnin stated that because of the concerns involving that issue, in October 2019, his team became in charge of all the testing accommodations. Dr. Bonnin stated that Dr. Jenny Fortun provided a list of approved and disapproved testing accommodations. Dr. Bonnin stated that this list did not involve the NBME or Examsoft testing because they are monitored by different departments. Dr. Bonnin advised that, at that time, Santacruz's responsibility was to consider the list, only alert the course coordinators and verify that the students testing accommodations had been inputted into CanvasMed. Dr. Bonnin stated that as of April 2020, this list is no longer in use; another decision was made by the current ADA committee to give the students all of their testing accommodations for all assignments.

Dr. Bonnin stated that it is important to get the context of the testing accommodation process within the HWCOM.  Dr. Bonnin added that the testing accommodation process was originally solely with the DRC, but it was transitioned slowly to the colleges after the DRC became "overwhelmed".

According to Dr. Bonnin, he is "positive" that Nehme was not given testing accommodation for his in-class quizzes or activities. Dr. Bonnin added that, during that time, Nehme was still in his period 1 and 2 years, wherein the college was still following the old practice. Dr. Bonnin stated that he was not sure if Nehme repeating the year or if any of his course failures were a result of Nehme not receiving his testing accommodations. Dr. Bonnin said that Nehme had received his testing accommodations for the High-Stakes examinations. Dr. Bonnin referred the matter of the minimal distraction room for Nehme to Maritere Williams and added that HWCOM has severe space issues. Dr. Bonnin added that his concerns are always for the student, therefore he would never intentionally not give a student their testing accommodation.

### Witness 3 – Maritere Williams

Maritere Williams was interviewed remotely on June 11, 2020. Williams serves as the Associate Director of Academic Support Services for HWCOM. Williams has been employed at the university for 7 years.

According to Williams, her responsibilities are to provide support to period 3 students as well as seven mandatory clerkships. Williams added that clerkships are specialty areas, such as Family Medicine, Internal Medicine, Neurology, Obstetrics and Gynecology, Pediatrics, Psychiatry, Radiology, and Surgery. Williams stated that she orders NBME High-Stakes shelf examinations, assigns the proctors, and sets up the examination room. Williams noted that she contacts Academic Support Services Administrator, Teresa "Terry" Reyes Gavilan, who manages the classroom management system. Williams added that Terry is usually the person that recommends the minimal distraction rooms and advised that this is the practice since there is limited spacing throughout the college. Williams stated that she assigns the proctors for the examination and it typically requires two proctors.

FIU_000913

According to Williams, her understanding of the ADA process is that students must submit a request to be reviewed by the testing accommodation department. Williams added that she is not a part of that process; usually, she receives notification by the assessment department, which is led by Dr. Bonnin and his team. Williams stated that testing accommodations are sent to her in a document that has a list of the student names and the type of accommodation to be provided.

Williams stated that she was not sure if accommodating students while in the testing room was considered an accommodation; however, sometimes the rooms are too cold so she will submit a request to lower the temperature. Williams added that one time when she was notified, through a proctor (course coordinator) that a specific student was "very cold," she sent her personal heater to the room to make the student comfortable. Williams stated that these are not necessary accommodations, but she wanted the students to be comfortable. According to Williams, she has never seen an ADA manual, she has never received any training on accommodations, nor has she ever attended any ADA meetings. Williams stated that she is very familiar with the NBME's testing manual. Williams noted that she keeps a log of the students' testing occurrences, which is required by the NBME. Williams added that the log serves to monitor the students' presence while taking their exams. Williams stated that she understands her position and that she trains everyone that works with her to make sure that they know the requirements. Williams added that she has never received a complaint from the students.

According to Williams, the course coordinators not only proctor examinations, they also manage the content of the students' course work with CanvasMed. Williams stated that the course director advises the course coordinators of the quiz dates, mostly in period 2. Williams noted that her responsibilities are for period 3, including ensuring that students attend their clerkships. Williams added that part of the clerkship is the NBME shelf-exam that they take at the end of their clerkship.[19] Williams added that some OSCE course coordinators report to Dr. Rebecca Toonkel's team, some coordinators report to Dr. Fortun and some coordinators report to her.

Williams shared that the course coordinators have a "dotted line" report to the course directors. Williams stated that a course director is the person that determines the type of testing and which coordinators are responsible for setting up the courses in CanvasMed. Williams added that the clerkships do not have the same type of course structures; for instance, the Objective Structures Clinical Examinations (OSCE)[20] occurs during period 3 in a clinical setting where students demonstrate their clinical skills virtually and are allowed to interview standardized patients. Williams stated that course coordinators also coordinate the clinical setting.

According to Williams, she verified Nehme's Psychiatry shelf exam testing accommodations with the NBME representatives. Williams added that she also confirmed Nehme was given his testing accommodations of extra time for all of the NBME High-Stakes examinations and the System

---

[19] A clerkship is a consultation service where hospital visits occur at several sites during the rotation.

[20] Objective Structured Clinical Examination (*OSCE*) is a form of performance-based testing used to measure candidates' clinical competence. During an **OSCE**, candidates are observed and evaluated as they go through a series of stations in which they interview, examine, and treat standardized patients (SP) who present with some type of medical problem.

FIU_000914

Based Practice that is administered by Examsoft. Williams stated that Examsoft is a High-Stake testing systems that she monitors, however, the testing documents are uploaded by the individual program directors.

Williams further stated that Teresita "Terry" issued a minimal distraction room, which was a common room that they have used before. Williams recalled getting permission from Terry to place Nehme inside AHC2 495, since "that was the only conference room available." Williams stated that she never received a complaint from Nehme about the conference room he was placed in. Williams commented that she has used AHC2 495 before as a minimal distraction room and has never received any complaints.

According to Williams, she described room AHC2 495 as a conference room with mirrored windows; however, to ensure that the building's area remains quiet, she posted a note on the door that indicates that students are testing. Williams described a minimal distraction room as a room without windows and should be away from heavy foot traffic areas.[21] Williams added that HWCOM has limited rooms and Teresita attempts to match the description as mentioned by the University.  William stated that AHC1 335 is also a room utilized for minimal distraction. She described this room as conference room that does not have any windows.  When comparing the two locations Williams stated that the only difference between the rooms were the mirrored windows in AHC 2 495. Williams further stated that when she requested a minimal distraction room, Terry assigned her a room that was available at that time.  Williams added that she believes that both locations (AHC1 335 and AHC2 495) meets the student accommodation needs. Williams stated that she wants the student to be successful.

### Witness 4 – Dr. Jenny Fortun

Dr. Jenny Fortun was interviewed remotely on June 17, 2020. Fortun serves as the Assistant Dean for Foundational Sciences Curriculum at HWCOM. She also serves as an adjunct professor in the Occupational Therapy program in the Nicole Wertheim College of Nursing and Health Sciences. In addition, Fortun has been a faculty member at the university since 2009, the inaugural year of HWCOM.

According to Fortun, she oversees the first two years of medical school in terms of curriculum, logistics (class assignments), coordination between classes, and scheduling. Fortun stated that period 1 and period 2 is considered preclinical and occurs mostly in the classroom. Fortun further stated that clerkships, which she does not handle, take place during period 3. Fortun defined a period year as being from August to March.

According to Fortun, HWCOM has had many changes in the ADA process. Fortun stated that currently the process starts outside of HWCOM, with the DRC reviewing student accommodation needs. Fortun indicated that the DRC sends HWCOM communications on the specifics pertaining to the students' needs.

Fortun further stated that the ADA accommodation committee is responsible for overseeing the accommodation of all students. She indicated that if the examination is proctored by the Office of Assessment and Evaluation, the committee will send the student accommodations to that

---

[21] Williams clarified that she did not consider the mirrored glasses as windows, nor did she consider the courses scheduled on that day when selecting a room.

FIU_000915

department for processing. Fortun mentioned that as of March or April 2020, the Office of Assessment and Evaluation communicates to students the date and time of their in-class quizzes; she added that the Office of Assessment and Evaluation does not necessarily proctor tests. Fortun clarified that, for a pre-quiz, the student will be notified that they are expected to take the examination before 7:30 a.m.; for a post quiz, the Office of Assessment and Evaluation schedules the exam after the class and provides proctoring assistance. Fortun commented that for this process to work, the Office of Assessment and Evaluation must manage their testing schedules, and the course coordinators must give feedback. Fortun mentioned that the Office of Assessment and Evaluation had not tested the new process due to the Covid-19 crisis.

Fortun supervises Natalie Dwarika (Program Manager), who manages course coordinators that are responsible for the daily academics for periods 1 and 2. Fortun stated that every syllabus comes to her office and is reviewed for academic logistics and scheduling purposes, including identifying the exams of student that require ADA accommodations. Fortuned added that she and Dwarika coordinate with the Office of Assessment and Evaluation by sharing the dates and times the students with accommodations will be taking their tests.

According to Fortun, she is responsible for the Examsoft products that are administered through the Office of Assessment and Evaluation. Fortun stated that in March of 2020, the course professors administer the post quizzes mentioned earlier; however, the course coordinators make sure that HWCOM has inputted the exam into CanvasMed.

Fortun stated that before March 2020, student testing accommodations were not considered for in-class exams; however, they were always a part of the "bigger" test. Fortun indicated that the bigger test is the NBME and Examsoft portals. Fortun stated that the ADA committee decided that quizzes would not receive ADA testing accommodations because the significant difference is that the quizzes are meant to support specific classroom activities. Fortun indicated that certain quizzes are valued at 1% of the total grade. Fortun added that this is why the ADA committee members decided to designate these low weight quizzes as readiness assignments. According to Fortun, the students were sent an email advising them about the language change to "Readiness Assignments."

The academic reason for readiness assignments is to check a student's understanding of the course topics. Fortun also stated that the readiness assignments had such a low point value and, in some cases was offered fewer times in a course, that she could not imagine that the assignment would significantly affect a student's grade. Nevertheless, Fortun added that she was working with the course directors to educate them on how to minimize the number of readiness assignments so that it did not affect the student grade.

According to Fortun, she has never denied any students their ADA accommodations. Fortun added that she has never denied Nehme any accommodations. Fortun stated that she was aware that he was a student that was having some difficulties, only because his name was mentioned during ADA committee meetings. Fortun indicated that she does not believe that the weight of the readiness assignments on the student's total grade harms the students; she added, "at that moment, those were the rules we had." Fortun states that these were the original rules set by the ADA committee when she first arrived at the university. Fortun indicated that she does not know where the rules originated. Fortun believes the ADA committee is familiar with the rules, and now they

FIU_000916

are working on documenting the rule. According to Fortun, MDR accommodations are handle by the Office of Testing and Evaluation and she is not familiar with MDR accommodations

**Witness 5 – Adrian Jones**

Dean Adrian Jones was interviewed remotely on June 3, 2020 and July 1, 2020. Jones currently serves as the Interim Executive Dean of Students at HWCOM and has been employed with the university since 2014.

According to Jones, he manages all the operations in the Office of Student Affairs (OSA), Enrollment Management, Financial Aid, Records Management, Student Support Services and Career Services for HWCOM. Jones added he is currently managing the HWCOM Office of Diversity & Inclusion on an interim basis. Jones stated that he has served on the ADA committee since 2015; he advised that before him, Dr. Bob Dollinger served as the inaugural chair of that committee until Dollinger's retirement. Jones advised that Dr. Nancy Havas is the current chairperson for the ADA committee.[22]

Jones advised that the testing process started with Dr. Dollinger, who managed the systems and the ADA process. According to Jones, Dr. Dollinger established an agreement with the DRC from 2008 to 2015 where the DRC agreed to administer the High-Stakes examinations. Jones stated that when the DRC was assisting HWCOM, managing the testing accommodation process was very easy, since the DRC was also in possession of all the High-Stake exams. Jones stated that this process was efficient until the DRC became "overwhelmed." Jones stated that his understanding was that the DRC's resources were getting scarce due to being utilize for both the HWCOM and the College of Law. Jones added that a decision was made by the DRC to return the High-Stakes testing back to the individual colleges. He stated that a decision was made for these responsibilities to be assigned to Dr. Rodolfo Dr. Bonnin in the Office of Assessment and Evaluation.

According to Jones, he established a practice of meeting with students who had accommodations and informed them that their testing accommodations would only apply to High-Stakes testing. According to Jones, when he meets with a student that has requested a testing accommodation, he explains to the students their process for in-class testing and clinical rotations. Jones added that his explanation to the student consisted of educating them on the accommodation process and equating it in a hospital setting. Jones stated that he never received any push back from the students. Jones noted that he feels that it is important to be an advocate for students in his position.

According to Jones, there were numerous meetings with the ADA committee, DRC, IDEA and Office of General Counsel (OGC) to discuss the testing accommodation concerns. After a particular meeting, there was a decision that it may be more suitable to change the name of "in-class quizzes" to "readiness assignments." Jones added that everyone approved the readiness assignment title, and an email was sent out to the students, informing them of the change. Jones further mentioned there was still a matter of changing the name from "quizzes" to "readiness assignments" in the CanvasMed learning management system. Jones added that the issue is currently being addressed by their IT department. Jones added that the name change provided a

---

[22] In a follow up interview, Jones clarified that in the weeks after his initial interview, Dr. Havas had been appointed chair of the ADA committee.

better description of what the professor was attempting to achieve in the course. Jones contends that it is his belief that course professors are only trying to "get a feel" of student's knowledge.

According to Jones, in April of 2020, after several discussions and meetings with DRC, IDEA and Office General of Counsel (OGC), a decision was made to reevaluate the testing accommodations. Jones stated that a new testing accommodation process had recently been proposed to the ADA committee including an ADA manual and a change in the course schedule. Jones expressed that these changes would now allow students to get their testing accommodation in their courses.

According to Jones, Nehme is a respectful young man that "will be a great doctor, someday." Jones stated that he has had to meet with Nehme on several occasions to discuss his educational process. Jones added that he was aware of Nehme's recent High-Stakes test failure and the recommendation of dismissal from MSEPC. (**Exhibit 6**) Jones said that Nehme had never mentioned that he had not received any of his testing accommodations. However, Jones further stated that he reviewed Nehme's testing accommodations and agree that Nehme did not receive some of his testing accommodations for in-class quizzes/readiness assignments. Jones stated that Nehme had been given testing accommodations for his High-Stake examinations. Jones contends that because HWCOM has limited room vacancies, it is possible Nehme was placed in a room that was not conducive to a minimal distraction room. Jones added that he does not know what the specification for minimal distraction room are;  Jones indicated that if Nehme had mentioned what he was experiencing, he (Jones) would have been able to intervene on his behalf with the MSEPC committee.

According to Jones, Dr. Havas mentioned that she was going to select Nehme for a random drug test because of some behaviors he exhibited during his clinical rotation. Jones added that Dr. Havas was the designee to handle the drug testing area; he did not need to know the reason why students were selected.  Jones stated that Dr. Havas stated there was a report from a Clinical Affiliate (Sarah Stumbar, Assistant Dean for Clinical Education) that indicated that Nehme appeared tired, distracted and not present. According to Jones, Havas explained to Nehme that he was selected for a random drug test. Jones stated that Nehme was upset and felt that he was targeted, and he did not understand why he was chosen.   Jones added that he explained to Nehme that his drug testing was to protect him and the university from potential liability, and that it was not a punishment, but some help for him.

## Witness 6 – Dr. Vivian Obeso

Dr. Vivian Obeso was interviewed remotely on June 17, 2020. Dr. Obeso currently serves as the Associate Dean for Curriculum and Medical Education at HWCOM, a position she has held since 2018. In addition, Dr. Obeso previously served as the Medical Director of the Albert and Debbie Tano Simulation Center at FIU HWCOM.

Dr. Obeso indicated that she oversees the entire four-year medical student process through the Office of Medical Education within the Academic Affairs department at HWCOM. Dr. Obeso stated her understanding of the ADA testing accommodations is that the DRC speaks with the students and sends communication to HWCOM OSA for processing of testing accommodations. Dr. Obeso added that the notification is sent across divisions to divisional directors. Dr. Obeso stated that after receiving an ADA notice, OSA takes charge to discuss those accommodations,

FIU_000918

and they work with the Office of Assessment and Evaluation. Dr. Obeso advised that separate coordination and review is conducted by the ADA committee, which is managed by OSA. She shared that the committee is chaired by Dean Jones and that she (Dr. Obeso) does not serve on that committee.

Dr. Obeso advised that the ADA committee meets to discuss and monitor the needs of the students testing accommodations. Dr. Obeso stated that Dr. Rodolfo Bonnin was the Director of Assessment, and he has since taken over all testing accommodations. Dr. Obeso said that she has never personally denied any student their accommodations.

According to Dr. Obeso, students have never received accommodations on readiness assignments, even when they were called "quizzes." Dr. Obeso stated that students did not receive accommodations for these assignments because adding time to these assessments would compromise the activity. She specified that it would be a challenge to implement these accommodations because when one course ends, the next course begins shortly thereafter. She further stated that the quizzes made up a "very small" percentage of the student's grade. She indicated these reasons together influenced the decision to not provide student accommodations for these types of activities.

According to Dr. Obeso, Dr. George Dambach (former Curriculum Dean) and Dr. Karin Esposito (who are no longer at the university) advised her that if testing accommodations compromise the activity  and the sequencing of the course, and if the percentage is lower than 10%, then no testing accommodations would be granted. Dr. Obeso stated that it is her understanding that the testing protocols had been in place since the college's existence, and there has never been this type of testing accommodations for in-class quizzes. Dr. Obeso recalled having a conversation with Dr. Loynaz about concerns raised by a group of students, regarding them reportedly not receiving testing accommodations. Dr. Obeso was unable to provide the specific date and time. However, while further conversing with Dr. Loynaz about the concerns shared by the students, Dr. Obeso stated that Dr. Loynaz advised her that the university's policy is that when a student requests an ADA accommodation, it must be granted. Dr. Obeso recalled Dr. Loynaz stating that quizzes should receive an accommodation. Dr. Obeso stated that Dr. Loynaz advised her to change the names of the quizzes to readiness assignments. Obeso stated in January of 2020, the college decided to stop using the word "quiz" for those quizzes that were link to flipped-based classroom activities. According to Dr. Obeso, as of January 2020, exercises that are part of an in-class activity are called "readiness assignments" in all syllabi and in Canvas.

Dr. Obeso stated that she could not recall any written notice, policy, or procedure that indicated that this was the process for these types of accommodations. Dr. Obeso said that Dr. Bonnin had shared with her that previous administrators had conversations about these issues, so she started asking why these testing protocols had not been changed by anyone. According to Dr. Obeso, she started asking the DRC if there was an ADA policy written, and no one could provide her an ADA policy.

According to Dr. Obeso, she works closely with DRC and the Office of Assessment and Evaluation and leans on their administrators for advice.  Dr. Obeso added that with limited policies on testing accommodation, she believed that their decision to continue with the current standard was the right thing to do. Dr. Obeso stated that she decided to provide accommodations for all readiness

FIU_000919

assignments; despite being "very short quizzes," when they are weighted and added together, they may impact a student's grade.

According to Dr. Obeso, she became familiar with Nehme's allegations that he was not receiving his testing accommodations when Dr. Bonnin addressed it at an ADA committee meeting. Dr. Obeso shared that she was assured by Maria Santacruz that Nehme had received all of his testing accommodations for the High-Stake examinations and that his placement in a minimal distraction room was done properly. Dr. Obeso advised that HWCOM has limited rooms and that it takes a lot of planning to reserve a room. Dr. Obeso stated that Nehme would not have received testing accommodation for his in-class readiness assignments because it was not a part of the testing protocols during that time.

### Witness 7 – Dr. Stephen Loynaz

Dr. Stephen Loynaz was interviewed remotely on August 20, 2020. Dr. Loynaz currently serves as the Access Consultant Manager for the DRC. Dr. Loynaz has held the position since 2011. Dr. Loynaz certified Nehme in July 2017.

According to Dr. Loynaz, he is responsible for working with HWCOM medical students that may request ADA accommodations. Dr. Loynaz added that he processes the DRC student accommodation requests by reviewing their documentation and sending the request to HWCOM administrators. Dr. Loynaz shared that over the years there has been some concerns with the accommodation process, specifically how to address the testing accommodations. According to Dr. Loynaz, he advised students that in-class assignments were not as important as the high-stake testing. Dr. Loynaz indicated that his understanding is that, sometime in December of 2019, the matter of testing accommodations was brought to HWCOM's attention by various students. Dr. Loynaz indicated that the students were asking why they were not receiving testing accommodations. Dr. Loynaz stated that he began to communicate with HWCOM administrators to resolve the concerns of the students.

According to Dr. Loynaz, he was told by previous HWCOM administrators that implementing accommodations for these assessments would fundamentally alter the curriculum schedule and the weight of the assessment was inconsequential to the student's success and therefore they did not merit being accommodated. Furthermore, the DRC were also told that HWCOM administrators did not have the resources to accommodate these assessments such as proctors and space.

Dr. Loynaz stated that Dean Jones sent him an email on December 7, 2015 that says that the college does not have the ability to monitor quizzes and provide accommodations for quizzes, only exams. According to Dr. Loynaz, Dean Jones requested to speak with him on the phone after he provided some alternatives. Dr. Loynaz added that the phone call concluded with a decision that the DRC would no longer provide ADA Accommodations for the HWCOM.

Dr. Loynaz indicated that he became aware of Nehme when he processed his accommodation request in July of 2017. (**Exhibit 2**) Dr. Loynaz recalled receiving complaints from students regarding a course taught by Dr. Obeso in fall 2019; Students alleged that the terminology used

FIU_000920

in the syllabus (quizzes) was not the same terminology  used in the course itself (readiness assignment). Dr. Loynaz stated that Nehme was not one of the students making complaints.

According to Dr. Loynaz, during a roundtable meeting with HWCOM administrators and members from IDEA, the DRC, and OGC, Dr. Bonnin said that the college has never had the resources to accommodate readiness assignments and that this is the reason why the college decided to only provide accommodations for assignments that made up at least 15% of the total grade. Dr. Loynaz further added that the DRC did not coin the term "readiness assignments." He also commented that he believes the decision came from Dr. Obeso who instructed Dr. Bonnin and the Office of Assessment and Evaluation to implement this process. According to Dr. Loynaz, a minimum distraction room offers a less distracting environment, for example, fewer people and fewer windows. Dr. Loynaz stated in the DRC publishes an accommodation glossary that defines the minimum distraction room as an environment that minimizes distractions for the student.

### Witness 8 – Amanda Niguidula

Amanda Niguidula was interviewed remotely on August 20, 2020. Niguidula currently serves as the Director for Disability Resource Center (DRC). Niguidula position she has held since 2006.

According to Niguidula, she has reviewed the ADA Accommodation process for HWCOM from the very onset of the college in 2009.  Niguidula stated that from years 2009 – 2014, there was pushback from the then-current HWCOM administrators who were hesitant to provide accommodations to students with physical disabilities. Niguidula commented that the reason cited was that it would be a fundamental alteration of the program. She contends that she and Dr. Loynaz continue to receive similar pushback from the current HWCOM Administrators, specifically for students who have testing accommodations. Niguidula shared that the DRC provided assistance to HWCOM with regards to testing accommodations from the college's inception. She added that members from the DRC staff (including Dr. Loynaz) would regularly administer and proctor High Stake exams at HWCOM, and that they provide a similar service to the College of Law at the same time. Niguidula commented that the testing accommodation process was transitioned back to the individual colleges sometime in 2014 when it was determined that the DRC would not be able to continue to provide this service to the colleges. She added that the DRC continued to work with Dr. Bonnin and others at the college to develop the best practices for providing testing accommodations. Niguidula stated that when the process was transitioned to the college, there was an increase in the number of complaints from students saying that they were not being properly accommodated.

Niguidula recalled that during meetings with HWCOM Administrators in or about 2016, the sentiment expressed by the college was that they would not provide testing accommodations for lower-weight assessments because they had to be done in real time. She further added that the college communicated that students with accommodations would be at a disadvantage if they were provided accommodations on these "15-minute contextual real-world assessments" because it

FIU_000921

would require pulling them out of class and thereby making them late for their next class.[23] Niguidula shared that the administrators at the time were of the belief that extending or modifying the times for these contextual learning opportunities would dilute the experience and purpose of these assessments and thus would hinder the ability to properly evaluate them (the assessment).[24]

Niguidula commented that accommodations provided to students must be documented to ensure that the University can support that such accommodations were in fact provided. She added that there have been instances in the past when HWCOM provided certain accommodations to students that were not documented. Niguidula attests that it is the DRC's position that an appropriate accommodation should be provided for something designated as a quiz, even if it has been renamed to "readiness assignment."

Niguidula stated that the term "readiness assignment" came from Dr. Bonnin. She added that during a roundtable meeting, the HWCOM administrators indicated that any assignment worth less than 15% of the total grade would not be eligible for accommodations. Niguidula commented that HWCOM needs to decide what term and criteria they will be using and be consistent in implementing it so that students have the proper guidance with regards to expecting accommodations.

Niguidula indicated that she was not familiar with Nehme or his case but is aware of similar complaints that have been brought to the attention of the DRC throughout the years by HWCOM students.

### Witness 9 – Teresa "Terry" Reyes-Gavilan

Gavilan was interviewed via telephone on August 24, 2020. Gavilan currently serves as the Academic Support Services Administrator for HWCOM and has been employed with the University since 2012.

Gavilan shared that she uses the Wellsky scheduling system to coordinate room reservations, reserve spaces and minimal distraction rooms. According Gavilan, she is a retired Special Education teacher and is familiar with 504 and Individualized Education Program (IEP) plans.[25] Gavilan defined a minimal distraction as a room that must be away from extraneous stimuli and that students must be able to sit an arm's length apart with minimal noise. According to Gavilan, the scheduling system process for minimal distraction rooms entails her receiving a request from

---

[23] Niguidula clarified that this means that students would be late because the classes in the Medical program were scheduled with very brief breaks in between each class.

[24] The terms "contextual real-world assessments" and "contextual learning opportunities" refer to in-class quizzes and Readiness Assignments, as mentioned throughout this report.

[25] The IEP, Individualized Education Program, is a written document that is developed for each public-school child who is eligible for special education.

FIU_000922

OAE representatives Melissa Largo or Maria Santacruz; she added that she also receives requests from Maritere Williams.

Gavilan stated that she uses six conference rooms with AHC1, AHC2, and AHC4 as options for minimal distractions rooms. She added that she prefers using AHC1 335 and AHC2 495 for students who need minimal distraction room because they are the most isolated locations and are near office spaces. Gavilan shared that both rooms qualify as minimal distraction rooms because they give students the sense of being in an anonymous environment because other students will not be able to see them.[26] She commented that AHC2 495 has its own entrance and is on a floor where there are no classrooms; however, the room does have a frosted window that is visual to the main hallway as well as two doors that are accessible to other conference rooms as OSCE simulation rooms. She said that AHC1 335 is in a separate building where there are only offices and a hallway that leads to individual office spaces and two windows that have an external view of the outside.

According to Gavilan, on March 2, 2020, the day Nehme took his shelf examination, there were several meetings in the conference rooms and three OSCI simulation rooms near AHC2 495, where Nehme was testing. These meetings had approximately 20 participants each. Gavilan added that no student should have been assigned to take a test in AHC2 495 because of the amount of people on that floor. She stated that she normally catches these situations and understands that a student may have felt uncomfortable with the arrangement.

<u>**Witness 10 – Innah Lachica**</u>

Innah Lachica was interviewed remotely on August 31, 2020. Lachica currently serves as the Program Coordinator for Academic Affairs at HWCOM, a position she has held since 2018. Lachica states she reports to Academic Support Assistant Director Michelle Montero. According to Lachica, one of her job duties is to serve as a proctor for HWCOM students, which includes:

1. Observing students take their exams,
2. Accompany students to the restroom during their breaks,
3. Starting the exam by providing students with the exam code, and
4. Ending the exam by submitting the student's exam and confirming the roster on the NBME website.

Lachica stated that she was made aware that she would serve as the proctor for Nehme's exam by Ms. Maritere Williams. According to Lachica, she was cc'd in an email to Nehme on 2/17/2020, advising the student of his Psychiatry NBME test failure. On 2/18/2020, Williams sent Lachica a sign in sheet for the student and an Outlook invitation regarding Nehme's retake exam that was scheduled to take place in room AHC2 495. Lachica stated no other exam information or instructions were provided, except for the student's name, Elie Nehme and Class of 2021 period 3. When specifically asked if she was provided the reason for the accommodation, Lachica

---

[26]   Gavilan clarified that an "anonymous environment" is a private setting.

FIU_000923

responded, "No, I was not told the room needed to be a quiet room or a minimum distraction room." Lachica also stated she has not received ADA training. However, it is her understanding that ADA accommodations require a room is quite with very few distractions.

According to Lachica, on the Friday before the exam, she prepared the documents that were needed for the testing day. Lachica stated she printed the sign-in sheet, activity log, and the "Quiet Please Testing in Progress" door signs. She stated she also made sure that she had pens, clean laminated green boards, board wipes, and ear plugs. Lachica said Nehme was the only student in the class on 3/2/2020, She instructed Nehme that the exam would begin after she provided him with the exam code, restroom breaks are only allowed after 60 minutes of testing, he would be escorted to the restroom, food and drinks are not allowed in the testing room, and he must put his personal belongings away.

La Chica stated that the room was not free from distractions. She said the student complained to her about the temperature in the room. He asked her if she could turn the temperature up because it was too cold in the room. According to Lachica, she noticed Nehme would close his eyes for a few minutes and continue taking his exam. She said she thought this was his way of pacing himself and to take breaks in between answering questions, until Nehme stated he was not comfortable with the temperature in the room. Lachica stated the temperature is a common problem in ACH2 495. Lachica said she was cold and other students have made the same complaint in the past. According to Lachica, she reached out to her supervisor, Michelle Montero and asked if she could borrow her heater. Montero delivered the heater to the room and they placed it next to the student.

According to Lachica, ACH2 495 is a conference room with a table that seats approximately twelve people. The room has a glass wall that is like a frosted window that has transparent gaps that allows you to see shadows of people as they walk by. Lachica said that ACH2 495 is not the preferred room for accommodations because of its location near a large conference room, accessibility to the stairs and the elevator, and the room temperature. According to Lachica, there were meetings/sessions and an observed standardized clinical examinations (OSCE) session taking place during the exam. Lachica stated all of these things were distractions and she was able to hear noises outside of the room off and on throughout the exam. Lachica remembers there were a few times that groups of students were passing by in the hallway talking just outside of the testing room. However, Lachica stated Nehme never mentioned anything about the noise. Lachica said, "I was not able to do anything about it because, I felt like I needed to stay inside the room with the student at all times. I also felt that me going up and walking to the door multiple times would cause more distractions for him. I posted the Testing in Progress door signs and they were ignored." According to Lachica, ACH2 335 is the preferred room for accommodations because it has less traffic and double doors outside of the conference room that can be locked to prevent entrance into the conference room area.

## RESPONDENT STATEMENT - Dr. Nancy Havas

Dr. Nancy Havas was interviewed remotely on June 12, 2020. Dr. Havas serves as the Associate Dean for Student Services for HWCOM and has been employed with the university since 2017; she advised that she is also a medical doctor.

FIU_000924

According to Dr. Havas, she oversees the Panther Learning Committee, student activities, and student compliance matters, including the student absence process. Dr. Havas shared that she has also become the person responsible for students who are experiencing hardships, whether they are personal or family-oriented in nature. Dr. Havas stated that sometimes these hardships require that the student take time off from school. Dr. Havas stated that she is a part of the MSEPC committee with Dean Jones, where she assists with promotional committee promotions and any other professional invitations. Dr. Havas stated that she became the chair of the ADA committee in June of 2020; her predecessor was Dean Jones after Dr. Karin Esposito departed from the university.

According to Dr. Havas, she is currently serving as the Chairperson of the ADA committee, and the purpose of the committee is to serve as an oversight of the HWCOM ADA process. The members of the ADA committee are Dean Adrian Jones, Dr. Rodolfo Bonnin, Dr. Jenny Fortun and Maria Santacruz. Dr. Havas stated that committee keeps all members on the same page as it relates to the students and their partnership with the DRC.

Dr. Havas further stated that the committee members should have a thorough understanding of the accommodations, how to execute them consistently, and how to address any concerns that arise. Dr. Havas provided the following example:

> For instance, if a student needs to stand up and move around every 15 minutes, this will disrupt the other students; so, we would need to make accommodations for that student to be tested in another location and get extra time. The students can be successful and (the ADA Committee) can be consistent so that we do not undermine the success of other students.

According to Dr. Havas, the more common types of testing accommodations that are provided are extra time and minimal distraction testing rooms. Dr. Havas added that there are additional medical testing accommodations that are provided; this includes allowing students to have medical equipment (such as a glucose monitor) near them, bottles of water, and some situations where students need flexible schedules.

According to Dr. Havas, she worked with Dean Jones, Dr. Bonnin, and Dr. Loynaz to create an ADA manual that specified that if a student needs an accommodation, they should be referred to the DRC. The manual further outlined that the DRC would provide the HWCOM ADA committee with a notice of the student's accommodation need and, if it was an emergency, they would enact the accommodation immediately; otherwise, Dr. Havas indicated they would wait until their next monthly committee meeting. If the ADA committee members had any questions, the committee would contact the DRC for clarification and/or support. However, more recently, due to the nature of some of the student accommodation requests, the committee has invited members of the DRC to several meetings of the ADA committee.

Dr. Havas indicated that the burden is on the student to make sure that they can meet professional and technical standards. Dr. Havas further clarified that students must sign an agreement where they consent to meeting the professional standards every year, despite their accommodations. She commented that she has been able to provide some assistance to students who were unaware that they needed accommodations; she shared that she has recommended students to the DRC to obtain their testing accommodations.

FIU_000925

According to Dr. Havas, she has not taught Nehme as a faculty member; she has only interacted with him in her Associate Dean capacity. Dr. Havas stated that she assisted Nehme in preparation for several MSEPC meetings, approved several of his excused absence requests, and have acted in a role of general support, including addressing several questions that he had during his enrollment at HWCOM.

According to Dr. Havas, Nehme struggled academically from the start and administrators had referred him to the HWCOM Student Counseling and Wellness Center for counseling and help with the recommendation of accommodations. Dr. Havas continued by stating that she is saddened to see him not progress within his medical studies:

> At first, we tried to give (Nehme) the benefit of the doubt. We thought maybe he had a bad first year, but he never got better in his academics. This is noted by the amount of times he has had to go to MSEPC. We are still hoping that things turn around, but it is quite disappointing.

According to Dr. Havas, Nehme met with the MSEPC committee on the following dates:

1. On July 27, 2017 [27] Nehme was allowed to continue with the class of 2020. [28] Dr. Havas stated that Nehme was advised that he would not be allowed to continue in medical school if he had any other course failures.

   According to Dr. Havas, in October of 2017, Nehme experienced some dental issues and in November 2017 he mentioned he was experiencing family issues. Dr. Havas stated that her assistant Tatiana Felix (Assistant Director of Student Support Services) brought to her attention that Nehme had received numerous absences, with a lot of them relating to medical issues. These absences caused Nehme to miss several examinations. Dr. Havas recalled that in December 2017, she and Dean Jones met with Nehme to discuss his course absences and his tardiness to HWCOM events and expressed how "problematic" those instances were for him during that semester.

   Dr. Havas further stated that she and former Executive Dean of Students, Dr. Karen Esposito discussed that referring Nehme to MSEPC was not an effective strategy to address the behaviors. Dr. Havas commented "It seems like it was not appropriate for MSEPC to make a ruling on [his absences], we needed to work with him because the absences were becoming a problem."

2. On January 6, 2018, Nehme failed another course, which resulted in his referral to MSEPC. The result of this meeting was that Nehme would be allowed to take a leave of absences (LOA) and repeat period 2.

3. On March 8, 2018, Dr. Havas was reviewing who would need to go before the MSEPC and Nehme's name came up because he was on a medical LOA effective January 18, 2018, and

---

[27] Dr. Havas indicated that Nehme appealed twice: on August 7, 2017 and August 23, 2017.

[28] Nehme's original cohort/period was class of 2019. As such, after the first MSEPC, Nehme could continue with the next cohort/period – the class of 2020.

FIU_000926

he had failed the System-Based Practice course. In March 2018, Dr. Havas cited a letter stating that MSPEC was very concerned about his academics and that he would only be allowed to move forward with the class of 2021. Dr. Havas recalled Nehme agreeing to now being a member of class of 2021. Dr. Havas reported that the letter reminded him that if there were any additional failures, Nehme would be dismissed from the HWCOM.

According to Dr. Havas, throughout the 2019 – 2020 academic year, Nehme had ongoing issues with absence requests and providing supportive documentation for the absences. (**Exhibit 7**) Dr. Havas stated that she decided that Nehme should submit to a random drug test because he had numerous absences. Dr. Havas added that HWCOM student handbook notifies the student that they can be subject to random drug testing. **(Exhibit 4)** Dr. Havas indicated that there are no specified criteria for drug testing outlined written anywhere. She added that the decision to drug screen a student is based on the administrators' years of experience in working with and teaching students, the past performance of each individual student, any recent reports of changes in behaviors regarding a student, and general "best practices". Dr. Havas referenced an article from the National Institutes of Health's (NIH) National Library of Medicine (NLM) that speaks about substance use among medical students.[29] She further commented that numerous absences alone would not be sufficient to warrant drug testing; she shared that absences would be considered if they are related to academic difficulty and/or other behaviors that may suggest possible substance use as a complicating factor

Dr. Havas stated that the process described above is the practice that is consistently used with all HWCOM students if they demonstrate performance of concern. She further defined "performance of concern" as some combination of poor academic performance, attendance concerns, behavioral concerns, legal/police involvement, or reports of concern from other students, staff, or faculty.

Dr. Havas stated that she serves as Dr. Esposito's delegate with regards to the administration of drug testing. Dr. Havas said that Dr. Esposito, after consulting with Dr. Havas and other leadership, would decide if a student needed drug testing. Dr. Havas added that Dr. Esposito would regularly delegate Dr. Havas to meet with students and order the drug screening at the Student Health Center (SHC). Dr. Havas shared that she personally orders initial drug testing on rare occasions (by Dr. Havas' own decision without consulting her peers) when she receives a report from another faculty member or student concerning a student who appears to be impaired or who they (the faculty or reporting student) have directly witnessed using drugs.

Dr. Havas indicated that Nehme was the only student scheduled to take a drug test on February 24, 2020. Dr. Havas added that typically only one (1) student is tested on any particular day because of the need to coordinate with Dr. Havas, the students, and the SHC's availability. She elaborated that the process typically consists of contacting a SHC nurse to schedule for a student to be tested; Dr. Havas plans for a test to be conducted shortly after the test is ordered and she does not want to provide advanced notice to the student. She further indicated that when an appointment is scheduled, she meets with the student to discuss the need for the test and directs them to SHC. She

---

[29] The article Dr. Havas referenced is "Prevalence, perceptions, and consequences of substance use in medical students" and is available at the following link: https://pubmed.ncbi.nlm.nih.gov/29072119/.

FIU_000927

stated that in any given year, approximately three (3) to eight (8) students are tested one or more times randomly throughout the year.

Dr. Havas described the drug testing process as follows:

> Students are tested in the health center and my usual procedure is to meet with them to advise them that they must take a mandatory drug test, and if they have any concerns about not passing, they should share them with me.

According to Dr. Havas, she met Nehme prior to him taking his drug test and advised him that his behavior, attendance, and academic performance often raised concerns within the MSEPC. The concern was, "is this student somehow impaired by substance use?"

> Dr. Havas said "given the years of experience I have in this role, I have learned to counsel students to undergo drug testing prior to appearing before a promotion (MSEPC) hearing  so that when/if the question is raised  to the student during the hearing, the student can confidently say that I ordered drug testing for them 3 days ago and it was negative, as expected."

> Dr. Havas further stated "this prevents the mandate for drug testing to be entered into the record of the meeting as an adverse action, and also empowers the student to reveal any issues with substance abuse to me prior to a hearing. The idea is to support the student's wellness and avoid bringing any issues of substance abuse unnecessarily to the MSEPC."

Dr. Havas added that there is no closeout letter for drug testing, and that she usually informs them of their results via telephone. Dr. Havas said that she does not tend to put drug testing in writing because she would not want to have such a document in a student's file. Dr. Havas said that her role is to advocate for all students and make sure they have great attendance. Dr. Havas stated that she does not have anything against Nehme nor any other student with a disability.

Dr. Havas stated that Nehme was being dismissed because he had been performing poorly and he had failed some courses. Dr. Havas added that Nehme's pending dismissal was a recommendation of the MSEPC and the concerns surrounding the dismissal involved his continued lack of academic performance. (**Exhibit 8**) Dr. Havas further stated that she did not believe that testing accommodations/readiness assignments were a factor in the reason for Nehme's dismissal.

## ANALYSIS

Florida International University is required to provide reasonable accommodations pursuant to FIU Regulation 106 to ensure equal access to students with documented disabilities as long as the accommodations do not fundamentally alter the integrity of any course or program of study.

To establish a successful claim of discrimination based on disability pursuant to FIU Regulation 106, the following questions must be answered:

**1) Is Nehme a qualified individual within the meaning of the University regulation?**

FIU_000928

Nehme is a **qualified individual** based upon an evaluation from a qualified professional, Dr. Desmarais of the HWCOM Student Counseling and Wellness Center. The Testing and Assessment Department received documentation from a qualified professional who made an individualized assessment of Nehme that supports the need for the requested testing accommodations. Based on his need for an accommodation and his documented illness, Nehme was designated as a student with a disability by DRC.

   2) **Was Nehme excluded from participation in, denied benefits of, services, programs, or activities for which the university is responsible, or is otherwise being discriminated against by the university?**

In reviewing all of the information provided, it appears that Nehme's testing accommodations for the professional test (i.e.: CanvasMed) were not granted and the use of AHC2 495 for the High-Stake Psychiatry shelf examination did not meet the standard for minimal distraction. There is evidence to corroborate his belief that:

   (1) Nehme's placement in AHC2 495 (a conference room) did not meet the standard for a minimal distraction room identified by the ADA and this impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam which violated his disability testing accommodation;

   (2) Nehme did not receive testing accommodations for pop quizzes/readiness assignments, which were assessed by issuing a pass/fail grade.


Williams and Santacruz advised that selection of a minimal distraction room is based on space availability. Williams also described a minimal distraction room as "free from outside noise and windows," however she advised that placing Nehme in AHC2 495 was based on the room availability. Neither Williams nor Santacruz could provide an answer to support that a minimum distraction room was provided.  Gavilia stated that on the day that Nehme was taking his Shelf Examinations there was a Neurology lecture being held across the hall from the conference room, three OSCI stimulation sessions and Clinical Skills sessions, all of which  occurred down the hall from the conference room. Furthermore, the proctor, Lachica corroborated Gavilia's statement that, on the day of Nehme's test, ACH2 495 was very busy with a lot of traffic due to the different sessions that were occurring during the same time. Lachica stated that the student was distracted, not only because of the noise, but also due to the temperature in the room.


   • In a notice provided to HWCOM administrators responsible for testing and assessment, the DRC states the following (**Exhibit 6**):

   The student is tested in an environment which minimizes distractions for the student. Each student has different levels of distractibility and different stimuli which may distract them. Typically, students need an environment which minimizes both auditory and visual distractions. A distraction-reduced environment does not necessitate the student's testing in a private room, nor does it mean that an environment is completely distraction-free.

FIU_000929

In reviewing the information provided, it appears that HWCOM failed to provide testing accommodations to Nehme for low-weight assignments; referred to as quizzes and readiness assignments.

- Dr. Bonnin, Dr. Havas, Fortun, Dr. Obeso, Dean Jones and Santacruz admitted that the professional testing accommodations were not granted to any student at HWCOM. Fortun stated that there had never been a tangible student testing accommodations policy. Dr. Obeso stated that the professional testing was put in place by the previous administration. Out of concern, Dr. Obeso asked Dr. George Dambach about the testing accommodations for in-class assessments and was advised that, because of the minimal point value, these would not affect the final grade. However, Dr. Obeso shared that, after receiving student concerns, she had a conversation with Dr. Stephen Loynaz who advised her to change the name of the assignment from "quizzes" to "readiness assignment," which the college did. Dr. Obeso added that testing accommodations are important to the success of the students.

### 3) Was the exclusion, denial of benefits, or discrimination by reason of his disability?

READINESS ASSIGNMENTS: Students have a right to reasonable accommodations and faculty have a right to evaluate learning. Reasonable accommodations are not required if they fundamentally alter the nature of the activity in question. The goal of accommodating a "pop quiz/readiness assignments" is to ensure reasonable accommodation and maintain the integrity of the evaluation process, such that the accommodation does not fundamentally alter the evaluation process.

Testing accommodations are changes to the regular testing environment and services that allow students with disabilities to demonstrate their true aptitude or achievement level on standardized exams or other high-stakes tests.

It appears that HWCOM encountered difficulties in providing testing (quizzes/readiness assignments) accommodations as recommended by the DRC for students with disabilities due to scheduling conflicts. It is understood that the nature of the testing accommodations needed by the student (i.e., extended time, distraction-reduced setting, etc.), must be granted rather before, during or after class. Obeso indicated that the ADA committee decided that testing accommodations would not be provided for low-weight assignments. This protocol was in place during the time when Nehme was completing coursework at HWCOM. Niguidula, Director of the DRC, attests that it is the DRC's position that an appropriate accommodation should have been provided for quizzes and or Readiness Assignments. The label that was given to the low weight assignments is irrelevant. The denial to provide the accommodation was by reason of Nehme's disability.

MINIMUM DISTRACTION ROOM: Several witnesses attested to the space issues at HWCOM. According to the witnesses, minimum distraction rooms are selected based on room availability. Gavilan's stated the room where Nehme tested on March 2, 2020 for his High-Stake Psychiatry shelf exam did not meet the standards for a minimum distraction room, as communicated by the DRC, because of the presence of heavy foot traffic and noise in the surrounding areas. Nehme also stated that the activity in the hallway distracted him as he took his exam. Based on this information,

FIU_000930

IDEA believes that the lack of space was not a legitimate, nondiscriminatory reason for scheduling Nehme to test in a room that did not meet the standards of a minimum distraction room.

DRUG TESTING: Dr. Havas indicated in her statement that Nehme was selected for random drug testing because of behaviors that he had exhibited, attendance issues, and academic performance which resulted in an MSEPC hearing. Dr. Havas further commented that her decision to schedule Nehme for a drug test was to ensure that if asked at the MSEPC hearing, Nehme could confirm that substance use was not a factor in his change in behavior and academic performance. The HWCOM Student Handbook indicates that "additional testing may be required by HWCOM or its clinical affiliates at any time." Nehme's statement that he had to leave his pediatric rotation and report to Dr. Havas for a drug test and this caused him stress is simply an allegation. Nehme has failed to show that the drug testing was a result of his disability, where the requirement as outlined in the student handbook is a legitimate, nondiscriminatory reason for the request.

Nehme contends Havas did not explain the process for the drug testing, nor did she advise him of the reason that she selected him for drug testing. Havas contends she provided Nehme with the information. This is his word against her word and there is no external evidence to prove or disprove the allegation.

**FINDING**

Based on the totality of the circumstances of the investigation, there is sufficient evidence to support a violation of FIU-106 as it pertains to disability discrimination as outlined below in #1 and #2. However, there is insufficient evidence to support a violation as it pertains to #3. Therefore, the allegations are SUBSTANTIATED IN PART ONLY:

1) Lack of Accommodations for Readiness Assignments
   a. Unsubstantiated - Havas
      Substantiated - HWCOM
2) Providing Non-Compliant Minimal Distraction Rooms
   a. Unsubstantiated - Havas
   b. Substantiated - HWCOM
3) Improper Drug Testing – Unsubstantiated – Dr. Havas

**RETALIATON**

There is to be no retaliation against any person who has filed a complaint of discrimination or who provides information to the Office of Inclusion, Diversity, Equity, and Access (IDEA) to aid in the investigation of a complaint. Any attempt to penalize a student, employee, or agent for initiating a complaint or cooperating with the investigation through any form of retaliation, shall be treated as a separate allegation of discrimination.

**APPEAL**

Either party (Complainant and/or Respondent) may seek review of the findings by filing an appeal with the Vice President of Human Resources, El pagnier K. Hudson, within seven (7) business

FIU_000931

days of receipt of these findings. The request shall specify the basis for the appeal, and shall be based on one or more of the following:

i.     Related evidence that was not reviewed.
ii.    New evidence is available.
iii.   The factual evidence was insufficient to support the findings.

The request shall be written and shall set forth the issues to be considered in the appeal. Copies of the appeal shall be provided to the Director of Inclusion, Diversity, Equity and Access.

Shirlyon J. McWhorter, Esq.
Director & Title IX Coordinator
Inclusion, Diversity, Equity, and Access (IDEA)

FIU_000932

# EXHIBIT 1

FIU_000933

## I. COMPLAINANT INFORMATION

(any individual who alleges that they experienced discriminatory actions)

| | |
|---|---|
| **Name** | Elie Nehme |
| **Email** | enehm002@fiu.edu |
| **Mobile Phone** | (561) 386-9508 |
| **Employee/Panther ID** | 3121165 |
| **Gender** | Male |
| **Race/Ethnicity** | Middle Eastern |
| **Affiliation with FIU** | - Student |

**To be completed if you are an Employee:**

## II. NATURE OF COMPLAINT

| | |
|---|---|
| **Have you filed a federal complaint with the following agencies within the last two years? if so, check all that apply** | - I have not filed a federal complaint with the above listed agencies within the last two years |
| **Basis of Discrimination (check all that apply)** | - Disability<br>- Retaliation |

## III. RESPONDENT INFORMATION

(any individual or group who is being accused of engaging in discriminatory actions)

| | |
|---|---|
| **Name** | Nancy Havas |
| **Email** | nhavas@fiu.edu |
| **Phone** | (305) 348-9167 |
| **Division/Department** | Student Affairs |
| **Title** | Associate Dean for Student Services |
| **Date of Discriminatory Action** | Feb 24, 2020 |

## IV. DETAILS OF COMPLAINT

**Please provide a detailed description of the incident/concern that is being reported. Be as specific as possible by including date(s), description of incident(s), name of person(s) involved, and name(s) of witness(es). If additional space is needed, it is encouraged to attach supplementary pages or materials that may aid IDEA in the investigative process.**

On February 24, 2020, Dean Havas directed me via phone voicemail at 10:28 am and email invitation at 12:31 pm to meet with her at 2 pm the same day. The voicemail does not indicate why she wanted to meet and neither does the email invitation, apart from the vague subject line "check-in meeting."

This occurred while I was on my pediatrics rotation in the midst of taking care of patients. Dean Havas was fully aware of where I was: In her voicemail to me, Dean Havas states that she had contacted my Pediatric Clerkship Directors regarding the check-in meeting. The required meeting caused me not to attend a mandatory lecture.

The mandatory check in meeting culminated with what I was informed was a "random" drug test. To my knowledge, I am the only one in my clerkship to participate in a random drug test. Dean Havas tells me that she scheduled me for a random" drug test at the FIU Student Health Clinic without my knowledge.

FIU_000934

Dean Havas knew I was dealing with numerous stressors at that time, studying for a remediation Shelf Exam for

Psychiatry Clerkship, and that I receive testing accommodations for my disability.

The reason for this random drug test was never stated or clarified.

She never disclosed to me her systematic assessment which she thought was deserving of me having to do this test. In addition, she stated that if I refuse to take the test, I can be kicked out. Being forced to take this drug test in turn forced me to disclose the medicine I take for my illnesses, information that I would have rather kept private. Instead of helping me as it is her duty being a part of the Student Services, Dean Havas distracted me from my clerkship and the time I was supposed to be focusing on my remediation exam, as well as accused me of being on drugs. I was coerced and forced to take the "random" drug test with fear of retaliation and threat of dismissal. This was harassment resulting in a hostile environment.

According to FIU's HWCOM student handbook "Drug testing may be ordered by the Executive Associate Dean of Student Affairs or MSEPC, as applicable."
The Executive Associate Dean of Student Affairs is Dr. Karin Esposito. Dr. Nancy Havas is the Associate Dean for Student Services, and she is not part of MSEPC.
Dr. Esposito's name was not mentioned once, and I do not believe she ordered or even knew about this "random" drug test.

It is also mentioned in the handbook: "Findings on any drug test are reviewed by the Executive Associate Dean of Student affairs and discussed with the student"

On March 4, 2020, Dean Havas left me a voicemail stating that the results of the drug test were back and they did not find anything they did not expect. As per student handbook, the Executive Associate Dean of Student Affairs is tasked with discussing results of drug tests with student which was not the protocol that Dean Havas followed.
To my knowledge I have not given authorization to discuss results over the phone due to other family members having access to the phone and the voicemail system. Thus, Dean Havas did not follow due process in regards to my results. Most importantly, I was not provided with a copy of my results.

There has been a recurrent pattern of behavior from Dean Havas which I believe is an abuse of power to target students with disabilities.
I was treated unfairly and inappropriately pulled out of the hospital in the middle of taking care of patients in my Pediatric clerkship.

I feel humiliated and embarrassed in front of my peers and faculty. This student mistreatment has caused the adverse event of failing my Psychiatry Shelf Exam remediation and subsequently being called in front of MSEPC, who recommended an adverse dismissal. My disability has not limited my ability to perform but has made me a target for Dean Havas' student mistreatment.

**What are you seeking as a resolution to this complaint?**
A resolution to this complaint is to be treated with equality in order to graduate medical school with my class.

I affirm that, to the best of my knowledge, the information contained in this form is true and accurate. I understand that the filing of a complaint with IDEA does not extend the time for filing a complaint with an outside agency, or in a court of law.

**Date filed**                                    May 18, 2020

# EXHIBIT 2

FIU_000936

**TO:**          Adrian Jones
                 Assistant Dean for Student Affairs
                 Herbert Wertheim College of Medicine

**FROM:**        Stephen Peter Loynaz, Associate Director
                 Disability Resource Center

**SUBJECT:**     Request for Accommodations

**DATE:**        Tuesday, August 25, 2020


Under the Americans with Disabilities Act (ADAAA) as amended in 2008, student Nehme, Elie (PID: 3121165) has been qualified and is eligible for accommodations on the basis of disability.

The Disability Resource Center supports providing reasonable accommodations to the student on the basis of disability. The following accommodations requested by the student are to be considered by the College:

•   **50% Extra time on exams**

•   **Minimal Distraction Testing Room**


Sincerely,



Stephen Peter Loynaz
Associate Director/Access Consultant
Disability Resource Center
Florida International University

FIU_000937

# EXHIBIT 3

FIU_000938

**From:** Rodolfo Bonnin rbonnin@fiu.edu 🚩
**Subject:** RE: Disability Accommodation
**Date:** August 14, 2017 at 1:24 PM
**To:** Elie Nehme (Medical Student) enehm002@fiu.edu
**Cc:** Adrian Jones adjones@fiu.edu, Maria Santacruz msantacr@fiu.edu

Hi Elie,
  I have advised the assessment team and they will initiate your accommodation for the next exam. There is no requirement to inform your faculty about accommodations. Whenever a proctored test is coming up you will receive an e-mail from the Assessment and Testing department prior to the exam date notifying you of the exam and where you need to be.
Thanks
Dr. Bonnin

---

**From:** Elie Nehme (Medical Student)
**Sent:** Monday, August 14, 2017 12:02 PM
**To:** Rodolfo Bonnin <rbonnin@fiu.edu>
**Subject:** Disability Accommodation
**Importance:** High

Dear Dr. Bonnin,

I am e-mailing you with a sense of urgency to respectfully request a meeting to discuss the process of obtaining the approved disability accommodations. I am unsure if I should inform the course director for "BMS 6643 Integumentary System: The Skin", or if I automatically receive instructions from the testing center on when and where to go for taking the final exam which will be this coming Friday (8/18/17).

Thank you,

Elie.

# EXHIBIT 4

FIU_000940

# EXHIBIT 5

FIU_001037

FIU_001038

| Date | Exam Name | Standard Time | Student used |
|---|---|---|---|
| Aug-17 | | | |
| 18-Aug | BMS 6643 Final Exam | 72 min | 80 min |
| Sep-17 | | | |
| 1-Sep | BMS 6635 Midterm | 75 min | 128 min |
| Oct-17 | | | |
| 2-Oct | BMS 6634 Midterm | 97 min | 137 min |
| 16-Oct | BMS 6634 Final | 21 min | 24 min |
| 18-Oct | BMS 6071 Midterm | 76 min | 65 min ( extra time granted, not used) |
| 30-Oct | BMS 6632 Midterm | 52 min | 59 min |
| Nov-17 | | | |
| 28-Nov | BMS 6632 Final | 69 min | 67 min |
| Dec-17 | | | |
| 4-Dec | BMS 6637 Repro Diagnostic Reasoning Exam | 120 min | 180 min |
| 11-Dec | BMS 6637 Final | NBME Exam | |
| Jan-18 | | | |
| 3-Jan | BMS 6635 Final (make-up) | NBME Exam | |

LOA - From January-2018 to April -2018 and joined Class of 2021. Student was formerly Class of 2020.

| Date | Exam Name | Standard Time | Student used |
|---|---|---|---|
| Apr-18 | | | |
| Apr-20 | BMS 6066 Quiz 1 - Canvasmed | 12 min | 10 min (extra 6 min were granted but not used) |
| 9-Apr | BMS 6633 Anatomy Quiz 1 (8am-9am) | 60 min | 33 min ( extra time granted, not used) |
| 13-Apr | BMS 6066 Quiz 2 - Canvasmed | 12 min | 8 min (extra 6 min were granted but not used) |
| 20-Apr | BMS 6633 DXR Clinical Reasoning Exam | 60 min | 56 min ( extra time granted, not used) |
| 23-Apr | BMS 6633 Test 1 (8am-10am) | 90 min | 120 min |
| 30-Apr | BMS 6633 Anatomy Quiz 2 (9am-10am) | 60 min | 34 min ( extra time granted, not used) |
| May-18 | | | |
| May-18 | BMS 6066 Quiz 3 - Canvasmed | 12 min | 5 min (extra 6 min were granted but not used) |
| May-18 | BMS 6066 Quiz 4 - Canvasmed | 12 min | Did not take quiz (extra 6 min were granted but not used) |
| 18-May | BMS 6633 Test 2 (8am-10am) | 82 min | 85 min |
| 18-May | BMS 6066 Quiz 5 - Canvasmed | 12 min | 9 min (extra 6 min were granted but not used) |

| Date | Description | | |
|---|---|---|---|
| 21-May | BMS 6633 Final NBME & DXR Clinical Reasoning Exam (8am-12pm) | 90 min | 124 min |
| Jun-18 | | | |
| 4-Jun | BMS 6631 Midterm (8am-12pm) | 55 min | 86 min |
| 14-Jun | BMS 6016 Exam 1 (1pm-3pm) | 84 min | 88min |
| 15-Jun | BMS 6066 CAM Final (11am-12pm) | | |
| 18-Jun | BMS 6631 Final (8am-12pm) | 70 min | 59 min |
| Aug-18 | | | |
| 17-Aug | BMS 6643 Final (8am-10am) | 64 min | 88 min |
| 30-Aug | BMS 6067 Module due (CanvasMed) | 120 min | 100min (Extra 60min granted) |
| Sep-18 | | | |
| 4-Sep | BMS 6635 Anatomy (12:30pm-1:30pm) | 60 min | 90 min |
| | BMS 6635 Midterm (2:30pm-4:30pm) | 77 min | 116 min |
| | BMS 6635 Final NBME (8am-10am) | | |
| 17-Sep | BMS 6635 Final In-house (10:15pm-12pm) | 102 min | 80 min |
| Oct-18 | | | |
| 1-Oct | BMS 6634 Midterm (9am-11am) | 91 min | 136 min |
| 12-Oct | BMS 6634 DXR Clinical Reasoning Exam (8am-10am) | 90 min | 81 min |
| 15-Oct | BMS 6634 Final NBME and In-House (12:30pm-4pm) | 30 min | 33 min |
| 17-Oct | BMS 6071 Midterm (1pm-3pm) | 66 min | 53 min |
| 29-Oct | BMS 6632 Midterm (12:30pm-3pm) | 55 min | 35 min |
| Nov-18 | | | |
| 9-Nov | BMS 6632 Final (8am-12pm) | 64 min | 49 min |
| Dec-18 | | | |
| 3-Dec | BMS 6637 DxRx (9am-11am) | 150 min | 232 min |
| 10-Dec | BMS 6637 Final (9am-11am) | NBME | |
| Jan-19 | | | |
| 7-Jan | BMS 6638 Midterm (9:30am-12pm) | 65 min | 69 min |
| 23-Jan | BMS 6638 Final (8am-12pm) | 42 min | 38 min |
| Feb-19 | | | |
| 13-Feb | BMS 6636 Midterm (8am-12pm) | | |
| March | | | |
| 7-Mar | BMS 6636 Final (8am-12pm) | 108 min | 165 min |
| 8-Mar | BMS 6064 Final (10 am-12 pm) | 120 min | 130 min |
| 28-Mar | BMS 6016 Final (1pm-3pm) | 79 min | 78 min |

FIU_001039

FIU_001040

NBME

29-Mar | BMS 6840 Final (9am-12pm)

# EXHIBIT 6

FIU_001041

## COLLEGE OF MEDICINE ASSESSMENT DEPARTMENT ACCOMMODATION PROCEDURE

**Accommodation Set-Up and Notification Procedures**

- Accommodation notification sent via e-mail from the Disability Resource Center to Adrian Jones, JD, Nancy Havas, MD, Rodolfo Bonnin, PhD, Maria Santacruz.
  A confirmation email is sent to confirm that the acomodations have been implemented and sent from the Assessment team (Rodolfo Bonnin and Maria Santacruz)
- Bonnin/Santacruz review letter for accommodation specifics (time allowed, additional requirements,etc)
- Assessment department places student on accommodation list
- Assessment department sends accommodation notification to student (Appendix 1)
- Assessment department initiates accommodation set up: ExamSoft/NBME extra time (Appendix 2)
- Assessment department notifies course coordinators about new student accommodation (Course Coordinators are provided with a list of student names and the assessments that qualify for accommodation) (Appendix 3)

**Proctored Exams Procedure**

- Two days prior to exam administrations: accommodation students are notified via e-mail about the date, time, and location of the exam administration. E-mails are stamped "Request a Read Receipt" – Notification asks students to reply to e-mail and confirm accommodation attendance (Appendix 4).
- Assessment department coordinate accommodation date, location, time, and personnel to assure coverage. Supplies for exam administration and IT support.

**Coordinator Supervised Assessments**

- Prior to the commencement of every course, course coordinators are provided with a list of student names and the assessments that qualify for accommodation (Appendix 5)
- Assessment department notifies course coordinators when new student accommodations are received
- Assessment department contacts each student (cc's coordinator) about the upcoming accommodated assessment with date, location and requirements for assessment. E-mails are stamped "Request a Read Receipt."  Notification asks students to reply to e-mail and confirm accommodation attendance (Appendix 6)
- Email notification send to students for pop-up iRAT (Appendix 7).
- Email notification send to students for a take home exam or assignment (appendix 8).
- Assessment administered

**Quality Assurance**

Mandatory Monthly Accommodation Committee Meetings

- At each meeting, a member from the assessment department reviews the list of current P1-3 students with accommodation awards.
- Review of students includes accommodation status, deadline, temporary status, requests, any difficulties, etc.
- Review of exam administrations (issues with student tardiness, quiet locations, equipment, IT).
- Set up a meeting with each student who receives accommodations initially and then annually thereafter, to review the accommodations and send them an official notification from HWCOM DRC highlighting all the accommodations, expectations and pathways for success.
- Meet quarterly with the University DRC to discuss any issues or concerns and invite them to the HWCOM DRC meetings for better collaboration efforts.

**Commented [CR1]:** Do we want to state anything about "immediate implementation for exams even if other requirements cannot be immediately implemented" e.g. in case of confusion or need for more clarity etc

1

*Attachments*

**APPENDIX 1**

Email notification send to student to inform of special accommodations procedures.

<u>**Subject**</u>: Testing Accommodations

Dear Student,

As it pertains to your DRC approved accommodations, please note that you will be receiving two (2) email communications regarding upcoming exams. One of the emails will be sent to everyone in the class (Listserv) the other email will be directed to you with specific instructions for your scheduled exam. It will say "Exam Accommodation Notice" in the subject.  The content of the email will state time and location for your exam. Please note when possible we schedule your exam at the same time as your classmates. However, due to your schedule, availability and resources, we may need to  start the special accommodations exams at a different time.

Please note you should be receiving this email approximately two business days before the exam. Should you not receive it please feel free to reach out to us at com-test@fiu.edu.

Regards,

Assessment & Testing

Office of Medical Education



2

**APPENDIX 2**

**Sample NBME adding additional time to a student profile**



**Sample ExamSoft adding additional time to a student profile**



3

FIU_001044

**APPENDIX 3**

<span style="color:red">Email notification send to course coordinators identifying accommodation students and assessments</span>

**Assessment Type and Accommodation Status**

| Course No. | Course Name | Quiz - In Class Activity | Weight (%) | SA Decision |
|---|---|---|---|---|
| BMS 6633 | Cardiovascular and Respiratory Systems | EBM Activity | 0.25 | YES |
| | | Physiology Activity (Pre)Readiness Assignment | 1 | No |
| | | Physiology Activity (Post) Readiness Assignment | 1 | No |
| | | Genetics Readiness (Pre) Readiness Assignment | 0.5 | No |
| | | Genetics Readiness (Post) Readiness Assignment | 0.5 | No |
| | | Antibiotics Activity (Pre) Readiness Assignment | 1.25 | No |

| PID | Last Name | First Name | Accommodations | Active | Grad Year |
|---|---|---|---|---|---|
| 1780438 | Doe | Juan | 25% Extra Time, Minimal Distraction Testing Room | Yes | 2020 |
| 2975465 | Jones | Arianna | 50% Extra Time, Minimal Distraction Testing Room | Yes | 2020 |
| 2711523 | Johns | Edna | 50% Extra Time, Minimal Distraction Testing Room | Yes | 2020 |
| 3280720 | Don | Alisha | 25% Extra Time, Minimal Distraction Testing Room | Yes | 2020 |
| 3117153 | Raul | Sydney | 25% Extra Time, Minimal Distraction Testing Room | Yes | 2020 |

4

**APPENDIX 4**

Email notification send to students with special accommodation two days before proctored exams.

***Please find below specific instructions for your scheduled exam as it pertains to your individual DRC approved accommodations.***

Good morning Students,

The BMS 6603 Pathology Quiz 4 will take place on **Monday February 3, 2020** in room GL 482 at 8:30am. **Please arrive at least 15 minutes before start time; the exam will commence promptly. As per policy, once the exam starts students will not be allowed to enter the room to take the examination.**

**Should you have any questions or concerns regarding this exam administration please feel free to contact us by replying to this email.**

Please confirm your attendance by replying to this email.

- This exam will be administered through **Examplify.** Please remember to bring your panther ID number and Examplify password.

On the day of the exam **testing computers will be distributed.**

- ❖ As per exam procedure once you enter the room place your bags and/or personal items in your designated area.

- ✓ Please be considerate of your fellow classmates **by arriving on time**, starting the exam when instructed, limiting food consumption and exiting quietly once you have finished your exam
- ✓ **Once you have completed your exam, please be mindful of noise**. Out of consideration for those still taking the exam, please, **do not group outside of the lecture hall** (classroom).

**The following items are prohibited during all examinations:**

- o iPads/tablets
- o Cell Phones – Make sure that your cellphones are off during the exam and inside backpacks/bags.
- o Paging devices
- o iPod, radio, or media devices
- o Calculators (a calculator is built into the exam for examinee use)
- o Recording/filming devices
- o Reference materials (books, notes, papers)
- o Watches with alarms, computer or memory capability
- o Headwear (religious headwear is allowed)
- o iWatch, Smartwatch or any derivative
- o Headphones are prohibited– wireless or wired. Please note you will be provided with earplugs.
  - o If need be, you may use noise cancelling ear muffs, however these must be approved and registered by a proctor prior to the commencement of the exam.

***Always protect your answers and please remember that the content of the exam should remain with you alone in order to comply with HWCOM Honor Code policy and expectation of professional responsibility***

- • Test administrators are required to report any irregular, improper or disruptive behavior. Irregular, improper or disruptive behavior is any behavior that undermines, disrupts or threatens the integrity or validity of the examination administration. Examples of irregular or improper behavior include, but in no way is limited to: giving or obtaining information or aid, looking at the test material of others, bringing unauthorized items into the examination room, failing to comply with time limits or instructions or other improper behaviors.

Testing & Assessment

-----------------------------------------------------------------------------------------------------------------

5

**APPENDIX 5**

Email notification send to students with special accommodation at the beginning of each course.

Good afternoon Students,

For the course BMS 6840 Nervous System and Behavior II the following activities:

- Final NBME
- Final In-House

Will conform to your individual DRC approved accommodations as it relates to individually prescribed additional time and minimal distraction testing room.

As you know before each exam you will be receiving two (2) email communications regarding upcoming exams. One of the emails will be sent to everyone in the class (Listserv) the other email will be directed to you with specific instructions for your scheduled exam. It will say "Exam Accommodation Notice" in the subject.  The content of the email will state time and location for your exam. Please note when possible we schedule your exam at the same time as your classmates. However, we may need to  start the special accommodations exams at a different time due to your schedule, availability and resources.

Please note you should be receiving this email approximately two business days before the exam. Should you not receive it please feel free to reach out to us at com-test@fiu.edu.

Regards,

----------------------------------------------------------------------------------------------------------------------------------------------

6

**APPENDIX 6**

Email notification send to students with special accommodations for makeup and remediation exams:

Good afternoon Student Name:

Please be advised that you have been scheduled for the <u>BMS 6632 Endocrine System NBME & In-house Final make-up Exam.</u> The exam will take place on <mark>Tuesday November 12, 2019 at 12:30pm in room GL (Green Library) 482.</mark> **This room can be quite cold, so please dress accordingly.**

<mark>**Please confirm your attendance by replying to this email.**</mark>

**Should you have any questions or concerns regarding this exam administration please feel free to contact us by replying to this email.**

***This session conforms to your individual DRC approved accommodations.***

Regards,



Assessment & Testing

Office of Medical Education

7

**APPENDIX 7**

<span style="color:red">Email notification send to students with special accommodations for pop-up iRAT.</span>

Good afternoon Students,

 In order to comply with your individual DRC approved accommodations, please report to room **AHC 2 460A tomorrow January 17th 2020 at 10.00am** for a graded activity for the course **BMS 6880 Clinical Epidemiology and Quantitative Research.**

**Please arrive on time, we will commence promptly.**

Please note that for the remainder of the BMS 6880 Clinical Epidemiology and Quantitative Research you must be at FIU at least one hour before the class is set to start. On specific days in which there will be an iRAT you will receive an email message prior to class commencement with instructions on how to proceed.

Should you have any questions or concerns please feel free to contact us by replying to this email or your course coordinator included in this communication.

Regards,

Testing & Assessment

Office of Medical Education



---

Good morning Students,

In order to comply with  your individual DRC approved accommodations, please report to room **AHC 2 460A today Friday, February 7th 2020 at 10.00am** for a graded activity for the course **BMS 6880 Clinical Epidemiology and Quantitative Research.**

**Please arrive on time, we will commence promptly.**

 Should you have any questions or concerns please feel free to contact us by replying to this email or your course coordinator included in this communication.

Regards,

Testing & Assessment

Office of Medical Education

8

-------------------------------------------------------------------------------------------------------------------------------

**APPENDIX 8**

Email notification send to students with special accommodations for a take home exam or assignment.

Good afternoon Students,

The BMS 6827 Foundations for the Community-Engaged Physician **Midterm Take-Home** Exam due on Friday 12/6, conforms to your individual DRC approved accommodations as it relates to individually prescribed additional time.

Should you have any questions or concerns regarding this exam administration please feel free to contact us by replying to this email or your course coordinator included in this communication.

Regards,

Testing & Assessment

Office of Medical Education



----------

Good afternoon Students,

The BMS 6636 Nervous System and Behavior I Checkpoint Quiz 1, 2, 3 and 4, comply with your individual DRC approved accommodations as it relates to individually prescribed additional time.

Should you have any questions or concerns regarding this administration please feel free to contact us by replying to this email or your course coordinator included in this communication.

Regards,

Testing & Assessment

Office of Medical Education



9

# EXHIBIT 7

FIU_001051

| Created on | Student | Reason For Request | CourseFirstDT2 | CourseLastDT | Period | Provisionally Approval | Decision | Final Decision Comments | Clerkship |
|---|---|---|---|---|---|---|---|---|---|
| 10/12/16 12:43 PM | Elie Nehme (Medical Student) | Illness | 10/12/2016 | 10/12/2016 | Period 1 | Automatic OSA Approval | | | |
| 11/18/16 1:14 PM | Elie Nehme (Medical Student) | Health / Illness (non-acute) | 11/21/2016 | 11/22/2016 | Period 1 | Need more documentation | Approved | | |
| 12/5/16 8:53 AM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 12/5/2016 | 12/5/2016 | Period 1 | Need more documentation | Approved | | |
| 2/14/17 10:04 AM | Elie Nehme (Medical Student) | Illness | 2/14/2017 | 2/14/2017 | Period 1 | Automatic OSA Approval | | | |
| 3/13/17 6:43 PM | Elie Nehme (Medical Student) | Illness | 3/13/2017 | 3/15/2017 | Period 1 | Automatic OSA Approval | | | |
| 4/19/17 3:38 PM | Elie Nehme (Medical Student) | Illness | 4/19/2017 | 4/19/2017 | Period 2 | Automatic OSA Approval | | | |
| 6/1/17 11:29 AM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 5/31/2017 | 5/31/2017 | Period 2 | Automatic OSA Approval | | | |
| 6/6/17 11:53 AM | Elie Nehme (Medical Student) | Illness | 6/6/2017 | 6/6/2017 | Period 2 | Automatic OSA Approval | | | |
| 6/7/17 1:58 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 6/9/2017 | 6/9/2017 | Period 2 | Need more documentation | Approved | | |
| 6/19/17 1:36 PM | Elie Nehme (Medical Student) | Illness | 6/19/2017 | 6/19/2017 | Period 2 | Automatic OSA Approval | | | |
| 9/1/17 10:19 AM | Elie Nehme (Medical Student) | Illness | 9/1/2017 | 9/1/2017 | Period 2 | Automatic OSA Approval | | | |
| 10/11/17 9:21 AM | Elie Nehme (Medical Student) | Illness | 10/11/2017 | 10/11/2017 | Period 2 | Need more documentation | Approved | | |
| 10/12/17 1:57 PM | Elie Nehme (Medical Student) | Illness | 10/12/2017 | 10/12/2017 | Period 2 | Automatic OSA Approval | | | |
| 10/15/17 11:17 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 10/16/2017 | 10/16/2017 | Period 2 | Automatic OSA Approval | | | |
| 11/5/17 11:36 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 11/1/2017 | 11/3/2017 | Period 2 | Automatic OSA Approval | | | |
| 11/12/17 8:05 PM | Elie Nehme (Medical Student) | Illness | 11/13/2017 | 11/13/2017 | Period 2 | Need more documentation | Approved | | |
| 11/30/17 5:26 PM | Elie Nehme (Medical Student) | Professional activity (e.g. professional conference, representing HWCOM, summer activity) | 2/1/2018 | 2/2/2018 | Period 2 | Forward to Course Director/Coordinator | Cancelled | As per your request, this has been cancelled. | |
| 12/11/17 9:12 AM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 12/8/2017 | 12/8/2017 | Period 2 | Automatic OSA Approval | | | |
| 12/15/17 4:53 PM | Elie Nehme (Medical Student) | Illness | 12/11/2017 | 12/11/2017 | Period 2 | Automatic OSA Approval | | | |
| 5/1/18 6:55 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 4/30/2018 | 4/30/2018 | Period 2 | Automatic OSA Approval | | | |
| 6/11/18 3:45 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 6/6/2018 | 6/6/2018 | Period 2 | Automatic OSA Approval | | | |
| 11/6/18 1:12 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 11/6/2018 | 11/6/2018 | Period 2 | Automatic OSA Approval | | | |
| 1/10/19 10:24 AM | Elie Nehme (Medical Student) | Illness (acute) | 1/10/2019 | 1/10/2019 | Period 2 | Automatic OSA Approval | | | |
| 1/22/19 11:01 AM | Elie Nehme (Medical Student) | Illness (acute) | 1/23/2019 | 1/23/2019 | Period 2 | Need more documentation | Approved | | |
| 3/6/19 2:55 PM | Elie Nehme (Medical Student) | Illness (acute) | 3/6/2019 | 3/6/2019 | Period 2 | Automatic OSA Approval | | | |
| 3/18/19 7:32 AM | Elie Nehme (Medical Student) | Illness (acute) | 3/18/2019 | 3/18/2019 | Period 3 | Automatic OSA Approval | | | |
| 5/31/19 1:27 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 5/31/2019 | 5/31/2019 | Period 3 | Automatic OSA Approval | | | Internal Medicine |
| 7/23/19 10:50 PM | Elie Nehme (Medical Student) | Illness (acute) | 7/23/2019 | 7/23/2019 | Period 3 | Automatic OSA Approval | | | Surgery |
| 8/14/19 12:40 AM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 8/14/2019 | 8/14/2019 | Period 3 | Automatic OSA Approval | | | Family Medicine |
| 8/22/19 10:07 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 8/23/2019 | 8/23/2019 | Period 3 | Automatic OSA Approval | | | Family Medicine |
| 9/13/19 12:54 PM | Elie Nehme (Medical Student) | Accident | 9/13/2019 | 9/13/2019 | Period 3 | Need more documentation | Approved | | Family Medicine |
| 10/15/19 5:26 PM | Elie Nehme (Medical Student) | Illness (acute) | 10/16/2019 | 10/16/2019 | Period 3 | Automatic OSA Approval | | | Neurology |
| 12/9/19 8:53 PM | Elie Nehme (Medical Student) | Illness (acute) | 12/9/2019 | 12/9/2019 | Period 3 | Automatic OSA Approval | | | Obstetrics and Gynecology |
| 1/7/20 2:13 PM | Elie Nehme (Medical Student) | Illness (acute) | 1/7/2020 | 1/7/2020 | Period 3 | Automatic OSA Approval | | | Psychiatry |
| 2/5/20 2:11 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 2/5/2020 | 2/5/2020 | Period 3 | Automatic OSA Approval | | | Pediatrics |
| 2/18/20 2:38 PM | Elie Nehme (Medical Student) | Other unplanned event/emergency | 2/18/2020 | 2/18/2020 | Period 3 | Automatic OSA Approval | | | |

FIU_001052

# EXHIBIT 8

FIU_001053



*Privileged and Confidential*

April 16, 2020

Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418

 *<<Via email to enehm002@fiu.edu >>*

Re: Medical Student Evaluation and Promotion Committee Recommendation

Dear Mr. Nehme:

The Medical Student Evaluation and Promotion Committee (MSEPC) met on Thursday, April 9, 2020, to consider your overall performance to date as a medical student in accordance with the *HWCOM Medical Student Handbook* and FIU policies.

Enclosed herewith are the findings and adverse recommendations of the MSEPC.  You have the right to appeal the adverse recommendations to the Appeals Committee in accordance with the procedures set forth in the *HWCOM Medical Student Handbook (see F. Appeals Process, page A-14)*. The request for appeal must be submitted in writing to the Executive Associate Dean for Academic Affairs within ten (10) business days of the date of this notification.  It must be based on one or more of the following grounds for appeal:

1.  Material failure to provide a student with his or her due process rights as set forth in the *HWCOM Medical Student Handbook* that affected the outcome of the hearing.  Appeals based on this ground will be limited solely to a review of the record of the hearing.
2.  New information, which was not available at the time of the hearing and therefore could not be presented.  The student must show that the new information was likely to have substantially affected the outcome of the hearing.  The nature of the information must be described in full detail in the written request, including an explanation of the reason the information could not have been presented at the hearing.
3.  The severity of the sanction is clearly excessive in light of the nature of the offense and the totality of the student's academic performance including indicia of professionalism.

Sincerely,

H Tempest

Helen Tempest, PhD.
Acting Chair, Medical Student Evaluation and Promotion Committee

HERBERT WERTHEIM COLLEGE OF MEDICINE

Modesto A. Maidique Campus, 11200 S.W. 8th St., AHC II 693, Miami, FL 33199 • Tel: 305.348.0570 • Fax: 305.348.0123 •
medicine.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1.800.955.8771

# FIU | Herbert Wertheim College of Medicine

## MEMORANDUM

**Privileged and Confidential Education Record**
**Protected by Federal Education Rights and Privacy Act**

Date:        April 16, 2020

To:          Elie Nehme

From:       Helen Tempest, PhD
            Acting Chair, Medical Student Evaluation and Promotion Committee

CC:          Carolyn D. Runowicz, MD
            Executive Associate Dean for Academic Affairs
            Chair, Appeals Committee

            Karin Esposito, MD, PhD
            Executive Associate Dean for Student Affairs

Subject:     Medical Student Evaluation and Promotion Review

The Medical Student Evaluation and Promotion Committee (MSEPC) conducted a hearing on Thursday, April 9, 2020, to consider the academic performance of Elie Nehme. The meeting was held virtually via Zoom. The student attended.

**Facts:**

Mr. Nehme is a period 3 medical student on academic probation. He failed the Psychiatry shelf exam and the remediation exam and as a result failed the Psychiatry Clerkship.

Mr. Nehme stated that he understood he was appearing before the MSEPC because he did not pass the Psychiatry Clerkship. Mr. Nehme stated that he prepared very well prior to taking the Psychiatry Clerkship remediation. However, the day of the psychiatry shelf exam retake, his neighbor's apartment caught on fire and he waited at the apartment complex unsure if his apartment would be next. He stated that thankfully his apartment was fine and that he was able to make it on time to his scheduled retake. Mr. Nehme stated that the fire did stress him out and that it affected his performance.

The committee commented that Mr. Nehme showed a pattern of poor performance in his Clerkship shelf exams. The committee stated that Mr. Nehme had to take the Family Medicine, Surgery, and Neurology shelf exam twice and that he scored low on the Obstetrics and Gynecology Shelf exam. Mr. Nehme stated that the day of his Surgery Clerkship Shelf exam, he received a call that his dad was being rushed to the hospital and that call affected his performance. Mr. Nehme stated that he acknowledges his weak points. He said that he has been preparing for the USMLE Step 1 exam by studying and targeting his weak points. Mr. Nehme reported that he planned to reschedule his USMLE Step 1 exam if he believed he was insufficiently prepared to take it.

When asked why he did not request an excused absence for the Psychiatry Shelf Exam remediation, as he had previously for exams prior to entering into Period 3. Mr. Nehme stated that he was not aware he could request an excused absence for shelf exams. He also stated that he was unaware of the process to request an excused absence last minute prior to Psychiatry Clerkship remediation exam.

Mr. Nehme was asked in hindsight what he would have done differently, and he stated that he would not have changed anything. Mr. Nehme believes he used all the correct resources available and that he prepared the best he could for each shelf exam. He also reported that he felt well prepared going into the Psychiatry Clerkship remediation exam.

**History:**

MSEPC Hearing #1 / July 27, 2017

Mr. Nehme recently failed *Cardiovascular and Respiratory Systems* (BMS 6633) and he failed the remediation.   He previously failed *Genes, Molecules and Cells* (BMS 6001) and passed the remediation.  Mr. Nehme reported he had health issues and family problems during his first year of medical school.  He reported he has been meeting with the Wellness Center to work on his processing speed.  He stated he was verbally informed he could benefit from being granted additional time to take exams.  He is also working with Learning Specialist, Dr. Winnie Chang.  Mr. Nehme was allowed to continue with the class of 2020.  He was required to meet with Dr. Toonkel to develop a plan for self-study of *Cardiovascular and Respiratory Systems* (BMS 6633) in preparation for taking the course again in 2018 with the class of 2021, thus delaying his entry into Period 3.  He was placed on academic probation.

MSEPC Hearing #2 / March 8, 2018

Mr. Nehme failed *System Based Practice* (BMS 6067).  A Professionalism Incident Report (PIR) was filed on December 15, 2017 by Dr. Vivian Obeso for multiple unexcused absences across courses, multiple requests to delay exams, and a professionalism issue regarding a quiz in *Reproductive Systems* (BMS 6637) (see attached PIR for details).  Mr. Nehme stated that he experienced medical problems that interfered with his ability to attend class.  He is currently on a Medical Leave of Absence effective January 18, 2018; however, he waived his right to delay the MSEPC hearing until after he returns.  He has been meeting with a neurologist and pain management physician and is feeling much better.  He stated he is ready to return to medical school in early April if he is allowed the opportunity to repeat Period 2. Mr. Nehme was allow to repeat Period 2 joining the class of 2021 and must remain on academic probation.

**Findings**:

After discussion, the MSEPC made the following findings:

1.  Mr. Nehme's academic performance continues to be of grave concern. He has failed Genes, Molecules and Cells (BMS 6001), Cardiovascular and Respiratory Systems (BMS 6633) and failed the remediation, he has failed System Based Practice (BMS 6067), and

failed the Psychiatry Clerkship (MDC 7830). In addition, he has shown poor performances in multiple Clerkship Shelf exams.

2. There is a pattern of repeated academic failures, despite mitigating circumstances.

3. Despite Mr. Nehme's poor academic performance, he was unable to articulate changes he could make to improve his academic performance.

**Adverse Recommendations:**

The following recommendations are adverse recommendations. The definition of an adverse recommendation is, "[a]ny MSEPC recommendation arising out of a medical student's failure to meet academic requirements or Professionalism Standards; an Adverse Recommendation mandates that a student take specific actions or refrain from taking specific actions." (HWCOM Medical Student Handbook, Appendix B Glossary)

1. Mr. Nehme should be given the opportunity to voluntarily withdraw from medical school. If he does not elect to voluntarily withdraw, he will be involuntarily withdrawn from the HWCOM.  Mr. Nehme is not eligible to reapply for admission to HWCOM.

**FIU** FLORIDA
INTERNATIONAL
UNIVERSITY

Privileged and Confidential

March 15, 2018

Mr. Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL  33418-8178
561-386-9508

*<<Via email to enehm002@fiu.edu >>*

Re: Medical Student Evaluation and Promotion Committee Recommendation

Dear Mr. Nehme:

The Medical Student Evaluation and Promotion Committee (MSEPC) met on Thursday, March 8, 2018 to consider your overall performance to date as a medical student, in accordance with the College of Medicine Student Handbook and FIU policies.

Enclosed herewith are the findings and recommendations of the MSEPC.  You will have the right to appeal the determination in accordance to the 2017-2018 Student Handbook.  The sole grounds for appeal are as follows:

1.  Material failure to provide a student with his or her due process rights as set forth in the Student Handbook which affected the outcome of the hearing.  Appeals based on this ground will be limited solely to a review of the record of the hearing.

2.  New information, which was not available at the time of the hearing and therefore could not be presented.  In addition, the student must show that the new information could have substantially affected the outcome of the hearing.  The nature of the information must be described in full detail in the appeal letter including an explanation regarding the reason the information could not have been presented at the hearing.

3.  The severity of the sanction is clearly excessive in light of the nature of the offense and the totality of the student's academic performance including indicia of professionalism.

HERBERT WERTHEIM COLLEGE OF MEDICINE

Modesto A. Maidique Campus, 11200 S.W. 8th St., AHC II 693, Miami, FL 33199 • Tel: 305.348.0570 • Fax: 305.348.0123 •
medicine.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1.800.955.8771



Per the Student Handbook, you have an opportunity to meet with the Chair of the Appeals Committee, Executive Associate Dean for Academic Affairs Carolyn Runowicz, MD or her designee to clarify the grounds for appeal however, a meeting is not mandatory.  If you would like a meeting, this request must be in writing and received by Dr. Runowicz within three (3) days of the date that you file the appeal.

Sincerely,

Sergio Gonzalez-Arias, MD, PhD
Chair, Medical Student Evaluation and Promotion Committee

**HERBERT WERTHEIM COLLEGE OF MEDICINE**

Modesto A. Maidique Campus, 11200 S.W. 8th St., AHC II 693, Miami, FL 33199 • Tel: 305.348.0570 • Fax: 305.348.0123 •
medicine.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1.800.955.8771



**Herbert Wertheim
College of Medicine**

## MEMORANDUM

**Privileged and Confidential Education Record
Protected by Federal Education Rights and Privacy Act**

| | |
|---|---|
| Date: | March 15, 2018 |
| To: | Elie Nehme |
| From: | Sergio Gonzalez-Arias, MD, PhD |
| | Chair, Medical Student Evaluation and Promotion Committee |
| cc: | Carolyn D. Runowicz, MD |
| | Executive Associate Dean for Academic Affairs |
| | Chair, Appeals Committee |
| | Karin Esposito, MD, PhD |
| | Interim Executive Associate Dean for Student Affairs |
| Subject: | Medical Student Evaluation and Promotion Review |

The Medical Student Evaluation and Promotion Committee (MSEPC) conducted a hearing on Thursday, March 8, 2018, to consider the academic performance of Elie Nehme. The student attended.

**Facts:**

Mr. Nehme failed *System Based Practice* (BMS 6067). A Professionalism Incident Report (PIR) was filed on December 15, 2017 by Dr. Vivian Obeso for multiple unexcused absences across courses, multiple requests to delay exams, and a professionalism issue regarding a quiz in *Reproductive Systems* (BMS 6637) (see attached PIR for details). Mr. Nehme stated that he experienced medical problems that interfered with his ability to attend class. He is currently on a Medical Leave of Absence effective January 18, 2018; however, he waived his right to delay the MSEPC hearing until after he returns. He has been meeting with a neurologist and pain management physician and is feeling much better. He stated he is ready to return to medical school in early April if he is allowed the opportunity to repeat Period 2.

**History:**

MSEPC Hearing #1 / July 27, 2017

Mr. Nehme recently failed *Cardiovascular and Respiratory Systems* (BMS 6633) and he failed the remediation. He previously failed *Genes, Molecules and Cells* (BMS 6001) and passed the remediation. Mr. Nehme reported he had health issues and family problems during his first year of medical school. He reported he has been meeting with the Wellness Center to work on his processing speed. He stated he was verbally informed he could benefit from being granted additional time to take exams. He is also working with Learning Specialist, Dr. Winnie Chang. Mr. Nehme was allowed to continue with the class of 2020. He was required to meet with Dr. Toonkel to develop a plan for self-study of *Cardiovascular and*



**Herbert Wertheim
College of Medicine**

*Respiratory Systems* (BMS 6633) in preparation for taking the course again in 2018 with the class of 2021, thus delaying his entry into Period 3. He was placed on academic probation.

**Findings:**

After discussion, the MSEPC made the following findings:

1. Mr. Nehme's academic performance is of serious concern.

**Recommendations:**

1. Mr. Nehme will be allowed to repeat Period 2 joining the class of 2021.

2. Any further course failure or continued poor academic performance will trigger review by the MSEPC with the possibility of adverse recommendations, including dismissal from medical school.

3. Mr. Nehme will remain on academic probation as per the HWCOM student handbook guidelines. Per the HWCOM student handbook, the student will remain on probation through the end of the academic period in which he or she was placed on probation and through the following academic period.

4. He must continue to seek advice from the HWCOM Learning Specialist and utilize available resources and supportive services such as the Wellness Center and tutoring.

5. It is strongly recommended that the student refrain from participating in extracurricular activities other than debt management counseling, financial planning, career and professional counseling, health and wellness programs, student support services, and Panther Learning Communities.

6. He must stay in close contact with his academic advisor. The frequency of contact should be no less than quarterly.

Rec'd 12.15.17

#  Professionalism Incident Report

## Details

**Location of Incident**
Period 2

**Date of Incident**
12/15/2017 12:55:00 PM

**Summary of Incident**
Student had multiple issues identified after our mid-period 2 review session. 1. Multiple unexcused absences across courses 2. Multiple request to delay exam across course 3. Professionalism issue regarding a quiz in Repro

**Details of Incident**
See attached forms from the reporting faculty: Dr. Obeso Dr. Toonkel Dr. Tempest

## Person of Concern

**Fist Name**
Elie

**Last Name**
Nehme

**Classification**
Student

**Phone**

**Email**
enehm002@fiu.edu



## Report Submitter

**First Name**
Vivian

**Last Name**
Obeso

**Email**
vobeso@fiu.edu

**Phone**
305-323-3496

## Incident Report Status

Pending Review

Details: Submitted

## Supporting Documents

Submitter Documents
- EN.Repro Course H.Tempest.Elie Nehmi.docx
- E.N.Period 2 mid mtg.Obeso.violation. E.Nehmie.docx
- E.N.Period 2 Director.RToonkel.ElieNehmi.docx

Rec'd 12.15.17

## Person of Concern Response

Dear Doctors Toonkel, Obeso, and Tempest, I have been going through medical circumstances which occasionally cause me to be tardy. This is not indicative of my character and I will do my utmost to mitigate the concerns mentioned in the Incident Report. I apologize for any inconvenience this may have caused, and if I have given the impression of an unprofessional attitude. I do not expect this to be a continuing problem, and I will make sure to be clearer in my communication with my instructors. Respectfully, Elie.

FIU_001063

Dear Dr. Toonkel,

We are just wrapping up the BMS6637 Reproductive Systems course and we have noticed an alarming pattern of unprofessional behavior throughout the course for one student in particular, Mr. Elie Nehme.

Mr. Nehme, has missed multiple mandatory sessions throughout the course including the final NBME exam, or failed mandatory activities due to extreme tardiness. As of yet no excused absences for these sessions have been submitted. Details provided below:

| Wednesday, November 15, 2017 | |
|---|---|
| ANATOMY LAB | |
| Elie Nehme | Unexcused |

| Wednesday, November 22, 2017 | |
|---|---|
| CASE STUDY CBL 3 & 4 | |
| Elie Nehme | Unexcused |

| Wednesday, November 29, 2017 | |
|---|---|
| CASE STUDY CBL 5 | |
| Elie Nehme | Unexcused * |

* He may have also been absent for CBL 6 but the facilitator could not verify

| Thursday, December 7, 2017 | |
|---|---|
| CASE STUDY CBL 7 & 8 | |
| Elie Nehme | Unexcused Absence was 15 minutes late to CBL 7, barely participated in CBL 7 or 8, made a single contribution in both |

| Monday, December 11, 2017 | |
|---|---|
| FINAL EXAM | |
| Elie Nehme | Unexcused Absence |

Furthermore, on December 6, 2017 we held three back-to-back mandatory sessions which Mr. Nehme was late for, or not in attendance for significant periods of time. Details are provided below:

1) 8-10 am Pregnancy TBL: Mr. Nehme walked into the session in AHC2-170 at 9:15 through the back door with his bag etc. and proceeded to sit at the back on the floor, (observed by myself, Natalie Dwarika, and Lleti Aleman). At this point he had missed the in class IRAT quiz administered through CanvasMed and the in class GRAT quiz. It is understood and outlined in the syllabus that TBL IRAT and GRAT quizzes are to be taken in class at the beginning of the session unless the syllabus indicated the IRAT is to be taken prior to the session. I instructed Mr. Nehme immediately to find a group to work through the application exercises. Thirty minutes later I still found him sat on the floor at the back of the class, when I asked him why he had not joined a group he told me he was looking for his assigned group (no groups were assigned for this session). Therefore, he did not work on the application exercises for this session.

2) 10-11 am EBM: Mr. Nehme was missing for at least 25 minutes of this 1 hour session, the coordinators and I noticed at 10:20 that he was not in the room and he did not return back to his group until 10:45, we did not see him leave class except during the break at 10 am.

3) 11-12 pm Contraception TBL: He left at the 11 am break and returned back to class at 11:10

At the conclusion of the morning sessions Mr. Nehme, came to speak to me to apologize for being late, he told me that his father was sick and that he had to speak to his father's doctors which is why he was late. Despite this Mr. Nehme somehow managed to find the time to take the on-line CanvasMed pregnancy IRAT quiz that was supposed to be taken in class (quiz was not password protected but was only available to take online between 8:00-8:15 am).

I am extremely concerned by the unprofessionalism demonstrated by Mr. Nehme and wanted to bring this to your attention.

Please do not hesitate to contact me if you have any questions or would like me to provide any more information.

Kind regards

Helen Tempest Ph.D.
Associate Professor
Department of Human and Molecular Genetics
Herbert Wertheim College of Medicine
Florida International University
11200 SW 8th St
Miami Florida
Office Tel: +1 305 348 1484
Lab Tel: +1 305 348 4838
Fax: +1 305 348 0651

Professionalism Violation

Student: Elie Nehmi

During the **Period 2 mid-year meeting**. Multiple course directors identified Elie Nehmi as a student that has been missing from multiple sessions and requesting to be excused from multiple key mandatory sessions. After a detailed review we have identified the following trends:

**Elie Nehmie:**

Cardiovascular and Respiratory:  1 Unexcused - Cardio Anatomy Lab

Hematology:   1 Unexcused  - EBM Session

Gastrointestinal:  1 Excused- Small Group cbl,pathology lab, anatomy lab

Endo:  2 Excused – 11-1 through 11/3 and 11/17 – meet the patient and a CBL

Repro – see additional attachment submitted by Dr Tempest

Community Engaged physician Course

**As per Dr. Ebony Whisenant:**

Elie Nehme:  Has not completed his second household visit by the deadline (Nov 3, 2017)
He had an excused absense from interprofessional rounds (Nov 1, 2017) however student failed to follow up to make up missed assignments.  Course staff emailed him multiple times and student responded to the emails approximately 1 month later detailing some of the issues he experienced that precluded him from responding.  As of yesterday, he did not attend reflection rounds (Dec 6, 2017) but we have not received an excused absence from him yet so we will wait to hear back from him.  I have a meeting scheduled with him for 12/13/2017 12-12:30 pm

Vivian Obeso, MD

**Vivian T. Obeso, MD, FACP**

**Associate Professor of Medicine**

**Assistant Dean for Curriculum and Medical Education**

**Co-Director, Clinical Medicine Course**

**Medical Director, Albert and  Debbie Tano Simulation Center**

Dear Dean Jones,

Upon review of the Period 2 exam schedule, it has come to my attention that Elie Nehme has missed an unusually large number of final exams.  While all of these absences have ultimately been deemed "excused" by OSA, I am very concerned about the frequency and pattern of these absences.

His current exam status for the morning classes is as follows:

- Cardio – took the exam on time, failed, failed remediation, will retake the course with the CO 2021
- Heme – took the exam late, but passed
- Derm – took the exam on time, passed
- MSK – opted to take the exam in January due to Irma, has not yet taken
- GI – took the exam late, but passed
- Endo – took the exam late, but passed
- Repro – missed the exam (12/11), still without an excused absence (as of 12/13)

In summary, of the seven courses that have already been completed, he has taken only two final exams on their regularly scheduled dates.

Many thanks for your attention to this matter,

**Rebecca L. Toonkel, M.D.**
Assistant Dean for Academic Advising
Period Two Curriculum Director
FIU Herbert Wertheim College of Medicine
11200 SW 8th Street, AHC2 476
Miami, FL 33199
305-348-4567



Privileged and Confidential

August 7, 2017

Mr. Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418-8178
561-386-9508

*<<Via email to enehm002@fiu.edu >>*

Re: Medical Student Evaluation and Promotion Committee Recommendation

Dear Mr. Nehme:

As you know, the Medical Student Evaluation and Promotion Committee (MSEPC) met with you on Thursday, July 27, 2017, to consider your overall performance as a medical student, in accordance with the College of Medicine Student Handbook and FIU policies.

On August 1, 2017, I sent you a letter giving you the option of meeting with me to discuss the recommendation of the MSEPC. You elected not to meet with me. Enclosed herewith are the findings and recommendations of the MSEPC. I have reviewed them and accept them.

You have the right to appeal the recommendations by submitting a request for appeal within ten (10) business days of receipt of this letter. Please refer to the Student Handbook regarding the process you must follow to appeal the recommendation. The sole grounds for appeal are as follows:

1. Material failure to provide a student with his or her due process rights as set forth in the Student Handbook which affected the outcome of the hearing. Appeals based on this ground will be limited solely to a review of the record of the hearing.

2. New information, which was not available at the time of the hearing and therefore could not be presented. In addition, the student must show that the new information could have substantially affected the outcome of the hearing. The nature of the information must be described in full detail in the appeal letter including an explanation regarding the reason the information could not have been presented at the hearing.

HERBERT WERTHEIM COLLEGE OF MEDICINE

Modesto A. Maidique Campus, 11200 S.W. 8th St., AHC II 693, Miami, FL 33199 • Tel: 305.348.0570 • Fax: 305.348.0123 • medicine.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1.800.955.8771

FIU_001068



3. The severity of the sanction is clearly excessive in light of the nature of the offense and the totality of the student's academic performance including indicia of professionalism.

Sincerely,

Carolyn D. Runowicz, MD
Executive Associate Dean for Academic Affairs

Attachment

HERBERT WERTHEIM COLLEGE OF MEDICINE

Modesto A. Maidique Campus, 11200 S.W. 8ᵗʰ St., AHC II 693, Miami, FL 33199 • Tel: 305.348.0570 • Fax: 305.348.0123 •
medicine.fiu.edu

Florida International University is an Equal Opportunity/Access Employer and Institution • TDD via FRS 1.800.955.8771

**FIU** | **Herbert Wertheim College of Medicine**

## MEMORANDUM

**Privileged and Confidential Education Record**
**Protected by Federal Education Rights and Privacy Act**

| | |
|---|---|
| Date: | August 1, 2017 |
| To: | Carolyn Runowicz, MD |
| | Executive Associate Dean for Academic Affairs |
| From: | Sergio Gonzalez-Arias, MD, PhD |
| | Chair, Medical Student Evaluation and Promotion Committee |
| Subject: | Medical Student Evaluation and Promotion Review – Elie Nehme |

The Medical Student Evaluation and Promotion Committee (MSEPC) conducted a hearing on Thursday, July 27, 2017, to consider the academic performance of Elie Nehme. The student attended.

**Facts:**
Mr. Nehme recently failed *Cardiovascular and Respiratory Systems* (BMS 6633) and he failed the remediation. He previously failed *Genes, Molecules and Cells* (BMS 6001) and passed the remediation. Mr. Nehme reported he had health issues and family problems during his first year of medical school. He reported he has been meeting with the Wellness Center to work on his processing speed. He stated he was verbally informed he could benefit from being granted additional time to take exams. He is also working with Learning Specialist, Dr. Winnie Chang.

**Findings:**
After deliberation and based upon his overall performance, the MSEPC finds the following:

1. Mr. Nehme's academic performance is of serious concern.

2. The MSEPC acknowledges the information provided by the student. Any potential accommodations will be assessed by the Medical Student Accommodations Committee once the official report from the Disability Resource Center (DRC) is available.

**Recommendations:**
1. Mr. Nehme will be allowed to continue with the class of 2020. He must meet with Dr. Toonkel to develop a plan for self-study of *Cardiovascular and Respiratory Systems* (BMS 6633) in preparation for taking the course again in 2018 with the class of 2021. This will delay his entry into Period 3.

2. Any further course failure or continued poor academic performance will trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic period or dismissal from medical school.

3. Mr. Nehme will be placed on academic probation as per the HWCOM student handbook guidelines. Per the HWCOM student handbook, the student will remain on probation through the end of the academic period in which he or she was placed on probation and through the following academic period.



4. He must continue to seek assistance from the Medical Student Counseling and Wellness Center.

5. He must continue to seek advice from HWCOM Learning Specialist Winnie Chang, Ed.D. and utilize available resources and supportive services such as tutoring.

6. It is strongly recommended that Mr. Nehme refrain from participating in extracurricular activities other than debt management counseling, financial planning, career and professional counseling, health and wellness programs, student support services, and Panther Learning Communities.

7. He must stay in close contact with his academic advisor. The frequency of contact should be no less than monthly.

FIU_001071

# EXHIBIT 2

| Date | Exam Name | Standard Time | Student used |
|---|---|---|---|
| Aug-17 | | | |
| 18-Aug | BMS 6643 Final Exam | 72 min | 80 min |
| Sep-17 | | | |
| 1-Sep | BMS 6635 Midterm | 75 min | 128 min |
| Oct-17 | | | |
| 2-Oct | BMS 6634 Midterm | 97 min | 137 min |
| 16-Oct | BMS 6634  Final | 21 min | 24 min |
| 18-Oct | BMS 6071 Midterm | 76 min | 65 min ( extra time granted, not used) |
| 30-Oct | BMS 6632 Midterm | 52 min | 59 min |
| Nov-17 | | | |
| 28-Nov | BMS 6632 Final | 69 min | 67 min |
| Dec-17 | | | |
| 4-Dec | BMS 6637 Repro Diagnostic Reasoning Exam | 120 min | 180 min |
| 11-Dec | BMS 6637 Final | NBME Exam | |
| Jan-18 | | | |
| 3-Jan | BMS 6635 Final (make-up) | NBME Exam | |

**LOA - From January-2018 to April -2018 and joined Class of 2021. Student was formerly Class of 2020.**

| Date | Exam Name | Standard Time | Student used |
|---|---|---|---|
| Apr-18 | | | |
| Apr-20 | BMS 6066 Quiz 1 - Canvasmed | 12 min | 10 min (extra 6 min were granted but not used) |
| 9-Apr | BMS 6633 Anatomy Quiz 1 (8am-9am) | 60 min | 33 min ( extra time granted, not used) |
| 13-Apr | BMS 6066 Quiz 2 - Canvasmed | 12 min | 8 min (extra 6 min were granted but not used) |
| 20-Apr | BMS 6633 DXR Clinical Reasoning Exam | 60 min | 56 min ( extra time granted, not used) |
| 23-Apr | BMS 6633 Test 1 (8am-10am) | 90 min | 120 min |
| 30-Apr | BMS 6633 Anatomy Quiz 2 (9am-10am) | 60 min | 34 min ( extra time granted, not used) |
| May-18 | | | |
| May-18 | BMS 6066 Quiz 3 - Canvasmed | 12 min | 5 min (extra 6 min were granted but not used) |
| May-18 | BMS 6066 Quiz 4 - Canvasmed | 12 min | Did not take quiz (extra 6 min were granted but not used) |
| 18-May | BMS 6633 Test 2 (8am-10am) | 82 min | 85 min |
| 18-May | BMS 6066 Quiz 5 - Canvasmed | 12 min | 9 min (extra 6 min were granted but not used) |

FIU_001038

| Date | Exam | | |
|---|---|---|---|
| 21-May | BMS 6633 Final NBME & DXR Clinical Reasoning Exam (8am-12pm) | 90 min | 124 min |
| Jun-18 | | | |
| 4-Jun | BMS 6631 Midterm (8am-12pm) | 55 min | 86 min |
| 14-Jun | BMS 6016 Exam 1 (1pm-3pm) | 84 min | 88min |
| 15-Jun | BMS 6066 CAM Final (11am-12pm) | | |
| 18-Jun | BMS 6631 Final (8am-12pm) | 70 min | 59 min |
| Aug-18 | | | |
| | | | |
| | | | |
| 17-Aug | BMS 6643 Final (8am-10am) | 64 min | 88 min |
| 30-Aug | BMS 6067 Module due (CanvasMed) | 120 min | 100min (Extra 60min granted) |
| Sep-18 | | | |
| 4-Sep | BMS 6635 Anatomy (12:30pm-1:30pm) | 60 min | 90 min |
| | BMS 6635 Midterm (2:30pm-4:30pm) | 77 min | 116 min |
| 17-Sep | BMS 6635 Final NBME (8am-10am) | | |
| | BMS 6635 Final In-house (10:15pm-12pm) | 102 min | 80 min |
| Oct-18 | | | |
| 1-Oct | BMS 6634 Midterm (9am-11am) | 91 min | 136 min |
| 12-Oct | BMS 6634 DXR Clinical Reasoning Exam (8am-10am) | 90 min | 81 min |
| 15-Oct | BMS 6634 Final NBME and In-House (12:30pm-4pm) | 30 min | 33 min |
| 17-Oct | BMS 6071 Midterm (1pm-3pm) | 66 min | 53 min |
| 29-Oct | BMS 6632 Midterm (12:30pm-3pm) | 55 min | 35 min |
| Nov-18 | | | |
| 9-Nov | BMS 6632 Final (8am-12pm) | 64 min | 49 min |
| Dec-18 | | | |
| 3-Dec | BMS 6637 DxRx (9am-11am) | 150 min | 232 min |
| 10-Dec | BMS 6637 Final (9am-11am) | NBME | |
| Jan-19 | | | |
| 7-Jan | BMS 6638 Midterm (9:30am-12pm) | 65 min | 69 min |
| 23-Jan | BMS 6638 Final (8am-12pm) | 42 min | 38 min |
| Feb-19 | | | |
| 13-Feb | BMS 6636 Midterm (8am-12pm) | | |
| March | | | |
| 7-Mar | BMS 6636 Final (8am-12pm) | 108 min | 165 min |
| 8-Mar | BMS 6064 Final (10 am-12 pm) | 120 min | 130 min |
| 28-Mar | BMS 6016 Final (1pm-3pm) | 79 min | 78 min |

FIU_001039

| 29-Mar | BMS 6840 Final (9am-12pm) | NBME | |

FIU_001040

# EXHIBIT 3

**FIU** | **Office of the Provost**
FLORIDA INTERNATIONAL UNIVERSITY

September 30, 2020

Mr. Elie Nehme
8112 Bautista Way
Palm Beach Gardens, FL 33418-8178
*Via USPS Certified Mail AND email to* enehm002@med.fiu.edu *(due to COVID-19)*

**RE: Elie Nehme – Appeal**

Dear Mr. Nehme,

This is in response to the appeal you filed with this office by email dated May 15, 2020 and subsequently additional information you submitted on June 4, 2020. You have appealed the recommendation for dismissal which was affirmed by the Dean of the Herbert Wertheim College of Medicine (HWCOM) on May 8, 2020.

As the Provost's designee in this matter, I reviewed your request for an appeal. This review is conducted in accordance with the procedures outlined in the HWCOM Student Handbook. Pursuant to the HWCOM Student Handbook, the basis for appeals are material failure to provide due process, new information not available at the time of the hearings, or severity of the sanction is clearly excessive in light of the offense or academic performance.

I withheld my decision on your appeal until a report was issued by the Office of Inclusion, Diversity, Equity & Access (IDEA) regarding your claims of harassment and differential treatment based on disability in your appeal. As communicated previously to you in June 2020, your appeal was provided to IDEA for review and consideration on those elements. On September 14, 2020 you received an amended copy of IDEA's report. Based upon a subsequent independent review by IDEA, there is no indication that your allegations had an adverse impact on your academic performance. Thus, your dismissal from the HWCOM was the result of your academic performance. The remaining bases for your appeal are without merit. Therefore, the determination of the College remains undisturbed.

This notice constitutes final agency action for Florida International University in accordance with the HWCOM Student Handbook and that no further action will be taken by the University on this matter. You may seek judicial review of this final University decision pursuant to Florida Rule of Appellate Procedure 9.190(b)(3), applicable to review of quasi-judicial decisions of an administrative body not subject to the Administrative Procedure Act, by filing a petition for certiorari review with the appropriate circuit court within thirty (30) days of this final University decision. If you seek review with the court, you must also provide a copy of the petition to: Clerk of the University, Florida International University, Modesto A. Maidique Campus, PC 511, Miami, FL 33199.

Sincerely,

Elizabeth Béjar, PhD
Senior Vice President for Academic and Student Affairs

C:  S. McWhorter, Director, IDEA
    E. Roldan, Associate Dean, Herbert Wertheim College of Medicine
    R. Sackstein, Dean, Herbert Wertheim College of Medicine