UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,
    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,
    Defendant.
_____/

## DEFENDANT'S STATEMENT OF MATERIAL FACTS[1]

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1, and this Court's Order [ECF No. 26], hereby files this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment and Incorporated Memorandum of Law and states:

1. Plaintiff, 29-year old Elie Nehme, matriculated at FIU's Herbert Wertheim College of Medicine ("COM") in August of 2016 after being denied admission into more than 20 schools. Nehme deposition (hereinafter "Pl. depo."), p. 16/ln 1;p.. 20/ln 7-12. FIU's COM curriculum is a four-year program divided into 4 periods. Obeso Aff., ¶5. Plaintiff, like all medical students, signed the Medical Student Handbook Consent Agreement, agreeing to agreement to abide by the policies in the Medical School Student Handbook. Obeso Aff., ¶4, Ex.1

2. FIU has a dedicated Disability Resource Center ("DRC") that assists students with documented disabilities to obtain reasonable accommodations. Loynaz Aff., ¶3. The DRC has 15 staff members, and Steven Loynaz, Ph.D, Access Consultant Manager, serves as the liaison for the DRC and COM. *Id.* The COM Handbook also has a "Students with Disabilities" section, that explains the process for medical students to obtain accommodations, starting with a confidential intake at the DRC. Loynaz Aff., ¶5.

3. FIU also has an "accommodations committee" or "disability committee" formally known as the Medical Student Accommodations Committee that was formed prior to Plaintiff's enrollment.

---

[1] ECF No. 55, Defendant's Notice of Filing in Support of Motion for Summary Judgment, includes each record citation.

Loynaz Aff., ¶4. The purpose of the committee is to work with the assessment team that implements the accommodations and to ensure that students are obtaining their accommodations. *Id.* As part of the on-going quality improvement in offering accommodations to students, the accommodations committee has worked with the DRC, Office of Inclusion, Diversity, Equality, Access ("IDEA"), and Office of the General Counsel. *Id.*

### *Plaintiff's Signs of Struggle: Period 1(August 1, 2016 – March 24, 2017)*

4. Genes, Molecules, and Cells was the first course failed by Plaintiff. Pl depo. p. 55/ln 6-13. He scored a "73". Obeso Aff., ¶6.[2] Plaintiff successfully remediated the final exam. *Id.* at ¶7. This attempt at remediation was counted as an initial failure and a subsequent repeat of the material, giving the designation of a "U/75". *Id.* at ¶7.

5. Plaintiff also received a score of 79 in three (3) other courses during P1: Integrated Functions of the Human Body; Pharmacology; and Pathology and Infectious Disease . Obeso Aff., ¶8. Such scores reveal only "marginal competency" in over one-third of the core basic science courses, indicating a lack of knowledge in basic sciences. *Id.*

6. Plaintiff acknowledged he was advised by the Office of Student Affairs about the services provided to disability students sometime during P1, but had not requested accommodations. Pl depo, p. 58/ln 10-13. Pl depo, p. 55/ln 16-17.

### *Plaintiff's Leave of Absence and Academic Probation:*
### *Period 2 – First Attempt (April 3, 2017 – March 28, 2018)*

7. In May 2017, Plaintiff failed Cardiovascular and Respiratory Systems with a final grade of 73. Pl depo, pp. 55-56/ln 19-25 & 1; Obeso Aff., ¶10. He remediated by retaking the final exam, but he also failed the remediation. Pl depo, p. 56/ln 6-12. He scored only 62 on the CardioPulm Exam retake. *Id.* After failing this course, FIU provided to Plaintiff a "Remediation Plan" by the course director to address his issue with managing time for exams. *Id.* at ¶10, Ex.5.

8. FIU's clinical psychologist Medical Student Counseling and Wellness Center ("MSCWC")MSCWC, Dr. Desmarais, performed testing to determine whether he qualified for any accommodations. Ex. 1, Pl. depo, p. 61/ln 1-9; p. 70/ln 23-24. On July 13, 2017, Dr. Desmarais sent a letter to the DRC providing Plaintiff's diagnosis of "Unspecified Anxiety Disorder" and

---

[2] Course grades are determined and assigned on a numeric or pass/fail basis for each course, clerkship, and rotation. Obeso Aff., ¶6. A score of 75 is the **minimum** passing grade in the 1-100 scale Pl depo., p. 93/ln 5-8. Grades of 75–79, while passing, indicate marginal competency; a grade of 80 is the minimum grade that designates competency. *Id.*

"Attention-Deficit Hyperactivity Disorder". Ex.1, Pl depo, p. 62/ln 8-10; Loynaz Aff., ¶11, Ex.3. She only recommended he be given extended time on examinations with no specified amount and did not recommend that he be provided with a minimal distraction room or private room, as she had in the past. *Id.*

9. Dr. Loynaz met with Plaintiff on July 17, 2017 to register with the DRC for accommodations. Loynaz Aff., ¶11; Pl depo, p. 62/ln 14-16. Based on DRC notes, "documentation, policies, and procedures were reviewed." Loynaz Aff., ¶11.[3] Plaintiff was aware that the accommodations would not be applied retroactively. Pl depo, p. 65/ln 10-14.

10. Because Plaintiff failed the remediation assessment in Cardiovascular and Respiratory Systems, it constituted a third failure in his academic career at FIU. Obeso Aff., ¶10. All students with failed remediations will be referred to the Medical Student Evaluation and Promotion Committee ("MSEPC")[4] for evaluation of academic progress pursuant to the Handbook. Obeso Aff., ¶10.

11. After proper notice, on July, 27, 2017, Plaintiff was brought before the MSEPC. Ex.2, Pl depo, p. 72/ln 6-13; Obeso Aff., ¶10. At the hearing, Plaintiff advised the MSEPC that he believed he was having academic difficulties because of health issues, family problems, and would benefit from being granted additional time. Ex. 2, Pl depo, p. 72/ln 14-18.[5]

12. The DRC's memorandum dated July 28, 2017 to COM administrators indicated that Nehme was qualified and eligible for two accommodations: "50% extra time on exams" and a "Minimal Distraction Testing Room". Pl depo, p. 63/ln 5-8; Loynaz Aff. Ex.3.[6] Thereafter, Plaintiff was

---

[3] Providing reasonable accommodations is an interactive process between the student and FIU. Loynaz Aff. ¶18. If the student is not receiving the accommodations they are eligible for and opt to take advantage of, then they must make FIU aware. *Id.* Some students elect to not take advantage of the accommodations they may be eligible for. *Id.* at ¶8.

[4] The purpose of the MSEPC is to ensure that each student who graduates from FIU possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor, to evaluate academic performance in the required curriculum, to assess promotion to the next academic period, and to recommend appropriate intervention in the event of unacceptable academic performance. Obeso Aff., ¶9.

[5] Admittedly, Plaintiff had still not been diagnosed with a disability or been granted any accommodations when he failed this remediation. Pl depo, p. 56/ln 16-24.

[6] A Minimal Distraction Room offers less distractions than a typical classroom by reducing auditory and visual distractions. Loynaz Aff., ¶12. It is also used as a tool to implement extra time as the extra time accommodation cannot be given in a regular classroom setting due to student and classroom schedules. Loynaz Aff., ¶12. Ear plugs are provided by FIU in minimally distractive

notified by the assessment team of when and where to take the exams and some quizzes. Pl depo, p. 67/ln 17-21.

13. About a week later, the MSEPC placed him on "academic probation", because of the failure of two or more courses, including remediations, but allowed him to continue with the class of 2020 and retake the course with the class of 2021. Obeso Aff., ¶11; Ex. 2, Pl depo, p. 74/ln 1-7. Plaintiff would remain on academic probation through the end of the academic period in which he was placed on probation *and* through the following academic period in accordance with Handbook. Obeso Aff., ¶11; Ex. 2, Pl depo, p. 75/ln 15-19. Specifically, by July 2017, Plaintiff was notified that any further course failure or continued poor academic performance would trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic period or dismissal. Obeso Aff., ¶11; Pl depo, p. 74/ln 13-21.; pp. 31 & 74/ln 4-11 & 8-12; pp. 74-74/ln 22-25, 1-2. Plaintiff did not exercise his right to appeal. Obeso Aff., ¶11; Pl depo, p. 78/ln 11-14.

14. On December 15, 2017, a Professional Incident Report ("PIR") was filed against Plaintiff on behalf of various professors regarding concern for multiple unexcused absences across courses, multiple request to delay exam across courses, and a professionalism issue regarding a quiz in one course. Obeso Aff., ¶12, Ex.7.[7]

15. Less than a month later, Plaintiff failed Systems Based Practice, which he claimed was due to absences and not testing. Pl depo, 88/ln 14-21. Shortly thereafter, FIU granted Plaintiff a voluntary medical leave of absence ("LOA") beginning January 18, 2018 through April 2018. Obeso Aff., ¶13; Pl depo, p. 81/ln 7-9. This would affect his ability to continue with the class of 2020 prior to requesting the LOA. Pl depo, p. 84/ln 1-4.

16. Plaintiff had a second MSEPC hearing on March 8, 2018 to discuss the failure of the Systems Based Practice course, the PIR filed against him, and continued poor performance. Ex.3, Pl depo, p. 78, ln. 21-24; Obeso Aff., ¶14. The MSEPC determined that despite serious concern with his academic performance, Plaintiff would be permitted to repeat P2, joining the class of 2021. Obeso

---

rooms. Pl depo, p. 105/ln 2-5. Proctors post a sign outside that says "quiet, please, testing in progress". Pl depo, p. 103/ln 14-17.

[7] Throughout his time at FIU, Plaintiff had nine (9) unexcused absences, eight of them during his second year of medical school, and thirty-five (35) excused absence requests which were all approved. Obeso Aff., ¶13, Ex.8.

Aff., ¶14; Ex. 3, Pl depo, p. 85/ln 13-21. Because he remained on probation, any further course failure or "continued poor academic performance" would trigger review by the MSEPC with the possibility of adverse recommendations, including dismissal. Ex. 3, Pl depo, p. 86/ln 2-12; Obeso Aff., ¶14. Plaintiff, again, did not exercise the right to appeal the decision. Pl depo, p. 85/ln 13-20.

### *Period 2 - Repeat (April 2, 2018 – March 29, 2019)*

17. On April 2, 2018, Nehme repeated P2, starting with courses he had already taken with material of which he was familiar. Pl depo, p. 89/ln 13-21. He earned "marginal scores" in two courses. Obeso Aff., ¶16 Despite Nehme passing all courses in P2 after joining the class of 2021 with "competent" scores according to the Handbook, these were relatively low scores considering this was Nehme's second attempt at most of these courses. Obeso Aff., ¶15-16.

18. Nehme did not make any complaint about a lack of accommodations during P2. Pl depo, p. 90/ln 10-12.

### *Plaintiff's Poor Shelf Exam Performance: Period 3 (April 8, 2019 – March 27, 2020)*

19. Plaintiff remained on academic probation during P3. Pl depo, p. 91/ln 22-25. P3 involves a rotation of core clinical clerkships in various areas of study. Obeso Aff., ¶5. [8]

20. During P3, Nehme failed a total of five (5) subject shelf exams. Pl depo, p. 191/ln 8-15. He scored in the 3rd percentile on his first attempt of the Family Medicine shelf exam. Obeso Aff., ¶16. He scored in the 4th percentile on his first attempt of the Surgery shelf exam. *Id.*. He scored in the 2nd percentile on his first attempt of the Neurology shelf exam. He scored in the 2nd percentile on his first attempt at the Psychiatry shelf exam. *Id.* And, he scored in the 2nd percentile on the Psychiatry shelf exam retake, resulting in failure of the clerkship. *Id.*[9] In addition, he scored extremely low on the OB/GYN shelf exam and the Neurology shelf exam retake. *Id.* He scored in the 5th percentile and the 7th percentile, respectively. *Id.* This indicated poor shelf exam performance on two additional shelf exams per the Handbook. *Id.*

---

[8] A score equivalent to the fifth (5th) percentile is required to pass the shelf exams in the P3 clerkships. Pl depo, p. 93/ln 1-4; Obeso Aff., ¶16. According to the Handbook, scores in the 5-10 percentile range indicate poor shelf exam performance. *Id.*

[9] Failure of a clerkship alone does not require an MSEPC hearing. *Id.* ¶18. As indicated in the Handbook, failure of a clerkship or poor shelf exam performance, such as three shelf scores in the 5-10 percentile range, may result in MSEPC review. Obeso Aff., ¶23.

21. Plaintiff acknowledges he received proper accommodations for all shelf exams, both initial and retakes, except for the Psychiatry shelf exam retake. Pl depo, p. 92/ln 1-12; Pl depo, p. 94/ln 12-14. Plaintiff failed the initial Psychiatry shelf exam on Monday, February 17, 2020. Pl depo, p. 94/ln 9-11; Reyes-Gavilan Aff., ¶3.

### *The Psychiatry Shelf Exam Retake: March 2, 2020*

22. Room reservations for COM were coordinated by Teresa Reyes-Gavilan, M.S., Academic Support Services Administrator. Reyes-Gavilan Aff., ¶3. There were only two conference rooms designated as minimal distraction rooms under the purview of COM and utilized by the assessment team for P3 testing: AHC2 495 and AHC1 335. Reyes-Gavilan Aff., ¶6.

23. On February 18, 2020, Maritere Williams, M.B.A., Associate Director Academic Support Services, part of the assessment team, requested either room AHC2 495 or AHC1 335, whichever available, from 8:00 am to 2:00 pm on Monday March 2, 2020[10] for the Psychiatry Shelf Exam Retake. *Id.* at ¶7. Both rooms had a previously scheduled event during the six-hour time period. *Id.* A weekly Immunology Meeting for 25-35 guests was scheduled from 10:00 am to 11:00 am in AHC1 335. *Id.* ¶7. A monthly Humanity Health Society ("HHS") Mammo Meeting for 12 guests was scheduled from 11:00 am to 12:00 pm in AHC2 495. *Id.* ¶7. No other rooms were available as the other potential conference rooms were also in use for the extended period of time. *Id.* ¶8-¶9.

24. During the six-hour time period for the exam retake, one lab room was scheduled for 20 participants from 8:00 am to 12:00 pm in AHC2 453 for a Neurology Clerkship Exam review and it was also scheduled for 10 participants at 12:00 pm to 5:00 pm for a Clinical Skills lab. *See* Exhibit 2 at p. 10-11. *Id.* at ¶12. The back door of AHC2 453 is located in the same hallway as the AHC2 495. The other Objective Structured Clinical Examination (OSCE) lab rooms are not directly in front of AHC2 495 and have limited capacity. *Id.*

25. Ms. Reyes-Gavilan arranged for the HHS Meeting to change rooms from AHC2 495 to AHC1 335. Reyes-Gavilan Aff., ¶10. The Immunology Meeting could not be moved to AHC2 495 because it had 25-35 guests and the maximum occupancy for room AHC2 494 is 15 people. *Id.* at ¶10. On the same day, Plaintiff was notified of the scheduled exam in AHC2 Conference Room 495. *Id.* at ¶11.

---

[10] Shelf exam retakes are scheduled two weeks from the failed exam so students would have adequate time to prepare in light of their demanding schedule. Dr. Obeso, Aff. at ¶18.

26. On Monday, March 2, 2020, Nehme sat for the Psychiatry shelf exam retake in AHC2 495, which was a conference room located in the administrative suites of the fourth floor where general population classrooms are not located. Pl depo, p. 96/ln 10-15; p. 95/ln 18-22. Reyes-Gavilan Aff., ¶6. The reservation was detailed as per the WellSky onln scheduling system as: "HWCOM SHELF EXAM-ADA/SPEC ACC". *Id.* Ex.2, p.9.

27. Innah Lachica, the proctor assigned for Plaintiff's Psychiatry Shelf exam retake, had previously proctored in the same room prior to this day and recalls proctoring Plaintiff. Pl depo, p. 97/ln 11-12; Lachica depo, p. 110/ln3-5; Lachica depo, p.191/ln 2-8. Lachica prepared the room and placed a sign on the outside of the door instructing others to be quiet due to test-taking. Lachica depo, p. 168/ln 5-11. The hallway outside of AHC2 495 does not have a lounging or seating area. Reyes-Gavilan Aff. at ¶6.

28. Plaintiff was the only student in the room for testing. Lachica depo, p. 168/ln 2-4. Plaintiff, admittedly, wore ear plugs provided by FIU. Pl depo, p. 104/ln 20-25. He received his time and a half accommodation. Pl depo, p. 96/ln 20-23. He sat facing the window to the outside with his back to the frosted glass pointing to the hallway. Pl depo, p. 100/ln 6-11. A heater was brought to the room. Pl depo, p. 109/ln 21-22. Plaintiff requested to go to the bathroom three times based on the activity log for the exam, but Plaintiff has no recollection. Lachica depo, Ex. 3; Pl depo, p.105/ln 10-22.

29. Plaintiff did not request that the proctor suspend the testing until it became quiet. Pl depo, p. 103/ln 22-25. Nor did he ask the proctor to be moved to another room. Pl depo, p. 104/ln 16-18. Plaintiff did not vocalize any concerns regarding noise to the proctor. Ex. 2, Lachica depo, p. 169/ln 10-14. Plaintiff has no recollection of any discussion by him or the proctor in regards to the noise or distraction. Pl depo, p. 106/ln 19-25.

### *Final MSEPC Hearing April 9, 2020*

30. FIU delayed the third MSEPC hearing at Plaintiff's request and set it for April 9, 2020 after notice was given. Pl depo, p. 117/ln 7-18; p. 118/ln 15-18. p. 119/ln 8-15; Obeso Aff. at ¶17.[11] Plaintiff was given an opportunity to explain not only the Psychiatry shelf exam retake, but the

---

[11] Plaintiff was still on academic probation when he sat for the Psychiatry shelf exam retake. Pl depo, p. 125/ln 5-7. Even without the failed Psychiatry shelf exam retake, Plaintiff's poor performance on the shelf exams would have been cause for concern requiring MSEPC review. Obeso Aff., ¶18.

other shelf exams that he failed. Ex. 5, Pl depo, p. 128, ln 14-17; p. 131, ln 4-15. Pl did not mention that the room he was assigned to for the Psychiatry shelf exam retake was not a minimally distractive room. Ex. 5, Pl depo, p. 131/ln 16-19. Instead, he stated that there was a fire in his neighbor's apartment on the morning of the psychiatry shelf exam retake which affected his performance. Ex. 5, Pl depo, p. 127/ln 8-17. Obeso Aff., ¶17. His previous poor academic performance was also discussed at the hearing. Ex. 5, Pl depo, 2-22.

31. The MSEPC found that Nehme's academic performance continued to be of grave concern. Ex. 5, Pl depo, p. 133/ln 8-12. The MSEPC recommended that he be given the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn. Ex. 5, Pl depo, p. 140/ln 1-3.

### *FIU's Appellate Process and IDEA's Investigation*

32. Plaintiff appealed the MSEPC recommendation to the Appeals Committee. Ex.6, Pl depo, p. 141/ln 12-21; p. 140/ln 15-21. He, again, mentioned the fire affecting his performance on the psychiatry remediation exam and his father's medical issues affecting his performance on the initial Surgery shelf exam. Ex. 6, Pl depo, p. 144-145/ln 24-3; p. 143/ln 19-25; Obeso Aff., ¶19.

33. Plaintiff also introduced new information relating to a car accident that occurred during the Family Medicine Clerkship that required numerous physical therapy sessions affecting his performance on the initial Family Medicine shelf exam. Ex. 6, Pl depo, p. 144/ln 1-18. He further introduced new evidence of a random drug test conducted one week prior to the Psychiatry remediation exam adding unnecessary stress while studying for the Psychiatry remediation exam. Ex. 6, Pl depo, pp. 147-148/ln 21-12. He added due process concerns such as the conduction of the MSEPC hearing over Zoom due to the pandemic rather than in person and the fact that Dr. Helen Tempest inappropriately acted as the Chair of the MSEPC during his hearing. Ex. 6, Pl depo, p. 143/ln 3-8; Obeso Aff., ¶19.[12]

34. On May 5, 2020, the Appeals Committee found that there was no material failure to provide Plaintiff's due process rights since he received notice and could have challenged Dr. Tempest's participation in the MSEPC hearing. Ex. 7, Pl depo, p. 151/ln. 22-25; Obeso Aff., ¶20. It also

---

[12] Despite being provided the opportunity to introduce new information that impacted his Psychiatry remediation exam, Plaintiff made no mention of noisy students outside the minimal distraction room in his appeal letter nor did any of the exhibits attach reference improper accommodations. Ex. 6, Pl depo, p. 145-146/ln 18-2; Obeso Aff., ¶19; Pl depo, p. 149/ln 18-25.

concluded no new information was presented that was not available at the time of hearing or would have affected the outcome. *Id.* at ¶20; Ex. 7, Pl depo, p. 151/ln. 22-25. The sanction was not excessive in light of the nature of the offense and "the totality of the student's academic performance" including indicia of professionalism. *Id.* The MSEPC recommendations were adopted by the Appeals Committee and Dean Sackstein affirmed the decision. Ex. 7, Pl depo, p. 150/ln 14-17; Obeso Aff., ¶20.

35. Consistent with the Handbook, Plaintiff appealed the Dean's determination to the Provost or his designee on May 15, 2020. Ex. 9, Pl depo, p. 150/ln 21-22; p. 170/ln 3-7. With the assistance of counsel, Plaintiff for the first time, included that he was not properly accommodated for his retake exam in his appeal to the Provost's designee, Elizabeth Bejar, Ph.D., Senior Vice President for Academic and Student Affairs. Ex. 9, Pl depo, pp. 153 &154/ln 3-7 & 6-8; p. 171/ln 6-17; Bejar Aff. at ¶6, 11. Dr. Bejar forwarded his appeal letter to IDEA to investigate his claims regarding his disability. Pl depo, p. 179/ln 6-13; Bejar Aff. at ¶6.

36. Three days later, Plaintiff formally filed a disability discrimination complaint with IDEA. Ex. 8, Pl depo, p 153/ln 13-16. On August 25, 2020, after conducting an investigation[13], which included interviewing witnesses and obtaining documentation, FIU's Office of IDEA found that there was insufficient evidence to support the allegations made against Dr. Havas for improper drug testing. McWhorter depo, Ex.12 at p.32. In its "additional findings" as to COM, it found "Lack of Accommodations for Readiness Assignments" and "Providing Non-Compliant Minimal Distraction Rooms" were "substantiated" in violation of FIU-106. Pl depo, p. 175/ln 19-24.[14]

37. At deposition, Plaintiff admitted he did not speak to any professor on quizzes he claims he did not receive any accommodations for. Pl depo, p. 49/ln 6-11. He also never asked a professor for extra time to complete an assignment. Pl depo, p. 50/ln 5-8. Furthermore, Plaintiff did not go to any administrator, including the Dean of Students' office or the DRC, to discuss any lack of accommodations for quizzes. Pl depo, p. 50/ln 17-24.[15] Nor did anyone speak to the administration

---

[13] Dr. Bejar periodically asked for updates from IDEA as she withheld making a decision on Plaintiff's appeal pending the investigation. Bejar Aff. at ¶7

[14] An Amended Investigative Copy was issued on September 14, 2020 that included Innah Lachica's interview, which had not been done before, but the findings regarding the readiness assignments, minimal distraction room, and improper drug testing remained the same. Bejar Aff. at ¶ 7, Ex.1.

[15] These low-value activities are case and/or team-based learning sessions where students were assessed for preparedness prior to the start of the session. Obeso Aff. at ¶ 39. At the time, FIU

on his behalf in relation to accommodations for quizzes and/or readiness assignments. Pl depo, p. 54/ln 1-7.

*Dismissal*

38. On September 30, 2020, Dr. Bejar upheld the MSEPC decision to dismiss him. Ex. 10, Pl depo, p. 177/ln 18-22. The letter stated: "Based upon a subsequent independent review by IDEA, there is no indication that your allegations had an adverse impact on your academic performance. Thus your dismissal from HWCOM was the result of your academic performance. The remaining basis for your appeal are without merit. The determination of the College remains undisturbed." Bejar Aff. at ¶12, Ex. 3; Ex. 10, Pl depo, p. 179/ln 14-20.

39. After receiving the Amended Report, Dr. Bejar requested from IDEA additional information which was the basis for the subsequent independent review. Bejar Aff., ¶¶8-9; McWhorter depo, p.98/ln 5-10. Plaintiff passed all assignments which he claims he did not receive accommodations. Pl depo, p. 49/ln 17-21. Additionally, IDEA held him harmless, by awarding him 100% on all readiness assignments/quizzes where he claims he did not obtain accommodations and it did not significantly impact his grades. Bejar Aff., ¶9, Ex.2. He also failed exams when all of the accommodations were given. *Id.*

40. FIU's decision to dismiss Plaintiff was based solely on his overall poor academic performance and was subject to the same sanction as other medical students who were not registered with any disability, but who also performed poorly during the relevant time. Obeso Aff., ¶¶27-34. These are other students who were either recommended to voluntarily withdraw or be involuntarily withdrawn because they continued to perform poorly after several continuous failures including remediations, shelf exams, courses, and after being through the MSEPC process multiple times or permitted to repeat periods or granted leaves of absences. *Id.*

41. On October 16, 2020, Plaintiff was involuntarily dismissed. ECF No.12, ¶ 6. Plaintiff did not file a petition for certiorari in state court appealing FIU's decision to dismiss him as final agency action. Pl depo, p. 182/ln 9-12.

---

COM administrators believed that implementing accommodations for these assessments would fundamentally alter the academic integrity of the assessment. Loynaz Aff., ¶17. COM also did not have the resources, such as proctors and space, to accommodate these assessments until a pilot program was initiated in Spring 2020. Loynaz Affidavit, ¶17; Obeso Aff. at ¶ 40.

I HEREBY CERTIFY that on this 11th day of March, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        MARRERO & WYDLER
        *Attorneys for Defendant FIU*
        2600 Douglas Road, PH-4
        Coral Gables, FL 33134
        (305) 446-5528
        (305) 446-0995 (fax)

        BY /s/ Lourdes Espino Wydler
        OSCAR E. MARRERO
        F.B.N.:  372714
        oem@marrerolegal.com
        LOURDES E. WYDLER
        F.B.N.:  719811
        lew@marrerolegal.com

**SERVICE LIST**

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN:  435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*