UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:20-cv-24649-AMC

ELIE NEHME,
    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,
    Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU" or "University") by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, hereby files this Motion for Summary Judgment and Incorporated Memorandum of Law, and states:

### *Introduction*

This is a case of purported disability discrimination by FIU based on the dismissal of Plaintiff from FIU's Herbert Wertheim College of Medicine ("COM") while on academic probation: after failing one course during his first year of medical school; failing the equivalent of three courses during his first attempt at Period 2; repeating all of Period 2; earning below 80 in eight courses throughout Periods 1 and 2, indicating only "marginal competency" in such required courses; failing five (5) subject shelf examinations in four separate clerkships during Period 3; failing a clerkship in Period 3; and scoring in the 5-10 percentile range in two additional shelf examinations. The record establishes that Plaintiff was approved by FIU for accommodations of 50% extra time on exams and a minimal distraction testing room. At no time prior to the recommendation for dismissal, did Plaintiff notify FIU that he had not received proper accommodations thereby failing to engage in the interactive process. Based on FIU's academic judgment, which must be afforded deference, as a matter of law, Plaintiff was dismissed from the medical program for continued poor performance—not because of his disability. Deliberate indifference by FIU cannot be established. Summary judgment must be granted.

*Argument*

1.    Summary Judgment must be granted in favor of FIU on Counts I (failure to provide reasonable accommodations) and II (wrongful dismissal) of the Amended Complaint, which claims violations of Title II of the Americans with Disabilities Act ("ADA"). The undisputed record unequivocally establishes that Plaintiff cannot meet the technical requirements of the medical program even with accommodations in light of continued poor performance.

2.    A threshold matter for both claims is whether Plaintiff is a "qualified individual" under the ADA. This Court should follow Eleventh Circuit precedent in similar cases of poor academic performance where a student claims disability discrimination and judgment is entered in favor of the post-secondary educational institutions based on the well-documented deficiencies.  *See Goldberg v. Florida Int'l Univ.,* 838 Fed. Appx. 487, 492 (11th Cir. 2020); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 Fed. Appx. 776, 781 (11th Cir. 2018); *J.A.M. v. Nova Southeastern Univ., Inc.,* 646 Fed, Appx. 921 (11th Cir. 2016); *Forbes v. St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012). Count I and II should be dismissed on these grounds.

3.    Count I fails for various reasons.  It is undisputed that FIU granted Plaintiff accommodations for 50% extra time on exams and a minimal distraction testing room. However, FIU was not on notice about a lack of accommodations based on Plaintiff's actions in the breakdown of the interactive process. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F. 3d 1278 (11th Cir. 1997) (no liability for failure to accommodate where breakdown in the interactive process regarding accommodations was not due to defendant's actions but rather those of plaintiff). Plaintiff conceded at deposition that he did not complain or discuss a lack of accommodations for any quizzes or readiness assignments during any academic periods before he was dismissed. He did not even raise this specific issue in his final appeal to the Office of the Provost. "The duty to provide a reasonable accommodation under the. . . ADA is not triggered "unless a specific demand for an accommodation has been made." *Goldberg,* 838 Fed. Appx. at 492  (citing *Gaston v. Bellingrath Gardens & Home, Inc*., 167 F.3d 1361, 1363 (11th Cir. 1999).

4.    Moreover, students are not entitled to the accommodation of their choice, but only to an accommodation deemed reasonable by the university. *Forbes v. St. Thomas Univ.*, Inc., No. 07-22502-CIV, 2011 WL 2118737, at *2 (S.D. Fla. May 27, 2011), *aff'd,* 456 Fed. Appx. 809 (11th Cir. 2012).  An "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee ... or requires 'a fundamental alteration in the nature of [the]

program'." *Wilf v. Board of Regents of the University System of Georgia*, 2012 WL 12888680, at *16 (N.D. Ga. Oct. 15, 2012). Here, the quizzes or readiness assignments were part of case and/or team-based learning sessions to assess students for preparedness prior to the start of the session. FIU, in its academic judgment, believed the accommodations to these activities would fundamentally alter academic integrity in addition to having limited space and proctors; thereby, making them unreasonable accommodations at the time.

5.    On the minimal distraction room for the Psychiatry Shelf exam retake, Plaintiff similarly did not address the purported lack of accommodations to the proctor, the MSEPC hearing following the exam or with the Appeals Committee. The reason being is because he was afforded the benefit of a minimal distraction room. He was the only student taking the exam in the room, was provided ear plugs by FIU, seated with his back to a frosted glass that faced a hallway with no seating area nearby. *See Forbes*, 456 Fed. Appx. 809 (affirming summary judgment on disability claim granted in favor of university where student did not complain about taking her exams in a room with four classmates and a proctor). The ADA does not provide a definition for a minimal distraction room. However, it does not require it to be distraction-free. FIU cannot be at fault when Plaintiff failed to advise the proctor during the exam that there were conditions that distracted him and waited two (2) months until after two (2) academic decisions had been made to notify FIU of the purported failure. Count I must be granted summary judgment.

6.    On Count II, the disparate treatment claim for the alleged wrongful dismissal from FIU also fails as a matter of law because a *prima facie* case cannot be made. *See  Silberman v. Miami Dade Transit,* 927 F.3d 1123 (11th Cir. 2019)(citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)). First, summary judgment in this count is grounded on Plaintiff's continued poor academic performance with or without accommodations rendering him not qualified for ADA purposes.  Plaintiff struggled academically at FIU's COM since Period 1 through Period 2 when he was granted a leave of absence and was permitted to repeat Period 2, retaking the same courses. While still on academic probation, meaning he could be dismissed for continued poor academic performance, he failed multiple shelf exams in Period 3. Plaintiff's dismissal was a result of his academic performance deficiencies. FIU's academic judgment of dismissal evidently based on Plaintiff's documented poor academic performance, should be given great deference. *See Sirpal v. Univ. of Miami*, No. 09-22662-CIV, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011) (quoting

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11 (1985)), *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013).

7.   There is no evidence of any intent or discriminatory animus against Plaintiff in this case. *See Iaciofano v. School Bd. of Broward County, FL,* 2017 WL 564368, at \*3 (S.D. Fla. Feb. 13, 2017). Plaintiff was subjected to the same sanction as other medical students who were not registered with any disability, but who also performed poorly. These students were also subjected before the MSEPC multiple times and ultimately given the recommendation to either voluntarily withdraw or be involuntarily withdrawn because they continued to perform poorly after several continuous failures including remediations, on shelf exams and courses, and were permitted to repeat periods or granted leaves of absences. A valid disparate treatment claim under the ADA requires a showing that a plaintiff "has actually been treated differently than similarly situated non-handicapped people." *Quality of Life, Corp. v. City of Margate,* 805 Fed. Appx. 762, 768 (11th Cir. 2020) (quoting *Schwarz v. City of Treasure Island,* 544 F. 3d 1201, 1216 (11th Cir. 2008)). The record is devoid of this.

8.   Finally, the final decision to dismiss Plaintiff after FIU's internal investigative findings were released, does not establish intent or rise to the level of deliberate indifference. *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (affirming summary judgment on a disability claim against a hospital when officials failed to provide a trained sign language interpreter for a 14-year-old deaf and mute patient nor did they ask his parents if they wanted one pursuant to hospital policy as it did not constitute deliberate indifference). In fact, the same person who made the final decision was the same person who forwarded Plaintiff's appeal claiming a lack of an accommodation for the exam retake to FIU's investigative body responsible for enforcing its internal nondiscrimination policy. FIU withheld its decision until the investigation was complete. While certain allegations regarding accommodations were substantiated, additional information was necessary regarding Plaintiff's academic record. Again, the same final decision-maker, Dr. Elizabeth Bejar, requested a subsequent review that revealed Plaintiff's lack of accommodations did not impact his academic performance while at FIU. Plaintiff was not subjected to discrimination as the reason for being involuntarily withdrawn from FIU, but rather his continued academic deficiencies. Summary judgment is appropriate.

## <u>MEMORANDUM OF LAW</u>

Rule 56 of the Federal Rules of Civil Procedure "mandates an entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotext Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In these instances, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning as essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322-23. The movant bears the initial burden of asserting the basis for its motion. *Id*. at 323. "[T]he burden on the moving party may be discharged by 'showing' – this is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325

"A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Dominguez v. Lake Como Club*, 520 Fed. Appx. 937, 939 (11th Cir. 2013) (citing Fed. R. Civ. P. 56(e); *Eberhart v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990)). If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted in favor of the movant. *See Celotex*, 477 U.S. at 322-323; *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"Disability discrimination claims under the ADA and Section 504 are subject to a similar legal analysis…because both statutes are generally construed to impose the same legal requirements." *Forbes v. St. Thomas University, Inc.,* 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) (citing *Wilbourne v. Forsyth County Sch. Dist.,* 306 Fed. Appx. 473, 476 (11th Cir. 2009)); *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133 (11th Cir. 2019). A prima facie case must be first established in Plaintiff's burden of production; next, upon a showing of circumstantial evidence of discriminatory intent, courts may apply the burden shifting *McDonnell-Douglas* framework to analyze the claim. *See Hargett v. Florida Atlantic University Board of Trustees,* 219 F. Supp. 3d 1227, 1236 (S.D. Fla 2016).

I.    **PLAINTIFF IS NOT OTHERWISE QUALIFIED BECAUSE HE COULD NOT SATISFY ACADEMIC STANDARDS OF FIU'S MEDICAL PROGRAM EVEN WITH ACCOMMODATIONS.**

Plaintiff has brought this action under the ADA[1] for failure to provide reasonable accommodations (Count I) and disparate treatment based on wrongful dismissal (Count II). *See*

---

[1] Despite FIU's internal substantiation of Plaintiff's claim regarding accommodations, the "relevant inquiry" is whether FIU violated the ADA, not whether FIU followed its internal policies. *See Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015) (despite university's failure to abide by its own policies, the relevant inquiry is whether university

*Generally* ECF No. 12. Now that the record is "fully developed" confirming the scope of Plaintiff's "strong pattern of academic nonperformance," this court should have no trouble concluding that Plaintiff is not otherwise qualified based on how "close" the question was prior to the development of the record when this Court issued its Order on FIU's Motion to Dismiss Count II [ECF No. 42, pp. 6-7].

Title II of the ADA prescribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services., programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a *prima facie case* of discrimination under the ADA, Plaintiff "must show" that he: "(1) is disabled; (2) is a 'qualified individual'; and (3) was subjected to unlawful discrimination because of the disability." *Forbes v. St. Thomas University, Inc.*, 768 F.Supp.2d 1222, 1228 (S.D. Fla. 2010). Whether Nehme is a "qualified individual" is a threshold question for both of his claims. *Redding v. Nova Southeastern University, Inc.*, 165 F.Supp.3d 1274, 1289 (S.D. Fla. 2016).

"In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 Fed. Appx. 776, 781 (11th Cir. 2018) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (*en banc*) and 34 C.F.R. § 104.3(l)(3)). The Plaintiff must show he "can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations." *Redding*, 165 F.Supp.3d at 1290 (quoting *Halpern v. Wake Forest Univ. Health Sci.*, 669 F.3d 454, 462 (4th Cir. 2012)). The Eleventh Circuit has previously ruled on the issue of an "otherwise qualified" individual in factually similar postsecondary education cases.

In *Goldberg*, a medical student failed two courses and received "marginal" or "low pass" scores in nine additional courses during his first two years prior to requesting accommodations. *Goldberg*, 838 Fed. Appx. at 480-491. After requesting accommodations and repeating Period 2, plaintiff failed a midterm exam, one course, and two clerkships. *Id*. The medical school ultimately dismissed the student based on failure of only one clerkship and history of poor academic performance. *Id*. The district court found that Goldberg was not an otherwise qualified individual

violated the ADA or Section 504 of the Rehabilitation Act, not whether university followed its internal policies).

because his academic performance was not acceptable despite receiving accommodations. *Id.* at 491. The Eleventh Circuit affirmed summary judgment in the university's favor. *Id.* at 492.

In *Zainulabeddin*, a medical student with ADHD was dismissed from the medical program after completing two academic years in a total of four years. *Zainulabeddin*, 749 Fed. Appx. 776, 778 (11th Cir. 2018). In her first year, she failed all but one class. *Id.* at 779. She repeated her first year and only needed to remediate one course. *Id.* In her academic second-year, she failed two courses in her first semester and was subsequently dismissed from the medical school. *Id.* She was reinstated after learning the medical school erred in not previously providing her with accommodations but was placed on leave of absence for the remainder of the year. *Id.* She was provided with "increased time and a distraction-free environment" for all exams upon return for academic second-year but still failed two courses. *Id.* at 779-780. She was once again dismissed from the medical school based on her two failed courses that year and prior academic difficulties. *Id.* at 780. The district court found that the student was not "otherwise qualified." *Id.* at 781. The Eleventh Circuit affirmed summary judgment in favor of the university and concluded that the record made clear that the student was dismissed from the program for poor academic performance and consistent with its policies set forth in the student handbook. *Id.* at 782-783.

Similarly, here, Plaintiff cannot establish that he is "otherwise qualified" because the record clearly demonstrates his inability to satisfy the academic standards of FIU's COM and perform the essential functions of a medical student based on his poor academic performance even with accommodations. His academic struggles began in Period 1, prior to requesting and receiving accommodations, and continued despite receiving accommodations of 50% extra time on exams and a minimal distraction room with multiple opportunities for remediation. (ECF No. 56 ¶¶ 4-5, 12, 15, 20); *see infra.* at II.

At the time of the final MSEPC hearing, having been on academic probation since August 2017, Plaintiff failed five (5) subject shelf examinations, resulting in the failure of one clerkship, and performed poorly on two (2) additional subject shelf exams in Period 3.[2] (ECF No. 56 ¶¶ 13, 19, 20). On top of Plaintiff's academic struggles immediately preceding his final MSEPC hearing in 2020, the MSEPC reviewed his previous academic performance which included failure of four

---

[2] According to the Handbook, a score equivalent to the fifth percentile is required to pass the shelf exams in the P3 clerkships and scores in the 5-10 percentile range indicate poor shelf exam performance. (ECF No. 56 ¶19 n.8).

(4) courses, including one remediation, the repetition of an entire Period, and marginally competent scores in eight (8) courses. (ECF No. 56 ¶¶ 4-5, 7, 10, 15-17, 31).[3] Plaintiff was also afforded a leave of absence for medical reasons and was issued a PIR. (ECF No. 56 ¶¶ 14-15). The undisputed record effectively demonstrates his dismissal was based on a pattern of poor academic performance and in accordance with the Medical Student Handbook.

Accordingly, because plaintiff cannot establish that he was an "otherwise qualified" individual, he has failed to establish a *prima facie case* for both counts, and grant of FIU's summary judgment is warranted in its entirety. *See J.A.M. v. Nova Southeastern University, Inc*., 646 Fed. Appx. 921, 927 (11th Cir. 2016) (concluding that medical school student was not "otherwise qualified" because his disability rendered him "incapable of meeting the academic and technical standards required to participate in Nova's osteopathic medicine program," where in the course of two years, student experienced multiple relapses of major depressive order resulting in his failure to meet the university's academic requirements.); *Redding v. Nova Southeastern University*, Inc., 165 F.Supp.3d 1274, 1289-1294 (S.D. Fla. 2016) (concluding that medical student was not "otherwise qualified" based on finding that there was no genuine factual dispute that medical student failed to meet the essential requirements of the medical program - meeting professionalism standards and not failing two clinical rotations - and failed to identify a reasonable accommodation that would allow her to meet the essential requirements of the program).

## II. FIU DID NOT FAIL TO PROVIDE PLAINTIFF WITH REASONABLE ACCOMMODATIONS

Count I is based solely on alleged failure to (1) provide both 50% extra time and a minimal distraction room for quizzes and/or readiness assignments and (2) provide a proper minimal distraction room on March 2, 2020 for the Psychiatry shelf exam retake. (ECF No. 12 ¶¶8,13). "To state a *prima facie* claim for failure to accommodate, plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *McKane v. UBS Financial Services, Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). "The plaintiff bears the burden of identifying an accommodation, and of

---

[3] A score of 75 is the minimum passing grade in the 1-100 scale; grades of 75–79, while passing, indicate "marginal competency;" and a grade of 80 is the minimum grade that designates competency. (ECF No. 56 ¶4 n.2)

demonstrating that the accommodation allows him to perform the [program's] essential functions." *Id.* (citing *Lucas* 257 F.3d at 1255-56). Persons with disabilities are "not entitled to the accommodation of [their] choice, but only to a reasonable accommodation." *Id.* (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000)); *Stewart*, 117 F.3d at 1286.

"It is well settled that schools need only provide accommodations that they deem reasonable. *See Southeastern Comm. Coll. v. Davis*, 442 U.S. 297, 413 (1979) (antidiscrimination laws to not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person"); *see also Meisenhelder v. Fla. Coastal Sch. of L., Inc.*, No. 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010), *aff'd*, 395 F. App'x 669 (11th Cir. 2010); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (courts "should show great respect for the faculty's professional judgment."); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (courts "should only reluctantly intervene in academic decisions")." An educational institution is not required "to lower or effect substantial modifications of standards to accommodate a student's disability" and "an institution's refusal to make 'major adjustments' to its program does not amount to disability-based discrimination." *Zainulabeddin*, 749 Fed. Appx. at 782 (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979)); *see also Meisenhelder,* 2010 WL 2028089, at *4 (in the education context, following a student's proper request for accommodations, an interactive process between the student and the school is necessary to ensure that reasonable accommodations are provided).

FIU cannot be liable where Plaintiff chose not to engage in interactive process and any failure to accommodate was a result of a lack of notice provided by Plaintiff.[4] *See Stewart,* 117 F. 3d at

---

[4] Plaintiff did not initiate the process for requesting accommodations until after the start of Period 2. (ECF No. 56 ¶¶8-9). At that time, he was approved for reasonable accommodations of "50% extra time on exams and a minimal distraction testing room". (ECF No. 56 ¶9). It bears noting, the letter from Dr. Desmarais providing the DRC with a psychological evaluation only recommends extra time for exams, not a minimal distraction room. (ECF No. 56 ¶8). Plus, prior to Plaintiff's request for accommodations, FIU recommended he visit the MSCWC for time management deficiencies, not distraction-related issues and at his first hearing he advised the MSEPC he would benefit with more time. ((ECF No. 56 ¶7). *See Rosbough v. Florida State Univ.*, 4:15CV583-RH/CAS, 2017 WL 4019452, at *8 (N.D. Fla. Aug. 21, 2017), report and recommendation adopted, 4:15CV583-RH/CAS, 2017 WL 4012962 (N.D. Fla. Sept. 12, 2017). ([W]here. . . a plaintiff alleges discrimination based on a public entity's refusal to provide a reasonable accommodation, the plaintiff must also establish that the plaintiff requested an accommodation (or the need for one was obvious) and that the public entity failed to provide a reasonable accommodation.")

1287 (11th Cir. 1997) (no liability for failure to accommodate where breakdown in the interactive process regarding accommodations was not due to defendant's actions but rather those of plaintiff); *Forbes*, 456 Fed. Appx. 809 (affirming summary judgment in favor of university where student did not complain about taking her exams in a room with four classmates and a proctor); *Shaikh*, 608 Fed. Appx. 349 (plaintiff did not establish a genuine issue of fact of whether he proposed a reasonable accommodation where plaintiff admitted that he accepted the modifications initially offered to him, and then waited until he failed to raise the possibility of another accommodation); *Oser v. Capital University Law School*, 2009 WL 2913919 (S.D. Ohio 2009) (plaintiff failed to establish the requisite elements of his ADA claim where plaintiff failed to object to proposed accommodation, even though he later claimed it was insufficient, he did not complain about the extra time when he first learned of the accommodations, and he did not raise any concerns about the accommodation to the Dean or anyone else until after he received his grades).

**A. Minimal Distraction Room**

There is limited guidance on minimal distraction rooms. In fact, the ADA does not define a minimal distraction room. Notably, a minimal distraction room is not distraction-free and not the same accommodation as a private room. (ECF No. 56 ¶12 n.6). It offers less distractions than a typical classroom by reducing auditory and visual distractions. (ECF No. 56 ¶12 n.6). Arguably, distractions are subjective to each student which requires an open dialogue between the student and the educational institution.

In *Forbes,* the law student alleged that university failed to provide an environment that would "best have accommodated" her disability. *Forbes*, 456 Fed. Appx. 809, 810 (11th Cir. 2012). The university granted her accommodations including "a distraction-reduced location," which was not defined. *Id*. at 811. Plaintiff was provided with a "semi-private room" along with a proctor and three or four other students with disabilities. *Forbes*, 768 F.Supp.2d 1222, 1226 (S.D. Fla. 2010). She did not complain until weeks later, after receiving her grades, despite writing an email regarding incorrect belief that she was denied time-and-a-half. *Id*. at n.2. The Eleventh Circuit concluded that "there is no genuine dispute that the university accommodated Forbes's alleged disability and that those accommodations were reasonable," where plaintiff failed to provide university any information that her alleged disability required a private testing room and she did not complain about taking her examinations in a room with four classmates and a proctor *Id*. at 812. Summary judgment in favor of the university was affirmed. *Id*.

On March 2, 2020, Plaintiff sat for the Psychiatry shelf exam retake in room AHC2 495, a conference room located in administrative suites designated and regularly utilized as a minimal distraction room for test taking purposes by P3 students. (ECF No. 56 ¶26). FIU assigned Plaintiff to this room based on limited space availability of designated accommodation testing rooms for the extended time period, and the proctor was the only other person in the room. (ECF No. 56 ¶¶23-25, 28).[5] The proctor placed a sign on outside of the door instructing others to be quiet due to test taking and provided Plaintiff with earplugs. (ECF No. 56 ¶¶27-28). Plaintiff sat facing the window to the outside with his back to the frosted glass that pointed to the hallway which did not have a seating area (ECF No. 56 ¶¶27-28). Based on this, FIU AHC2 495 provided less auditory and visual distractions than the regular classroom setting for the exam.

According to Lachica, the proctor, at no point did Plaintiff complain of any distractions during the exam, and Plaintiff does not recall having any such conversation with her. (ECF No. 56 ¶29). Interestingly, Plaintiff was provided a heater to warm the room and when requested, he went on three restroom breaks. (ECF No. 56 ¶28). Yet, Plaintiff did not ask the proctor to suspend testing, to move to another room, or vocalize any concern about noise. (ECF No. 56 ¶29). Next, Plaintiff was specifically asked at the time of the final MSEPC hearing and on appeal to the Appeals Committee, for any information regarding the failure of Psychiatry shelf exam retake. (ECF No. 56 ¶¶30, 32). Instead, Plaintiff gave other excuses for performing poorly on the test and, again failed to engage in any type of interactive process to resolve the alleged failure to accommodate at that time. (ECF No. 56 ¶¶9 n.3, 30, 32-33). *Frank v. University of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007) (plaintiff failed to establish genuine issue of material fact as to request for accommodations prior to exam where he made no complaint about the accommodations until after the exam results were communicated to him, and he did not protest before starting, or during the exam, or as he left the exam room).

FIU met its obligation to provide a reasonable accommodation by delivering a minimal distraction room, AHC2 495, to Plaintiff on the date of the retake exam. That the testing room was not Plaintiff's preferred test-taking room, or there were outside distractions that he did not complain about in order to resolve, is of no consequence to the analysis. *See e.g., Hoppe v. College*

---

[5] In fact, on the day Plaintiff was required to retake the exam, no rooms were available and a room reservation change had to be made in order for FIU to provide a minimal distraction room. (ECF No. 56 ¶¶23-25).

*of Notre Dame of Maryland*, 835 F.Supp.2d 26, 32-33 (D.Md. 2011) (granting summary judgment on accommodation claim despite allegation that "solitary environment" was not provided when student was taking test with another student in lab with a chalkboard divider between them); *Sellers v. Wake Forest University Baptist Medical Center*, 2022 WL 198736 (M.D.N.C. Jan. 21, 2022) (granting summary judgment claim on ADA failure to accommodate claim stating: "The ADA requires neither a perfect accommodation nor the exact accommodation requested by the employee.").

### B. Readiness Assignments/Quizzes

An educational institution's "professional academic judgment that a reasonable accommodation was simply not available" made "after undertaking a diligent assessment of the available options" is entitled to judicial deference. *Forbes*, 2011 WL 2118737, at *3 (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791 (1st Cir.1992)); *see also Ellis v. Morehouse School of Medicine*, 925 F.Supp. 1529, 1542 (N.D. Ga. 1996). Here, "readiness assignments" (previously referred to as "quizzes") are assessments delivered prior to active learning activities that carry a low-point value, where each student must be assessed for preparedness before the start of the activity. (ECF No. 56 ¶37 n.15). FIU determined, based on reasoned academic judgment, that providing extra time or being placed in a "minimally distractive room" for these types of assessments was an undue burden because the student would miss a portion of the activity and resources were limited to deliver these assessments in any other fashion due to limited proctors and room availability. (ECF No. 56 ¶37 n.15). *See Goldberg*, 2020 WL 1815360, at *1 (rejecting report and recommendation where Judge concluded that genuine dispute of material facts existed as to whether FIU rebutted Goldberg's claim of discrimination by establishing that Goldberg's requested accommodation would impose an undue hardship in the university and granting university's summary judgment motion).

Plaintiff alleges that after being granted accommodations by FIU, he was often not provided with the accommodations for the quizzes and/or readiness assignments. (ECF No. 12 ¶8). Even if Plaintiff can establish that he specifically requested that FIU provide him with accommodations for in class assignments[6], FIU did not violate ADA based on a lack of accommodations because

---

[6]As noted *supra*, FIU's duty to provide a reasonable accommodation is not triggered until the student requests a specific accommodation. Plaintiff did not make specific a request for accommodations for quizzes. (ECF No. 56 ¶¶8-9, 12).  The term quizzes, or any in-class activity,

Plaintiff failed, again, to provide notice to FIU that such accommodations were not being provided. (ECF No. 56 ¶37).

If Plaintiff believed he was entitled to accommodations for quizzes, he should have notified an FIU administrator, either at COM or DRC, of a need for clarification on accommodations for in-class assignments. *See e.g., Rogers v. W. Univ. of Health Scis.*, No. CV167681MWFAGRX, 2017 WL 8793864, at *1 (C.D. Cal. Dec. 6, 2017), *aff'd in part, rev'd in part and remanded,* 787 F. App'x 932 (9th Cir. 2019)(no triable issue where to the extent there was a misunderstanding on whether the double-time accommodation applied to quizzes as well as to exams, defendant promptly rectified it as soon as plaintiff brought it to defendant's attention, and consistently worked with plaintiff to make necessary adjustments and clarifications when plaintiff raised problems with the implementation of the accommodation). Plaintiff did not timely notify FIU and it cannot be held liable under Count I.

Plaintiff conceded in his deposition that he never complained to FIU of any failure to provide such accommodations until he submitted a complaint with the IDEA Office which was only after the Dean affirmed two separate recommendations to dismiss him. (ECF No. 56 ¶¶35, 37). After approval of accommodations, Plaintiff had the opportunity to express concern with the implementation of the accommodation for quizzes after three years of being a registered DRC student and at two (2) MSEPC hearings, and the multiple appeals afforded and never exercised, as well as all of the appeals he did take advantage of including his final appeal where he first mentioned the claim of the Psychiatry shelf exam retake. (ECF No. 56 ¶¶33 n.12, 35, 37). Simply put, Plaintiff broke down the interactive process to make FIU aware of any alleged failure at any of these crucial points. (ECF No. 56 ¶37).

Accordingly, FIU did not violate the ADA by failing to provide such accommodations. *See Shaikh,* 608 Fed. Appx. at 355-56 (6th Cir. 2015) (affirming summary judgment granted in favor of university on ADA claim where student with disabilities would not have successfully completed requirements of medical school's program with his allegedly requested accommodation of receiving "double time" on tests, rather than the time and half he received). In alignment with

---

is absent from the memo of accommodations. (ECF No. 56 ¶12). Because there is insufficient evidence to establish that Plaintiff specifically requested accommodations for in-class assignments such as quizzes or readiness assignments, there is no genuine issue of material fact. *See Rogers v. Western University of Health Sciences*, 787 Fed. Appx. 932, 934 (9th Cir. 2019).

*Goldberg*, where the student received accommodations on his written exams, but did not receive those accommodations for in-class quizzes and received average passing scores on quizzes, summary judgment should be granted as to Count I. *Goldberg*, 838 Fed. Appx. 487 (affirming grant of summary judgment in favor of university as to failure to accommodate claim despite medical student not receiving accommodations on all quizzes).

## III. PLAINTIFF WAS DISMISSED FROM FIU BECAUSE OF HIS POOR ACADEMIC PERFORMANCE NOT BECAUSE OF HIS DISABILITY

Generally, a plaintiff seeking recovery for disparate treatment under either the ADA must establish a *prima facie* case of discrimination by showing that (1) he is a qualified individual with a disability; (2) he was denied benefits of or excluded from participation in a public service, program, or activity, or was otherwise discriminated against; and (3) the denial, exclusion, and/or other discrimination was on the basis of his disability. *Silberman*, 927 F. 3d at 1134 (citing *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007)).[7] Plaintiff cannot establish either the second or third elements of his *prima facie case*: that he is a qualified individual, *supra* I, or that he was wrongfully dismissed because of his disability.

### A.   No Discriminatory Intent Exists

Contrary to a failure to accommodate claim, a disparate treatment claim requires a showing of "discriminatory intent and occurs when a disabled person is singled out for disadvantage because of [his] disability." *Forbes*, 768 F. Supp. 2d at 1227; *see also Iaciofano*, 2017 WL 564368, at *3 (S.D. Fla. Feb. 13, 2017).[8] Here, Plaintiff has failed to establish a claim of disparate treatment as

---

[7] If Plaintiff is basing his disparate treatment claim on the purported failure to be accommodated, it has already been established that reasonable accommodations were provided and it would be improper since these are two separate and distinct causes of action. *See also Iaciofano v. School Bd. of Broward County, FL*, 2017 WL 564368, at *5 (S.D. Fla. Feb. 13, 2017) (finding that disabled plaintiff's reliance on deficient accommodations as the basis for her disparate treatment claim was improper). "A professional school's unwillingness to make 'major adjustments' to its program to accommodate the disabled does not constitute disability discrimination." *Goldberg*, 838 Fed. Appx. at 492 (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). The denial of any such accommodation ultimately had no connection whatsoever to his dismissal from the program. As previously indicated, Plaintiff was successful on all quizzes and/or readiness assignments even without accommodations, had multiple failures when all accommodations were provided, and even when he was given 100% on quizzes where extra time was given, it did not impact his grades. (ECF No. 56 ¶39).

[8] Under the *McDonnel-Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination and demonstrate a presumption of discriminatory intent, at which point defendant

14

the record not only lacks evidence of Plaintiff being denied benefits of his requested accommodations or being otherwise discriminated against because of his disability, but further lacks any evidence of discriminatory intent. To demonstrate that one was discriminated against because of his disability, there must be evidence of discriminatory intent or animus. *See Iaciofano,* 2017 WL 564368, at *4 (citing *Forbes,* 768 F. Supp. 2d at 12227).

FIU has a dedicated unit, the Disability Resource Center, to support students with disabilities. (ECF No. 56 ¶2). Specifically, in COM's Medical Student Handbook, it has a section for "Students with Disabilities" explaining the process to obtain reasonable accommodations for its medical school students. (ECF No. 56 ¶2). COM for approximately ten years has had an established Medical Student Accommodations Committee or disability committee, which meets regularly and was assembled to ensure that students are obtaining their accommodations and to work with COM's assessment team that implements the accommodations. (ECF No. 56 ¶3). This committee has also worked with other units at FIU like IDEA and the Office of the General Counsel as part of quality improvement and on-going efforts to better serve its students. (ECF No. 56 ¶3). The fact that FIU's Office of IDEA, the office charged with addressing forms of discrimination, issued an amended report with partial findings in favor of Plaintiff substantiating a violation of FIU's Non-discrimination Regulation, FIU-106 supports a lack of intentional discrimination by FIU. (ECF No. 56 ¶36). Importantly, in its investigation, it did not reveal any finding of intentional discrimination or animus. (ECF No. 56 ¶36 n. 14). In fact, the substantiated claims were solely based on a failure to accommodate. (ECF No. 56 ¶36 n. 14).

A valid disparate treatment claim under the ADA requires a showing that a plaintiff "has actually been treated differently than similarly situated non-handicapped people." *Quality of Life, Corp. v. City of Margate,* 805 Fed. Appx. 762, 768 (11th Cir. 2020) (quoting *Schwarz v. City of Treasure Island,* 544 F. 3d 1201, 1216 (11th Cir. 2008)) (internal quotation marks omitted); *see also Iaciofano,* 2017 WL 564368, at *5 (discussing deficiencies in plaintiff's disparate treatment claim, including failure to show that non-disabled students were treated more favorably or that

---

is burdened with presenting a legitimate non-discriminatory reason for the adverse action taken against the plaintiff. *See Hargett,* 219 F. Supp. 3d at 1236. Here, as will be discussed *infra,* Plaintiff has presented no evidence of discriminatory intent whatsoever. Because the record fails to demonstrate a *prima facie* case of disability discrimination, the need to conduct a full analysis of the *McDonnel-Douglas* framework is eliminated. Nonetheless, the legitimate reasons for the decision are the same: Plaintiff's continued poor academic performance.

plaintiff was ever singled out due to her disability). Plaintiff has failed to make any such showing that he may have been singled out and his disparate treatment claim necessarily fails. *See Rowe v. Board of Trustees for Florida School for Deaf and Blind,* 70 F. Supp. 2d 1283 (M.D. Fla. 1998) (finding that ADA disparate treatment claim must fail where there is no evidence demonstrating that plaintiff was singled out or treated differently from non-disabled employees).

This record is devoid of any evidence to support that any student without disabilities who had similar poor academic performance was treated more favorably than Plaintiff.  To the contrary, failed courses, failed remediations, failed shelf exams in P3, repeated periods, multiple MSEPC hearings, and continued poor academic performance while on academic probation will lead to the same adverse action: dismissal or an opportunity to voluntarily withdraw. (ECF No. 56 ¶¶2,16, 30). All medical students were subject to the same academic standards as set forth in the Handbook. (ECF No. 56 ¶1). Furthermore, there is simply no evidence to establish that Plaintiff was treated differently because of his disability when every medical student who performs poorly, goes through the same process of being evaluated by the MSEPC and has the same opportunities for the adverse decision to be reviewed by multiple levels. (ECF No. 56 ¶¶2,10, 13, 20 n.9, 30).

As a matter of fact, the steps taken by FIU prior to his dismissal more so show that discriminatory intent is nowhere found on this record. Dr. Bejar, not only was responsible for forwarding Plaintiff's claim of not receiving a minimal distraction room to IDEA, but withheld her decision. (ECF No. 56 ¶¶ 35, 36 n.13). She also asked for updates and requested additional information prior to making a final determination. (ECF No. 56 ¶¶ 36 n.13, 39). Plaintiff cannot show that others were treated more favorably under these circumstances.  This deficiency is fatal to Plaintiff's claim and warrants summary judgment in favor of FIU. *See Zainulabeddin,,* 749 Fed. Appx. 776 (11th Cir. 2018) (affirming summary judgment in favor of university on disabled student's discrimination claim where she failed to present evidence that university treated her differently than students without disabilities).

**B. Deference should be Given to FIU's Legitimate Reason for Dismissal**

"[U]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Sirpal v. Univ. of Miami,* No. 09-22662-CIV, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11 (1985)), *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013). The United States Supreme Court has recognized with respect to medical school

decisions, "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90, 98 S.Ct. 948, 955 (1978); *see also Jallali v. Nova Southeastern Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (courts accord "great deference" to universities as to the credentials degree requirements dispensed by academic institutions). FIU's reasoned academic judgment should be given judicial deference.

As discussed *supra* in I, the record clearly indicates Plaintiff was dismissed because of his poor academic performance, not his disability. He was advised verbally and via written communication both during and after the first two MSEPC hearings that any further course failure **or continued poor performance** would trigger review by the MSEPC with the possibility of adverse recommendations, including **dismissal**. (ECF No. 56 ¶¶13, 16). Plaintiff may have passed after repeating P2 which consisted of material he was familiar with already, but in P3, he failed multiple shelf exams, demonstrating he could not improve his performance with new material. (ECF No. 56 ¶¶17, 20-21). The MSEPC, Appeals Committee, and Provost's designee all followed the policies in the Handbook when making its adverse determination to dismiss Plaintiff. FIU is preparing doctors to pass national licensing exams and has an obligation to the community where its graduates will treat patients. The dismissal was based on his poor performance.

Like *Zainulabeddin*, 749 Fed. Appx. 776, 778 (11th Cir. 2018), FIU has produced uncontroverted evidence of plaintiff's academic difficulties throughout his four years of study (one repeated). The student handbook provided that a student was subject to dismissal from the program at any time if she had more than one failing grade at a time or failed any course while on academic probation. *Id*. In her final year, plaintiff failed two courses while on probation and then passed only with subsequent remediation. *Id*. The Eleventh Circuit determined that the district court properly granted summary judgment to the university and that no reasonable jury could conclude that the university discriminated against plaintiff because of her disability. *Id*.

Summary judgment should be granted because the MSEPC, the Appellate Committee, and Dr. Bejar's decisions to dismiss Plaintiff from the program was fully supported by his academic record and FIU's policies, and not based on his disability. *See Zainulabeddin*, 749 Fed. Appx. at 783; *see also Goldberg*, 838 Fed. Appx. 487 (11th Cir. 2020) (affirming grant of summary judgment in favor of university where medical student continued to perform poorly even after receiving

accommodations); *Marshall v. Alabama College of Osteopathic Medicine*, 2018 WL 4955211, at 3 (M.D. Ala. Oct. 12, 2018) (plaintiff failed to state a claim under Title III where college dismissed him due to his behavior during testing, not due to his alleged disability); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir.) (holding that discharge based on poor performance rating which was consequence of disability was not a discharge because of disability under the ADA); *Buhendwa v. University of Colorado at Boulder*, 214 Fed. Appx. 823 (10th Cir. 2007) (summary judgment affirmed where court concluded that student who failed examination was not discriminated against on basis of disability).

Plaintiff's poor academic performance was longstanding and well-established which, in FIU's reasoned academic judgment, indicated he did not possess the skills and knowledge necessary to competently assume the responsibilities of a medical doctor. Plaintiff's poor academic record rendered him unable to continue with medical school, with or without reasonable accommodation. FIU's academic judgment of dismissal evidently based on Plaintiff's well-documented academic performance deficiencies, should be given great deference. *See Forbes v. St. Thomas Univ., Inc.*, No. 07-22502-CIV, 2011 WL 2118737, at *1 (S.D. Fla. May 27, 2011), *aff'd*, 456 F. App'x 809 (11th Cir. 2012) (granting summary judgment in favor of university where university denied plaintiff's request for readmission based on school's rationally justifiable conclusion that accommodating her would lower academic standards or otherwise unduly affect its program).

## IV.    LACK OF DELIBERATE INDIFFERENCE MANDATES DISMISSAL OF PLAINTIFF'S CLAIM FOR COMPENSATORY DAMAGES.

To prevail on a claim for compensatory damages under the ADA, a plaintiff must establish that the entity that he has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). "Deliberate indifference," is an "exacting standard." *Id.* at 344 (citing Doe, 604 F.3d at 1259). It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Id.* Moreover, in order to hold a government entity liable, such as FIU, the plaintiff must demonstrate that an "official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf and who ha[d] actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The Eleventh Circuit has recognized that the "exacting standard"

requires a showing more than "gross negligence". *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (affirming summary judgment on an ADA and Section 504 claim against a hospital when officials failed to provide a trained sign language interpreter for a 14-year-old deaf and mute patient nor did they ask his parents if they wanted one pursuant to hospital policy did not constitute deliberate indifference).

Here, the record does not support a showing of deliberate indifference. There is no evidence indicating that FIU failed to act reasonably in response to Plaintiff's concerns regarding the alleged failure to accommodate quizzes and improper minimal distraction room provided for the Psychiatry shelf exam retake. An investigation was conducted that made only specific substantiated findings as to his purported lack of accommodations, but the decision to dismiss was based on his academic performance and continued poor performance per the Handbook. (ECF No. 56 ¶¶36, 38, 40). Prior to May 15, 2020, Plaintiff had not notified FIU of any alleged failure to accommodate. (ECF No. 56 ¶35). No FIU official had knowledge of any alleged discrimination prior to that date. (ECF No. 56 ¶¶ 35, 37). Thus, Plaintiff's contention that the MSEPC that recommended his dismissal was deliberately indifferent is wholly incorrect. At the time of dismissal, the Office of the Provost solely had the authority to rule on Plaintiff's dismissal. (ECF No. 56 ¶38).

Dr. Bejar, through the Office of the Provost, initiated the investigation of Plaintiff's claims when she forwarded the appeal to Office of IDEA. (ECF No. 56 ¶35). She withheld her decision on the appeal until the investigation was complete. (ECF No. 56 ¶36 n. 13). Dr. Bejar, in her capacity as the final decision-maker on behalf of FIU, then requested from IDEA additional information. (ECF No. 56 ¶39). At her request, they conducted a subsequent informal investigation after an internal finding of a violation of FIU regulation to make an appropriate determination. (ECF No. 56 ¶39).

Plaintiff would like for this Court to end its analysis simply based on the findings made by IDEA and the fact that the dismissal still occurred to support deliberate indifference by Dr. Bejar. However, that is not supported by disability law in the post-secondary educational context or the facts of this case. FIU's decision to uphold the decision of the Dean of COM based on the recommendations of two separate academic bodies (MSEPC and the Appeals Committee) consisting of medical professionals was made because Plaintiff could not meet the academic standards of the program with or without accommodations. (ECF No. 56 ¶¶10 n.4, 31, 34, 38).

The undisputed record shows after receiving the Amended Report, the Office of the Provost requested from IDEA additional information which was the basis of the subsequent independent review. (ECF No. 56 ¶39). The audit revealed that Plaintiff passed all assignments which he claims he did not receive accommodations and for the quizzes which Plaintiff was granted extra time in April and May of 2018, he did not actually use the extra time. (ECF No. 56 ¶39). Additionally, in the subsequent review, IDEA held him harmless, by awarding him 100% on all readiness assignments/quizzes where he claimed he did not obtain accommodations and it did not significantly impact his grades. (ECF No. 56 ¶39). More tellingly, is that Plaintiff still failed multiple shelf exams in P3 while he was on academic probation and he received all of his accommodations for all except, according to him, the last one. (ECF No. 56 ¶20). It should be noted that he scored in the 2nd percentile both times taking the same shelf exam, one time with accommodations and one time allegedly without. (ECF No. 56 ¶20). Looking at the totality of Plaintiff's academic record, FIU's response to move forward with dismissal was a clearly reasonable response in light of the circumstances. Plaintiff was dismissed because of a pattern of poor academic performance and not because of his disability. Deliberate indifference or intentional discrimination cannot be established. Summary Judgment is appropriate.

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant the motion for summary judgment and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 11th day of March, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MARRERO & WYDLER
*Attorneys for Defendant FIU*
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

BY /s/ Lourdes Espino Wydler_____
OSCAR E. MARRERO
F.B.N.: 372714
oem@marrerolegal.com
LOURDES E. WYDLER
F.B.N.: 719811
lew@marrerolegal.com

## SERVICE LIST

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*