# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRCIT OF FLORIDA

### CASE NO.  20-cv-24649-CANNON

ELIE NEHME,

      **Plaintiff,**

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF  TRUSTEES,

      **Defendant.**

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff ELIE NEHME ("Plaintiff"), through undersigned counsel, for his Response in Opposition to Defendant FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES' ("FIU") Motion for Summary Judgment [ECF No. 57] ("Defendant's Motion"), states as follows:

**I.**      **Summary Judgment Standard.**

Summary judgment is authorized only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id*., 477 U.S. at 322-23.

On a motion for summary judgment, the Court may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986); *Twiss v. Curry*, 25 F.3d 1551, 1555 (11th Cir. 1994).  Thus, if the record presents factual issues, the trial court must not decide them; instead, it should deny the motion and proceed to trial. *Burton v. Tampa Housing Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001); *O'Neal v. United States*, 258 F.3d 1265, 1270 (11th Cir. 2001); *Tullius v. Albright*, 240 F.3d 1317 (11th Cir. 2001).  Essentially, "the

inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. In determining whether the moving party has satisfied this burden, the trial court considers all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Likewise, all reasonable doubts about the facts are to be resolved in favor of the non-moving party. *Twiss*, 25 F.3d at 1555. "If reasonable minds could differ on any inferences arising from the undisputed facts, summary judgment should be denied." *Id.* Furthermore, "if a reasonable fact finder can draw more than one inference from the facts, and that inference creates a genuine issue of material fact," summary judgment is likewise improper. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997); *Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988); *Twiss*, 25 F.3d at 1555 ("When more than one inference can be reasonably drawn, it is for the trier of fact to determine which one.").

Here and as demonstrated below, based on the record evidence and sworn deposition testimony as recited in Plaintiff's accompanying Statement of Disputed Material Facts [ECF No. 64] ("SDMF"), and the reasonable inferences to be drawn therefrom in Plaintiffs' favor, genuine, triable issues of material fact exist as to: (1) whether Plaintiff was denied his reasonable testing accommodations, including the accommodation of a minimal distraction room for his Psychiatry shelf exam retake, and thereby discriminated against on the basis of his disability; and (2) whether Defendant deliberately and intentionally discriminated against Plaintiff on the basis of his disability in upholding his dismissal from the FIU Herbert Wertheim College of Medicine ("COM"). Defendants' Motion for Summary Judgment as to Count II must be denied and this case allowed to proceed to trial.

## II.    Argument.

### A.    There is ample record evidence that Plaintiff was an otherwise qualified individual with a disability.

FIU's first argument for summary judgment dismissal of both Counts I and II of the Amended Complaint is that Plaintiff cannot satisfy a threshold inquiry: that at the time both of his retake of the Psychiatry clerkship shelf exam in Period 3 and his dismissal from COM, he was an

otherwise qualified individual with a disability who satisfied COM's academic standards.  The record evidence, however, demonstrates otherwise.

The Eleventh Circuit has held that, "[i]n the context of postsecondary education, an 'otherwise qualified' individual must be able to meet the academic and technical standards requisite to admission or participation in the education program or activity, in spite of his handicap." *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921, 926 (11th Cir. 2016) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) and 34 C.F.R. § 104.3(l)(3)). Here, viewing the material facts and the inferences to be drawn therefrom in Plaintiff's favor, there is ample record evidence that both at the time he retook and failed the Psychiatry shelf exam – for which, by FIU's own admission, he was not provided the required reasonable accommodation of a minimal distraction room – and at the time he was dismissed from the COM via denial of his appeal by Dr. Elizabeth Bejar of the FIU Provost's office, Plaintiff had satisfied COM's academic requirements and standards for continuing his medical school education.

Specifically, prior to being found by both FIU's Medical Student and Wellness Center ("Wellness Center") psychologist, Dr. Nathaly Desmarais, and its Disability Resource Center ("DRC") to suffer from a disability and being awarded reasonable accommodations by the DRC of 50% extra time and a minimal distraction room for testing, Plaintiff had successfully completed Period 1 and had been promoted to Period 2.  SDMF ¶ 5.  This promotion decision would have entailed a determination by the Medical Student Evaluation and Promotion Committee ("MSEPC") – the sole arbiter designated to make student promotion decisions – that Plaintiff had made "satisfactory academic progress and maintained a degree of professionalism necessary to become a physician." *Id.*  Although Plaintiff had failed one course in Period 1 – Genes, Molecules, and Cells – he successfully remediated the course and passed it. SDMF ¶ 4.

After FIU's DRC determined Plaintiff suffered from a disability and awarded him the testing accommodations, Plaintiff failed a Period 2 course – Systems Based Practice – where he failed the final exam for which he had not received his required testing accommodations.  SDMF ¶ 15.  Although all COM students were allowed to retake final exams at least once if they failed them the first time, Plaintiff had not retaken the course exam. *Id.*  Instead, Plaintiff went on an approved leave of absence to attend to and recover from a neurological condition he was suffering radiculopathy in his neck and lumbar region for which he was prescribed drugs that impacted his cognitive abilities. SDMF ¶¶ 14, 15.  It was during this leave of absence that MSEPC, triggered

by the course failure and a Professionalism Incident Report ("PIR"), called Plaintiff into a hearing and allowed him, at his request, to complete his leave of absence to recover from his neurologic condition and to repeat all of Period 2.  SDMF ¶ 16.

Upon his return to COM, Plaintiff successfully passed all his Period 2 courses, most of them with grades in the 80s and 90s, and tallied a term GPA of 84.27 and an overall GPA through Period 2 of 81.27, evidencing his "competency" as a COM medical student. SDMF ¶ 17. According to Dr. Vivian Obeso, who was familiar with Plaintiff's academic performance at COM, Plaintiff overall was *competent* and showed "satisfactory performance" in the courses he passed. *Id.*  Plaintiff was thereafter promoted from Period 2 to Period 3, which, according to Dr. Obeso, entailed a determination by MSEPC that Plaintiff had achieved "satisfactory academic performance". *Id.*

Although FIU in its Motion attacks Plaintiff's performance in his Period 3 clerkships by focusing solely on his final exams, the fact is Plaintiff passed *all* his Period 3 clerkships, up until the time of the Psychiatry clerkship exam and its retake, with course grades above 80, evidencing *competency* in those courses. SDMF ¶ 20.  As a result of his overall course grades in the clerkships that he passed, Plaintiff had a Period 3 term GPA of 86.23, and his cumulative GPA increased to 82.62, both evidencing *competency* by COM standards. *Id.*  Indeed, Plaintiff did extremely well, with only positive physician evaluations and no negative ones, in the "very important' clinical component -- i.e.., the patient diagnosis and treatment component – for each clerkship, including the Psychiatry clerkship. *Id.*  The clinical component for each clerkship carried the same 30% weight of the student's overall grade as did the final exam. *Id.*  According to Dr. Obeso, had Plaintiff passed all his clerkships, including the Psychiatry clerkship – the only Period 3 course he failed – he would have been eligible for promotion from Period 3 to Period 4.  *Id*.  Dr. Obeso further testified that there were COM students who were promoted from Period 3 to Period 4 with GPAs less than 80, and students who eventually graduated from COM with cumulative GPAs less than 80. *Id.*

In addition to Plaintiff's overall success and satisfactory academic performance at COM in passing Period 2, being promoted from Period 2 to Period 3, and passing with 80s or above all of his clerkships in Period 3 up until the Psychiatry clerkship failure, for the two-year period after he returned to COM from his medical leave of absence to repeat all of Period 2 and up until his failure of the Psychiatry shelf exam retake and clerkship, Plaintiff had no further professionalism

incidents or issues. SDMF ¶ 14.  Moreover, and tellingly, Dr. Adrian Jones, COM's Dean of Student Affairs and the former Chairman of the school's Disability Accommodations Committee[1], who had full knowledge of Plaintiff's academic performance at COM up until the MSEPC's dismissal decision, acknowledged that Plaintiff "will be a great doctor, someday" .  SDMF ¶ 43.[2]

Defendant's Motion and its accompanying Statement of Material Facts curiously omit all of these relevant and material facts that evidence Plaintiff's satisfactory academic performance at COM, both with and without required accommodations, up until his retake of the Psychiatry clerkship shelf exam -- the event for which Plaintiff claims in this case he was denied the reasonable accommodation of the minimal distraction room, and the sole event that triggered Plaintiff being called before the MSEPC a third time, which resulted in his dismissal from COM. SDMF ¶ 44. At the very least, these material facts and the supporting evidence raise genuine, triable issues of material fact that need to be decided by a jury.

Defendant's reliance on the cases of *Goldberg v. Florida Int'l Univ.*, 838 Fed. Appx. 487 (11th Cir. 2020), and *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 Fed. Appx. 776 (11th Cir. 2018), do not warrant a different result as both cases are factually distinguishable.  Unlike Plaintiff here, the medical students in both *Goldberg* and *Zainulabeddin* were not dismissed from their medical schools as a result of course failure for which the medical school had explicitly found, following an internal investigation, that the failure was because the school had failed to provide a required testing accommodation.  Also, unlike Plaintiff here, the plaintiff in *Goldberg* was called before the MSEPC and was dismissed when he failed *two* Period 3 clerkships, including failing a family medicine shelf exam and its retake for which he received his full accommodations for both. *Goldberg*, 838 Fed. Appx. at 490-91.  The student in *Goldberg* also failed two of the three clerkships he had taken when he was called before the MSEPC and recommended for dismissal. *Id.*  In contrast, Plaintiff here passed *all* of his Period 3 clerkships – six in total and five with grades in the 80s evidencing competency[3] – and failed only *one* clerkship, Psychiatry, as a result of his failure of the final exam retake where he was not provided with the required accommodation of

---

[1] Also know as the ADA Committee". SDMF ¶ 3.
[2] Jones made this statement even though he was fully aware of the MSEPC decision recommending Plaintiff's dismissal from COM and its reasoning for the decision. SDMF ¶ 43.
[3] Plaintiff received a "pass" grade for the Radiology clerkship, which was a "pass/fail" course. SDMF ¶ 20.

minimal distraction room as FIU, through its Office of Inclusion, Diversity, Equity, and Access ("IDEA"), explicitly found. SDMF ¶¶ 45-46, 50.

Similarly, in *Zainulabeddin* – and unlike Plaintiff here -- the medical student was dismissed after she was allowed to return to the medical school and still failed two courses, even though she was given all her required testing accommodations for those courses. *Zainulabeddin*, 749 Fed. Appx. at 783.  Significantly, unlike Plaintiff here, the student in *Zainulabeddin* did not "clearly identify any deficiencies in the accommodations she received" after she was awarded the testing accommodations and still failed the courses, which the court found conclusive. *Id.* at 784 ("Because she ultimately failed two courses *even after receiving disability accommodations*, the Committee's subsequent dismissal decision cannot reasonably be attributed to discrimination." (emphasis supplied)).  Here, in contrast, the record evidence establishes not only that Plaintiff was not given the required accommodation of a minimal distraction room that led to his Psychiatry retake exam failure and his failure of the Psychiatry clerkship – which triggered the MSEPC hearing that resulted in his dismissal -- but that he also internally complained to FIU, through its IDEA, of COM's failure to accommodate and the IDEA repeatedly found that Plaintiff's complaint was "true" and "substantiated". SDMF ¶¶ 8, 23, 28, 42-46, 50.

 Also factually distinguishable from the instant case are the two other cases to which FIU obliquely cites in its Motion, *J.A.M. v. Nova Southeastern University, Inc*., 646 Fed. Appx. 921 (11th Cir. 2016), and *Redding v. Nova Southeastern University, Inc.*, 165 F.Supp.3d 1274 (S.D. Fla. 2016).  The plaintiff in *J.A.M.*, who suffered from alcoholism, was not dismissed for poor academic performance or for his disability but because he indisputably breached his substance abuse and alcohol agreement with the university. 646 Fed. Appx. at 927.  In addition, the court found the plaintiff not "otherwise qualified" as his mental disability rendered "him wholly unable to participate in Nova's osteopathic medicine program". *Id.*  Plaintiff here, in contrast, successfully completed Period 1 and advanced to Period 2 – even without any disability accommodations – successfully completed all of Period 2 with a GPA above 80 evidencing overall competency, was promoted to Period 3, and successfully completed and passed six of the seven clerkships he took for Period 3, failing only the Psychiatry clerkship due to FIU's admitted failure to accommodate him for the retake exam. SDMF ¶¶ 4, 5, 17,  45, 46.

The medical student plaintiff in *Redding*, unlike Plaintiff here, was not determined to be disabled or awarded any testing accommodations by the medical school which were not provided

or which resulted in his dismissal decision. *Redding,* 165 F.Supp.3d at 1293.  The plaintiff in *Redding* also failed to identify any reasonable accommodations that could or should have been provided to him that would have allowed him to pass the two clinical rotations he failed, and which resulted in his dismissal. *Id.*  Here in contrast, Plaintiff had been determined by FIU to be disabled, had awarded him specific testing accommodations including placement in a minimal distraction room for all exams, and had failed to provide him with the minimal distraction room that caused him to fail the Psychiatry retake exam and clerkship, the triggering event for his being called before the MSEPC and ultimately being dismissed from COM. SDMF ¶¶ 8, 23, 28, 42-46, 50.

FIU's argument that it is undisputed that Plaintiff cannot establish he was an "otherwise qualified" individual with a disability and that it is entitled to summary judgment on both of Plaintiff's claims is, therefore, without merit.  There is substantial record evidence and reasonable inferences to be drawn therefrom that support Plaintiff's position that he was an "otherwise qualified" individual for both of his ADA claims. Defendant's Motion on Count I should be denied.

**B.    FIU failed to provide Plaintiff with required testing accommodations for his Psychiatry shelf exam retake, which  FIU, through its IDEA office, admitted.**

Count II of Plaintiff's Amended Complaint is an action under Title II of the ADA for FIU's failure to provide Plaintiff reasonable testing accommodations for his disability, specifically COM's failure to provide him with the required accommodation of a minimal distraction room for his Psychiatry shelf exam retake.[4]  "An ADA discrimination claim can be based on either a conventional 'disparate treatment' theory, or a theory that the defendant failed to make 'reasonable accommodations,' or both." *Forbes v. St. Thomas Univ., Inc.*, 768 F.Supp.2d 1222, 1227 (S.D. Fla. 2010).  Failure to provide reasonable accommodation for a disability thus "is a distinct, actionable theory of discrimination under the ADA." *Redding,* 165 F. Supp. 3d at 1294 (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1209, 1212 n. 6 (11th Cir.2008), and *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir.2007)).

---

[4] There is also record evidence, and even admissions by FIU through its IDEA office's reports, that Plaintiff was denied his required testing accommodations for class quizzes/readiness assignments. SDMF ¶ 46.  However, because those accommodation denials did not cause him to fail courses nor lead to his being called before the MSEPC or be dismissed from COM, Plaintiff has and will continue to focus his failure to accommodate claim on the failure to place him in a minimal distraction room for the Psychiatry clerkship shelf exam retake.  It was that failure to accommodate that specifically triggered Plaintiff being called before the MSEPC and directly caused his being dismissed form COM. SDMF¶ 44.

Significantly, "[d]isparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of her disability. By contrast, a failure to make reasonable accommodations claim requires no animus and occurs when a covered entity breaches its affirmative duty to reasonably accommodate the known physical or mental limitations of an otherwise qualified person." *Forbes*, 768 F.Supp.2d at 1227. "This is because the ADA not only protects against disparate treatment, 'it also creates an *affirmative duty* in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.' " *Id.* (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275–276 (2nd Cir. 2003), and quoting *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998)) (emphasis supplied).

To prove a valid failure to accommodate claim, Plaintiff must show that he: (1) is disabled; (2) is a "qualified individual"; and (3) was subjected to unlawful discrimination because of the disability by not being a provided a reasonable accommodation. *McKane v. UBS Financial Services, Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)); *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007); *Forbes,* 768 F.Supp.2d at 1227.  FIU does not contest the fact that Plaintiff was disabled; in fact, the record evidence shows indisputably that FIU, through its Wellness Center and DRC, had concluded that Plaintiff did suffer from a disability that required testing accommodations. SDMF ¶ 8. Likewise, as shown in the immediately preceding argument, there is ample record evidence that Plaintiff was an otherwise "qualified individual" with a disability who, had he passed the Psychiatry shelf exam retake and Psychiatry clerkship, would have been eligible for promotion from Period 3 to Period 4 at COM. SDMF ¶¶ 20, 44. The only remaining issue, which FIU now contests, is whether COM failed to provide Plaintiff with a required reasonable accommodation for his disability in connection with his retake of the Psychiatry shelf exam, which led to his failing the Psychiatry clerkship, being called before the MSEPC, and being dismissed from COM.  FIU's position on this issue must be rejected as not only does the record evidence support that Plaintiff was not provided with the required reasonable accommodation of a minimal distraction room for the shelf exam retake, but FIU, through its own IDEA office after a thorough, fact-intensive internal investigation, *admitted* that the accommodation was not provided.

The record evidence demonstrates that FIU, in July 2017, determined, through its DRC, that Plaintiff was disabled and awarded him two testing accommodations:  50% extra time and a minimal distraction room for his exams. SDMF ¶ 8. The record evidence – which FIU in its Motion

and accompanying Statement of Material Facts conveniently ignores -- also demonstrates that Plaintiff, on the day he retook the Psychiatry retake exam, was not placed in a proper minimal distraction room, and thus denied his required testing accommodation. Specifically, Plaintiff testified that the room where he took the test, AHC2 495, had windows on both sides, was next to a busy hallway where administrative offices and OSCE simulation rooms were located, and was close to the elevator. SDMF ¶ 42.  Plaintiff further testified that, while he was seated with his back to the large, frosted window in the room, he could see student faces and shapes passing in the hallway from his "periphery". *Id*.  Plaintiff also testified that the movement of students in the hallway was constant throughout the exam and the people were walking, yelling, and talking outside the room. *Id*.  He further testified that the constant noise and movement from the hallway caused him to lose focus and was very distracting, and that, even though he had earplugs in, he could still hear people talking and yelling outside. *Id*.  Plaintiff acknowledged that at some point a heater was brought into the room. *Id*.  During the exam, Plaintiff would look up at the proctor, Lachica, to express his frustration but the proctor did not do anything. *Id*.

Innah Lachica, the exam proctor who was an eyewitness to the many room distractions during the exam, repeatedly confirmed in her deposition the numerous distractions both inside and outside room AHC2 495 the day Plaintiff took the exam. SDMF ¶ 43.  Lachica confirmed the room was not the preferred room for accommodations because of its location near a large conference room, stairs, and an elevator, and because of the room's "freezing cold" temperature, and she agreed that no student should have been assigned to the room as a minimal distraction room on the date in question given the other events scheduled to take place outside the room. *Id*.  Lachica further testified that the room had a large translucent window occupying approximately 80% of the wall, which had gaps through which one could see into the hallway. *Id*.  Lachica testified that one could see the shapes and shadows of people through the window and could hear the noise of people talking loudly in the hallway as they walked by. *Id*.  She also testified that there was lots of noise and movement distractions during the exam to the point that even she was distracted.  *Id*. She observed and experienced both auditory and visual distractions, which included groups and crowds of people, as often as every 15 minutes, passing by with numerous people talking loudly over each other and at the same time. *Id*.  Lachica also stated that although she put a sign on the door for people to be quiet, they ignored the sign. *Id*.  Lachica further confirmed that the room was "freezing cold", that she believed the temperature to be a distraction to Plaintiff, and that she

ordered a heater be brought into the room which involved the added distraction of its setup. *Id*. Lachica also testified to an additional, significant auditory distraction during the exam: a loudspeaker in the hallway that repeatedly announced when students could return to their OSCE simulation rooms. *Id*. Although Lachica was aware of these numerous distractions, and although she had the responsibility and authority to tell those in the hallway to be quiet, stop the exam, and request a room change – which she acknowledged could have done -- she chose to do nothing at all (except acquire the room heater). *Id*. Lachica's only excuse for not taking action to help Plaintiff was because she was afraid it would cause even more distractions, even though she could have notified Maritere Williams, her boss, about the situation as she had done with the room temperature situation. *Id.*

Further record evidence to support the fact that room AHC2 495 was not a proper minimal distraction room for Plaintiff's retake of the Psychiatry shelf exam is found in the many memorialized witness statements in the investigative reports FIU's IDEA office -- the office specifically responsible at FIU for investigating student discrimination complaints -- prepared. The two investigative reports IDEA prepared in response to Plaintiff's internal disability discrimination complaints memorialized statements made to IDEA investigator Valerie Hall by Teresa Reyes-Gavilan, the person who assigned Plaintiff to room AHC2 495 and who was fully aware of the many student events and their potential distractions occurring directly outside the room during the exam. SDMF ¶¶ 22, 23. Although her deposition testimony fluctuated wildly, Reyes-Gavilan testified that there were at least six, and as much as eight, rooms that were used by the COM as minimal distraction rooms. SDMF ¶ 22. Reyes-Gavilan informed investigator Hall that, at the time Plaintiff was scheduled for the Psychiatry exam retake in room AHC2 495, there were several meetings in other conference rooms and three OSCE[5] simulation rooms near room AHC2 495, with each meeting having 20 participants. SDMF ¶ 23. Reyes-Gavilan also informed the IDEA investigator – who confirmed that all statements Reyes-Gavilan made to her as set forth in the IDEA reports were accurate – "that no student should have been assigned to take a test in AHC2 495 because of the amount of people on that floor." *Id*. Reyes-Gavilan further informed investigator Hall that "she normally catches these situations and understands that a student may have felt uncomfortable with the arrangement." *Id.* Reyes-Gavilan admitted in her deposition that

---

[5] Objective Structure Clinical Examinations ("OSCE").

her responsibilities included knowing what other events were going on around the rooms assigned as minimal distraction rooms. *Id.* In this regard, Hall in her deposition testified that Reyes-Gavilan, as the room scheduler, should have had knowledge of what the conditions were around AHC2 495 on the day in question, and that Reyes-Gavilan should have taken action to change the room for Plaintiff. *Id.*[6]

In addition to the substantial record evidence that establishes Plaintiff was denied the required reasonable accommodation of a minimal distraction room for his shelf exam retake, Defendant in its Motion and Statement of Material Facts ignores the simple fact that FIU, through its own DEA office, after a thorough, fact-intensive, unbiased internal investigation, conclusively found that Plaintiff had both been denied the required accommodation of a minimal distraction room for the exam retake and that this denial had distracted Plaintiff and adversely affected is performance on the exam. SDMF ¶¶ 45, 46, 50. The IDEA's findings and conclusions, reached by extremely experienced discrimination investigators knowledgeable in the ADA acting on behalf of FIU and its COM, must be viewed as admissions by FIU – i.e., admissions by a party-opponent -- of COM's failure to properly accommodate Plaintiff for his disability in connection with the Psychiatry retake exam. *Williams v. Asplundh Tree Expert Co.*, No. 3:05–cv–479–J–33MCR, 2006 WL 2868923 at *5 (M.D. Fla. Oct. 6, 2006) (granting plaintiff's motion for summary judgment and recognizing that company's internal investigative report findings of discrimination can be introduced into evidence by plaintiff as admissions of party-opponent under F.R. Evid. 801); *Georgia Power Company v. ABB Inc.,* NO. 4:17-CV-00125-HLM, 2019 WL 11505721 at *5, n.1 (N.D. Ga. Feb. 27, 2019) (relying on *Williams* to recognize that company's internal incident report finding failure to follow safety procedures was an admission of party opponent under F.R. Evid. 801); *Ray v. Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6749034, at *3 (M.D. Ala. Dec. 23, 2011) (finding an internal report to be an admission because "[it] was created by [the

---

[6] Notably, in both her deposition and her affidavit that FIU proffered in support of its Motion, Reyes-Gavilan makes statements that directly contradict the witness statement she made to Hall in IDEA's internal investigation of Plaintiff's discrimination complaints. Indeed, even though she could not recall in her deposition what she had to said to Hall during the witness interview, Reyes-Gavilan attempted to disavow her statements that Hall memorialized, and which Hall testified were accurate, as if Hall had fabricated them. SDMF ¶ 23. These contradictions by Reyes-Gavilan, made under oath, raise serious doubts as to Reyes-Gavilan's credibility in both her deposition and proffered affidavit – issues which this Court cannot address in ruling on Defendant's Motion, and which must be decided by a jury at trial.

company]'s agents and contains evidence contrary to [the company]'s position at trial"). These admissions by FIU through its IDEA office in Plaintiff's favor alone evidence that FIU's COM did not provide Plaintiff with the reasonable accommodation of a minimal distraction room for his Psychiatry shelf exam retake and that the failure directly caused Plaintiff to fail the exam and clerkship.

Notwithstanding the substantial record evidence supporting Plaintiff's position and FIU's own admission through its IDEA that the COM failed to provide Plaintiff with the required accommodation of a minimal distraction room for the Psychiatry shelf exam retake, FIU still requests in its Motion that this Court dismiss Plaintiff's failure to accommodate claim as a matter of law. To do so, however, would require this Court to ignore the numerous material facts supported by uncontroverted evidence in Plaintiff's favor, ignore its own admissions made through the IDEA, give credence only to those selected and incomplete facts Defendant has proffered, make credibility findings only in favor of FIU, and view all the relevant evidence in a light most favorable to FIU. This the Court cannot and should not do and summary judgment in Defendant's favor on Count I should be denied.

Likewise, this Court should reject outright Defendant's argument that Plaintiff's failure to accommodate claim should be dismissed as a matter of law because Plaintiff failed to engage in, or somehow broke down, an "interactive process" with FIU to receive the accommodation that FIU had specifically awarded him. This argument is specious in that the case law Defendant cites in support of this proposition is inapplicable and discusses an "interactive process" under the ADA that is irrelevant here. The ADA "interactive process" the cited case law refers to is, per ADA regulations, the "informal, interactive process" that a providing entity should initiate, and that should then be engaged in between the disabled person and the entity, to determine what appropriate accommodation can and should be given once the disabled person has requested to be accommodated. *Frazier-White v. Gee*, 818 F.3d 1249, 1257 (11th Cir. 2016) ("The regulations state that an employer may in some circumstances need to 'initiate an informal, interactive process' with a disabled employee to determine the appropriate reasonable accommodation. 29 C.F.R. §1630.2(o) (3)."). It does not, as Defendant argues in its Motion, refer to any obligation on the part of a disabled person who has already been awarded a reasonable accommodation, such as Plaintiff here, to alert the employer that the accommodation should be provided when it is not. Indeed, there is no case law that supports such an obligation on the part of a disabled person, as

once a reasonable accommodation is awarded, the providing entity has the affirmative duty to provided it. *Forbes*, 768 F.Supp.2d at 1227; *Bloomberg*, 331 F.3d at 275–276.

Here, the record evidence establishes it was COM's affirmative duty to ensure that Plaintiff received all his testing accommodations once the DRC awarded them.  Indeed, Dean Jones testified that once the DRC determined that a student was disabled and awarded him specific testing accommodations, COM had an obligation to implement and provide those accommodations to the student and ensure that the student received them. SDMF ¶ 9.  In addition, Plaintiff testified that he had been told it was COM's duty to automatically provide the accommodations to him and that he did not have to ask for them or inform every professor that he needed them to get them. *Id.*

Furthermore, there is ample record evidence that COM officials and employees who were aware of the room conditions when Plaintiff sat for the exam retake, failed to take action to ensure Plaintiff was properly accommodated. Reyes-Gavilan, who as the room scheduler was aware of all the potential disruptive conditions around the room to which Plaintiff was assigned for the exam, should not have assigned Plaintiff to that room. SDMF ¶ 23.  As Reyes-Gavilan informed Hall, the IDEA investigator, "no student should have been assigned to take a test in AHC2 495 because of the amount of people on that floor." *Id.*  Hall testified that Reyes-Gavilan should have had knowledge of what the conditions were around AHC2 495 on the day in question, and that Reyes-Gavilan should have taken action to change the room for Plaintiff. *Id.*

Moreover, the exam proctor, Lachica, who was aware of the many distractions in and around room AHC2 495 the date of the shelf exam retake, not only to Plaintiff but to herself as well, had the power and responsibility to take action of some kind to address and rectify the situation, but did  not. SDMF ¶¶ 28, 29, 43.  Lachica testified that she could have taken action by telling the noisy students outside the room to be quiet, to stop the exam, or to request a room change, but she chose to do nothing as she was afraid of further distracting Plaintiff. SDMF ¶ 43.

There thus is substantial record evidence, including admissions by and on behalf of FIU, that Plaintiff was not provided the required reasonable accommodation of a minimal distraction room to retake the Psychiatry shelf exam.  Defendant's Motion as to Count I of the Amended Complaint should thus be denied.

      **C.**    **There is supporting record evidence raising genuine issues of material fact that support Plaintiff's claim he was dismissed because of his disability.**

Summary judgment to FIU should also be denied as to Count II of Plaintiff's Amended Complaint in which Plaintiff alleges his dismissal from COM because of his disability.  Plaintiff's discriminatory dismissal claim is focused on the final dismissal decision of Dr. Elizabeth Bejar of the FIU Provosts' office denying Plaintiff's appeal of the MSEPC's dismissal recommendation. The record evidence and undisputed material facts derived therefrom show that Bejar made this decision even though she was aware at the time: (1) of Plaintiff's disability;  (2) that Plaintiff had not been properly accommodated for his Psychiatry shelf exam retake as determined by the IDEA; (3) that it was the retake exam failure that caused Plaintiff to fail the Psychiatry clerkship; (4) that Plaintiff's failure of the Psychiatry clerkship triggered the MSEPC hearing and resulted in the dismissal recommendation; and (5) that IDEA in its two investigative reports had specifically found and concluded that the failure to accommodate Plaintiff for the retake exam had an adverse effect on his performance on the exam. SDMF ¶¶ 39, 44-46, 50.  Despite her awareness of these relevant facts and their supporting evidence as set forth in the two detailed IDEA reports Bejar purportedly thoroughly reviewed before she made her final decision, Bejar issued her letter to Plaintiff denying his appeal and finding falsely that "there is *no indication*" that Plaintiff's allegations investigated by IDEA "had an adverse impact upon" his "academic performance". SDMF ¶ 50.  As both the IDEA Director, Shirlyon McWhorter, who signed the two investigative reports, and IDEA investigator Hall testified in deposition, this conclusion and statement Bejar reached in her appeal denial decision was inaccurate. SDMF ¶ 50.

Significantly, Bejar testified in deposition that, even though she had thoroughly reviewed both IDEA reports prior to making her final decision upholding Plaintiff's dismissal from COM, there was nothing in the IDEA reports that indicated COM's failure to provide Plaintiff with the required minimal distraction room adversely affected his performance on the Psychiatry shelf exam retake. SDMF ¶ 50.  This testimony, however, is contradicted not only by the IDEA's explicit findings to the contrary in its reports, but also by the testimony of McWhorter and Hall that Bejar's conclusion was inaccurate. *Id.*  Such testimonial contradictions, especially as they directly relate to Bejar's credibility in making the final dismissal decision, must be viewed in a light most favorable to Plaintiff, and establish triable issues of material fact as to Bejar's motives and intent in denying the appeal.[7]

---

[7] Indeed, it is well established, even by U.S. Supreme Court precedent, that summary judgment should be used "sparingly" where issues of motive and intent are involved. *Poller v. Columbia*

Plaintiff's disparate treatment claim in Count II is further buttressed by record evidence that demonstrates that in Plaintiff's case, which McWhorter testified was the *only* student internal discrimination complaint IDEA investigated inn her 11 years as Director where the student's complaints were found to be "substantiated", FIU had an obligation to remedy the discrimination but chose not to do so. SDMF ¶¶ 40, 49.  McWhorter testified that following issuance of the IDEA reports substantiating Plaintiff's discrimination complaints and COM's failure to accommodate him, COM should have taken appropriate remedial action, including looking to McWhorter, to remedy the situation. SDMF ¶ 49. However, according to McWhorter, in Plaintiff's case she was inexplicably not consulted about any remedial action by Bejar or anyone else, and nothing was done. *Id.*

The record evidence and the reasonable inferences drawn therefrom thus support the conclusion that Bejar deliberately chose to ignore the IDEA's explicit findings in Plaintiff's favor that he had been discriminated against and that the discrimination had an adverse impact on his academic performance, specifically in his failure of the Psychiatry clerkship that directly resulted in his being called before the MSEPC and being dismissed from COM.[8]  The record evidence also supports the conclusion that Bejar, in the face of the IDEA's finding of discrimination in Plaintiff's favor, deliberately chose only in Plaintiff's situation to not consult with McWhorter to remedy the situation by offering Plaintiff any available alternatives to dismissal. SDMF ¶ 49.  One such alternative that was available, as testified by Dr. Vivian Obeso, would have been to allow Plaintiff

---

*Broad. Sys.*, 369 U.S. 470, 473, 82 S. Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"). Indeed, generally where there are genuine issues of motive and intent as they relate to material facts in a case, they should be left to the trier of act to decide. *Pullman-Standard v. Swint*, 456 U.S. 273, 288, 102 S. Ct. 1781 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact.").

[8] FIU argues that Plaintiff cannot show that Dr. Bejar acted with discriminatory intent in denying his appeal because she asked IDEA to provide her with "additional information" as to whether the failure to provide testing accommodations adversely impacted Plaintiff's academic performance. However what FIU fails to point out in both its Motion and accompanying Statement of Material Facts is that this so-called "additional information" only was as to COM's failure to provide Plaintiff accommodations for his quizzes and readiness assignments. SDMF ¶ 39.  Bejar never asked McWhorter or the IDEA to provide any input as to whether COM's failure to accommodate negatively impacted Plaintiff's performance on the Psychiatry shelf exam retake. SDMF ¶ 39.  This makes sense as Bejar already knew the answer from the two IDEA reports, which both explicitly concluded that the denial of the minimal distraction room accommodation for the exam retake negatively impacted Plaintiff's concentration and his performance on the exam. SDMF ¶¶ 46, 50.

to remediate the Psychiatry clerkship and continue with this Period 3 class. *Id.* Indeed, Dr. Bonnin, who was directly involved in the accommodations process, sent Plaintiff an email to that effect after the shelf exam retake failure. *Id.* Bejar, however, deliberately ignored all available alternatives and the explicit findings of the IDEA and denied Plaintiff's appeal, thereby endorsing the discriminatory conduct of the COM and jettisoning Plaintiff's medical education and any hopes and dreams he had of becoming a physician.

Accordingly, there is ample record evidence that Bejar's final appeal denial and dismissal decision of dismissal was not based solely on a record of alleged poor academic performance as Defendant contends, but instead involved a total disregard for IDEA's findings that Plaintiff had been discriminated against by being denied a reasonable testing accommodation for the Psychiatry clerkship final exam retake and that failure to accommodate had an adverse effect on his academic performance on that exam and the Psychiatry clerkship. While Defendant correctly states that courts should give deference to an educational institution's academic decision making, that deference is not absolute and should not be a "rubber stamp". *Redding*, 165 F.Supp.3d at 1292. *See also Halpern v. Wake Forest Univ. Health Scis*., 669 F.3d 454, 463 (4th Cir. 2012) (("[W]e must take care 'not to allow academic decisions to disguise truly discriminatory requirements'...."); *Wong v. Regents of Univ. of Cal*., 192 F.3d 807, 817 (9th Cir.1999) ("This deference is not absolute...."). The institution's decision must be "a 'genuinely' academic decision and cannot be used to conceal impermissible reasons for [the] decision," such as discrimination. *Redding,* 165 F.Supp.3d at 1292. Here, there is record evidence that Bejar was aware of COM's discriminatory actions against Plaintiff that resulted in his Psychiatry clerkship failure, which triggered and formed the foundation for the MSEPC's original dismissal recommendation, and she was in a position to remedy the discrimination. Instead of remedying the discrimination, as she should have done according to McWhorter, Bejar chose to ignore the IDEA's detailed findings and deny Plaintiff's appeal based on the patently false conclusion that the discrimination he suffered had no adverse effect on his academic performance. Under these facts and in light of this evidence, Bejar's ultimate dismissal decision does not warrant any Court deference.

Defendant nonetheless contends that Plaintiff's disparate treatment claim must be dismissed as a matter of law because Plaintiff cannot show any similarly situated, non-disabled comparators who received more favorable treatment than he did. However, evidence of non-disabled comparator treatment is not necessary where there is, as here, substantial record evidence

of the discriminatory treatment of Plaintiff, including COM's denial of a reasonable testing accommodation to Plaintiff and McWhorter's false and unjustified denial of his appeal.  As the Eleventh Circuit has explained, "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.... A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ( (internal quotes omitted); *see also Schoenfield v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) ("A *prima facie* case of disparate treatment can be established by any proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.") (internal quotes omitted); *Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008) (holding that the plaintiff established a *prima facie* case of racial discrimination when he did not present evidence of a comparator but presented other circumstantial evidence that was sufficient*).

Moreover, a "similarly situated" comparator likely does not exist in this case as Plaintiff's situation was and is unique.  As IDEA Director McWhorter testified, Plaintiff was the only disabled COM student who ever complained internally about not being accommodated for his testing, whose complaint was fully investigated by FIU through its IDEA office, and whose complaint allegations of not being accommodated were found by IDEA – and hence FIU -- to be substantiated. SDMF ¶ 40.

Accordingly, there is substantial record evidence to support Plaintiff's claim of disparate treatment in connection with his dismissal from COM such that Defendant's Motion as to Count II of the Amended Complaint should be denied.

**D.  There is supporting evidence raising genuine issues of material fact that FIU acted with deliberate indifference in both not accommodating Plaintiff for his Psychiatry exam retake and in ultimately dismissing him.**

FIU's final argument in its Motion is that it is entitled to summary judgment dismissal of any claims by Plaintiff for the recovery of compensatory damages because he cannot demonstrate that FIU's discriminatory actions were intentional.  The Eleventh Circuit recognizes that a plaintiff can establish intentional discrimination with evidence that the defendant was "'deliberately indifferent' to [his] rights under the ADA" because the defendant knew that a rights violation was

"substantially likely," but "fail[ed] to act on that likelihood." *Martin v. Halifax Healthcare Sys.*, 621 Fed. Appx. 594, 603-04 (11th Cir. 2015) (citation omitted). "[D]eliberate indifference involves a 'deliberate choice'" and "[m]ere negligence is insufficient." *Id.* (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) and *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005)).

In addition, to hold an organization liable, the defendant's deliberate indifference must have been through "an official who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf [and who] has actual knowledge of discrimination in the [defendant's] programs and fails to adequately respond." *Liese*, 701 F.3d at 349 (citation omitted) (emphasis in original). In this regard, the "analysis of what constitutes discriminatory intent ... is inseparably linked to the question of *whose* discriminatory intent may be attributed to [an entity] for purposes of establishing liability." *Id.* at 349 (emphasis in original); s*ee also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009) (deliberate indifference requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures ... has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond."). Here, for both of Plaintiff's claims, there is ample record evidence that responsible "officials" with COM who had actual knowledge of his discriminatory conditions and treatment and who had the responsibility and authority to institute corrective measures to address those conditions chose instead to deliberately ignore their responsibilities and not take any corrective action.

First, as to Plaintiff's failure to accommodate claim and as discussed above, there is record evidence that the COM officials in charge of assigning Plaintiff to a minimal distraction room for his retake of the Psychiatry final exam assigned him to a room that should not have been used as a minimal distraction room given the room's large window into the hallway and the numerous events and activities scheduled to take place around the room on the same floor the same day. SDMF ¶¶ 23, 28, 42, 43.  Reyes-Gavilan, who was responsible for room assignments and had knowledge of all events scheduled to take place in the vicinity of room AHC2 495 that clearly entailed heavy foot traffic in the area, informed IDEA in its internal investigation that "no student should have been assigned to take a test in AHC2 495 because of the amount of people on that floor." SDMF ¶ 23. Reyes-Gavilan further informed IDEA that "she normally catches these situations and understands that a student may have felt uncomfortable with the arrangement." *Id*.

Hall, the IDEA investigator who interviewed Reyes-Gavilan, testified that Reyes-Gavilan, as the room scheduler, should have had knowledge of what the conditions were around AHC2 495 on the day in question, and that Reyes-Gavilan should have taken action to change the room for Plaintiff. *Id.*

In addition, Lachica, the exam proctor who eye-witnessed the many distractions both inside and outside the exam room where Plaintiff took the exam, indisputably and admittedly, had the authority to stop the exam and request a room change if she experienced significant room distractions. SDMF ¶¶ 29, 43. Lachica also had the authority and responsibility in the event of noisy conditions occurring outside the exam room to physically get up and ask those making the noise to quiet down. *Id.* However, the record evidence establishes indisputably that during the exam, Lachica deliberately and knowingly chose to shirk her responsibilities and do nothing, claiming that she was "afraid" of further distracting Plaintiff. *Id.* Thus, both Reyes-Gavilan and Lachica, who were in positions of authority to correct the failure to accommodate situation, were deliberately indifferent to Plaintiff's disability and his need to be accommodated by taking no corrective action whatsoever.

Moreover, to the extent neither Reyes-Gavilan nor Lachica qualify as COM "officials" for purposes of satisfying the deliberate indifference standard, there is also substantial record evidence that COM was "willfully blind" in its attention to and implementation of reasonable accommodations for its disabled students as required by the ADA. IDEA in it is thorough investigation and initial report found numerous long-running, systemic problems with COM's provision of testing accommodations to its students and its administrators' complicity therein. SDMF ¶¶ 48, 51.[9] In addition, there is substantial record evidence that COM failed to properly train those employees who were assigned to implement the testing accommodations process, including most notably Dean Jones, exam proctor Lachica, and Reyes-Gavilan's supervisor, Maritere Williams, in the ADA and the requirements of a minimal distraction room. SDMF ¶ 51.[10]

---

[9] That McWhorter and IDEA mysteriously "amended" their report to eliminate all references to their systemic problem findings after McWhorter met with FIU's inside counsel after issuance of the initial report suggests that FIU and its COM did not want to highlight these systemic problems as they gave further support for Plaintiff suffering intentional discrimination in not being properly accommodated. *See* SDMF ¶ 48.

[10] Lachica, confirmed she could not tell what a minimal distraction room was for purposes of the ADA, was not familiar with FIU guidelines on a minimal distraction room was, and never received any training on identifying what a minimal distraction room was. SDMF ¶ 51. Jones admitted he

As the Eleventh Circuit and this Court have recognized, such blind delegation of "complete discretion to the staff" who are not properly given guidance in the ADA and accommodations requirements is "willful blindness" comparable to the deliberate indifference. *Liese,* 701 F.3d at 351; *Segev v. Lynn University, Inc.*, No. 19-CV-81252-Cannon/Reinhart, 2021 WL 2269838 at *13 (S.D. Fla. Feb. 6, 2021) (denying summary judgment as to intentional discrimination claim).

As for Plaintiff's discriminatory dismissal claim in Count II, and as more fully discussed above in the immediately preceding argument, there is ample evidence, and hence triable issues of material fact, that Bejar, in denying Plaintiff's appeal in the face of IDEA's detailed, written findings that Plaintiff was discriminated against and that the discrimination adversely impacted his academic performance, chose to willfully ignore the IDEA's findings and deny Plaintiff's appeal. SDMF ¶¶ 39, 50. There is evidence that Bejar testified falsely in her deposition when she repeatedly claimed that IDEA had not specifically found in its reports that Plaintiff's failure to be accommodated for his exam retake adversely impacted his performance on the exam, when the report and testimony of McWhorter and Hall unequivocally state otherwise. SDMF ¶ 50. There is also uncontroverted evidence that Bejar's written conclusion in her denial of Plaintiff's appeal, to the effect that there was "no indication" that his upheld discrimination allegations had "an adverse impact" upon his academic performance, is false and inaccurate. SDMF ¶ 50.

Accordingly, because there are genuine, triable issues of material fact as to whether COM and its officials acted with deliberate indifference in both denying Plaintiff his testing accommodation for the Psychiatry exam retake and in upholding his dismissal, Defendant's Motion seeking summary dismissal of his claims for compensatory damages should be denied.

### III.    Conclusion.

Based on the foregoing arguments, the supporting record evidence and reasonable inferences to be drawn therefrom in Plaintiff's favor, Defendants' Motion for Summary Judgment should be denied, and this case allowed to proceed to jury trial.

---

was not aware of what the specifications were for a minimal distraction room even though he had served for years as Chairman of COM's ADA Committee, which was responsible for ensuring disabled students received the accommodations they were awarded. *Id.* Williams stated to Hall, the IDEA investigator, that she had never received any accommodations training, had never attended any ADA meetings, and erroneously described a minimal distraction room as one completely without windows and away from heavy foot traffic *Id.*

Respectfully submitted,

> RODERICK V. HANNAH, ESQ., P.A.
> Attorneys for Plaintiff
> 4800 N. Hiatus Road
> Sunrise, Florida 33351
> Telephone:  (954) 362-3800
> Facsimile:  (954) 362-3779
> Email:  rhannah@rhannahlaw.com


> By   /s/ *Roderick V. Hannah*
>       Roderick V. Hannah
>       Fla. Bar No. 435384

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th of April, 2022, a true and correct of the foregoing

was electronically filed and served via transmission of Notice of Electronic Filing generated by

CM/ECF on all counsel or parties of record on the Service List below:

Lourdes E. Wydler, Esq.
Email: lew@marrerolegal.com
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

*Attorneys for Defendant FIU BOT*

> /s/ *Roderick V. Hannah*
>       Roderick V. Hannah