UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,
    Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,
    Defendant.
_____/

## **DEFENDANT'S REPLY STATEMENT OF MATERIAL FACTS**[1]

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1, and this Court's Order [ECF No. 26], hereby files its Reply to Plaintiff's Statement of Disputed Material Facts [ECF No. 64]. FIU submits this Reply to Plaintiff's counterstatement of its Material Facts set forth in ¶¶ 1-41 and to Plaintiff's "additional facts" set forth in ¶¶ 42-51. FIU's "disputes" are primarily to clarify the facts of the case, address mischaracterization of testimony, and direct the Court to accurate citations of indisputable record evidence to demonstrate that no genuine issue of material fact exists.

3. Disputed. Plaintiff cites to Jones Depo. p. 19/ln 14 – p. 20/ln 11, which states that "We manage and work with our assessment team and the University to work with students who need accommodations" and we work with the DRC to understand how those accommodations…were

---

[1] Defendant notes that Plaintiff violated Local Rule 56.1(b)(2)(D) by exceeding the 5-page limit of "Additional Facts" even with 1.5 spacing. In addition, Plaintiff violated Local Rule 56.1(a)(2) and (b)(2), and Fed. R. Civ. P. 56(c)(1), by asserting additional facts to clarify, limit, or contextualize Defendant's proposed facts that do not clearly challenge, contradict or "genuinely dispute" the proposed fact. *See Silverstein v. Boehringer Ingelheim Pharm., Inc.*, 19-CIV-81188, 2020 WL 6110909, at \*5 (S.D. Fla. Oct. 7, 2020).

being incorporated from COM," consistent with Defendant's statement. ECF No. 63-6 p. 5. Moreover, Plaintiff states that "Dean Jones was the Chairman of the Committee from 2015 through 2018" which supports the Committee was formed prior to Plaintiff's enrollment. ECF No. 64 ¶ 3.

4. Disputed. Plaintiff cites to Obeso Depo. p.20/ln 16 – p.21/ln 2 to support his contention that COM administrators were aware of medical and personal family issues that Plaintiff was struggling with in Period 1. ECF. No. 64 ¶ 4. However, the lines immediately following clearly state that although she was aware that Plaintiff was struggling with personal issues, Dr. Obeso was not aware of what those personal issues were. ECF No. 63-7 pp. 5-6.

5. Disputed. Plaintiff did not dispute that grades of 75-79, while passing, indicate marginal competency. ECF No. 64 ¶ 4. Moreover, Plaintiff omits from Dr. Obeso's statement that although the MSEPC made a determination that Plaintiff had made satisfactory academic progress, and maintained a degree of professionalism, "he was still on academic probation," indicating a lack of success. ECF No. 63-7 p. 55.

6. Disputed. Defendant, citing to Plaintiff's deposition, stated Plaintiff acknowledged he was advised about the services provided to disability students during Period 1 but did not request accommodations during Period 1. ECF No. 56 ¶ 6. On the other hand, Plaintiff provided that he requested accommodations during his MSEPC hearing dated July 27, 2017, which undisputedly occurred during Period 2. ECF No. 64 ¶ 6.

8. Disputed. The accurate testimony of Dean Jones cited by Plaintiff states, "if you look at the language, it says he was qualified for and eligible for those accommodations, *not required*." ECF No. 63-6 p. 19.

9. Disputed. Plaintiff improperly attempts to make a legal argument related to the ongoing interactive ADA process. Plaintiff did not express any dissatisfaction with the accommodations to

the proctor; when speaking to Dr. Havas, Chair of the Accommodations Committee, after he learned he failed the exam; at the MSEPC hearing dismissing him from COM; or in his appeal to the Appeals Committee. ECF No. 55-1 pp. 107, 115, 131-132, 148. The first time he alerted FIU to any lack of accommodations was on appeal to the Provost designee. ECF No. 55-1 p. 171.

10. Disputed. At the time Plaintiff went before his first MSEPC hearing, he had failed (1) Genes Molecules, and Cells, (2) Cardiovascular and Respiratory Systems, and (3) the Cardiovascular and Respiratory Systems remediation. ECF No. 55-1 pp. 55-56. Pursuant to the Medical Student Handbook, this constituted three failures as "an attempt at remediation of a course is counted as a repeat of the course" and "failure of a remediation assessment or plan is considered equivalent to a second failure of that course." ECF No. 55-6 p. 5 ¶ 10; ECF No. 55-7 p. 5.

14. Disputed. The letter from Plaintiff's former classmate was written several years later, and Plaintiff did not dispute the MSEPC decision despite believing the PIR was "false". ECF No. 63-1 p. 225; ECF No. 55-1 pp. 86-87.

15. Disputed.[2] Plaintiff cites to Ms. Hall and Ms. McWhorter's depositions where they each state they do not know where the information regarding Plaintiff not being accommodated for Systems Based Practice on the chart came from. ECF No. 63-9 pp. 21-23; ECF No. 63-11 pp. 31-32. Whereas Plaintiff stated that "the reason I failed Systems Based Practice was due to the unexcused absences…even though I had passed the testing necessary." ECF No. 55-1 p. 88. Plaintiff mischaracterizes Dr. Obeso's testimony as the statement regarding a student's entitlement to repeat one failed shelf exam without limit refers to Period 3 clerkships, not Period 1 or 2 courses such as Systems Based Practice. ECF No. 63-7 pp. 27-29. Pursuant to the Handbook, "Students

---

[2] Plaintiff cites to Obeso Depo p. 8-60 but only included pages 8, 20-21, 35-36, 39-58, and 60 in Notice of Filing. ECF No. 63-7.

who fail a course in Periods 1 or 2 due to unsatisfactory academic performance may be offered the opportunity to demonstrate competency with satisfactory performance on a remediation assessment, usually a comprehensive exam. Students who have failed prior courses and/or remediation assessments, or whose overall academic performance is poor, may require review by the MSEPC <u>before</u> being given permission to take additional remediation assessments…Remediation assessments in Periods 1 and 2 are offered at the ends of course blocks, three times per year." ECF No. 55-7 p. 5; ECF No. 55-6 p. 7 ¶ 13. Plaintiff failed the Systems Based Practice course on January 6, 2018. ECF No. 55-10 p. 9. Plaintiff began his leave of absence on January 18, 2018, twelve days later. ECF No. 55-10 p 9. Before returning from his leave of absence, Plaintiff attended an MSEPC hearing where it was determined that he would repeat Period 2, providing Plaintiff an opportunity to remediate Systems Based Practice. ECF No. 55-2 pp. 8-9.

17.     Disputed. Dr. Obeso specifically stated, "He did the term for a second time. So, *I wouldn't say that it shows competency*. I would say that he completed all of the courses and passed all the courses he was supposed to take in his second period of study." ECF No. 63-7 p. 10. In addition, Plaintiff's cumulative GPA after repeating Period 2 was 81.27, not 84.27. ECF No. 63-1 p. 218.

20.     Disputed; Plaintiff did not show competency or perform extremely well in his Period 3 clerkships. According to Dr. Obeso, "we or even the MSEPC were very much concerned" about those "very low scores on those shelf exams" because of "multiple failures" and "multiple [remediation] opportunities," "despite him having met those criteria for passing those clerkships." ECF No. 63-7 p. 51. The clinical component for the Psychiatry clerkship was 30% but the percentage remains undetermined as to the other clerkships. ECF No. 63-7 p. 23. Dr. Obeso further provided that any student can get called to the MSEPC at any time, and based on his struggles with the shelf exams and because he was on academic probation, Plaintiff would likely have been called

4

before the MSEPC at the time they convened to determine eligibility for promotion even if he passed the Psychiatry retake. ECF No. 63-7 p. 17; ECF No. 55-6 p. 12 ¶ 24.

22. Disputed. Ms. Reyes-Gavilan's testimony does not fluctuate as she states that there were 2 minimal distraction rooms under the purview of COM, 4 rooms that may be used and have been used for students in Periods 1 and 2 under the purview of the Department of Research, and two additional COM rooms, one that she repeatedly states she does not recall utilizing and another that was recurrently being utilized for a research scholarship course at the time of Plaintiff's Psychiatry shelf exam retake. ECF No. 55-11 pp. 2-3 ¶ 6; ECF No. 63-10 pp. 3, 5-9.

23. Disputed. Ms. Reyes-Gavilan's testimony is consistent with the information from the Wellsky online scheduling system, which she had the benefit of for deposition and affidavit purposes; there is no indication whether the Wellsky information (in the form of documented screenshots) was readily available to her at the time of the IDEA interview. ECF No. 55-11 pp. 14-24.

28. Disputed. According to Ms. Lachica and her documented request (in the form of an instant message) for the heater stated, "the student…is wondering if we can provide him with a heater since the room is freezing cold." ECF No. 63-4 p. 21; ECF No. 63-1 p. 3. Ms. Lachica further stated that she did not know if Plaintiff was distracted by the process of bringing in a heater or whether he was being distracted by anything. ECF No. 63-4 pp. 15-16, 24. Ms. Lachica also stated that she did not think Plaintiff was visually distracted. ECF No. 63-4 p. 56. Plaintiff never vocalized to Ms. Lachica that the noise outside the room was too loud or distracting. Exhibit 1,

Lachica depo, p. 169/ln 10-14. Whether or not Ms. Lachica was distracted is irrelevant as she was not taking the exam and was not wearing earplugs. Exhibit 1, Lachica depo, p. 168/ln 19-22.[3]

29. Disputed. Dr. Loynaz states that if there was noise outside the room the "proctor would have asked students to quiet down…*or put signage out*." Exhibit 2, Loynaz depo, p. 41/ln 16 – p. 42/ln 4.[4] Ms. Lachica did nothing to remedy the noise situation because she did not know whether it was distracting to Plaintiff. ECF No. 63-4 p. 58.

39. Disputed. McWhorter Depo, p. 99/ln 5-10 does not provide that Dr. Bejar never requested IDEA to address Plaintiff's performance on Psychiatry shelf exam retake. ECF No. 63-9 p. 55. Moreover p. 29 of the Amended IDEA Report states that "there is evidence to corroborate his belief that Nehme's placement in AHC2 494…impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam…." ECF No. 55-10 p. 34. There was no way to determine whether Plaintiff's failure of the Psychiatry shelf exam retake was a result of his placement in AHC2 495. ECF No. 63-5 pp. 8-10.

42. Disputed.[5] The elevator was located "outside the hallway", not in the same hallway as the conference room. ECF No. 63-4 p. 13. Ms. Lachica testified that the movement of students outside "wasn't constant" and that the noise "was not throughout" the exam. ECF No. 63-4 pp. 26-28. She further testified that the distraction of people walking by was limited to one minute or less. Exhibit

---

[3] Because of an inadvertent filing error, pages 168 and 169 of Ms. Lachica's deposition transcript were not included in FIU's Notice of Filing [ECF No. 55.]. Pages 168 and 169 are attached hereto as "Exhibit 1" for the Court's reference.

[4] Plaintiff cites to "Loynaz depo. p. 39/ln 6-22, p. 41/ln 14-24" omitting p. 42 and this significant language completing Dr. Loynaz's testimony from his "additional material fact." Pages 41 and 42 are attached hereto as "Exhibit 2" for the Court's reference.

[5] The portion of Plaintiff' deposition, specifically p. 11/ln 11-17, referenced by Plaintiff does not contain any testimony regarding Plaintiff choosing not to alert the proctor because he was trying to focus and did not know he had an option to resolve noise issue.

1, Lachica depo, p. 177/ln 14 - p. 178/ln 14.[6] She also stated she was not sure whether any student walked by during the morning part of the exam. ECF No. 63-4 p. 66. Any alleged loss of focus did not have an impact on his time management, the concern which led to his needing accommodations, as he was allotted 6 hours, from 8:00 am to 2:00 pm, to take the exam but finished the exam at 12:43 pm after starting at 8:28 am. ECF No. 55-6 ¶ 17; ECF No. 56 ¶¶ 7-8, 23.

43. Disputed[7]. Ms. Lachica had no knowledge as to whether Plaintiff was distracted by anything. ECF No. 63-4 pp. 15-16. Lachica stated that even though there were a few distractions, she still considered the room to constitute a minimal distraction room. ECF No. 63-4 p. 32. Ms. Lachica stated that she would agree with Ms. Reyes-Gavilan's statement that no student should have been assigned to the room "*if that is the protocol*". ECF No. 63-4 p. 65. Ms. Lachica stated that she did not know whether the setup of the heater was a distraction for Plaintiff. ECF No. 63-4 pp. 23-24. Ms. Lachica did not take any action to resolve the auditory or visual distractions such as the noise or the students passing through the hallway because Plaintiff did not make her aware that he was distracted by anything other than the temperature. ECF No. 63-4 pp. 55-58.

44. Disputed. Dr. Obeso testified that any student can get called to the MSEPC at any time, and based on his struggles with the shelf exams and because he was on academic probation, Plaintiff would likely have been called before the MSEPC at the time they convened to determine eligibility for promotion even if he passed his Psychiatry Clerkship. ECF No. 63-7 p. 17; ECF No. 55-6 p. 12 ¶ 24. Although the failure of the MSEPC clerkship triggered MSEPC review, the

---

[6] The additional two pages of testimony referenced here from Ms. Lachica's deposition is included in the attached Exhibit 1.

[7] The portions of Ms. Lachica's deposition or Pl. Exh. 4 referenced by Plaintiff in the pinpoint citation do not contain any testimony supporting Plaintiff's assertions regarding a window occupying 80% of the wall.

dismissal decision was made after consideration of his "overall performance as a medical student." ECF No. 55-6 ¶ 19; ECF No. 63-7 pp. 51-52; ECF No. 55-8 p. 9.

45. Undisputed.

46. Disputed. No conclusions were provided in the memorandum; the Memo actually states that "this *suggests* that his claim of not receiving his accommodations for his testing is TRUE". ECF No. 63-1 p. 228. The Amended Report did not analyze Plaintiff's claims under the ADA and Section 504 but rather under FIU regulation 106. ECF No. 55-10 p. 33. The report stated that "there is evidence to corroborate his belief that: (1) Nehme's placement in AHC2 495 did not meet the standard for a minimal distraction room…; and (2) Nehme did not receive testing accommodations for pop quizzes/readiness assignments…." but did not make any findings on the matter. ECF No. 55-10 p. 34. The Amended Report also stated that "IDEA believes that lack of space was not a legitimate, nondiscriminatory reason for scheduling Nehme" to test in AHC2 495. ECF No. 55-10 p. 36. The Amended IDEA Report found that "there [was] sufficient evidence to support a violation of FIU-106" and substantiated his claims. ECF No. 55-10 p. 36.

47. Disputed. The following portions of the "additional information" section were omitted: that COM had a "history of denying students testing accommodations *in quizzes, flipped-chart assignments, and classroom activities*" dating back to 2009, and that COM "addressed this matter by communicating to students that Readiness Assignments are now receiving testing accommodation and a process for accommodations has been outlined by the college" indicating the entire section relates solely to the accommodation of quizzes. ECF No. 63-1 p. 40. Moreover, as to the undisputed facts, objected to as being immaterial and irrelevant to whether Plaintiff was wrongfully dismissed or whether he was reasonably accommodated.

48. Undisputed as to its veracity but objected to as inadmissible, immaterial, and irrelevant to whether Plaintiff was wrongfully dismissed or whether he was reasonably accommodated. The Amended IDEA Report's outcome regarding Plaintiff's charge did not change after consultation with Ms. Elijah from the Office of the General Counsel. ECF 63-1 p.10-41; ECF. 55-10, p.6-37. Additionally, Ms. Hall continued as an adjunct professor at FIU and Ms. McWhorter retired from FIU given her years of service with the State. ECF. 63-11 p.4; ECF. 63-9 pp.13-14.

49. Disputed. Ms. McWhorter does not state that COM should have looked to her as IDEA Director to remedy the situation; she stated that she was not looked to for purpose of remedies and that "something should have been done." ECF No. 63-9 pp. 59-63. Plaintiff ignores the immediately preceding lines where Dr. Obeso states that students who have academic history of failures are usually not given the option to repeat the clerkship. ECF No. 63-7 p. 43.

50. Disputed. Plaintiff's fact proposal of an "explicit finding" egregiously ignores the language in the Amended IDEA report that provides, "[t]here is evidence to corroborate his belief that: Nehme's placement in AHC2 495 (a conference room) did not meet the standard for a minimal distraction room identified by the ADA and this impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam." ECF No. 55-10 p. 34. There is no language in the Amended IDEA Report conclusively finding that placing Nehme in AHC2 495 had an adverse impact or effect on his academic performance. ECF No. 55-10 pp. 6-37. Dr. Bejar did not chose to ignore the Amended IDEA Report as upon receipt, she requested additional information regarding the impact of any alleged failure to accommodate on his grades and overall academic performance. ECF No. 55-10 p. 3 ¶ 8. An audit was thus conducted, revealing that failure to accommodate quizzes did not have a significant impact on his grades. ECF No. 55-10 p. 3 ¶ 9. There was no way to determine whether Plaintiff's failure of the Psychiatry shelf exam retake was

a result of his placement in AHC2 495. ECF No. 63-5 pp. 8-10. Despite being unable to conclusively determine the impact of the placement in AHC2 495 on his academic performance, reviewing "the student's performance holistically" regarding determination to dismiss Plaintiff, it is undisputed that Plaintiff failed multiple shelf exams in Period 3, including the Psychiatry shelf exam, despite the provision of accommodations, evidencing there was no impact on his academic performance, and such performance while on academic probation was cause for dismissal. ECF No. 55-10 p. 3 ¶¶ 10, 12; ECF No. 56 ¶¶ 20-21.

51.     Disputed. Mr. Jones stated that he does know what a minimal distraction room is as Dr. Loynaz "explained to me very clearly what it is" and he continually meets with Dr. Loynaz "to get verification and also a better understanding of what [minimal distraction room] qualifies as." ECF No, 63-6 pp. 37-38. The DRC, with 15 staff members, is dedicated to assisting students with documented disabilities and provides specific procedures to obtain reasonable accommodations, and Stephen Loynaz, the Access Consultant Manager of the DRC with a master's degree in mental health counseling and a doctorate in higher education, serves as the liaison for COM for all consultation related to disability. ECF No. 56 ¶ 2; ECF No. 55-9 p. 1.

I HEREBY CERTIFY that on this 2nd day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        MARRERO & WYDLER
        *Attorneys for Defendant FIU*
        2600 Douglas Road, PH-4
        Coral Gables, FL 33134
        (305) 446-5528
        (305) 446-0995 (fax)

        BY /s/  Lourdes Espino Wydler_____
            OSCAR E. MARRERO
            F.B.N.:  372714
            oem@marrerolegal.com
            LOURDES ESPINO WYDLER
            F.B.N.:  719811
            lew@marrerolegal.com
            LAUREN D. MARTIN
            F.B.N.:  1034166
            ldm@marrerolegal.com

## SERVICE LIST

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN:  435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*