UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24649-AMC

ELIE NEHME,
   Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,
   Defendant.
_____/

## **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU") by and through undersigned counsel, pursuant to Fed.R.Civ.P. 56 and S.D.Fla. Local Rules, files this Reply Memorandum of Law in Support of Summary Judgment, and states:

**I. Plaintiff's Undisputed Probationary Status and Poor Academic Performance in Period 3 Warrants Summary Judgment as Being Not Otherwise Qualified Under the ADA.**

In the light most favorable to Plaintiff, he was not a medical student in good standing and continued to perform poorly with accommodations. Consistent with Eleventh Circuit precedent on disability discrimination in postsecondary education cases, summary judgment here should follow because Plaintiff was unequivocally unable to meet the professional requirements of the medical program. *See* ECF No. 57, pp. 5-8; *Goldberg v. Florida Int'l Univ.,* 838 Fed. Appx. 487, 492 (11th Cir. 2020); *Zainulabeddin v. Univ. of S. Florida Bd. of Trustees*, 749 Fed. Appx. 776, 783 (11th Cir. 2018)(affirming grant of summary judgment for university finding that decision to dismiss student was fully supported by her academic record and medical school's policies where probationary student repeated academic year after being granted accommodations and subsequently failed two courses). Plaintiff contends that he was performing the essential functions

of the medical program because the MSEPC continued to promote him each year, he passed all of his courses up until the Psychiatry Clerkship, he received positive evaluations from the Clerkship attendings, and he did not have any further professionalism incidents, but these facts do not make a triable issue.[1] ECF No. 65 p. 4. Plaintiff's characterization of his performance up to the retake, disregards an important factor: that the MSEPC[2] in its third review of Plaintiff's overall performance considered the multiple failures of the shelf exams and FIU's policy regarding shelf exam performances.

Absent from the Response is any reference to the undisputed fact that he was on academic probation at all material times. The lengthy narrative of Plaintiff completing various portions of the medical program up until the Psychiatry re-take, only demonstrates how many opportunities were provided to him to improve his testing performance including remediation of individual courses, taking a leave of absence, and repeating a year. Even if this Court begins its analysis at Period 3, as suggested by Plaintiff, ignoring his poor academic history[3], the result would be the

---

[1] Plaintiff's reference to Dr. Obeso testimony about students who have graduated with lower GPAs is misplaced because it did not take into consideration a specific student's circumstances such as did the student repeat a year, retake courses, or fail numerous shelf exams while on probation. ECF No. 65 p. 4. Instead, Plaintiff overlooks the other students who performed academically similar to him and were dismissed from FIU, all of which were not disability students who exhibited patterns of failures and repeated periods. ECF No. 56 ¶ 40. Dr. Obeso stated that even if Plaintiff had passed his Psychiatry clerkship, he would have been called before the MSEPC at the time they convened to determine eligibility for promotion to Period 4 based on his probationary status and struggles with numerous shelf exams, which were cause for concern. ECF No. 71 ¶ 44.

[2] The MSEPC is generally composed of up to 12 voting members from COM chosen to ensure that each student who graduates from FIU possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor; to evaluate academic performance in the required curriculum…and to recommend appropriate intervention in the event of unacceptable academic performance. ECF No. 55-7 pp. 13, 15.

[3] During Periods 1 and 2 he had four (4) course failures, a professionalism incident, and multiple low scoring grades. After his **third** course failure, Plaintiff was brought before the MSEPC for the first time, where they found his academic performance to be of "*serious concern.*" ECF No. 56 ¶¶ 10-13. Plaintiff was placed on academic probation, and informed, both verbally and in writing, that "*any further course failure or continued poor academic performance will trigger review by*

same. It is undisputed that Plaintiff was on academic probation and continued to perform poorly even with accommodations on all other shelf exams: failing five (5) shelf exams (Family Medicine, Surgery, Neurology, Psychiatry, and the Psychiatry retake), and scoring extremely low on two (2) additional shelf exams (OB/GYN and the Neurology retake). ECF No. 56 ¶¶ 19-20.

Pursuant to the Handbook, "failure of or *poor shelf exam performance*, *such as **three** shelf scores in the 5-10 percentile* range, may result in MSEPC review. ECF No. 56 ¶ 20. It is further undisputed that Plaintiff was on academic probation and brought before the MSEPC on two prior occasions where he was put on notice that "**continued poor academic performance will trigger** review by the MSEPC with the possibility of…dismissal," clearly delineating that failure of a course/clerkship was not the sole basis triggering review or ultimate dismissal.  ECF No. 56 ¶ 19.

In *Forbes v. St. Thomas University, Inc.,* the Eleventh Circuit affirmed a grant of summary judgment for the university where the student on academic probation failed to meet the academic standards of the law school even with accommodations. 456 Fed. Appx. 809 (11th Cir. 2012); *see also Cooney v. Barry School of Law*, 720 Fed.Appx. 571 (11th Cir. 2018) (affirming district court's grant of summary judgment for law school, finding dismissed student was not otherwise qualified where he failed to meet the minimum academic requirements pursuant to Barry's rules); *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921 (11th Cir. 2016) (affirming dismissal and finding student was not otherwise qualified). Similarly, in *Ellis v. Morehouse Sch. of Med.*, a sister district court granted summary judgment in favor of the university for failure to meet the essential requirements of a medical student, when a probationary student took three calendar years to

---

*the MSEPC with the possibility of adverse recommendations, including repeating an academic period or dismissal from medical school*." ECF No. 56 ¶ 13. After he failed another course, and after FIU granted his leave of absence, a second MSEPC hearing was held, and for the second time he was notified his academic performance was of "*serious concern*", was permitted to Repeat Period 2, would remain on academic probation and dismissal could occur. ECF No. 56 ¶¶ 14-16.

3

complete his first two academic years. 925 F. Supp. 1529, 1532 (N.D. Ga. 1996). After receiving failing grades in two clerkships, the Promotions Committee voted to dismiss him due to unsatisfactory academic performance and the court found he was not otherwise qualified. *Id*.

Furthermore, other appellate courts across the nation have granted summary judgment against medical school students under similar circumstances where they have not met the essential requirements of the educational institutions failing to establish a prima facie element under the ADA as otherwise qualified. In *Zukle v. Regents of Univ. of California*, 166 F.3d 1041 (9th Cir. 1999), a student who experienced academic difficulty from the beginning, failed a clerkship, because of unsatisfactory clinical performance despite passing the written exam, while on academic probation. *Id*. Pursuant to the medical school's bylaws, the Promotions Board voted to dismiss Zukle from the medical school for "failure to meet the academic standards of the School of Medicine" upon consideration of her academic performance throughout her tenure at the medical school. *Id*. The Court found that that even with accommodations, Zukle consistently failed to achieve passing grades in her courses, **even though she was able to remedy some of her failing grades in her pre-clinical years by retaking exams**. *Id*. (emphasis added). In *Khan v. Midwestern Univ.*, a student who struggled academically in medical school from the outset, was placed on academic probation and allowed to retake all failed year 1 courses, which she passed. 879 F.3d 838 (7th Cir. 2018), as amended on denial of reh'g (Feb. 26, 2018). According to the Seventh Circuit, "[T]he second chance did not erase her prior record but allowed her to prove that she could be successful going forward." *Id*. She continued to perform poorly despite receiving accommodations and a medical leave, resulting in dismissal. *Id*. The court found that she was not

otherwise qualified and affirmed the district court's grant of summary judgment for university. *Id.*[4]

Similarly, here, Plaintiff was dismissed for failure to meet the academic standards of FIU's COM, in accordance with its policies reflected in the Handbook, and the decision to dismiss Plaintiff is fully supported by his academic record. Plaintiff has not shown that he was able to perform the essential functions of the program with or without reasonable accommodations. Plaintiff's contention that this case is distinguishable from previously cited Eleventh Circuit precedent is erroneous because it ignores academic history and impracticability of two students having an identical showing of poor academic performance. ECF No. 65 p. 5. First, Plaintiff was not dismissed due to one course failure resulting from the purported provision of an improper minimal distraction room, but rather he was dismissed based on a determination that his academic performance while on probation was of "grave concern" after the MSEPC convened to consider

---

[4] *See also Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874 (S.D. Tex. 2012), aff'd, 524 Fed. Appx. 93 (5th Cir. 2013)(granting summary judgment for university, finding student was not dismissed from physician assistant program due to her disability where student was dismissed after failing a course while on probation, despite satisfactory GPA, in accordance with school policy); *Zimmeck v. Marshall Univ. Bd. of Governors,* 632 Fed. Appx. 117 (4th Cir. 2015)(affirming district court's grant of summary judgment for medical school after finding that student was not otherwise qualified for the medical school program, where student was dismissed for academic reasons after being placed on academic probation and repeatedly notified that further violation of its professionalism policy could result in dismissal); *Millington v. Temple Univ. Sch. of Dentistry*, 261 Fed. Appx. 363 (3d Cir. 2008)(affirming grant of summary judgment based on plaintiff's inability to show she was otherwise qualified where student, who was on and off academic probation and received two leaves of absence, struggled academically from the inception of her dental studies and continued to struggle even after the provision of accommodations); *Herrera v. Community College of Allegheny County*, 2017 WL 2813616 (W.D. Penn. June 29, 2017) (granting summary judgment for college, finding that student was not "otherwise qualified" to remain in the physical therapy assistant program where student with ADHD failed to achieve required scores in two courses while on probation, and differentiating student from one in good academic standing); *Minaei v. Univ. of Washington Sch. of Med.*, 2018 WL 1508976, at *1 (W.D. Wash. Mar. 27, 2018)(granting summary judgment based on plaintiff's inability to meet the essential requirements to remain at the medical school even with reasonable accommodations where student on academic probation continued to perform poorly).

his "overall performance." ECF No. 56 ¶ 31; ECF No. 71 ¶ 44. Second, the IDEA investigation did not "explicitly" find, as the Response claims on pages 5-6, 14, and 15, that the failure of the Psychiatry shelf exam retake was because the school had failed to provide a required testing accommodation; rather, FIU's Amended Report actually states "there is evidence to corroborate his belief that: Nehme's placement in AHC2 495…impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam…." ECF No. 71 ¶ 50. FIU's IDEA conducted a subsequent review at Dr. Bejar's request, which was utilized in her final determination that any alleged failure to accommodate did not have an adverse impact on his academic performance *holistically*. *Id.*; ECF No. 56 ¶ 39. Plaintiff cannot establish that he is "otherwise qualified" on this record. Accordingly, both claims fail as a matter of law and summary judgment must be granted.

## II. Plaintiff Has Not Established Failure to Provide Reasonable Accommodations When FIU Provided Separate Room for Sole Test-taker and He did not Complain About Distraction[5]

Plaintiff's proverbial "hail mary" pass claiming disability discrimination to save his medical career at FIU occurred after three important events when: (1) he did not complain about alleged distractions during the Psychiatry shelf exam retake; (2) he did not advise the MSEPC about alleged distraction at the hearing despite the opportunity to identify the cause of failure and providing an alternative cause; and (3) he did not inform the Appeals Committee about the error made by the MSEPC regarding an alleged lack of accommodations for the one test, despite providing additional reason for his failure. ECF No. 56 ¶¶ 29, 30, 33 n.12.

Glaringly obvious is Plaintiff's inability to provide any authority or specific guidelines in relation to a minimal distraction room under the ADA in his Response because it does not exist. Here, the only guidance is the definition provided by FIU's DRC:

---

[5] Because the Response does not specifically address accommodations related to quizzes or readiness assignments and concedes they never led to any failure, FIU will only address the minimal distraction room for the Psychiatry Shelf retake as Plaintiff did. ECF No. 65 p. 7.

6

> "[t]he student is tested in an environment which minimizes distractions for the student. Each student has different levels of distractibility and different stimuli which may distract them. Typically, students need an environment which minimizes both auditory and visual distractions. A distraction-reduced environment does not necessitate the student's testing in a private room, nor does it mean that an environment is completely distraction free." ECF No. 55-10 p. 34.

The factors to consider in FIU's reasonable attempt to provide a minimal distraction room for the Psychiatry shelf exam retake are that Plaintiff was assigned a separate conference room by himself with a proctor, the room was not located near general population classrooms, Plaintiff was provided earplugs by FIU[6], signage was placed outside of the testing room to be quiet, and he was seated with his back to the frosted glass that faced a hallway. ECF No. 56 ¶¶ 26-28. As an example, in *Forbes*, 456 Fed. Appx. at 809, the Eleventh Circuit affirmed summary judgment on the disability claim where the plaintiff did not make a complaint about her accommodations at the time when taking her exams in a room with four classmates and a proctor.

"An agency cannot be held liable for the failure to accommodate where 'the employee is responsible for the breakdown of the interactive process.'" *Palmer v. McDonald*, 824 Fed. Appx. 967, 980 (11th Cir. 2020). "[W]hen the parties are 'missing information…that can only be provided by one of the parties,…the party withholding the information may be found to have obstructed the [interactive] process.'" *Id*. (citing *Jackson v. City of Chi*., 414 F.3d 806, 813 (7th Cir. 2005). The interactive process is not limited to the initiation of accommodations only as suggested by Plaintiff. The interactive process is ongoing and is meant to assist with not only identifying and approving reasonable accommodations, but with implementation as well. *See U.S. E.E.O.C. v. UPS Supply Chain Solutions,* 620 F. 3d 1103, 1110-1111 (9th Cir. 2010)(finding employer's duty to accommodate and engage in an interactive process to be continuing especially

---

[6] A critical fact not considered in FIU's IDEA Investigation.

when issues regarding the effectiveness of an approved accommodation arise). Here, multiple undisputed events documented in the record establish that Plaintiff failed to express his dissatisfaction with the accommodation provided, and because he failed to address it in a timely manner, it should preclude FIU from liability. ECF No. 71 ¶ 9; *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997)(no liability for failure to accommodate where breakdown in the interactive process regarding accommodations was due to plaintiff, not defendant).

The Response attempts to circumvent the obvious nature of Plaintiff's break in the interactive process by compounding all of the alleged distractions outside of the testing room and relying on Ms. Lachica's subjective perception of her being distracted. However, the proctor did not take any action because Plaintiff did not apprise her that the noise outside distracted him. ECF No. 71 ¶ 44. Since Plaintiff obstructed the interactive process by withholding the information about his distractibility during the exam, he denied FIU the opportunity to take any action in an effort to resolve the issue at the time.[7] The law does not require a grant of every accommodation requested by an individual; rather an institution need only provide accommodations that are reasonable. *Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. Appx. 669 (11th Cir. 2010). The ADA does not require the perfect elimination of all disadvantages that may flow from the disability, nor does it require lowering standards. *Id*. (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 297, 413 (1979)).

---

[7] Notably, it is undisputed that when Plaintiff made Ms. Lachica aware of an issue with the temperature, she resolved the issue. Plaintiff was also granted three breaks during the exam. ECF No. 56 ¶ 28. And, Ms. Lachica testified that the movement of students in the hallway was not constant and was for less than one minute at a time. ECF No. 71 ¶ 42.

Moreover, the IDEA Report is not an admission by FIU that it failed to provide a reasonable accommodation. ECF No. 65 p. 11. IDEA's internal investigation and subsequent finding was based on its interpretation of internal guidelines, not a legal analysis of a failure to accommodate under the ADA.[8] *See Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015)(affirming summary judgment in favor of university). Depending on the statement relied upon and the purpose for which it is offered, it may not be considered at summary judgment if not admissible at trial. *Georgia Power Co. v. ABB Inc.*, 2019 WL 11505721, at *5 (N.D. Ga. Feb. 27, 2019), *aff'd,* 811 Fed. Appx. 517 (11th Cir. 2020)(stating the court is not bound by report's legal conclusions); *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302–03 (11th Cir. 1989)(stating that "legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires"); *see also Doe 1 v. City of Chicago*, 18 C 3054, 2020 WL 1166222, at *12 (N.D. Ill. Mar. 11, 2020)(finding City's internal investigation determining there was sufficient evidence of violation of City's sexual harassment policy, tracking that of IHRA, made by City's EEO division, was not a judicial admission conclusively establishing liability under Title VII); *see also Robertson v. Interactive Coll. of Tech./Interactive Learning Sys., Inc.,* 743 Fed. Appx. 269, 273 (11th Cir. 2018)(only evidence which can be reduced to an admissible form may be considered on motions for summary judgment, and inadmissible hearsay cannot be considered on a motion for summary judgment).

Again, FIU's IDEA did not conclude Plaintiff failed the final shelf exam because he was placed in AHC2 495. Plaintiff also references various statements of Academic Support Services

---

[8] For example, the IDEA analysis considered him qualified solely on the basis of being designated as a student with a disability at FIU—not his overall academic performance or competence as a future physician like the members of the MSEPC did. ECF No. 63-1 p. 37.

Administrator Teresa Reyes-Gavilan, a trained special education teacher, who assigned Plaintiff to AHC2 495 based on limited room availability. ECF No. 65 p. 10. Her testimony and affidavit had the benefit of the screenshots of the Wellsky online scheduling system for accurate information where there is no indication of that as part of the summary of her interview. ECF No. 71 ¶¶ 22-23. The scheduling documents show the limited rooms available and FIU's attempt to provide a reasonable accommodation to Plaintiff under the circumstances. *Id*.

### III. No Evidence Supports Intentional Discrimination or Rises to Deliberate Indifference by Dr. Elizabeth Bejar on behalf of FIU

The uncontroverted evidence is that as soon as the Plaintiff advised in his final appeal an official who had authority to address the alleged discrimination and to institute corrective measures, FIU adequately responded and corrective actions were taken. Prior to May 15, 2020, Plaintiff had not notified any FIU official of any alleged failure to accommodate; thus, no FIU official had knowledge of any alleged discrimination prior to that date. ECF No. 56 ¶¶ 35, 37. Upon receipt of Plaintiff's appeal to the Provost's designee including allegations of discrimination, Dr. Bejar immediately forwarded the information to the IDEA office and suspended FIU's final decision[9] until after the completion of the investigation. ECF No. 56 ¶¶35-36. After receiving the IDEA investigation report, she requested additional findings to determine whether any alleged failure to accommodate adversely impacted his "overall academic performance" and utilized the findings in making her final determination to dismiss Plaintiff. ECF No. 56 ¶¶ 39-40. The subsequent review revealed that any lack of accommodations for quizzes or readiness assignments did not significantly impact his grades. ECF No. 56 ¶ 39. Despite being unable to conclusively determine the impact of the placement in AHC2 495 on his academic performance, looking at the

---

[9] At the final appellate stage, the scope of the ruling was limited to whether due process was afforded; new information, not available at the time of hearing, substantially affected outcome; or severity of sanction was clearly excessive. ECF No. 55-8 p. 30; ECF No. 55-10 pp. 2, 86.

totality of Plaintiff's academic record, it is undisputed that Plaintiff failed multiple shelf exams in Period 3, with the provision of accommodations, evidencing there was no impact on his academic performance holistically. ECF No. 71 ¶ 50.

Dr. Bejar, as the Provost's designee, was the only FIU official with the authority to determine whether the decision of the Dean based upon the MSEPC's recommendation to dismiss Plaintiff, a decision which was upheld by the Appeals Committee, should be affirmed. Because Dr. Bejar, reviewed Plaintiff's academic files including MSEPC documents, which IDEA did not have the benefit of in its investigation, it cannot be said that she acquired actual knowledge of harm to a federally protected right or that she failed to adequately respond upon receipt of the IDEA report. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1148 (11th Cir. 2014)(failure to provide accommodation alone does not support finding of deliberate indifference).

Importantly, Plaintiff has not demonstrated that any FIU official had actual knowledge that the accommodations provided had an impact on his *overall* academic performance leading to the dismissal decision or that any FIU official actually *knew* that the room provided for the Psychiatry shelf exam retake was not an adequate accommodation and deliberately chose not to provide an effective accommodation.[10] The fact that the MSEPC and the Appeals Committee arrived to the same conclusion as Dr. Bejar– dismissal – before Plaintiff raised the accommodations issue on his last retake exam establishes the valid academic basis for the decision that should be given

---

[10] Plaintiff has not presented legal arguments that Ms. Reyes-Gavilan or Ms. Lachica, program coordinator, had actual knowledge of a substantial likelihood of harm to a federally protected right or enjoyed the authority necessary under the deliberate indifference analysis. ECF No. 65 pp. 18-19; *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134-36 (11th Cir. 2019); *Friedson v. Shoar*, 2020 WL 4785072 (M.D. Fla. Aug. 18, 2020), aff'd, 2021 WL 5175656 (11th Cir. Nov. 8, 2021); *Cesaire v. Tony*, 2020 WL 5750011, at *2 (S.D. Fla. Sept. 24, 2020)(dismissing deliberate indifference claim because child protective investigator was not an official high enough on the command chain to speak for defendants as a whole).

deference. *See Sirpal v. Univ. of Miami*, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011)("[U]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation," and "whether a student is qualified to be a physician is an academic judgment that 'requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking."), *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013).

The Court should be hard pressed to find "willful blindness" related to any alleged systemic discrimination or failure to train, as suggested by Plaintiff, where FIU has the DRC, with 15 staff members, dedicated to assisting students with documented disabilities; provides specific procedures to obtain reasonable accommodations at COM; and where Stephen Loynaz, with a master's degree in mental health counseling and a doctorate in higher education, serves as the liaison for FIU's COM. ECF No. 65 pp. 19-20; ECF No. 71 ¶ 51. Plaintiff's arguments, at most, may be considered negligence which is insufficient to meet the exacting standard of deliberate indifference. *See Martin v. Halifax Healthcare Sys.*, Inc., 621 Fed. Appx. 594, 604 (11th Cir. 2015); *McCullum*, 768 F.3d at 1147. Accordingly, Plaintiff has failed to show that Defendant acted with deliberate indifference or intentional discrimination as is necessary to recover monetary damages under the ADA. *See McCullum*, 768 F.3d at 1148-49 (finding that plaintiff did not create a genuine issue of material fact because no reasonable jury could find deliberate indifference where hospital staff believed the accommodations provided were effective, and plaintiff did not inform staff otherwise).

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant its motion for summary judgment and any other relief it deems appropriate.

I HEREBY CERTIFY that on this 2nd day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    MARRERO & WYDLER
    *Attorneys for Defendant FIU*
    2600 Douglas Road, PH-4
    Coral Gables, FL 33134
    (305) 446-5528
    (305) 446-0995 (fax)

    BY /s/ Lourdes Espino Wydler_____
       OSCAR E. MARRERO
       F.B.N.: 372714
       oem@marrerolegal.com
       LOURDES E. WYDLER
       F.B.N.: 719811
       lew@marrerolegal.com
       LAUREN D. MARTIN
       F.B.N.: 1034166
       ldm@marrerolegal.com

## SERVICE LIST

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
*Attorneys for Plaintiff*