UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:20-cv-24649-AMC

ELIE NEHME,
        Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,
        Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES ("FIU" or "University") by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 72 and Magistrate Rule 4 of the Local Rules of the Southern District of Florida, hereby files its Objections to Magistrate Judge Otazo-Reyes's Report and Recommendation on FIU's Motion for Summary Judgment dated August 22, 2022 (the "Report"), and states:

### INTRODUCTION

Plaintiff has brought this action under the ADA for failure to provide reasonable accommodations (Count I) and disparate treatment based on wrongful dismissal (Count II). *See Generally* ECF No. 12. Title II of the ADA prescribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. On March 11, 2022, FIU timely moved for summary judgment ("the Motion") on both claims. ECF No. 56. On June 1, 2022, the Court referred the Motion to Magistrate Judge Otazo-Reyes for a Report and Recommendation. ECF No. 73. A hearing on the

Motion was held on July 6, 2022. ECF No. 75.[1] On August 22, 2022, Magistrate Judge Otazo-Reyes issued the Report, recommending that the Motion be denied. ECF No. 79. This Court reset trial for the two-week calendar beginning October 24, 2022 and extended all pre-trial deadlines accordingly. ECF No. 80. Herein, FIU timely files its Objections to the Report.

The crux of the Report's recommendation is finding an issue of fact by relying on FIU's IDEA's substantiation of a lack of accommodations for one re-take exam in light of authority to the contrary when a student does not meet technical standards with or without accommodations. The "relevant inquiry" is whether FIU violated the ADA, not whether FIU followed its internal policies. *See Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015). The Honorable U.S. Magistrate's reliance on the IDEA Report does not adhere to the correct legal framework to analyze this ADA claim.[2]

Plaintiff was dismissed from FIU's Herbert Wertheim College of Medicine ("COM") **while on academic probation at the material time**: after failing one course during his first year of medical school; failing the equivalent of three courses during his first attempt at Period 2; repeating all of Period 2 after being granted a leave of absence; earning below 80 in eight courses throughout

---

[1] A request for the hearing transcript has been made and a notice of filing is to follow should the Court require the transcription of the proceeding as part of the record.

[2] A clear reading of FIU's IDEA's Report shows it did not employ the appropriate legal framework to determine if Plaintiff was a qualified individual under the ADA. IDEA mistakenly provides that Nehme is a qualified individual solely based on an evaluation from a qualified professional and his need for accommodations due to his documented illness.  ECF No. 63-1 p. 71-72. The investigation took place simply by virtue of Plaintiff being a student. The IDEA report did not review Plaintiff's academic performance with and without accommodations including his continued poor performance on Period 3 shelf exams while on academic probation, as is required to establish the otherwise qualified element under the ADA. *Id*. Furthermore, IDEA's response to whether Plaintiff is a "qualified individual" also incorrectly attempts to determine whether Plaintiff has a disability – which also failed to satisfy the requirements under the ADA as it makes no determination on whether his mental impairment substantially limits a major life activity. *Id*.

Periods 1 and 2, indicating only "marginal competency" in such required courses; failing five (5) subject shelf examinations in four separate clerkships during Period 3; failing a clerkship in Period 3; and, scoring in the 5-10 percentile range in two additional shelf examinations. FIU COM's Academic Probation policy provided to Plaintiff on various occasions explained that: "**continued poor academic performance will trigger** review by the MSEPC with the possibility of…dismissal". ECF No. 56 ¶ 19. His probationary status did not require a failure for the recommendation of dismissal.  As such, Plaintiff cannot establish that he was a qualified individual under the ADA, a dispositive issue on both claims.

Despite the strikingly similar case law supporting summary judgment for FIU, the Report improperly found that FIU is not entitled to summary judgment on this threshold issue of whether Plaintiff is a qualified individual. "[G]iven Nehme's contention that his DRC-awarded accommodation was not provided for the Psychiatry shelf exam retake, which contention IDEA substantiated, it cannot be said as a matter of law that these factors preclude Nehme from showing that he could meet HWCOM's essential requirements 'either with or without reasonable accommodations.'" ECF No. 79 p. 8. However, his academic record, *even with the exclusion of the Psychiatry shelf exam retake*, unequivocally establishes that he was unable to meet the academic and technical requirements of the FIU COM program with and without accommodations throughout his studies including the material time of Period 3.

Second, the Report found that "an issue of fact" as to whether FIU reasonably accommodated Plaintiff "has been created by IDEA's finding that Nehme's claim of 'providing Non-Compliant Minimal Distraction Rooms' for that [Psychiatry shelf retake] exam was 'substantiated.'" *Id.* at p. 9. Absent from the Report is any independent analysis of whether FIU reasonably accommodated Plaintiff under the ADA rather than relying on its internal finding.

Lastly, the Report provides that "the undersigned concurs in this assessment of the record [contradictions in the record as argued by Plaintiff] as precluding the issuance of summary judgment as a matter of law as to Count II of the Amended Complaint, notwithstanding the deference due to academic decision." ECF No. 79 p. 10. Yet, the Report does not address the argument that Plaintiff failed to establish the "because of his disability" element of Count II's *prima facie* case, grounded on a lack of discriminatory animus from this record. The Report further indicates that "the contradictions in the record similarly preclude judgment as a matter of law as to Nehme's compensatory damages claim, which hinge in Dr. Bejar's alleged deliberate indifference to Nehme's rights under the ADA." *Id*. Similarly, the Report appears to not consider the exacting standard required to establish deliberate indifference and the uncontroverted facts refuting the existence of discriminatory intent.  Accordingly, the Report should be rejected.

## ARGUMENT

### I. Legal Standard

"Any party may object to a Magistrate Judge's proposed findings, recommendations, or report…within fourteen days after being served with a copy thereof…[by serving]…written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made, the specific basis for such objections, and supporting legal authority." S.D. Fla. L. Mag. R. 4(b); Fed. R. Civ. P. 72; 28 U.S.C. § 636. "A District Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." S.D. Fla. L. Mag. R. 4(b); Fed. R. Civ. P. 72; 28 U.S.C. § 636. *United States v. Schultz*, 565 F.3d 1353,

1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3); *see also Camacho v. Saul,* No. 19-63152-CIV, 2021 WL 2580355, at *2 (S.D. Fla. Apr. 15, 2021).

**II. The Report Misses the Significance of Plaintiff's Probationary Status and FIU's Academic Policies Due to the Internal Finding of One Re-Take Exam Overlooking the Record that Shows Plaintiff was not Meeting FIU's Technical Standards Even With Accommodations**

Generally, to state a *prima facie case* of discrimination under the ADA, Plaintiff "must show" that he: "(1) is disabled; (2) is a 'qualified individual'; and (3) was subjected to unlawful discrimination because of the disability." *Forbes v. St. Thomas University, Inc.*, 768 F.Supp.2d 1222, 1228 (S.D. Fla. 2010). The Report correctly states "'[I]n the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity.'" *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.,* 749 F. App'x 776, 781 (11th Cir. 2018) (citation omitted). This requires a showing that the individual 'can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations.' *Redding v. Nova Se. Univ., Inc.,* 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016)." ECF No. 79 p. 8. However, the Report incorrectly concludes that it cannot be said as a matter of law that Nehme was not otherwise qualified. The Report's entire analysis on the issue is as follows:

> FIU relies for its contention that Nehme cannot make this required showing on: Nehme having been on academic probation during Periods 2 and 3; his "poor" performance in the Period 3 Family Medicine, Surgery, Neurology, and OB/GYN clerkships (which he did pass); and his failure to pass the Period 3 Psychiatry clerkship. However, given Nehme's contention that his DRC-awarded accommodation was not provided for the Psychiatry shelf exam retake, which contention IDEA substantiated, it cannot be said as a matter of law that these factors preclude Nehme from showing that he could meet HWCOM's essential requirements 'either with or without reasonable accommodations." *Redding*, 165 F. Supp. 3d at 1290.

ECF No. 79 p. 8. FIU has maintained the position that Plaintiff is not "otherwise qualified" because he could not satisfy the academic standards of FIU's medical program with or without

accommodations. The Report did not consider the undisputed facts that Plaintiff demonstrated unsatisfactory performance with the exclusion of the Psychiatry shelf exam retake. The Report also did not address the extensive relevant case law cited by FIU where the Eleventh Circuit has found similarly situated students to have failed to establish the *prima facie* case of disability discrimination based on the "otherwise qualified" element. ECF No. 57 pp. 5-8; ECF No. 72 pp. 1-6.

The undisputed facts reveal that, even before his accommodation request, Nehme demonstrated unsatisfactory performance.[3] After requesting and receiving accommodations, he continued to perform poorly.[4] It should be noted that the Southern District Court's ruling in another matter does not support Plaintiff's argument that FIU's decision to promote him each year despite its concern with his poor academic performance creates a genuine issue of fact as to his competency to complete the program. *See Goldberg v. Florida Int'l Univ. Bd. of Trustees*, 18-20813-CIV, 2020 WL 1815360, at *6, n. 1 (S.D. Fla. Apr. 10, 2020), aff'd sub nom. *Goldberg v. Florida Int'l Univ.*, 838 Fed. Appx. 487 (11th Cir. 2020). Specifically, Plaintiff's academic

---

[3] During Period 1, he failed Genes, Molecules, and Cells, and earned only "marginally" passing scores in three additional courses. ECF No. 56 ¶¶ 4-5. During his first attempt at Period 2, he failed Cardiovascular and Respiratory Systems and its remediation (constituting three course failures prior to any accommodation request). ECF No. 56 ¶¶ 7, 10. In accordance with the Handbook, Nehme was brought before the MSEPC where they placed him on academic probation. ECF No. 56 ¶ 13.

[4] During the continuation of his first attempt at Period 2 after FIU granted a leave of absence, he failed another course, and a Professional Incident Report was filed against him. ECF No. 56 ¶¶ 14-15. During his second attempt at Period 2, he earned only "marginally" passing scores in two (2) courses and received relatively low scores in other courses considering it was his second attempt at most. ECF No. 56 ¶ 16. This is similar to the student in *Zainulabeddin*, where no ADA discrimination was found in light of a leave of absence and permission to repeat a year of study. 749 Fed. Appx. At 783.

performance during Period 3 alone demonstrates his inability to satisfy the academic and technical requirements of the medical program.

Pursuant to the Handbook, a score equivalent to the fifth percentile (5%) is required to pass the shelf exams in the Period 3 clerkships **and** three (3) shelf exam scores in the 5-10 percentile range constitute *poor* shelf exam performance. ECF No. 56 ¶ 19. During Period 3's rotation of clinical clerkships, and while still on academic probation, Nehme failed five (5) shelf exams (Family Medicine-3%, Surgery-4%, Neurology-2%, Psychiatry-2%, and the Psychiatry retake-2%), and scored extremely low on two (2) additional shelf exams (OB/GYN-5% and the Neurology retake-7%). ECF No. 56 ¶¶ 19-20. Accordingly, even excluding the Psychiatry shelf exam retake, Plaintiff was continuing to perform poorly by FIU's standards even *with* accommodations as he earned non-passing or scores in the poor performance range on six (6) shelf exams. Considering Plaintiff was on academic probation, a significant factor the Report did not address in its analysis, was Plaintiff's poor academic performance in his third academic year which demonstrates an inability to satisfy the academic requirements of the program.

FIU produced ample and largely uncontroverted evidence of Nehme's academic difficulties, with and without accommodations, throughout his four years of study at the medical school. *See Zainulabeddin*, 749 Fed. Appx. at 783. On this record, the Court should have no trouble concluding that Plaintiff was not a qualified individual with a disability because his performance was unsatisfactory notwithstanding any accommodation by FIU. Earlier in this case, with knowledge of the allegations that Plaintiff was not properly accommodated for the Psychiatry shelf exam retake, this Court found that "certainly it appears to be" that Plaintiff did not meet the academic and technical standards based on Plaintiff's uncontroverted poor academic history indicating "a strong pattern of academic nonperformance." ECF No. 42 pp. 6-7. Despite how

"close" the question appeared to be, this Court chose not to make such a determination at the motion to dismiss stage because the "the record [was] still at least slightly underdeveloped." *Id*. The now fully developed record confirms that even excluding the failure of the one allegedly improperly accommodated Psychiatry shelf exam retake, Plaintiff demonstrated a strong pattern of academic nonperformance and could not satisfy the academic and technical standards as required by FIU's policies with or without accommodations.

Furthermore, the Report overlooks the Eleventh Circuit postsecondary education cases cited by FIU which found similarly situated students to have failed to establish the *prima facie* case of disability discrimination. *See* ECF No. 57, pp. 5-8; *Goldberg v. Florida Int'l Univ.,* 838 Fed. Appx. 487 (11th Cir. 2020); *Zainulabeddin v. Univ. of S. Florida Bd. of Trustees*, 749 Fed. Appx. 776, 783 (11th Cir. 2018). In *Goldberg*, a medical student failed two courses and received "marginal" or "low pass" scores in nine additional courses during his first two years prior to requesting accommodations. *Goldberg*, 838 Fed. Appx. at 480-491. After requesting accommodations and repeating Period 2, plaintiff failed a midterm exam, one course, and two clerkships. *Id*. The medical school ultimately dismissed the student. *Id*. The district court found that Goldberg was not an otherwise qualified individual because his academic performance was not acceptable despite receiving accommodations, and the Eleventh Circuit affirmed summary judgment in the university's favor. *Id*. at 491-492. In *Zainulabeddin*, the Eleventh Circuit affirmed summary judgment in favor of the university. 749 Fed. Appx. at 783. The academic dismissal was fully supported by her academic record as well as the medical school's policies where a struggling

probationary student repeated an academic year after being granted accommodations and then failed two courses.[5] *Id.*

Both of these decisions stand for the proposition that if a student continues to perform poorly even after receiving accommodations, the student is not otherwise qualified for purposes of the ADA. *See also Forbes v. St. Thomas University, Inc.,* 456 Fed. Appx. 809 (11th Cir. 2012)(affirming district court's grant of summary judgment for the university where the student on academic probation failed to meet the academic standards of the law school even with accommodations); *Cooney v. Barry School of Law*, 720 Fed.Appx. 571 (11th Cir. 2018)(affirming district court's grant of summary judgment for law school, finding dismissed student was not otherwise qualified where he failed to meet the minimum academic requirements pursuant to university's rules); *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921 (11th Cir. 2016)(affirming dismissal and finding student was not otherwise qualified); *Ellis v. Morehouse Sch. of Med.*, 925 F. Supp. 1529, 1543 (N.D. Ga. 1996)(granting summary judgment in favor of the university for failure to meet the essential requirements of a medical student and finding student was not otherwise qualified due to unsatisfactory academic performance).[6]

Similarly, here, Plaintiff cannot establish that he is otherwise qualified. Nehme was provided the accommodations he requested, and even excluding the Psychiatry shelf exam retake,

---

[5] Although the Eleventh Circuit in *Zainulabeddin* did not expressly reach the issue of whether the student was an "otherwise qualified" individual because "this issue was bound up with the inquiry into whether [the university's] proffered reason was pretextual," it should serve as a guidepost on the issue of otherwise qualified. *Goldberg v. Florida Int'l Univ. Bd. of Trustees,* 18-20813-CIV, 2020 WL 1815360, at *7 (S.D. Fla. Apr. 10, 2020), *aff'd sub nom. Goldberg v. Florida Int'l Univ.,* 838 Fed. Appx. 487 (11th Cir. 2020).

[6] Due to the limited binding case law regarding post-secondary educational dismissals under the ADA, FIU also provided persuasive authority when dealing with **probationary** students who continue to have poor performance even with accommodations like Plaintiff did in Period 3. *See* ECF No. 72 pp. 4-5.

he was unable to satisfy the academic requirements of FIU's medical program. The Report did not analyze the Plaintiff's entire academic record with the relevant policies at issues or take into account this Court's prior considerations, and is inconsistent with applicable binding law. Plaintiff's failure to establish a *prima facie* case is dispositive on both Counts. Accordingly, and pursuant to its de novo review, this Court should reject the Report and instead grant summary judgment in favor of FIU based on the threshold issue that Plaintiff is not otherwise qualified.

**III. The Report Lacks an Independent Analysis on the Reasonableness of the Accommodation by Solely Relying on FIU's Internal Findings Regarding Plaintiff's Claim for a Failure to Accommodate**

To begin, rather than undertake an independent analysis on whether the uncontested facts surrounding the Psychiatry shelf exam retake constitute a failure to provide a reasonable accommodation under the ADA, the Report, instead, relies again exclusively on the IDEA report[7] which found that there was evidence to support a violation of FIU policy in providing a non-compliant minimal distraction room for his Psychiatry shelf exam retake. The Report, without any scrutiny, improperly adopted the internal finding as an uncontested fact, despite FIU's contention that IDEA's internal investigation and subsequent finding was based on its interpretation of internal guidelines, not a legal analysis of a failure to accommodate claim under the ADA. *See Patel v. City of Madison, Alabama*, 2018 WL 1881326, at *10 n. 18 (N.D. Ala. Apr. 19, 2018), aff'd, 959 F.3d 1330 (11th Cir. 2020)(stating that the legal conclusions of an internal report should not affect the independent analysis of the court); *Shaikh v. Lincoln Memorial University*, 608 Fed. Appx. 349, 355 (6th Cir. 2015)(affirming summary judgment in favor of university on failure to accommodate claim despite university's failure to follow its internal policies).

---

[7] The Report also did not reference the Amended Investigative Report issued on September 14, 2020, but only the IDEA finding made on August 25, 2020. ECF No. 79 ¶ 20.

The law does not require a grant of every accommodation requested by an individual; rather an institution need only provide accommodations that are reasonable. *Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. Appx. 669 (11th Cir. 2010). The ADA does not require the perfect elimination of all disadvantages that may flow from the disability, nor does it require lowering standards. *Id.* (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 297, 413 (1979)). Even if an institution has historically provided accommodations exceeding what is required under the ADA, the institution is not under a continuing legal obligation to do so. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020), cert. denied, 141 S. Ct. 1435 (2021); *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017).

The Report correctly states that FIU had the "affirmative duty to reasonably accommodate the known physical or mental limitations of [Nehme as] an otherwise qualified person. *Forbes v. St. Thomas Univ., Inc*., 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010)." ECF No. 79 p. 9. However, the known mental limitations of Plaintiff were that he required additional time to take exams – an important fact not considered in IDEA's investigation. The letter from Dr. Desmarais providing the DRC with a psychological evaluation only recommended extra time for exams, not a minimal distraction room. ECF No. 56 ¶8. Plus, prior to Plaintiff's request for accommodations, FIU recommended he visit the MSCWC for time management deficiencies, not distraction-related issues, and at his first hearing he advised the MSEPC he would benefit with more time. ECF No. 56 ¶¶ 7, 11. Thus, Plaintiff cannot demonstrate a prima facie case because he cannot show the third element, that a "reasonable" accommodation was not provided.

Next, Plaintiff was approved for reasonable accommodations of 50% extra time on exams and a minimal distraction testing room. ECF No. 56 ¶ 9. There is no specific ADA definition or

guideline in relation to a minimal distraction room under the ADA. The factors to consider in FIU's reasonable attempt to provide a minimal distraction room for the Psychiatry shelf exam retake are: (1) that Plaintiff was assigned to room AHC2 495, a separate conference room located in administrative suites designated and regularly utilized as a minimal distraction room for test taking purposes by Period 3 students; (2) Plaintiff sat for the Psychiatry shelf exam retake by himself (alone) with a proctor; (3) the room was not located near general population classrooms; (4) Plaintiff was provided earplugs by FIU – *a critical fact not considered in FIU's IDEA investigation*; (5) signage was placed outside of the testing room to be quiet; and, (6) he was seated with his back to the frosted glass that faced a hallway. ECF No. 56 ¶¶ 22, 26-28.  FIU assigned Plaintiff to this room based on limited space availability of designated accommodation testing rooms for the extended time period. ECF No. 56 ¶¶22-25.

In addition, FIU argues that it cannot be held liable for the failure to accommodate where "the [student] is responsible for the breakdown of the interactive process." *Palmer v. McDonald*, 824 Fed. Appx. 967, 980 (11th Cir. 2020). "[W]hen the parties are 'missing information…that can only be provided by one of the parties…the party withholding the information may be found to have obstructed the [interactive] process.'" *Id.* (citing *Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005). The interactive process is ongoing and is meant to assist with not only identifying and approving reasonable accommodations, but with implementation as well. *See U.S. E.E.O.C. v. UPS Supply Chain Solutions,* 620 F. 3d 1103, 1110-1111 (9th Cir. 2010)(finding employer's duty to accommodate and engage in an interactive process to be continuing especially when issues regarding the effectiveness of an approved accommodation arise).

The Report's statement that the "IDEA's finding that Nehme's claim of 'providing non-compliant minimal distraction rooms' for that exam was 'substantiated'" creates "an issue of fact"

is inconsistent with applicable law. ECF No. 79 p. 9. In *Forbes,* the law student alleged that the university failed to provide an environment that would "best have accommodated" her disability. *Forbes*, 456 Fed. Appx. 809, 810 (11th Cir. 2012). The university granted her accommodations including "a distraction-reduced location." *Id*. at 811. Plaintiff was provided with a "semi-private room" along with a proctor and three or four other students with disabilities. *Forbes*, 768 F.Supp.2d 1222, 1226 (S.D. Fla. 2010). She did not complain until weeks later, after receiving her grades, despite writing an email regarding incorrect belief that she was denied time-and-a-half. *Id*. at n. 2. The Eleventh Circuit concluded that "there is no genuine dispute that the university accommodated Forbes's alleged disability and that those accommodations were reasonable," where plaintiff failed to provide university any information that her alleged disability required a private testing room and she did not complain about taking her examinations in a room with four classmates and a proctor *Forbes*, 456 Fed. Appx. at 812. Summary judgment in favor of the university was affirmed. *Id*.

Here, Plaintiff's proverbial "hail mary" pass claiming disability discrimination to save his medical career at FIU occurred after three important uncontested events documented in the record: he did not complain about alleged distractions during the Psychiatry shelf exam retake; he did not advise the MSEPC about alleged distraction at the hearing despite the opportunity to identify the cause of failure and providing an alternative cause; and, he did not inform the Appeals Committee about the error made by the MSEPC regarding an alleged lack of accommodations for the one test, despite providing additional reason for his failure. ECF No. 56 ¶¶ 29, 30, 33 n.12. The fact that Nehme did not complain about the exam room until this stage only after seeking legal counsel indicates that he was complacent with the room provided, until his last form of appeal for reconsideration of his dismissal from medical school. *Forbes*, 768 F. Supp. 2d 1222, 1226 n .2

(S.D. Fla. 2010). Plaintiff's failure to express his dissatisfaction with the accommodation provided in a timely manner should preclude FIU from liability. ECF No. 71 ¶ 9; *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997)(no liability for failure to accommodate where breakdown in the interactive process regarding accommodations was due to plaintiff, not defendant).[8]

FIU met its obligation to provide a reasonable accommodation by delivering an environment which minimized both auditory and visual distractions, room AHC2 495, to Plaintiff on the date of the retake exam. That the testing room was not Plaintiff's preferred test-taking room, or there were outside distractions that he did not complain about in order to resolve, is of no consequence to the analysis. *See Forbes,* 456 Fed. Appx. at 812 (affirming summary judgment in favor of university on failure to provide reasonable accommodation claim where student failed to provide university any information that her alleged disability required a private room and did not complain about taking her examinations in a room with four classmates and a proctor); *see also e.g. Sellers v. Wake Forest University Baptist Medical Center,* 2022 WL 198736 (M.D.N.C. Jan. 21, 2022)(granting summary judgment claim on ADA failure to accommodate claim where

---

[8] Other courts have ruled in the university's favor as a matter of law where students did not raise any concern of about the accommodation provided until **after** receiving grades. *See Oser v. Capital University Law School,* 2009 WL 2913919, at *9-11 (S.D. Ohio 2009)(concluding that plaintiff failed to establish all requisite elements of his ADA claim where he failed to raise any concerns about the modified accommodation until after he received his grades and learned that he did not meet the GPA cut-off); *Frank v. University of Toledo,* 621 F. Supp. 2d 475 (N.D. Ohio 2007)(finding no issue of material fact where student made no complaint about the lack of accommodations before, during or as he left the exam room for one examination); *Hoppe v. College of Notre Dame of Maryland,* 835 F. Supp. 2d 26 (D. Md. 2011) )(granting summary judgment on accommodation claim despite allegation that "solitary environment" was not provided when student was taking test with another student in lab with a chalkboard divider between them); *Martin v. Southern Illinois University School of Medicine,* 2017 WL 4780613 (C.D. Ill 2017).

employee was provided with accommodation and at no point informed employer that accommodation was inadequate).

**IV. The Magistrate's Finding that a Contradiction Exists Based on the IDEA Report Does Not Establish Discriminatory Intent for Plaintiff's Dismissal from FIU nor Does it Meet the Standard for Deliberate Indifference.**

A disparate treatment claim requires a showing of "discriminatory intent and occurs when a disabled person is singled out for disadvantage because of [his] disability." *Forbes,* 768 F. Supp. 2d at 1227; *see also Iaciofano v. School Board of Broward County, Florida,* 2017 WL 564368, at *3 (S.D. Fla. Feb. 13, 2017). Plaintiff cannot establish either the second or third elements of his *prima facie case*: that he is a qualified individual, *supra* II, or that he was wrongfully dismissed because of his disability.

The Report does not undertake any analysis of whether Nehme has satisfied the element of whether he was subjected to unlawful discrimination, the dismissal, because of his disability, one of the grounds for which FIU sought summary judgment. ECF No. 57 pp. 14-18. Instead, the Report states that "Dr. Bejar reached this decision [to dismiss Nehme] notwithstanding IDEA's input substantiating Nehme's claim that he was not provided the DRC-awarded accommodation of a Minimal Distraction Room for the Psychiatry retake exam." ECF No. 79 p. 10. The only evidence referenced in the Report is Plaintiff's contention that Dr. Bejar testified there was nothing in the IDEA reports that indicated FIU's failure to provide Plaintiff with the required minimal distraction room adversely affected his performance on the Psychiatry shelf exam retake is contradicted by the IDEA's explicit findings and Ms. McWhorter and Ms. Hall's testimonies. ECF No. 79 p. 10. Importantly, the Report does not address how this alleged contradiction is material

or establishes discriminatory intent, in spite of the various uncontested factual evidence negating intentional discrimination. ECF No. 57 pp. 14-18; ECF No. 72 pp. 10-12.[9]

Plaintiff incorrectly poses FIU's "explicit finding" relied upon by the Report and the report accepted it as such. In actuality, the language in the Amended IDEA report provides, "[t]here is evidence to corroborate his belief that: Nehme's placement in AHC2 495 (a conference room) did not meet the standard for a minimal distraction room identified by the ADA and this impacted his ability to effectively concentrate while taking his High-Stakes Psychiatry shelf exam." ECF No. 71 ¶ 50. There is **no** language in the Amended IDEA Report conclusively finding that placing Nehme in AHC2 495 had an adverse impact or effect on his academic performance. ECF No. 71 ¶ 50. Dr. Bejar did not choose to ignore the Amended IDEA Report when she undisputedly requested additional information regarding the impact of any alleged failure to accommodate on his grades and overall academic performance. ECF No. 71 ¶ 50. An audit was thus conducted, revealing that failure to accommodate quizzes did not have a significant impact on his grades. ECF No. 71 ¶ 50. There was no way to determine whether Plaintiff's failure of the Psychiatry shelf exam retake was, in fact, a result of his placement in AHC2 495. ECF No. 71 ¶ 50. This is especially true considering his previous failure of the initial Psychiatry shelf exam even *with* accommodations. ECF No. 56 ¶ 21.

Despite being unable to conclusively determine the impact of the placement in AHC2 495 on his academic performance, reviewing "the student's performance holistically" as Dr. Bejar was required to do, it is undisputed that Plaintiff failed multiple shelf exams in Period 3, even excluding

---

[9] The Report also disregards FIU's argument that the record is devoid of any evidence to support that any student without disabilities who had similar poor academic performance was treated more favorably than Plaintiff or how Plaintiff was singled out on the basis of his disability, a required showing to succeed on a disparate treatment claim. *See* ECF No. 57 pp. 15-16.

the Psychiatry shelf exam retake, and such performance while on academic probation was cause for dismissal. ECF No. 71 ¶ 50. Moreover, without any indication that his academic performance **as a whole** was adversely impacted by his allegations, Dr. Bejar chose to uphold the decision of the MSEPC, whose purpose is to ensure each student who graduates from FIU possesses the skills and knowledge necessary to competently assume the responsibilities of a medical doctor and recommend appropriate intervention in the event of unacceptable academic performance. ECF No. 56 ¶¶ 10, 38. Because he ultimately continued to perform poorly even after receiving disability accommodations, FIU's subsequent dismissal decision cannot reasonably be attributed to discrimination. *See Zainulabeddin*, 749 Fed. Appx. at 784.

Further, the steps taken by FIU leading up to his dismissal show that discriminatory intent is nowhere found on this record. After Plaintiff's third course failure, the University created a "Remediation Plan" for Plaintiff recommending he visit the MSCWC to address his time management deficiencies. ECF No. 56 ¶¶ 7, 10. Shortly thereafter, Plaintiff appeared for his first MSEPC hearing where the MSEPC placed him on academic probation, but allowed him to retake the course and continue with his current cohort. ECF No. 56 ¶¶ 11, 13. Plaintiff then sought accommodations with FIU's DRC which awarded him 50% extra time on exams and a minimal distraction testing room. ECF No. 56 ¶¶ 8-9, 12. Upon his fourth course failure, Plaintiff was brought before his second MSEPC hearing. ECF No. 56 ¶¶ 15, 16. Rather than dismiss Plaintiff from the program, Plaintiff was permitted to repeat Period 2 while remaining on academic probation despite serious concern with his academic performance. ECF No. 56 ¶ 16.

Based on the poor academic performance during Period 3 while on academic probation, as indicated supra II, Plaintiff was brought before his third MSEPC hearing. ECF No. 56 ¶ 30. The MSEPC in its review packet had a color-coded spreadsheet of Plaintiff's poor performance on the

Period 3 shelf exams. ECF No. 55-8 p. 7. The MSEPC found that Plaintiff's academic performance continued to be of "grave concern" and recommended dismissal, consistent with FIU policies and earlier advisements of dismissal for continued poor academic performance. ECF No. 56 ¶ ¶ 13, 16, 31. The initial MSEPC recommendation for dismissal and the subsequent affirmations by the Appeals Committee and Dean Sackstein were based solely on his academic performance as Plaintiff made no prior indication that he was not properly accommodated or discriminated. ECF No. 56 ¶¶ 30, 32-34. FIU's decision to dismiss Nehme from the program is thus fully supported by his academic record and the school's policies, warranting summary judgment. *See Zainulabeddin*, 749 Fed. Appx. at 783.

Subsequently, Plaintiff appealed to the Provost's designee, Dr. Bejar, and for the first time, included that he was not properly accommodated for his Psychiatry shelf exam retake. ECF No. 56 ¶ 35. Dr. Bejar forwarded his appeal letter to the IDEA to investigate his claims. ECF No. 58 ¶¶ 16, 17. As discussed above, Dr. Bejar **withheld** making a determination on Plaintiff's appeal pending the IDEA investigation and requested additional information from IDEA upon receipt of the IDEA report before upholding the dismissal decision. ECF No. 56 ¶ 36, 39. FIU's determination that his overall academic performance was not adversely impacted by his allegations, despite the substantiation that he was not properly accommodated for one exam based on the subsequent independent review, is an academic judgment that should be given deference. *See Sirpal v. Univ. of Miami*, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011)("[U]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation," and "whether a student is qualified to be a physician is an academic judgment that 'requires an expert evaluation of

cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking."), *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013).

In the instructive case of *Zainulabeddin,* the student handbook provided that a student was subject to dismissal from the program at any time if she had more than one failing grade at a time or failed any course while on academic probation. 749 Fed. Appx. 776, 778 (11th Cir. 2018). In her final year, plaintiff failed two courses while on probation and then passed only with subsequent remediation. *Id*. No reasonable jury could conclude that the university discriminated against plaintiff because of her disability. *Id*. Similar to *Zainulabeddin*, FIU has produced uncontroverted evidence of plaintiff's academic difficulties throughout his four years of study (one repeated). Summary judgment should be granted as to Count II because the MSEPC, the Appellate Committee, and Dr. Bejar's decisions to dismiss Plaintiff from the program was fully supported by his academic record and FIU's policies, and not based on his disability. *Id*. at 783; *see also Goldberg*, 838 Fed. Appx. 487 (11th Cir. 2020).

For these same reasons, Plaintiff cannot establish deliberate indifference for compensatory damages under Count II, which hinges on Dr. Bejar's decision to uphold the MSEPC and Appeals Committee recommendation to dismiss the Plaintiff based on his overall poor academic performance. The Eleventh Circuit has recognized that the "exacting standard" requires a showing more than "gross negligence". *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014). Dr. Bejar forwarded Nehme's accommodations to IDEA upon receipt of his appeal, withheld making a decision pending the IDEA investigation, and reviewed the entirety of Plaintiff's academic files including the IDEA report and MSEPC documents, which IDEA did *not* have the benefit of in its investigation, before affirming the decision to dismiss Plaintiff from FIU. Thus, it cannot be said, as a matter of law, that she on behalf of FIU acquired

actual knowledge of harm to a federally protected right or that she failed to adequately respond upon receipt of the IDEA report. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1148 (11th Cir. 2014)(failure to provide accommodation alone does not support finding of deliberate indifference). Even assuming that Ms. McWhorter and Ms. Hall provided testimony contradicting Dr. Bejar's conclusion that his allegations did not have an adverse impact on his academic performance, which the Report relies on in its assessment that summary judgment should be precluded (ECF No. 79 p. 9-10), such contradictions do not meet the standard of deliberate indifference.

Accordingly, and with all due respect, the Report should not be adopted because Plaintiff cannot establish a *prima facie* ADA case among other legal reasons.

WHEREFORE, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant its Motion for Summary Judgment because of the appropriate application of controlling legal principals to the undisputed evidence. Alternatively, FIU respectfully requests that the Court refer the Motion back to Magistrate Judge Otazo-Reyes for consideration under the proper legal standard.

I HEREBY CERTIFY that on this 6th day of September, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MARRERO & WYDLER
*Attorneys for Defendant*
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

BY _/s/ Lourdes Espino Wydler_____
    OSCAR E. MARRERO
    F.B.N.: 372714
    oem@marrerolegal.com
    LOURDES E. WYDLER
    F.B.N.: 719811
    lew@marrerolegal.com

**SERVICE LIST**

Roderick V. Hannah, Esq.
4800 North Hiatus Road
Sunrise FL 33351-7919
(954) 362-3800
(954) 613-5902 (fax)
FBN: 435384
rhannah@rhannahlaw.com
rvhannah@gmail.com
kflynn@rhannahlaw.com
*Attorney for Plaintiff*