UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF FLORIDA

CASE NO.  20-cv-24649-CANNON/Otazo-Reyes

**ELIE NEHME,**

    **Plaintiff,**

**vs.**

**FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,**

    **Defendant.**

    _____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff ELIE NEHME ("Plaintiff"), through undersigned counsel and for his Response to Defendant FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES' ("FIU") Objections to Magistrate's Report and Recommendation on Defendant's Motion for Summary Judgment [ECF No. 81] ("Defendant's Objections"), states as follows:

**INTRODUCTION**

Defendant's Objections to Magistrate Judge Otazo-Reyes' Report and Recommendation, in which she recommended that Defendant's Motion for Summary Judgment be denied [ECF No. 79][1], are mostly a rehash of Defendant's legal and factual arguments previously presented both in its original moving papers and at oral argument before the Magistrate Judge held on July 6, 2022. In reaching her decision recommending denial of Defendant's Motion for Summary Judgment, the Magistrate Judge carefully and thoughtfully considered, and rejected, Defendant's fully briefed

---

[1] Citations to the Magistrate Judge's Report and Recommendation shall be referred to herein as "Magistrate Report" followed by the relevant page and paragraph numbers.

1

and argued position and instead fully agreed with Plaintiff's position that that issues of material fact existed such that Plaintiff's claims should proceed to trial.

As demonstrated below, and as more fully argued by Plaintiff in his Response to Defendant's Motion for Summary Judgment [ECF No. 65], as supported by his Statement of Disputed Material Facts [ECF No. 64][2], and at the July 6, 2022 hearing before the Magistrate Judge, Defendant's pending objections should be overruled in their entirety and the Magistrate Judge's Report and Recommendation should be adopted in full.

## ARGUMENT

**I.    There was ample record evidence presented that Plaintiff was an otherwise qualified individual with a disability when he was denied reasonable accommodation and when he was dismissed.**

Defendant's first argument in objection suggests the Magistrate Judge failed to find that Plaintiff was not an otherwise qualified individual with a disability for purposes of the ADA because the Magistrate Judge failed to recognize the significance of Plaintiff's probationary status at Defendant's college of medicine ("COM") and failed to properly consider his academic record at the time he failed the retake of the Psychiatry Clerkship shelf exam. This position is flawed as a mere review of the Magistrate Judge's recitation of the material facts in her decision reveals that she was fully aware of Plaintiff's long-standing probationary status at the COM that began in July 2017 after his first appearance before the Medical Student Evaluation and Promotion Committee ("MSEPC"), and that continued through Period 2, Plaintiff's retake of Period 2, and into Period 3, when Plaintiff's Psychiatry Clerkship shelf exam failure and Defendant's alleged failure to

---

[2] Plaintiff's Response to Defendant's Motion for Summary Judgment and his accompanying Statement of Disputed Material Facts are fully incorporated herein by reference as they fully rebut Defendant's same arguments in its pending Objections. Further, citations to the Statement of Disputed Material Facts in this Response shall be as "SDMF" followed by the relevant paragraph numbers.

properly accommodate Plaintiff occurred. *See* Magistrate Report, pp. 4-5 at ¶¶ 8 and 13. The Magistrate Judge's Report and Recommendation also reveals, contrary to what Defendant now argues, that the Magistrate Judge was fully aware of, and took into consideration, Plaintiff's failure of certain classes and exams early in his medical school career, and his failures of several clerkship shelf exams on his first takes, which he successfully remediated via retakes. *Id.,* at ¶¶ 2, 4, 11, and 13. However, what Defendant fails to recognize is that the Magistrate Judge also acknowledged in her recitation of the material facts that Plaintiff was able to successfully complete all of Period 1 and advance to Period 2, that he was allowed to repeat all of Period 2 following his return from an approved medical leave of absence on April 2, 2018, that he successfully completed all of Period 2, that he advanced to Period 3, and that, even though he failed four clerkship shelf exams the first times he took them, he passed each of those exams upon "allowed retakes" and "passed all of these clerkships". *Id.,* at ¶¶ 3, 11, 12, and 13.

Moreover, as Plaintiff argued extensively both in his summary judgment response and at the hearing before the Magistrate Judge, substantial record evidence was presented that Plaintiff had successfully completed his medical school education up until the time he failed the Psychiatry Clerkship shelf exam, which, as several witnesses testified, was the sole event that had "triggered" Plaintiff being called before the MSEPC the third time, when he was dismissed from the COM. *See* SDMF ¶ 44 (referencing deposition testimony of Dr. Elizabeth Bejar, Adrian Jones, and Dr. Vivian Obeso). Specifically, prior to being found by Defendant to suffer from a disability and being awarded reasonable the accommodations of 50% extra time and a minimal distraction room for exam taking, Plaintiff had successfully completed Period 1 and had been promoted to Period 2. SDMF ¶ 5. This promotion decision would have entailed a determination by the MSEPC – the sole arbiter designated to make student promotion decisions – that Plaintiff had made "satisfactory

3

academic progress and maintained a degree of professionalism necessary to become a physician." *Id.* Although Plaintiff had failed only one final exam in Period 1 – "Genes, Molecules, and Cells" – he successfully remediated the exam and passed the course, as the Magistrate Judge recognized in her Report. SDMF ¶ 4; Magistrate Report, p. 4 at ¶ 2.

After failing a course final exam and its retake early in Period 2 -- "Cardiovascular and Respiratory Systems" – Plaintiff underwent disability testing at the Medical Student Counseling and Wellness Center ("MSCWC") to determine whether he should be given testing accommodations. Magistrate Report, p. 4 at ¶¶ 4 and 5. Defendant, through the MSCWC and its Disability Resource Center ("DRC"), determined Plaintiff suffered from a disability and awarded him the testing accommodations. *Id.* at ¶ 5. However, a day prior to being awarded these accommodations, Plaintiff was called before the MSEPC for the first time, where he mentioned his family and medical issues and his need for more time to take exams. *Id.*

Subsequent to being awarded the testing accommodations for his disability, Plaintiff failed another Period 2 course – "Systems Based Practice" – where he failed the final exam but for which he did not receive one of his required testing accommodations. SDMF ¶ 15. Although all medical school students were allowed, without limitation, to retake their final exams at least once if they failed them the first time, Plaintiff was not given that opportunity with respect to the "Systems Based Practice" exam. *Id.* Instead, Plaintiff went on the approved medical leave of absence. SDMF ¶¶ 14, 15; Magistrate Report, p. 5 at ¶ 10. Plaintiff was also called before the MSEPC a second time during his leave of absence as a result of the Period 2 course failure and a professionalism incident report (referenced in the Magistrate Judge's Report at p. 5, ¶ 9), at which the MSEPC allowed him, at his request, to repeat all of Period 2 upon return from his leave of absence. SDMF ¶ 16; Magistrate Report, p. 5 at ¶ 11.

4

Significantly, upon his return to the medical school, Plaintiff successfully passed **all** his Period 2 courses, most of them with grades in the 80s and 90s and he tallied a term GPA of 84.27 and an overall GPA through Period 2 of 81.27, evidencing "competency" as a medical student. SDMF ¶ 17.  Indeed, according to Dr. Vivian Obeso who was familiar with Plaintiff's academic performance at the COM, Plaintiff overall was *competent* and showed "satisfactory performance" in those courses he passed. *Id.*  Plaintiff was thereafter promoted from Period 2 to Period 3, which, according to Dr. Obeso, entailed a determination by MSEPC that Plaintiff had achieved "satisfactory academic performance" through Period 2. *Id.*

As mentioned above, *c*learly not lost upon Magistrate Judge Otazo-Reyes in rendering her decision was the fact, supported by undisputed evidence, that Plaintiff had passed *all* his Period 3 clerkships up until the time of the Psychiatry clerkship exam and its retake. Magistrate Report, p. 5 at ¶ 13.  Moreover, as established by the record evidence Plaintiff has presented, Plaintiff passed all of those clerkships with grades above 80 evidencing his *competency* in those courses as a medical student. SDMF ¶ 20.  Indeed, because of his overall course grades in the Period 3 clerkships that he passed, Plaintiff had a Period 3 term GPA of 86.23, and his cumulative GPA increased to 82.62, both evidencing *competency* by the COM's own standards as set forth in its Student Handbook. *Id.*  Indeed, as Plaintiff presented in support of his opposition to Defendant's Motion for Summary Judgment, Plaintiff did extremely well, with only positive physician evaluations and no negative ones, in the "very important' clinical components for each clerkship, **including the Psychiatry Clerkship** -- i.e.., the patient diagnosis and treatment component. *Id.* The clinical components for each clerkship carried the same 30% weight of the student's overall grade as did the final exams. *Id.*

Significantly, according to Dr. Obeso, had Plaintiff passed all his clerkships, including the Psychiatry Clerkship – **the only Period 3 course he failed** – he would have been eligible for promotion from Period 3 to Period 4. *Id.* Dr. Obeso further testified that there were COM students who were promoted from Period 3 to Period 4 with GPAs less than 80, and students who eventually graduated from the COM with cumulative GPAs less than 80. *Id.* Viewing Dr. Obeso's testimony alone – which testimony a jury should have the opportunity to hear – it is clear that, had Plaintiff passed his Psychiatry Clerkship by passing its final exam – the retake of which he had allegedly been denied the reasonable accommodation of a minimal distraction room – then Plaintiff would have been on his way to passing Period 3 and moving on to Period 4, the final year of medical school. This record evidence undermines any claim that Plaintiff was not academically qualified to continue at COM "with our without accommodation", absent his failure of the Psychiatry Clerkship final exam, retake, and course.

Magistrate Judge Otazo-Reyes obviously was aware of all these material facts and their supporting record evidence when she concluded in her Report that, "given Nehme's contention that his DRC-awarded accommodation was not provided for the Psychiatry shelf exam retake, which contention IDEA[3] substantiated, it cannot be said as a matter of law that these factors preclude Nehme from showing that he could meet HWCOM's essential requirements 'either with or without reasonable accommodations.'" Magistrate Report, p. 8 (citing *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016)).[4]

---

[3] Short for Defendant's Office of Inclusion, Diversity, Equality, and Access.

[4] Although not specifically identified by the Magistrate Judge in her Report, there are even more facts and evidence that support Plaintiff's status as an ADA qualified individual with a disability who could meet the medical school's academic standards "with our without accommodation", as Plaintiff argued in his Response to Defendant's Motion for Summary Judgment. This included the fact that, for the two-year period after he returned to the school from his medical leave of absence to repeat Period 2 and until his failure of the Psychiatry Clerkship shelf exam retake and

Thus, Magistrate Judge Otazo-Reyes had ample record evidence, buttressed by the IDEA's thoroughly investigated and "substantiated" report finding on Plaintiff's claim that he had not been properly accommodated for his Psychiatry Clerkship final exam, to support her conclusion that Defendant was not entitled to summary judgment on its argument that Plaintiff was not a qualified individual with a disability for purposes of the ADA.

The caselaw that Defendant cites to and discusses in its Objections and claims to be on point for its position – and which Defendant incorrectly argues the Magistrate Judge "overlooked" – does not warrant a contrary result. Each of the cases upon which Defendant now relies – and which it had fully argued in its original Motion for Summary Judgement – are, as Plaintiff previously argued, factually distinguishable. Unlike Plaintiff here, the medical students in both *Goldberg v. Florida Int'l Univ.*, 838 Fed. Appx. 487 (11th Cir. 2020), and *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 Fed. Appx. 776 (11th Cir. 2018), were not dismissed from their medical schools because of a course failure for which the medical school had explicitly found, following an internal investigation, that the failure was because the school had failed to provide a required testing accommodation. Also, unlike Plaintiff here, the plaintiff in *Goldberg* was called before the MSEPC and was dismissed when he failed **two** Period 3 clerkships, including failing a family medicine shelf exam and its retake for which he received his full accommodations for both. *Goldberg*, 838 Fed. Appx. at 490-91. The student in *Goldberg* also failed **two** of the three clerkships he had taken when he was called before the MSEPC and recommended for dismissal.

---

the clerkship, Plaintiff had no further professionalism incidents or issues. SDMF ¶ 14. In addition, Dr. Adrian Jones, COM's then Dean of Student Affairs and the former Chairman of the school's Disability Accommodations Committee -- who also had full knowledge of Plaintiff's academic performance at the COM up until the MSEPC's final dismissal decision -- acknowledged his statement, made to the IDEA in it is investigation of Plaintiff's internal discrimination complaint, that Plaintiff "will be a great doctor, someday". SDMF ¶ 43.

*Id.* In contrast, Plaintiff here passed **all** his Period 3 clerkships – six in total and five with grades in the 80s evidencing competency – and failed only one clerkship, Psychiatry, because of his failure of the final exam retake, for which he was not provided the required accommodation of a minimal distraction room as the IDEA had explicitly found. SDMF ¶¶ 45-46, 50.

Similarly, in *Zainulabeddin* – unlike Plaintiff here -- the medical student was dismissed after she was allowed to return to the medical school and still failed two courses, even though she was given all her required testing accommodations for those courses. *Zainulabeddin*, 749 Fed. Appx. at 783. Significantly, unlike Plaintiff here, the student in *Zainulabeddin* did not "clearly identify any deficiencies in the accommodations she received" after she was awarded the testing accommodations and still failed the courses, which the court found conclusive. *Id.* at 784 ("Because she ultimately failed two courses even after receiving disability accommodations, the Committee's subsequent dismissal decision cannot reasonably be attributed to discrimination." (emphasis supplied)). Here, in contrast, the record evidence establishes not only that Plaintiff was not given the required accommodation of a minimal distraction room that led to his Psychiatry retake exam failure and his failure of the Psychiatry Clerkship – which triggered the MSEPC hearing that resulted in his dismissal -- but that he also internally complained to Defendant, through its IDEA, of COM's failure to accommodate and the IDEA repeatedly found that Plaintiff's complaint was "true" and "substantiated". SDMF ¶¶ 8, 23, 28, 42-46, 50.

Also, factually distinguishable from the instant case are the other cases Defendant summarily cites to in its Objections -- *Forbes v. St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012); *Cooney v. Barry School of Law*, 720 Fed. Appx. 571 (11th Cir. 2018); *J.A.M. v. Nova Southeastern University, Inc.*, 646 Fed. Appx. 921 (11th Cir. 2016); and *Ellis v. Morehouse Sch. of Med.*, 925 F. Supp. 1529 (N.D. Ga. 1996). As with *Goldberg* and *Zainulabeddin*, none of

these cases involved a situation, as here, where the student was dismissed from the school because of a course failure for which the school had admittedly failed to provide a required testing accommodation. The *Forbes* decision is further factually inapplicable in that it did not involve a student's dismissal from the school but her efforts to seek readmission after being dismissed from the school for not maintaining a required grade point average even with accommodations. *Forbes*, 456 Fed. Appx. at 812. Similarly, the student in *Cooney* failed to maintain a required GPA level for all his courses even after being given all required accommodations, and the student handbook mandated the dismissal for failure to maintain the GPA. *Cooney,* 720 Fed. Appx. at 575. Plaintiff here, in contrast, had a cumulative GPA throughout his Period 2 completion and all his passed Period 3 clerkships that was above 80, representing competency as a medical student per the COM's handbook. The *J.A.M.* decision is also factually distinguishable as the plaintiff there, who suffered from alcoholism, was not dismissed for poor academic performance or for his disability but because he indisputably breached his substance abuse and alcohol agreement with the university. *J.A.M.,* 646 Fed. Appx. at 927. In addition, the court found the plaintiff not "otherwise qualified" as his mental disability rendered "him wholly unable to participate in [the university's] osteopathic medicine program". *Id.* Plaintiff here, in contrast, successfully completed Period 1 and advanced to Period 2 – even without any disability accommodations – successfully completed all of Period 2 with a GPA above 80 evidencing overall competency, was promoted to Period 3, and successfully completed and passed six of the seven clerkships he took for Period 3, failing only the Psychiatry clerkship due to Defendant's admitted failure to accommodate him for the retake exam. SDMF ¶¶ 4, 5, 17, 45, 46. Finally, *Ellis* is distinguishable because the medical student there, unlike Plaintiff here, did not fail the clinical course that triggered his dismissal because he had not received a required accommodation for his disability in taking a final exam.

Instead, there was overwhelming evidence presented that the student's failing grade in the course was justified because his professors had unanimously found his performance unsatisfactory. *Ellis*, 925 F. Supp. at 1543-44.

In sum, Magistrate Judge Otazo-Reyes' decision recommending denial of summary judgment to Defendant on its argument that Plaintiff was not an otherwise qualified individual with a disability is correct, is supported by the record evidence Plaintiff has presented, and should be adopted by this Court.

## II. The Magistrate Judge correctly denied summary judgment on Plaintiff's claim for failure to provide reasonable accommodation.

Defendant next argues that the Magistrate Judge erred in recommending denial of summary judgment on Plaintiff's failure to accommodate claim because she failed to conduct an independent analysis of the claim and adopted the finding of Defendant's IDEA's report, which internally substantiated Plaintiff's claim, as an "undisputed fact". Defendant's position, however, mischaracterizes the Magistrate Judge's findings in her decision.

The Magistrate Judge's decision nowhere states or holds that the IDEA's substantiation in its report of Plaintiff's failure to accommodate internal complaint was an "undisputed fact". Rather, the Magistrate Judge correctly recognized that the IDEA report's factual finding in Plaintiff's favor that he had not been accommodated, reached after a thorough investigation conducted by experienced investigators, created an issue of material fact that did not warrant summary judgment. This is consistent with the case law Plaintiff cited in his Response to Defendant's Motion that the IDEA's report, prepared on behalf of Defendant following a thorough factual investigation, can be viewed as an admission by Defendant, a party-opponent, of COM's failure to properly accommodate Plaintiff for his disability in connection with the Psychiatry retake exam. *See Williams v. Asplundh Tree Expert Co.*, No. 3:05–cv–479–J–33MCR, 2006 WL 2868923

at *5 (M.D. Fla. Oct. 6, 2006) (granting plaintiff's motion for summary judgment and recognizing that company's internal investigative report findings of discrimination can be introduced into evidence by plaintiff as admissions of party-opponent under F.R. Evid. 801); *Georgia Power Company v. ABB Inc.,* NO. 4:17-CV-00125-HLM, 2019 WL 11505721 at *5, n.1 (N.D. Ga. Feb. 27, 2019) (relying on *Williams* to recognize that company's internal incident report finding failure to follow safety procedures was an admission of party opponent under F.R. Evid. 801); *Ray v. Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6749034, at *3 (M.D. Ala. Dec. 23, 2011) (finding an internal report to be an admission because "[it] was created by [the company]'s agents and contains evidence contrary to [the company]'s position at trial").  These admissions by Defendant through its IDEA office in Plaintiff's favor are sufficient alone to evidence that the COM did not provide Plaintiff with the required reasonable accommodation of a minimal distraction room for his Psychiatry Clerkship final exam retake and that the failure caused Plaintiff to fail the exam and the clerkship. The Magistrate Judge thus was correct in finding that the IDEA's report and its findings created an issue of material fact for trial.

In addition to the IDEA's favorable report findings, Plaintiff also presented substantial record evidence, obviously reviewed by the Magistrate Judge, that his placement in Room AHC2 495 for the Psychiatry Clerkship exam retake was a knowing failure by Defendant to provide Plaintiff with the specifically awarded accommodation of a minimal distraction room.  Instead of rehashing his arguments here, however, Plaintiff refers the Court to his detailed arguments on this point in his Response to Defendant's Motion, with its specific references to his SDMF and the record evidence.  *See* Response in Opposition to Defendant's Motion for Summary Judgment [ECF No. 65) at pages 8 through 11.

Also correct was the Magistrate Judge's finding that Plaintiff's failure to accommodate claim was not vitiated by his first raising the issue and internally complaining while the final leg of his appeal of the dismissal decision was pending. Plaintiff had been awarded the accommodation of a minimal distraction room and, as the Magistrate Judge correctly recognized, Defendant "had the 'affirmative duty to reasonably accommodate the known physical or mental limitations of [Nehme as] an otherwise qualified person.'" Magistrate Report, p. 9 (citing *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010)). As Plaintiff pointed out in his Response to Defendant's original Motion, the Eleventh Circuit has recognized that the "interactive process" under the ADA is, per ADA regulations, the "informal, interactive process" that a providing entity should initiate, and that should then be engaged in between the disabled person and the entity, to determine what appropriate accommodation can and should be given once the disabled person has requested to be accommodated. *Frazier-White v. Gee*, 818 F.3d 1249, 1257 (11th Cir. 2016) ("The regulations state that an employer may in some circumstances need to 'initiate an informal, interactive process' with a disabled employee to determine the appropriate reasonable accommodation. 29 C.F.R. §1630.2(o) (3)."). It does not, as Defendant originally argued in its Motion and again argues here, refer to an affirmative obligation on the part of the disabled person who already has been awarded an accommodation, such as Plaintiff here, to alert the employer that the accommodation should be provided when it is not. Indeed, no Eleventh Circuit or Southern District of Florida case law supports such a one-sided obligation on the part of the disabled person, inasmuch as once a reasonable accommodation is awarded, the providing entity has the affirmative duty to provide it. *Forbes*, 768 F.Supp.2d at 1227 (citing (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275–276 (2nd Cir. 2003).

Here, the record evidence establishes it was COM's affirmative duty to ensure that Plaintiff received all his testing accommodations once the DRC had awarded them. Consistent with this position, Dean Adrian Jones testified in his deposition that once the DRC determined that a student was disabled and awarded him specific testing accommodations, COM had an obligation to implement and provide those accommodations to the student and ensure that the student received them. SDMF ¶ 9. In addition, Plaintiff testified in deposition that he had been told it was COM's duty to automatically provide the accommodations to him and that he did not have to ask for them or inform every professor that he needed them to get them. *Id.*

Defendant's "interactive process" argument thus is illogical and contrary to established law. It assumes a legal duty on the part of a disabled person who has already been awarded specific reasonable accommodations to contemporaneously or immediately raise the issue of a failure to accommodate or otherwise lose all his rights to subsequently complain of discrimination under the ADA. The law does not recognize such a one-sided duty on the part of the disabled student.[5] Defendant's argument also would absolve it of any liability for its blatant failure to accommodate a disabled student – as the record evidence demonstrates occurred here – even when circumstances existed at the time Plaintiff retook the Psychiatry final exam that responsible personnel, including the room scheduler (Theresa Reyes-Gavilan) and the exam proctor (Innah Lachica), were fully

---

[5] Defendant cites for support of its position the *Forbes v. St. Thomas University, Inc.*, 456 Fed. Appx. 809 (11th Cir. 2012), case. However, that case does not support the "interactive process" argument Defendant now advances. As discussed above, *Forbes* is factually distinguishable from the instant case. Unlike the student in *Forbes,* Plaintiff's dismissal decision here was not yet final and was still subject to appeal when he raised the failure to accommodate issue and internally complained to the IDEA about it. The student in *Forbes*, in contrast, had already been dismissed from the school for not meeting the required grade point average or advancement and was seeking readmission when she first raised the failure to accommodate issue, claiming an accommodation that had not been awarded her. 456 Fed. Appx. at 812. In addition, the student in *Forbes,* unlike Plaintiff here, did not have her failure to accommodate claim internally found substantiated by the university either before the final dismissal or after the dismissal when she sought readmission.

aware that the accommodation was not being provided and had the ability and duty to take corrective action yet failed to do so.[6] Such a conclusion would be contrary to applicable law that Defendant had the "affirmative duty to reasonably accommodate the known physical or mental limitations of [Plaintiff as] an otherwise qualified person." *Forbes,* 768 F. Supp. 2d at 1227.[7]

Accordingly, Defendant's Objections to the Magistrate Judge's Report and Recommendation regarding the failure to accommodate claim must be overruled in light of the ample record evidence, not the least of which is the IDEA's investigative report findings in Plaintiff's favor, that Defendant had failed to provide Plaintiff with the required minimal distraction room accommodation when he retook the Psychiatry Clerkship shelf exam, and that the failure had an adverse impact upon his performance on the exam. The Magistrate Judge's conclusion that a triable issue of material fact exists as to this claim should, therefore, be adopted by this Court.

### III. The Magistrate Judge correctly recommended denial of summary judgment on Plaintiff's wrongful dismissal claim and his claim for compensatory damages.

Defendant's final argument in support of its objections to the Magistrate Judge's Report is that the Magistrate Judge erred by: (1) not demonstrating how the conflicting record evidence between Dr. Behar's testimony and final decision and the IDEA's report findings in Plaintiff's favor, as buttressed by the testimony of the IDEA Director (Shirlyon McWhorter) and the IDEA

---

[6] In this regard, see Plaintiff's arguments at page 13 of his Response to Defendant's Motion for Summary Judgment, which reference the record witness testimony in the SDMF at ¶¶ 9 (Dean Jones deposition testimony), 23 (Reyes-Gavilan witness statements to IDEA investigator), 28, 29, and 43 (Lachica deposition testimony).

[7] Indeed, consistent with applicable law, Dean Jones testified in his deposition that once the DRC determined that a student was disabled and awarded him specific testing accommodations, COM had an obligation to implement and provide those accommodations to the student and ensure that the student received them. SDMF ¶ 9.

investigator (Valerie Hall), establish discriminatory intent; and (2) that the contradicting evidence does not support a claim for compensatory damages under the ADA.  Defendant's arguments, however, mischaracterize the Magistrate Judge's decision on these issues, and more importantly, improperly seek to have the Magistrate Judge make credibility decisions and view the substantial conflicting evidence – including the reasonable inferences to be drawn therefrom – only in Defendant's favor.  As Defendant is well aware of and as the applicable summary judgment standards instruct, that is not the role of the Court in ruling on a motion for summary judgment.

The record evidence and undisputed material facts derived therefrom show that Dr. Bejar made her decision upholding Plaintiff's dismissal from COM even though she was aware at the time: (1) of Plaintiff's disability;  (2) that Plaintiff had not been properly accommodated for his Psychiatry shelf exam retake as determined by the IDEA; (3) that it was the retake exam failure that caused Plaintiff to fail the Psychiatry clerkship; (4) that Plaintiff's failure of the Psychiatry clerkship triggered the MSEPC hearing and resulted in the dismissal recommendation; and (5) that IDEA in its two investigative reports had specifically found and concluded that the failure to accommodate Plaintiff for the retake exam had an adverse effect on his performance on the exam. SDMF ¶¶ 39, 44-46, 50.  Despite her awareness of these relevant facts and their supporting evidence as set forth in the two detailed IDEA reports she purportedly thoroughly reviewed before she made her final decision, Dr. Bejar issued her letter to Plaintiff denying his appeal and finding **<u>falsely</u>** that "there is no indication" that Plaintiff's allegations investigated by IDEA "had an adverse impact upon" his "academic performance". SDMF ¶ 50.  As both the IDEA Director, Ms. McWhorter, who signed the two investigative reports, and the IDEA investigator, Ms. Hall, testified in deposition, this conclusion and statement Dr. Bejar reached in her appeal denial decision issued to Plaintiff was inaccurate. SDMF ¶ 50.

Such testimonial contradictions, especially as they directly relate to Dr. Bejar's credibility in making her final dismissal decision, must be viewed in a light most favorable to Plaintiff, and establish triable issues of material fact as to Dr. Bejar's motives and intent in denying the appeal.[8] This is precisely – and correctly -- what Magistrate Judge Otazo-Reyes concluded in her Report: (1) that the record "preclude[es] the issuance of judgment as a matter of law in favor of FIU as to Count II of the Amended Complaint, notwithstanding the deference due to academic decision"; and (2) "[t]he contradictions in the record similarly preclude judgment as a matter of law as to Nehme's compensatory damages claim, which hinges on Dr. Bejar's alleged deliberate indifference to Nehme's rights under the ADA." Magistrate Report, p. 10 (citing *Martin v. Halifax Healthcare Sys., Inc.*, 621 Fed. Appx. 594, 604 (11th Cir. 2015)).

While not surprisingly Defendant may have a different spin on what the record evidence shows and what witnesses should be believed or not believed -- as Defendant argues at great length in its objections to the Magistrate Judge's findings -- the Magistrate Judge did what was required of her as a reviewing judge: to determine if there were disputed issues of material fact on Plaintiff's claims, and, in doing so, to not make any credibility determinations and to view the disputed facts and the reasonable inferences to be drawn therefrom in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *Twiss v. Curry*, 25 F.3d 1551, 1555 (11th Cir. 1994). The numerous contradictions in the record evidence and testimony, especially as between Dr. Bejar on the one hand and the IDEA Director and its investigator (and

---

[8] It bears repeating here that the U.S. Supreme Court precedent, that summary judgment should be used "sparingly" where issues of motive and intent are involved. *Poller v. Columbia Broad. Sys.*, 369 U.S. 470, 473, 82 S. Ct. 486 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"). Indeed, generally, where there are genuine issues of motive and intent as they relate to material facts in a case, they should be left to the trier of act to decide. *Pullman-Standard v. Swint*, 456 U.S. 273, 288, 102 S. Ct. 1781 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact.").

the IDEA Report findings and conclusions) on the other hand, when viewed in a light most favorable to Plaintiff, are sufficient to support a finding that Dr. Bejar's denial of Plaintiff's appeal was based on his disability (including the "substantiated" failure to accommodate) and was deliberately indifferent to Plaintiff's rights under the ADA. Magistrate Judge Otazo-Reyes' recommendations to deny summary judgment on Plaintiff's illegal dismissal claim in Count II of the Amended Complaint and on his claim for compensatory damages, were, therefore, correct and should be adopted by this Court.

## CONCLUSION

Based on the foregoing and the arguments and disputed issues of material fact Plaintiff argued in his earlier Response to Defendant's Motion for Summary Judgment (and as Plaintiff argued in the hearing before the Magistrate Judge), disputed, triable issues of material fact exist on all of Plaintiff's claims. The Magistrate Judge's Report and Recommendation recommending that Defendant's Motion for Summary Judgment be denied should thus be adopted fully by this Court and Defendant's objections overruled in their entirety.

Respectfully submitted,

                          RODERICK V. HANNAH, ESQ., P.A.
                          Attorneys for Plaintiff
                          4800 N. Hiatus Road
                          Sunrise, Florida 33351
                          Telephone: (954) 362-3800
                          Facsimile: (954) 362-3779
                          Email: rhannah@rhannahlaw.com


By   /s/ *Roderick V. Hannah*
      Roderick V. Hannah
      Fla. Bar No. 435384

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of September, 2022, a true and correct of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below:

Lourdes E. Wydler, Esq.
Email: lew@marrerolegal.com
MARRERO & WYDLER
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

*Attorneys for Defendant FIU BOT*

/s/ *Roderick V. Hannah*
       Roderick V. Hannah