UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-24649-CIV-CANNON/Otazo-Reyes

**ELIE NEHME**,

    Plaintiff,
v.

**FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES**,

    Defendant.
_____/

**ORDER REJECTING REPORT AND RECOMMENDATION [ECF No. 79]
AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment (the "Motion") [ECF No. 57]. The Motion was referred to Magistrate Judge Alicia M. Otazo-Reyes for a report and recommendation [ECF No. 73]. On August 22, 2022, Judge Otazo-Reyes issued a report recommending that Defendant's Motion [ECF No. 57] be denied (the "Report") [ECF No. 79 p. 10]. The Court has reviewed the Report [ECF No. 79], Defendant's Objections to the Report ("Defendant's Objections") [ECF No. 81], Plaintiff's Response to Defendant's Objections ("Plaintiff's Response") [ECF No. 85], and the full record. The Court also held a hearing on the Report and the underlying Motion [ECF No. 89].

Upon a de novo review of the full record, the Court **REJECTS** the Report [ECF No. 79] and **GRANTS** Defendant's Motion for Summary Judgment [ECF No. 57]. For the reasons that follow, Defendant is entitled to judgment as a matter of law because there is no genuine issue of material fact that Defendant is not a "qualifying individual" under Title II of the Americans with

Disabilities Act. Given the absence of a triable issue on an essential element of Plaintiff's claims [ECF No. 12], summary judgment is warranted in favor of Defendant.

## FACTUAL BACKGROUND

The Court incorporates the factual background and procedural history as set forth in the Report [ECF No. 79 pp. 1–2, 3–7] but provides additional undisputed facts to complete the relevant chronology pertinent to Defendant's Objections and Plaintiff's Response. Neither party takes issue with the Report's recitation of the facts, which derive from undisputed facts in the parties' respective Statements of Facts [*see* ECF No. 79 p. 3 (citing ECF Nos. 56, 58, 64, 71)].

Plaintiff Elie Nehme matriculated as a student at Florida International University's ("FIU") Herbert Wertheim College of Medicine ("HWCOM") in August 2016 [ECF No. 79 p. 3; ECF No. 58 ¶ 1]. The medical school program consists of four periods [ECF No. 56 ¶ 1; ECF No. 64 ¶ 1]. As a condition of matriculation, each student agrees to abide by the HWCOM Medical Student Handbook (the "Handbook") [ECF No. 79 p. 3; ECF No. 56 ¶ 1; ECF No. 64 ¶ 1].

During Period 1, Plaintiff failed his final exam in his "Genes Molecules, and Cells" course but passed the final exam upon retake; Plaintiff then moved from Period 1 to Period 2 [ECF No. 79 p. 4].

At the start of Period 2, Plaintiff failed his final exam in Cardiovascular and Respiratory Systems, both initially and upon retake [ECF No. 79 p. 4; ECF No. 56 ¶ 7; ECF No. 64 ¶ 7]. Later in Period 2, Plaintiff underwent testing at the school's Medical Student Counseling and Wellness Center ("MSCWC"), where he was diagnosed with anxiety disorder and Attention-Deficit Hyperactivity [ECF No. 79 p. 4]. As a result of those diagnoses, Defendant's Disability Resource Center granted Plaintiff the following two accommodations: extra time on exams and a minimally

distracting testing room [ECF No. 79 p. 4]. Around that same time, Plaintiff appeared for a hearing before the Medical Student Evaluation and Promotion Committee ("MSEPC") to discuss his academic difficulties [ECF No. 79 p. 4]. The MSEPC then placed Plaintiff on academic probation due to his failure of two or more courses: Cardiovascular and Respiratory Systems in Period 2, and Genes, Molecules and Cells in Period 1 [ECF No. 79 p. 4; ECF No. 56 ¶ 13; ECF No. 64 ¶ 13; ECF No. 55-10 p. 69]. MSEPC issued a letter advising Plaintiff, in accordance with the Handbook, that "any further course failure or continued poor performance would trigger review by the MSEPC with the possibility of adverse recommendations, including repeating an academic year or dismissal" [ECF No. 79 p. 5; ECF No. 55-7 p. 27; ECF No. 55-6 ¶ 11].

Later in Period 2, Plaintiff's professors filed a Professional Incident Report against Plaintiff for multiple unexcused absences and requests to delay exams in multiple courses [ECF No. 79 p. 5]. Less than a month later, Plaintiff failed the final exam in Systems Based Practice [ECF No. 56 ¶ 15; ECF No. 64 ¶ 15]. These two events prompted the MSEPC to call Plaintiff before the Committee for a second hearing to evaluate Plaintiff's academic performance [ECF No. 55-10 p. 69; ECF No. 56 ¶¶ 15–16; ECF No. 64 ¶¶ 15–16]. Following that second hearing, Plaintiff took a voluntary medical leave of absence from January 2018 to April 2018 [ECF No. 79 p. 5].

Plaintiff returned to HWCOM after his leave of absence and repeated Period 2 [ECF No. 79 p. 5]. During the Period 2 repeat, Plaintiff satisfied HWCOM's academic requirements and moved onto Period 3, although Plaintiff remained on academic probation pursuant to the MSEPC's prior determination [ECF No. 79 p. 5].

In April 2019, while still on academic probation, Plaintiff started Period 3 [ECF No. 79 p. 5; ECF No. 56 ¶ 19; ECF No. 64 ¶ 19]. There is no dispute that, during Period 3, Plaintiff failed

four clerkship shelf exams by receiving a score below the 5th percentile in each of the following four courses: Family Medicine, Surgery, Neurology, and Psychiatry [ECF No. 79 p. 5; ECF No. 56 ¶¶ 19–21; ECF No. 64 ¶¶ 19–21]. Plaintiff retook all four of those shelf exams in accordance with school policy permitting retakes and received a "passing" grade in all of them except Psychiatry (the subject of Plaintiff's failure-to-accommodate claim in Count I) [ECF No. 56 ¶¶ 20 –21; ECF No. 64 ¶¶ 20–21]. Importantly, however, although Plaintiff received passing scores on three of the four retake exams (Family Medicine, Surgery, and Neurology), there is no dispute that his collective scores on his shelf exams fall into the "poor performance" category within the Handbook provisions [ECF No. 56 ¶¶ 20–21 & ECF No. 64 ¶¶ 20–21].[1] The Handbook specifies that (1) "failure of a clerkship or poor shelf exam performance [in Period 3], such as three shelf scores in the 5–10 percentile range, may also result in review by the MSEPC"; and that (2) "poor clinical performance that does not meet expectations, based on academics and/or professionalism, can result in a recommendation by the MSEPC for repeating the year or for dismissal" [ECF No. 55-7 p. 5]. In this case, the record shows the following scores: Family Medicine – 3rd percentile (initial); Surgery – 4th percentile (initial); Neurology – 2nd percentile (initial) and 7th percentile (retake); OB/GYN – 5th percentile (initial); Psychiatry – 2nd percentile (initial) and 2nd percentile (retake) [ECF No. 56 ¶¶ 20–21; ECF No. 64 ¶¶ 20–21]. Plaintiff's failure-to-accommodate claim in Count I is based on the Psychiatry exam retake alone; as noted, Plaintiff failed his first exam in Psychiatry; retook the exam a month later and failed again (accommodations disputed); and then ultimately failed the entire Psychiatry clerkship [ECF No. 79 p. 5; ECF No. 58 ¶¶ 7–8].

---

[1] A "passing" score (5th percentile or better) can still be "poor performance" because scores between the 5th and 10th percentile are considered "poor performance" under the Handbook [ECF No. 55-6 ¶ 17; ECF No. 56 ¶ 20; ECF No. 64 ¶ 20].

On April 9, 2020, following Plaintiff's poor performance on his clerkship shelf exams, Plaintiff appeared before the MSEPC for a third hearing [ECF No. 79; ECF No. 58 p. 2]. Plaintiff did not raise concerns during that hearing regarding the room in which he retook the Psychiatry shelf exam [ECF No. 79 p. 6].

On April 16, 2020, after the third MSEPC hearing, the MSEPC informed Plaintiff in writing that Plaintiff's "academic performance continued to be of grave concern and recommended that he be given the opportunity to voluntarily withdraw from medical school or be involuntarily withdrawn" [ECF No. 79 p. 6; ECF No. 55-10 p. 63–66]. Plaintiff appealed MSEPC's decision to the Appeals Committee, without reference to a failure to accommodate during the Psychiatry retake exam [ECF No. 79 p. 6]. The Appeals Committee subsequently denied Plaintiff's appeal and adopted the MSEPC recommendation, after which the Dean of HWCOM affirmed the decision [ECF No. 79 p. 6].

In May 2020, Plaintiff appealed the Dean's determination to the Provost's designee, Elizabeth Bejar, Ph.D., Senior Vice President for Academic and Student Affairs [ECF No. 79 p. 6]. It was in that appeal that Plaintiff first identified his accommodation concern with respect to the Psychiatry shelf retake exam [ECF No. 79 p. 6–7]. Dr. Bejar referred Plaintiff's lack of accommodation claim to the Office of Inclusion, Diversity, and Access ("IDEA"), which ultimately concluded that Plaintiff's claim of "Providing Non-Complaint Minimal Distractions Rooms" for his retake exam was "substantiated" due to "sufficient evidence to support" the basis of the claim [ECF No. 79 p. 6–7; ECF No. 55-10 p. 36].

Finally, via letter dated September 30, 2020, Dr. Bejar upheld and affirmed the MSEPC's decision and denied Plaintiff's appeal [ECF No. 55-10 p. 86]. Dr. Bejar wrote the following in her letter notifying Plaintiff of her decision:

5

> Based upon a subsequent independent review by IDEA, there is no indication that your allegations had an adverse impact on your academic performance. Thus, your dismissal from HWCOM was the result of your academic performance. The remaining basis for your appeal [is] without merit. The determination of the College remains undisturbed.

[ECF No. 79 p. 7; ECF No. 55-10 p. 86]. Plaintiff was dismissed from HWCOM on October 16, 2020 [ECF No. 79 p. 7] and commenced this action on November 12, 2020 [ECF No. 1].

## PROCEDURAL BACKGROUND

The Amended Complaint consist of two Counts, both filed pursuant to Title II of the Americans with Disabilities Act ("ADA"): Count I (failure to provide reasonable accommodations on Psychiatry retake) and Count II (wrongful dismissal) [ECF No. 12]. Defendant moved for summary judgment on both claims in March 2022 [ECF No. 57]. Following referral [ECF No. 73], Judge Otazo-Reyes issued the subject Report on August 22, 2022 [ECF No. 79].

The Report recommends denial of summary judgment on three grounds. On the threshold question whether Plaintiff is a "qualified individual" under the ADA, *see* 42 U.S.C. § 12132, the Report recommends against summary judgment based on the IDEA Office's determination that substantial evidence supports Plaintiff's claim of a noncompliant minimal distraction room during Plaintiff's failed Psychiatry retake exam [ECF No. 79 p. 8; *see* ECF No. 55-10 (IDEA Report finding that sufficient evidence supported Plaintiff's claim of a non-compliant minimal distraction room)]. Beyond that threshold question, the Report concludes that fact issues preclude summary judgment on both counts; on Count I because the IDEA Office found sufficient evidence of a non-compliant minimal distraction, and on Count II because Dr. Bejar's letter of dismissal creates a genuine dispute of material fact concerning Dr. Bejar's alleged deliberate indifference to Plaintiff's rights under the ADA [ECF No. 79 pp. 9–10].

6

Defendant timely objected to all three conclusions in the Report [ECF No. 82]. For purposes of this Order, Defendant reaffirms its position that Plaintiff is not a "qualified individual" under the ADA. As Defendant explains, even excluding Plaintiff's Psychiatry shelf retake exam, Plaintiff's academic record "unequivocally establishes that he was unable to meet the academic and technical requirements of the FIU COM program with and without accommodations throughout his studies including the material time of Period 3" [ECF No. 81 pp. 3, 5–10]. On the merits of Plaintiff's ADA claims, Defendant's argument is two-fold: first, for Count I, the Report improperly relied on the IDEA Report as a legal basis for determining that Plaintiff was improperly accommodated under the ADA [ECF No. 81 pp. 3, 10–15], and second, for Count II, the record is devoid of any evidence showing "discriminatory animus" on the part of Dr. Bejar, rendering summary judgment in favor of Defendant appropriate on Count II [*see* ECF No. 81 pp. 4, 15–20].

Plaintiff timely responded to Defendant's Objections, urging adoption of the Report [ECF No. 85]. As relevant here, Plaintiff reaffirms his view that he is a qualified individual despite his record of academic nonperformance [ECF No. 85 pp. 2–10]. Plaintiff says HWCOM promoted him from Periods 1 and 2 and ultimately to Period 3, and that up until the point of his Psychiatry shelf exam retake, he had completed all other requirements and passed all exams with permitted retakes [ECF No. 85 pp. 10–14]. With respect to the remaining elements of Counts I and II, Plaintiff agrees with the Report that fact issues stemming from the IDEA Report and Dr. Bejar's letter of dismissal preclude summary judgment [ECF No. 85 pp. 10–17].

The Report and Defendant's underlying Motion for Summary Judgment are ripe for adjudication.

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

The parties heavily dispute whether Plaintiff was properly accommodated and wrongfully dismissed from the medical school. Upon de novo review of the record, however, and without disturbing the facts as found in the Report, the Court declines to wade into those issues at this juncture because the undisputed facts demonstrate that Plaintiff is not a "qualified individual" under Title II of the ADA, *see* 42 U.S.C. § 12132.[2]

Section 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

---

[2] Section 12132 applies to public universities receiving federal financial assistance. 29 U.S.C. § 794(a).

U.S.C. § 12132. By operation of this language, a Plaintiff must show the following to establish a prima facie claim of discrimination under the ADA: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., LLC.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). "In the context of postsecondary education" specifically, a person is a "qualifying individual" if the person is "able to meet the academic and technical standards requisite to admission or participation in the education program or activity" either "with or without accommodations." *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999)); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 781 (11th Cir. 2018); *see also J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 927 (11th Cir. 2016) (finding that a student who is "incapable of meeting the academic and technical standards required to participate in the . . . medicine program" is not a qualifying individual). The academic and technical standards students must meet can be and often are established by the institution's internal rules and handbook. *See, e.g.*, *Cooney v. Barry Sch. of L.*, 720 F. App'x 571, 575 (11th Cir. 2018) (relying on school's Rules and Handbook to provide relevant academic standards); *Forbes v. St. Thomas Univ., Inc.*, 456 F. App'x 809, 811 (11th Cir. 2012) (considering provisions of law school's Student Handbook to determine whether student met academic requirements); *cf. Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11 (1985) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.").

In this case, the undisputed record demonstrates that Plaintiff was not able to meet the academic standards of HWCOM, with or without accommodations, even excluding the disputed Psychiatry retake exam.

The Handbook states that if a student "fails two or more courses, including remediation assessments," the student will be placed on probation [ECF No. 55-7 p. 7]. The Handbook further provides that being on probation "indicates unsatisfactory progress toward the medical degree and can be a precursor to dismissal from the medical school" [ECF No. 55-7 p. 6]. Being placed on probation, therefore, "is an official notification that a student must improve academic and/or professional standards set forth by the MSEPC" [ECF No. 55-7 p. 6]. Under the Handbook, MSPEC has the authority to "recommend for dismissal" any student on probation "whose academic performance does not improve" [ECF No. 55-7 pp. 6–7]. Moreover, the Handbook undisputedly sets forth that "[i]n Period 3, failure of a clerkship or poor shelf exam performance, such as three shelf scores in the 5–10 percentile range, may also result in review by the MSEPC," and that "poor clinical performance" can result in a "recommendation by the MSEPC for repeating the year or for dismissal" [ECF No. 55-7 p. 5].

Plaintiff failed to meet these academic standards and continued to show poor performance, even excluding the Psychiatry retake exam that forms the basis of his failure-to-accommodate claim in Count I. To recap, Plaintiff failed his Genes, Molecules, and Cells course in Period 1 [ECF No. 56 ¶ 4; ECF No. 64 ¶ 4]. Then, during his first attempt at Period 2, Plaintiff failed the equivalent of at least two courses and had to repeat Period 2 [ECF No. 81 p. 2; ECF No. 56 ¶¶ 7, 10; ECF No. 64 ¶ 7, 10]. During Plaintiff's repeat year of Period 2, Plaintiff exhibited improved academic performance and moved onto Period 3 [ECF No. 58 ¶ 17]. During Period 3, however, Plaintiff's academic difficulties resurfaced significantly. It is undisputed that Plaintiff received a score below the 5th percentile on four of his initial clerkship shelf exams and two scores between the 5th-10th percentile range—even upon retake of the exams [*see* ECF No. 55-7 pp. 5–7; ECF No. 81 p. 7 (explaining that "even excluding the Psychiatry shelf exam retake, Plaintiff was

continuing to perform poorly by FIU's standards even with accommodations as he earned non-passing or scores in the poor performance range on six (6) shelf exams")]. Plaintiff does not dispute that he was properly accommodated for all Period 3 initial clerkship shelf exams, and shelf retake exams (except for his Psychiatry retake exam) [ECF No. 55-1 p. 92]. Thus, Plaintiff's performance on his clerkship shelf exams and retake exams alone—even excluding the Psychiatry shelf exam retake—establishes "poor academic performance" under the Handbook's standards and demonstrates without dispute that MSEPC had grounds to dismiss Plaintiff from HWCOM.

Plaintiff attempts to overcome this undisputed record of academic difficulty by suggesting that HWCOM still would have passed him over to Period 4 despite his academic difficulties [ECF No. 85 p. 6]. In support of this argument, Plaintiff relies on his summary of a portion of testimony offered by Dr. Obeso, Associate Dean for Curriculum and Medical Education at HWCOM [ECF No. 85 p. 6]. According to Plaintiff, Dr. Obeso's testimony indicates that he would have been eligible for promotion from Period 3 to Period 4 had he passed his Psychiatry Clerkship [ECF No. 85 p. 6]. The record refutes this argument. Dr. Obeso's sworn affidavit states that "even if, [Plaintiff] passed his Psychiatry shelf exam retake, he would likely have been called before the MSEPC . . . to determine eligibility for promotion into Period 4 because he was on academic probation and would have still failed four initial shelf exams and scored extremely low on two final shelf exams" [ECF No. 55-6 p. 12]. Further, Dr. Obeso averred that "shelf exams reveal students' readiness for licensing exams" [ECF No. 55-6 p. 12]; that "[Plaintiff's] poor performance indicated a lack of readiness for promotion" [ECF No. 55-6 p. 12]; and that "when the MSEPC determines that a student's academic performance has not improved and fails to meet expectations, FIU must dismiss a student who continues to perform poorly" [ECF No. 55-10 p. 12]. Dr. Obeso's deposition is consistent with her affidavit [ECF No. 85 p. 6 (citing ECF No. 63-7

p. 17)]. Therefore, the Court determines that Dr. Obeso's testimony does not create a genuine dispute of material fact as to whether Plaintiff met the academic requirements of HWCOM. If anything, Dr. Obeso's testimony further affirms the undisputed record that Plaintiff has demonstrated an inability to meet HWCOM's standards.

In sum, no reasonable juror could determine that Plaintiff has satisfied the academic requirements set forth by the Handbook [*see* ECF No. 55-7 p. 2 (showing Plaintiff's signed acknowledgment of Handbook)]. Summary judgment is warranted on both claims because there is no triable question that Plaintiff is not a qualified individual under the ADA. *Cooney*, 720 F. App'x at 575; *Forbes*, 456 F. App'x at 812–13.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 79] is **REJECTED** for the reasons stated in this Order.

2. Defendant's Motion for Summary Judgment [ECF No. 57] is **GRANTED**.

3. Plaintiff's Amended Complaint [ECF No. 12] is **DISMISSED WITH PREJUDICE**.

4. Final Judgment will follow by separate order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 2nd day of November 2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record