```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
                       FORT PIERCE DIVISION
                   CASE NO. 20-24649-CIV-CANNON

ELIE NEHME,

              Plaintiff,              FORT PIERCE, FLORIDA
        vs.
                                      APRIL 8, 2021
FLORIDA INTERNATIONAL
UNIVERSITY BOARD OF TRUSTEES,
                                      PAGES 1 - 41
              Defendants.
_____/
```

```
             TRANSCRIPT OF VIDEO-CONFERENCED MOTION HEARING
               BEFORE THE HONORABLE AILEEN M. CANNON
                   UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
FOR THE PLAINTIFF:       RODERICK V. HANNAH, ESQ.
                         Roderick V. Hannah, Esq., P.A.
                         4800 North Hiatus Road
                         Sunrise, FL  33351

FOR THE DEFENDANT:       LOURDES E. WYDLER, ESQ.
                         Marrero & Wydler
                         Douglas Centre
                         2600 Douglas Road PH-4
                         Coral Gables, FL  33134

                         IRIS A. ELIJAH, ESQ.
                         Office of General Counsel
                         Florida International Univisity
                         11200 S.W. 8th Street PC 511
                         Miami, FL  33199



REPORTED BY:             DIANE M. MILLER, RMR, CRR, CRC
                         Official Court Reporter
                         U.S. District Court
                         diane_miller@flsd.uscourts.gov
```

Thursday, April 8, 2021.

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2          THE COURT:  Good morning, everybody.
 3          MR. HANNAH:  Good morning, Your Honor.
 4          THE COURT:  Good morning, Mr. Hannah, Ms. Wydler.
 5          Ms. Glass, you may call the case.
 6          THE COURTROOM DEPUTY:  Thank you, Your Honor.
 7          Calling case 20-CV-24649-Cannon, Nehme versus Florida
 8  International University Board of Trustees.  May I have the
 9  attorneys enter their appearance beginning with the plaintiff?
10          MR. HANNAH:  Yes.
11          Good morning, Your Honor; may I approach the Court,
12  Rod Hannah on behalf of Plaintiff Elie Nehme.  Your Honor, I
13  also have my client here with me, Mr. Nehme.
14          MR. NEHME:  Good morning, Your Honor.
15          THE COURT:  Good morning.
16          MS. WYDLER:  May it please the Court, Lourdes Wylder
17  on behalf of defendant, Florida Atlantic University Board of
18  Trustees; with me on another screen is the Associate General
19  Counsel for the University, Miss Iris Elijah.
20          THE COURT:  Good morning.
21          Anybody else here participating or listening in?
22          THE COURTROOM DEPUTY:  No, Your Honor.
23          THE COURT:  Excellent.
24          Well, before we proceed, please be reminded of the
25  prohibition on recording this hearing both in audio and video
```

Thursday, April 8, 2021.

1  format.  Also, please keep in mind that our court reporter is

2  transcribing everything we say, so please speak as slowly and

3  as clearly as you can for her benefit and for the benefit of

4  the record.  And when you are not speaking, please ensure that

5  your audio is muted.

6       We are here this morning on Defendant's motion to

7  dismiss count two of the amended complaint.  The motion to

8  dismiss is at docket entry number 20.

9       Ms. Wydler, is that correct, that the defendants are

10 seeking at this stage to dismiss only count two?

11      MS. WYDLER:  That's correct, Your Honor.

12      THE COURT:  All right.  Well, since it is your

13 motion, why don't you lead us off.

14      MS. WYDLER:  The motion to dismiss has been filed on

15 count two which is a disparate treatment claim on the dismissal

16 of the plaintiff from FIU's College of Medicine.  The reason

17 why we filed this motion is because it fails to state a cause

18 of action on two grounds:  First, that he is not a qualified

19 individual under the ADA; and second, because the facts alleged

20 in this pleading do not sufficiently show any sort of

21 discriminatory intent based on disability.

22      Your Honor, we cited several cases, most of them

23 actually happen to be medical school dismissal cases.  We are

24 going to relay mainly on *J.A.M. versus Nova Southeastern*

25 *University*, as well as the *Zainulabeddin versus USF*, University

Thursday, April 8, 2021.

1   of South Florida cases.

2           The *J.A.M.* case is Chief Judge Moore's case, and it

3   is on all fours.  It was affirmed by the Eleventh Circuit on a

4   motion to dismiss where the court found very similar, analogous

5   circumstances where the plaintiff had been in medical school

6   for three years and had taken multiple leaves of absence, had

7   excused absences, failed tests, claimed a failure to

8   accommodate certain exams; but the court found that he was not

9   qualified as an individual for the reasons that is well settled

10  in all of these cases.  You have to meet the essential

11  requirements of the academic program with or without these

12  reasonable modifications or accommodations, and failure to meet

13  the academic or technical standards means that you are not

14  going to qualify and not be covered under the ADA.

15          The same analysis applied in the *USF* case.  This was

16  a summary judgment case; but here we have sufficient facts

17  based on the exhibits that were attached to the complaint for

18  this Court to consider it at the pleading stage.

19          In the *USF* case, that student again took a leave

20  after the first year, just like Mr. Nehme.  She also had to

21  repeat period two, just like Mr. Nehme.  The student had failed

22  more than two courses at USF.  Here, we have a plaintiff who,

23  by virtue of the MSEPC memorandum, had failed ten exams with or

24  without accommodations.

25          Now here's a fatal problem in the amended complaint,

1  docket entry number 12.  It is the reliance that because of the
2  exclusiveness of the lack of accommodation on that psychiatry
3  retake, that's what they are basing this disparate treatment
4  claim on.  Now those are two distinct theories under ADA law.
5  You have a failure to accommodate claim which we believed,
6  based on the allegations of the complaint, that we would not be
7  able to conclusively show as a matter of law at this time that
8  there would not be any sort of reasonable issue for a jury.
9  But with respect to the dismissal, what we have are several
10 levels of review.  We have a committee full of faculty advisers
11 who went through the facts.
12       Here are the facts, Your Honor.  We have a
13 plaintiff -- this was his third MSEPC hearing -- he was on
14 probation at the time that he failed the exclusive test which
15 he claims is the one that he failed the clerkship for.  And
16 paragraph 34 says that because he didn't have the
17 accommodations on that retake, he was sent to the hearing
18 because he failed that psychiatry clerkship.
19       Now, there is nothing else in these records that were
20 attached to the complaint, and the Court may consider it on the
21 motion to dismiss that support that it isn't because of his
22 prior academic failures.  Just like the plaintiff in the *USF*
23 case, the court specifically found that there were multiple
24 deficiencies and a pattern of poor academic performance just
25 like Mr. Nehme.  He failed the psychiatry exam the first time

1   in February, based on his own allegations, paragraph number

2   ten.  He got a chance to take the retake.

3         And what is interesting and what we have in the

4   memorandum is that nowhere in the hearing memorialization is

5   there any claim that there was a failure to accommodate.  What

6   we have only is a paragraph that says that the proctor, not

7   even an official who has been identified with any supervisory

8   authority, not even any kind of discriminatory animus but just

9   the knowledge that he had to have this accommodation, there is

10  no allegation in there saying that he complained during the

11  test.  There is no allegation that he complained during the

12  hearing.

13        We know that he appealed the committee's finding, and

14  there is no allegation there either that he had a failed

15  accommodation at that time for that specific test.  It wasn't

16  until, according to the dean, according to Exhibit B which is

17  attached to the complaint, it wasn't until that time, once the

18  dean upheld the committee's decision, that he lodged a

19  complaint specific to the accommodations.  Then the provost

20  also upheld the decision of the dean but specifically waited,

21  waited for the school to conduct its investigation in order to

22  determine that there was a substantiation related to the

23  accommodation for that specific test; but, it made the finding

24  that it didn't change the outcome of his academic permanence.

25              THE COURT:  One question:  The argument that you are

1  making now about the plaintiff's failure to reference the

2  alleged lack of an accommodation until a certain point, does

3  that have any bearing on the threshold question whether he

4  qualifies as an otherwise qualified individual?

5  MS. WYDLER:  Your Honor, I believe that that goes to

6  the second -- third element which is because of his disability.

7  And what do we learn from that exhibit that memorializes the

8  hearing?  We learned that the reason he gave for his poor

9  performance on the retake was that there was a fire in the

10  apartment next door, and certainly that's mitigating.  And the

11  hearing officers even asked him, well, why didn't you ask for

12  an excused absence like you have in the past?  He said he

13  wasn't sure he could do that on a retake and wasn't aware of

14  the policies.

15  We have other mitigating circumstances from other

16  exams that he has failed which is that he received the call

17  from someone telling him that his dad was going to be sent to

18  the hospital.  Nowhere in that hearing is that issue about this

19  being -- him not being provided his accommodation or this being

20  any kind of treatment with discrimination based on his

21  disability.  On the contrary, they specifically asked him,

22  "Would you change anything that happened?"

23  And he said, "No, I prepared for it."  So that goes

24  to the third specific issue.

25  And, Your Honor, it's our position -- and I know that

Thursday, April 8, 2021.

1  this was a sticking point in the response in opposition that

2  there is a need for discovery, and I would like to rely on the

3  two main cases in my reply which were *Gill versus Judd,* and the

4  *Griffin* case which are two --

5          THE COURT:  Can you spell those out and provide the

6  case cites, please, for the record.

7          MS. WYDLER:  *Gill as next friend of KCR versus Judd*,

8  941 F.3d 504; and there, the court considered an attached

9  affidavit to the motion to dismiss on a Section 1983 case.  And

10  it's an interesting language and it's -- I'll give you the

11  actual page cite.  It is 512, and it says, "The litigant may be

12  defeated by his own evidence, the pleader by his own exhibits."

13  And it specifically points to the fact that if there are

14  conclusory allegations in the complaint, that the exhibits may

15  be considered and they govern.

16          Under the *Twombly* case, Your Honor, the first part is

17  obviously to accept the facts as true, but they have to not be

18  conclusory.  And the second part of *Iqbal* is that do these

19  allegations actually give rise to the plausibility of an

20  entitlement of relief.  And it is our position that based on

21  the plaintiff's academic performance prior to the retake in

22  March, which was two weeks after he failed it the first time,

23  his academic performance prior to the retake supports the

24  fact -- supports that he doesn't meet two of the threshold

25  issues in this case --

```
 1              THE COURT:  -- do you have any other cases from our
 2    circuit that have dismissed an ADA claim at the 12(b)(6) stage
 3    because the plaintiff was not as a matter of law and otherwise
 4    a qualified individual?
 5              MS. WYDLER:  So not -- so the Ellis versus Morehouse
 6    case which I cited is a Northern District of Georgia case,
 7    that's a dismissal case.  I cited other dismissal cases on
 8    disparate treatment but not in the post-secondary education
 9    context which is Silverman versus Miami-Dade Transit case, that
10    was an Eleventh Circuit case where it was affirmed on the lack
11    of showing of deliberate indifference.
12              THE COURT:  On the Ellis case, what is the case cite
13    for that?
14              MS. WYDLER:  One moment, Your Honor.
15              That's 925 F. Supp. 1529.
16              Silverman versus Miami-Dade Transit -- and allow me
17    to get you the case cite for that -- that was the case that
18    involved the bus drivers not allowing riders to enter the buses
19    with their service dogs.  And what is interesting in Silverman,
20    which is 927 F.3d, 1123, it specifically says, "The complaint
21    does not create a reasonable expectation that discovery will
22    reveal evidence that fills in gaps, and accordingly the
23    plaintiff's claims haven't crossed the line from conceivable to
24    plausible."
25              Your Honor, based on the evidence that has been
```

Thursday, April 8, 2021.

```
1    provided and attached to the pleading which under Federal Rule
2    of Civil Procedure 10(c), it must be considered for all
3    purposes part of the pleading.  The facts show that there
4    cannot be any kind of recovery as a matter of law and dismissal
5    is appropriate.
6              THE COURT:  Thank you.
7              One moment.  I'm going to take just a couple of
8    minutes to survey the Ellis case and the Silverman case.
9              Is the Ellis case on a 12(b)(6) motion or is that at
10   summary judgment?
11             MS. WYDLER:  Your Honor, I thought it was on a motion
12   to dismiss; and if I misspoke, I will let the Court -- and I
13   will acknowledge and apologize to Your Honor.  But certainly
14   J.A.M. is and the other case which is not a medical school case
15   but is an Eleventh Circuit case is the Wood versus Spring Hill
16   case.  Yes, so Ellis -- I misspoke -- is an MSJ case; Silverman
17   is certainly a motion to dismiss case.
18             THE COURT:  Got it.  And then Wood?
19             MS. WYDLER:  Wood entered judgment after the jury
20   verdict.
21             THE COURT:  Okay.
22             MS. WYDLER:  So the actual cases is J.A.M.
23             THE COURT:  So your argument is that generally
24   speaking, the question of whether someone is an otherwise
25   qualified individual would be perhaps a factual inquiry, but
```

Thursday, April 8, 2021.

1   that in this case, the complaint affirmatively demonstrates

2   that he is not an otherwise qualified individual when you

3   incorporate the allegations in the complaint plus the

4   attachments; is that right?

5        MS. WYDLER:  That's right.  Normally, we would have

6   to wait for discovery to ferret out someone's grades, someone's

7   failure, what their academic standing was, how many committees

8   did he go to before.  But here, we have it all:  The fact that

9   he went on leave, the fact that the school allowed him to come

10  back, the fact that the school allowed him to repeat period

11  two.  All of these factors are pled in this complaint and there

12  is no reason to move forward with discovery on Count II.

13        THE COURT:  All right, thank you, Ms. Wydler.

14        Mr. Hannah.

15        MR. HANNAH:  Yes, thank you, Your Honor.

16        There is a fundamental flaw with the argument that

17  Counsel has made, and that is the flaw of accepting as gospel

18  and as truth everything in the exhibits that were attached.

19        The argument -- they would want Your Honor to see it

20  this way; but if you look at the reply -- and I note that a

21  number of their arguments in the original motion fall by the

22  wayside and what we are left with is that you need to take

23  everything that is stated in the letters that were attached to

24  the complaint as exhibits, the self-serving letters from the

25  actual defendant as gospel and view them only as truthful in

1  favor of defendant and therefore dismiss the case at this

2  stage.  That's an incorrect position to take at the motion to

3  dismiss stage, Your Honor.

4         If you look at their reply, their first argument is

5  that -- states in the heading, "Exhibits are accepted as true

6  when they contradict the facts pled," that's not a correct

7  statement of the law.  If you actually look at the *Gill* case,

8  Your Honor, When exhibits contradict the general and conclusory

9  allegations of the pleading, the exhibits govern, and that's

10 not the situation here, Your Honor.

11        Here, we have a situation where the exhibits, what is

12 stated, self-serving exhibits of the defendant contradict the

13 facts that are pled in the complaint.  And if you even look at

14 the *Gill* case, *Gill* says facts that are pled in the complaint

15 will control if they contradict any of the facts pled in an

16 attached exhibit.

17        Now, there is a case, Your Honor, out of the Middle

18 District of Florida that I think accurately and correctly

19 states the law and cites the correct cases on this compact

20 position.  The name of the case is *Griggs*, G-R-I-G-G-S, v.

21 *Vitani*, V-I-T-A-N-I, which is 2019 Westlaw 313791, a

22 January 24th, 2019 decision by the Middle District of Florida

23 that directly goes -- explains this issue, cites to the

24 relevant circuit court cases that have held the same way.

25        It says here, in the case of -- quoting from the

Thursday, April 8, 2021.

1   case, Your Honor, "If the exhibits contradict the general and

2   conclusory allegations of the pleading, the exhibits govern."

3   That's what *Gill*'s platitude held and that they cite to in

4   their reply.

5          This is what the Middle District goes on to further

6   say:  "However, Rule 10(c), which is the exhibit rule, does not

7   require a plaintiff to adopt every word within an exhibit as

8   true, when the exhibit contains unilateral statements made by a

9   defendant and those statements conflict with the plaintiff's

10  allegations in the complaint and the exhibit does not itself

11  form the basis for the allegations, then dismissal is improper.

12         The exhibit reliance on exhibits isn't proper.  In

13  other words, if the plaintiff attaches an exhibit to a pleading

14  for a reason other than the truthfulness of the document,

15  that's exactly what we have done here.  We just attached them

16  as the fact that they gave him notice that he was being

17  terminated.  He didn't adopt all of the statements in the

18  exhibits as being truthful.  We did not incorporate them by

19  reference.  So what the Middle District says, if the plaintiff

20  attaches the exhibit to a pleading for a reason other than the

21  truthfulness of the document, it is inappropriate to treat the

22  contents of that document as true.  That's what Defense Counsel

23  wants you to do.

24         THE COURT:  Mr. Hannah, one question.

25         In the complaint, are there any allegations that

Thursday, April 8, 2021.

1  contradict the fact that Plaintiff failed the various tests?

2          MR. HANNAH:  No.  There is no mention about that.

3          What is in paragraph 14, they are facts showing that

4  some of the reasons they give in the decision or the

5  recommendation are false.  For example, I think there was a --

6          THE COURT:  But I'm not talking about the reasons

7  given, I'm talking about strictly on the academic standards.

8          MR. HANNAH:  No.  The academic standards up to that

9  point, what happened was he did fail a few tests, but he was

10 accommodated by taking a leave of absence.  Even though he had

11 failed some things, he was allowed to come back.  And at that

12 point in time when he came back, he was started to be given the

13 reasonable accommodations.  He was supposed to have been given

14 reasonable accommodations to be able to take the test.  I'm not

15 commenting why he failed the prior tests.  It may have been the

16 fact that he was in a distracted situation, et cetera.  But

17 when he came back from his leave of absence -- and all of these

18 alleged failed tests, they give a chart for.  It was not ten,

19 it was -- I think it was -- at best, six were things that are

20 very old and stale.  If you look at paragraph 14, it talks

21 about that as being very old, being very old matters that they

22 bring up against him in this hearing.

23          He would not have gone to this hearing if he had not

24 failed the PSYCHIATRY exam retake and the psychiatry clerkship.

25 He would still have been allowed to continue on.  They were

1   allowing him to continue on with his education and finish his

2   education, except the fact that he was not accommodated and he

3   failed the psychiatry exam retake and then failed the

4   psychiatry clerkship, and that's what brought him in front of

5   the committee.  Then the committee brought him all of this old

6   stuff that had already been accepted and allowed him to

7   continue.  Plus, they had added a false accusation against him

8   in a professional incident report, and we mentioned that in

9   paragraph 14.  These are all facts that contradict what was

10  being said by them as "the reasons we're terminating him from

11  the medical school," so that races issues of fact.  We should

12  be given an opportunity, Your Honor, to show that all of their

13  reasons in that letter other than the psychiatry exam are

14  pretextural.

15          THE COURT:  But, Mr. Hannah, one moment.  Setting

16  aside the reasons for a minute, just looking at the academic

17  standards, there are no allegations, as I understand it, in the

18  complaint that contradict the fact that Plaintiff failed a

19  series of tests, was already on academic probation and had gone

20  before the commission at least, I believe, twice; is that

21  right?

22          MR. HANNAH:  I believe he might have done that, yeah.

23  There were previous times.  We didn't have specific allegations

24  about that because we didn't think it was relevant to this

25  particular claim.

Thursday, April 8, 2021.

```
1          THE COURT:  I'm just trying to hone in here on the
2    question of whether he qualifies as an otherwise qualified
3    individual.
4          MR. HANNAH:  Your Honor has to make a credibility
5    determination.
6          THE COURT:  Please, sir, do not interrupt.
7          MR. HANNAH:  I apologize.
8          THE COURT:  That's what I'm trying to hone in on, and
9    I think although ordinarily that might be subject to factual
10   inquiry, it may be the case here that indeed the complaint
11   combined with the attached records conclusively establishes
12   that your client was incapable of satisfying those academic
13   standards based on the history even prior to his failure of the
14   psychiatry retake.  So what is your response to that?
15         MR. HANNAH:  My response is that, in order for you to
16   do that, Your Honor, first of all, the psychiatry retake is one
17   of the reasons they terminated it in the letter itself.
18         Second of all, Your Honor, for you to do that, you
19   have to take all of what they are saying in that letter as
20   true, all right, viewing the evidence and whatever is presented
21   to you in the light most favorable to the defendant which is
22   inappropriate on a motion to dismiss.  All of that
23   recommendation -- you know, a defendant can load up its reasons
24   for its actions as much as it wants in a self-serving letter.
25   We attached that letter not for the truth of what is said in
```

1  that letter, we attached it only for the fact that he was given

2  notice of his termination.  Everything else is subject to

3  litigation.

4          THE COURT:  I understand that, but what I'm trying to

5  hone in, there is nothing in the complaint that contradicts the

6  fact that he failed all of those courses and that he was on

7  academic probation.

8          So setting aside the reasons for a moment, I can

9  concede, for example, that a trier of fact would have to decide

10 potentially the legitimacy of the reasons given; but just on

11 the academic record itself, there is no complaint -- there is

12 no allegation in the complaint that it contradicts that; is

13 that correct?

14         MR. HANNAH:  No, that's not.  He was not -- if he had

15 not failed -- this is pled in the complaint.  If he had not

16 failed the psychiatry exam retake, then failed the psychiatry

17 exam clerkship, he would never have been called in front of the

18 committee, and he would continued to on with his education

19 there, regardless of the fact that he, in the past, the long

20 past had failed a bunch of exams or failed some tests, you

21 know, that -- they didn't -- they were not going to terminate

22 him otherwise for the fact that he failed that psychiatry

23 retake then the psychiatry clerkship.  It even says that in the

24 recommendation letter, that he was called in front of the

25 committee because of that, and then they brought in all of the

1  old stuff to try to bolster the fact that they were terminating

2  him.  So that's the problem we have here, Your Honor.

3          We do actually contradict that fact by saying if it

4  hadn't been for the failure of the psychiatry retake exam

5  which -- because he didn't get accommodated properly and then

6  also the failure of the clerkship because of the failure of the

7  exam, he would never have gone in front of the committee.

8  That's pled clearly in the amended complaint.  Now, all of the

9  other reasons they added are in the letter.

10         THE COURT:  Ms. Wydler, can you respond to that?

11         I guess the argument is that even accepting his prior

12  academic missteps, that he wouldn't have been dismissed but for

13  his failure of the psychiatry retake, and therefore dismissal

14  at this stage is not warranted on Count II.

15         MS. WYDLER:  Well, two things, Your Honor.  Basing it

16  on the failure to accommodate on that one exam is the reason

17  why count one was answered and denied.  The disparate treatment

18  claim cannot be predicated on a failure to accommodate for that

19  one exam just as a matter of law.  They are two separate and

20  distinct theories.

21         But with respect to Counsel's argument, as Your Honor

22  pointed out, there is nothing in the complaint to contradict

23  it.  In fact, it is the defendant's position that paragraphs,

24  number ten specifically, support certain facts that are pled in

25  the exhibit.  This goes with the fact that he already had a

1  second MSEPC hearing.  Paragraph ten also indicates that he had

2  failed the systems based practice course which means he failed

3  both the actual exam and the retake.

4      It also indicates in paragraph ten that he requested

5  the medical leave and was permitted to return to the school's

6  program by repeating period two and not joining his entering

7  class, but he was going to be made part of the following class,

8  class of 2021.

9      What we do know from the -- from the actual

10  Exhibit 12-1 is that he failed the psychiatry shelf exam and

11  the remediation exam and as a result failed the psychiatry

12  clerkship.  We have that also from the allegations within the

13  complaint, that it is not just the retake that he failed but

14  the actual initial exam that he tried to take the two weeks

15  before where there were accommodations, and this is where the

16  case just fails.  There is no recovery here.

17      The Court should -- and these arguments didn't fall

18  by the wayside in the reply, but it is well settled, Your

19  Honor, even in Supreme Court cases dating back to the '70's,

20  the MSEPC is a committee full of academics that are in this

21  field.  FIU is not charged with the responsibility of making

22  sure that its students cross the finish line in the graduation,

23  but they are charged with making sure that they meet the skills

24  and competency necessary for the responsibilities of a medical

25  doctor.  And based on the programs technical and academic

1  requirements, it is clear based on the allegations and based on

2  the exhibits that this student is not covered under the ADA;

3  dismissal is appropriate.

4          THE COURT:  Mr. Hannah.

5          MR. HANNAH:  May I, Your Honor?

6          THE COURT:  Yes, you may.

7          MR. HANNAH:  All right.

8          THE WITNESS:  Your Honor, paragraph ten -- with

9  paragraph ten, yes, true, he went in front of the committee

10 before.  He had some issues.  He was allowed to take a leave of

11 absence for various medical reasons.  When he came back from

12 that, he agreed as part of his decision with FIU to repeat his

13 second year which he did successfully.  He repeated his second

14 year successfully; was in his third year and he had done fine

15 in all of his courses, since he was allowed to come back, until

16 the psychiatry clerkship.  That's what he failed.  And when he

17 did the retake -- and every student that fails an exam once is

18 allowed to retake the exam again.  And when they allowed him to

19 take the retake, they did not give him a minimal distraction

20 room.  He was extremely distracted.  He had problems.  Even FIU

21 itself found that, it is pled in the complaint.

22          They investigated that whole matter and found he was

23 not given the minimal distraction room, and his position is

24 that's why he failed the retake and then failed the clerkship,

25 and then was called in front of the committee and then

Thursday, April 8, 2021.

 1 | dismissed.  And they then brought in all of the old stuff that
 2 | predated his repeating the second year as justification for him
 3 | being terminated which that's what is said in the letter.  You
 4 | don't accept that as gospel because they did allow him to come
 5 | back, so they kind of overlooked all of the stuff that happened
 6 | in the past because of his disability; allowed him to continue,
 7 | and he successfully continued throughout his whole second year
 8 | and into his third year until the psychiatry clerkship exam.
 9 | That's when the problem arose, and that's when he got called
10 | back into the committee.  That's because of his failure to be
11 | accommodated for his disability.
12 |         We also, in paragraph 17, Your Honor, look at
13 | paragraph 17, the ultimate decision to terminate him was made
14 | by office of the provost.  They had, at that time, the benefit
15 | of a finding internally that he had been discriminated against
16 | in taking of the psychiatry exam, and the provost still upholds
17 | the decision finding that even that finding doesn't show you
18 | didn't perform academically, it had nothing to do with your
19 | academics, which is a patently false statement.  It was because
20 | of his failure to be accommodated that he failed the retake of
21 | the exam.  That's our position, and that's an issue of fact,
22 | Your Honor, that we should be allowed to flesh out.
23 |         Like I say, I rely on the *Griggs* case; and the cases
24 | cited in *Griggs*, you really need to read those cases too.
25 | Those cases are -- I can give the cites on the record, *Northern*

```
 1  Indiana Gun and Outdoor Shows --
 2            THE COURT:  Mr. Hannah, we have the Griggs which --
 3            MR. HANNAH:  It is all in the Griggs case, Your
 4  Honor.
 5            THE COURT:  Ms. Wydler, can you comment on your
 6  second argument which is that Plaintiff wasn't dismissed
 7  because of his disability?
 8            MR. HANNAH:  Yeah, the two positions I have on that,
 9  Your Honor.
10            THE COURT:  I'm sorry, Mr. Hannah.
11            Ms. Wydler, can you comment on the argument on that
12  point and why that warrants dismissal at this stage?
13            MS. WYDLER:  Sure, Your Honor.
14            One of the requirements for that is that there has to
15  be an allegation of intentional discrimination.  That's the
16  difference between a failure to accommodate claim and a
17  disparate treatment claim.  How do you show intentional
18  discrimination?  Well, the case law says that it has to be
19  established by deliberate indifference.
20            How is deliberate indifference established?  We know
21  that from the Silverman case which says that an official high
22  up the chain of command has to have actual notice of
23  discrimination and should have had -- would have had the
24  opportunity to take some sort of corrective measure.  We could
25  not learn of an accommodation failure by the plaintiff until
```

Thursday, April 8, 2021.

1  after the test is taken, until after the hearing, until after

2  his appeal from the recommendation from the MSEPC.  It is not

3  until he lodges a complaint on May 13th of 2020 -- paragraph

4  16, okay -- not until May 13th after all of these reviews have

5  been done related to his academic performance nowhere is it

6  mentioned about a disability issue.  In fact, the complaint

7  actually omits what was the reason for his appeal from the

8  MSEPC recommendation.  And I don't think that was by mistake, I

9  think it is by design to show that there was nobody until after

10  the dean had made its decision and when the provost made the

11  final decision.  The provost even waited for the conclusion of

12  the IDEA's investigation to be handed to the provost designee

13  before it made its decision.

14          And the finding as it is in 12-2 is:  Based upon

15  subsequent independent review by IDEA, there is no indication

16  that your allegations had an adverse impact on your academic

17  performance.  Your dismissal from HW Comm was a result of your

18  academic performance.

19          All of this is prior to the March 3rd, 2020 exam,

20  that's pled in paragraph 12.

21          THE COURT:  So, Ms. Wydler, can you just systemically

22  go through the chronology with me one more time starting with

23  the point at which he takes his test and then lodges his

24  complaint, so I can fully understand when is the first time at

25  which he raises the accommodation issue.

Thursday, April 8, 2021.

```
1              MS. WYDLER:  Sure.

2              Paragraph 12, he takes the first shelf exam for

3  psychiatry on February 17th of 2020.  He takes the retake on

4  March 3rd of 2020, both of which fail.

5              He has the hearing with the MSEPC, and he receives

6  the hearing on April 9th of 2020.  He receives the

7  recommendation on April 16th.

8              He appeals in paragraph 15.  The dean upholds it on

9  May 8th.

10             Paragraph 16, on May 13th, that is the first time

11 that he lodges a complaint of a failure to accommodate, the

12 retake, the Remediation Exam of the psychiatry shelf exam.

13             And then the final decision which is document entry

14 12-2 dated September 30th of 2020, it specifically says that

15 they waited.  "I withhold my decision on your appeal until a

16 report was issued by the Office of Inclusion, Diversity, Equity

17 and Access regarding your claims of harassment and differential

18 treatment based on disability in your appeal.  And on

19 September 14th, 2020, you received an amended copy of the IDEA

20 report."

21             And then it goes into the language that I previously

22 read to the Court which was, "Based upon subsequent independent

23 review by IDEA, there is no indication that your allegations

24 had an adverse impact on your academic performance; thus, your

25 dismissal from HW Comm was a result of your academic
```

Thursday, April 8, 2021.

1  performance."

2          THE COURT:  And the IDEA committee's report, that is

3  in September of 2020?

4          MS. WYDLER:  Yes, September 14th, 2020.

5          THE COURT:  And the appeal, the appeal of the MSEPC

6  decision is when?

7          MS. WYDLER:  That date was not provided in the actual

8  complaint, but it is in paragraph 15.  All we know is that the

9  dean upheld the MSEPC recommendation by decision dated May 8,

10  2020.  So the appeal, pursuant to the -- actually, if we look

11  at document entry 12-2, which is the Exhibit B, it says that

12  the appeal that he filed with the office was dated May 15th.

13          THE COURT:  Okay.  So your position is that Plaintiff

14  didn't raise any issue about an accommodation until after the

15  MSEPC's committee's decision had been upheld; and therefore,

16  there could be no dismissal because of his disability at a

17  later point.

18          MS. WYDLER:  That's right.

19          THE COURT:  Okay.

20          Mr. Hannah, do you want to speak to that chronology,

21  at all and why, in your view, it nonetheless survives

22  dismissal?

23          MR. HANNAH:  I think the letter of the provost alone

24  raises that issue, Your Honor.

25          If you look at the MS-- sorry.  If you look at the

Thursday, April 8, 2021.

1    committee's -- MSEPC's decision, first of all, he was called

2    before them because of his failure of the psychiatry clerkship

3    which meant failure of the retake of the psychiatry exam

4    because he was not accommodated.  And what happens in the final

5    decision of the MSEPC, to the extent they make a decision based

6    on his academic performance, one of the items of that, I guess

7    the straw that broke the camel's back supposedly was his

8    failure to pass the psychiatry clerkship.

9           He internally complains; and granted, he did that

10   after the original finding of the MSEPC.  But before it goes to

11   the provost for a final decision, he internally complains about

12   what happened to him at the -- at the exam retake about not

13   getting accommodated.  That's fully investigated by the school,

14   the school's internal department for that; and his allegations

15   of not being accommodated properly are substantiated meaning

16   that -- substantiated that because he wasn't given an

17   accommodation as he should have been for the exam, that he

18   failed the exam.  It contributed to the failure of the exam;

19   clearly, that could be the case.

20          Then for the provost to finally still continue with

21   the dismissal when he could have -- he had knowledge, at that

22   time, about the allegations of disability discrimination, the

23   allegations of not being accommodated.  He is the high

24   official, the deciding official on it.  He also has knowledge

25   that it did or it shouldn't have had an impact on his

1  performance on the psychiatry exam and psychiatry clerkship,

2  but he comes back with a decision that said it didn't have an

3  adverse impact on academic performance.  I don't see how he

4  could say that with a straight face given that he was not

5  accommodated for that final exam that resulted in his failure.

6  That's where there is certainly an issue of fact that Your

7  Honor -- that needs to be fleshed out whether or not the reason

8  given by the provost of what he did was a pretext for

9  discrimination because of his disability.

10         THE COURT:  I think I understand the parties'

11  arguments.  I'll give each of you, if you wish, a couple of

12  minutes to wrap up, and the Court will take the motion under

13  advisement and enter an order in due course.

14         Ms. Wydler, anything further?

15         MS. WYDLER:  Your Honor, just substantively to really

16  put some context in the failures.  Plaintiff failed the Genes,

17  Molecules, and Cells test; he then passed the second time.  He

18  was -- then he failed Cardiovascular and Respiratory Systems

19  twice with a remediation.

20         He failed the systems base practice.  This is when he

21  was allowed to repeat period two.

22         He failed the Family Medicine Shelf Exam the first

23  time; Surgery, Neurology and scored very -- and he passed the

24  second opportunity, the remediation; but the initial exams at

25  or around the time of this probationary period show a

Thursday, April 8, 2021.

1  performance issue even with these accommodations in place.

2          So setting aside the fact that the psychiatry shelf

3  retake exam -- and we will accept it as true for purposes of

4  this motion to dismiss, that there was a failure to

5  accommodate, it still does not provide a qualified individual

6  under the ADA.

7          THE COURT:  Thank you, Ms. Wydler.

8          Mr. Hannah.

9          MR. HANNAH:  Your Honor, very simply, on a motion to

10 dismiss, you are supposed to take the well pled allegations of

11 the fact in the complaint as true for purposes of deciding a

12 motion, even though they may be disputed by the defendant.

13         And with regard to their primary argument that you

14 should look at the exhibits, yeah, you should look at the

15 exhibits to the extent that they actually contradict some

16 general conclusory allegations but not facts.  The exhibits

17 were not attached to the complaint, clearly not attached to the

18 complaint for the content of the exhibits other than the fact

19 that he was given notice of his termination and ultimately

20 notice of the denial of his appeal by the provost.

21         The case law is clear on this issue that to the

22 extent -- you have to look at the reason why exhibits are

23 attached.  If they are attached for the contents, for example a

24 contract, you are attaching a contract because you do

25 incorporate the contents of the contract, then you can take all

1 | of that as true as they are incorporated by reference into the
2 | complaint.  However, if you look at the complaint, you don't
3 | incorporate by reference all of the content of these exhibits
4 | which were self-serving letters written the university.

5 | And the case law, the *Griggs* case I cited to you and
6 | the cases they cite, it cites in there all point to the fact
7 | that you have to look at the reason why the exhibits are
8 | attached, and you cannot take all of the self-serving
9 | statements of defendant as true at the motion to dismiss stage.
10 | It is inappropriate to do that.  You need to let the record
11 | develop, certainly to the extent we are entitled to prove
12 | pretext for what they did to him.  I believe that is the burden
13 | shifting analysis ultimately that we have to do.  We bear that
14 | burden but not on the motion to dismiss.

15 | Your Honor, it would be inappropriate to make
16 | credibility determinations at this point, make evidentiary
17 | findings at this point in favor of the defendant in order to
18 | grant the motion to dismiss.

19 | We also believe that there is sufficient facts pled
20 | about deliberate indifference by people who had knowledge of
21 | his disability, who failed to take action who were indifferent
22 | to his condition and to him being accommodated.  And also --

23 | THE COURT:  I'm sorry to interrupt, Mr. Hannah.  On
24 | that point, how can the individuals be indifferent to a failure
25 | to accommodate if they are not even made aware of this failure

Thursday, April 8, 2021.

1  to accommodate throughout the process until after the board

2  makes its decision and its decision is upheld on appeal?

3       MR. HANNAH:  I think we took the position in the

4  complaint, Your Honor, pled the facts that the person, the

5  provost was apparently aware of his need to be accommodated,

6  was also aware that he was not being accommodated and allowed

7  the test to continue at the time.  If you look at paragraph 13,

8  I think that's pled in there.  That's step one, as far as

9  deliberate indifference to Mr. Nehme's disability.

10      And then primarily, if you look at paragraph 17 of

11 the amended complaint where the dean is fully aware -- excuse

12 me, the provost office is fully aware not only of his need to

13 be accommodated, not only of his disability but also the fact

14 that he was discriminated against on the basis of disability in

15 taking that psychiatry exam that led to him failing the

16 psychiatry course, and that was the impetus for him to be

17 removed from the medical school, be called in front of the

18 committee in the first place.  If that had never happened, he

19 would never have been called in front of the committee and he

20 would have been able to continue on to his third year of

21 medical school.

22      We believe we pled enough facts and that you do not

23 take the exhibit -- self-serving statements of defendant as

24 factual, as being gospel in this case.  You look at the facts

25 for in the light most favorable to Mr. Nehme and you should

1  deny the motion to dismiss.

2          THE COURT:  All right, thank you.

3          One final point of clarification.  There is no

4  factual dispute that the plaintiff failed the courses listed in

5  the attachments, and I know some of the failed tests are

6  alleged in the complaint itself.  But just from a pure

7  fail-pass standpoint, there is no factual challenge to his --

8  to his test scores as reflected both in the complaint and in

9  the attachment.

10          MR. HANNAH:  Are you referring to the chart that they

11  put forth?

12          THE COURT:  I'm referring to -- some of the

13  paragraphs in the complaint refer to at least one test that was

14  failed, so that's taking that allegation as true.

15          MR. HANNAH:  Right.

16          THE COURT:  And then going to the actual Exhibit A,

17  we would be then be referring to the Genes, Molecules, and

18  Cells class, the Cardiovascular and Respiratory Systems class,

19  as well as the remediation of that class; the Systems Base

20  Practice class, and then the psychiatry clerkship, and there

21  might have been another class I missed there; but I'm just

22  wondering, do you have any factual dispute or allegation that

23  challenges those failed tests?

24          MR. HANNAH:  In the amended complaint, I didn't go

25  through each one of these tests as far as raising a factual

Thursday, April 8, 2021.

1   dispute about whether he failed or not.  I think some of them

2   that he did a retake of them and passed the retake which is not

3   reflected on here, but I can't speak to that because it is not

4   in the amended complaint.  Honestly, your Honor, it is not

5   there.  We didn't go through each one of the past -- the only

6   allegation I have about this stuff is in paragraph 14 where

7   they bring up all of this -- all of these old situations that

8   predated him being allowed to complete his second year -- or

9   retake his second year and go into the third year.

10          If we look at paragraph 14, I guess it is the "per

11   the hearing" -- the second sentence:  "During the hearing

12   chaired by Dr. Helen Tempest, although the ostensible purpose

13   of the hearing was to address Plaintiff's failure to pass the

14   psychiatry shelf exam, the psychiatry clerkship, Plaintiff not

15   only was confronted by his failure to pass exam"

16   [unintelligible] "various old academic issues that predate his

17   earlier approved medical leave of absence and with the

18   professional incident report that Dr. Vivian Obeso had prepared

19   and which contained numerous false and inaccurate accusations

20   about him."

21          THE COURT:  All right.  I just wanted to clarify that

22   point.

23          MR. HANNAH:  That's the only paragraph that I guess I

24   contradict what they are claiming about old stuff brought in

25   about his old failures.

```
 1              THE COURT:  By "old stuff," I mean, how old are we
 2    talking?
 3              MR. HANNAH:  Talking about predating him repeating
 4    his second year which they allowed him to do as an
 5    accommodation.
 6              THE COURT:  But are we talking about a year before,
 7    more than a year?
 8              MR. HANNAH:  I believe about a year before, maybe a
 9    year-and-a-half before.  I'm talking about something that
10    predated his leave of absence and being allowed to return to
11    repeat his second year.
12              THE COURT:  Okay.  All right.
13              Well, thank you, Mr. Hannah; thank you, Ms. Wydler.
14    I appreciate your briefing and arguments this morning.  I will
15    take the matter under advisement, as I mentioned, read some of
16    the additional cases referenced this morning and enter an order
17    in due course.
18              So thank you all, and have a good rest of your day.
19              MR. HANNAH:  You too, Your Honor.
20              MS. WYDLER:  Thank you to the Court's personnel.
21       (PROCEEDINGS ADJOURNED AT 12:04 p.m.)
22
23
24
25
```

Thursday, April 8, 2021.

C-E-R-T-I-F-I-C-A-T-E

I hereby certify that the foregoing is

an accurate transcription of **digitally video-conferenced**

proceedings in the above-entitled matter **to the**

**best of my abilities and is therefore subject to the**

technological limitations of reporting remotely.


**12/7/202**2                            **/s/DIANE MILLER**
 DATE                                 DIANE MILLER, RMR, CRR
                                      Official Court Reporter
                                      United States District Court
                                      101 South U.S. Highway 1
                                      Fort Pierce, FL  34950
                                      772-467-2337

Thursday, April 8, 2021.

**MR. HANNAH:**
**[24]**  2/3 2/10
11/15 14/2 14/8
15/22 16/4 16/7
16/15 17/14 20/5
20/7 22/3 22/8
25/23 28/9 30/3
31/10 31/15
31/24 32/23 33/3
33/8 33/19
**MR. NEHME: [1]**
2/14
**MS. WYDLER:**
**[19]**  2/16 3/11
3/14 7/5 8/7 9/5
9/14 10/11 10/19
10/22 11/5 18/15
22/13 24/1 25/4
25/7 25/18 27/15
33/20
**THE COURT:**
**[42]**
**THE**
**COURTROOM**
**DEPUTY: [2]**  2/6
2/22
**THE WITNESS:**
**[1]**  20/8

**'**

**'70's [1]**  19/19

**/**

**/s/DIANE [1]**  34/8

**1**

**10 [2]**  10/2 13/6
**101 [1]**  34/10
**11200 [1]**  1/21
**1123 [1]**  9/20
**12 [5]**  5/1 9/2
10/9 23/20 24/2
**12-2 [3]**  23/14
24/14 25/11
**12/7/2022 [1]**
34/8
**12:04 [1]**  33/21
**13 [1]**  30/7
**13th [3]**  23/3 23/4
24/10
**14 [5]**  14/3 14/20
15/9 32/6 32/10

**14th [2]**  24/19
25/4
**15 [2]**  24/8 25/8
**1529 [1]**  9/15
**15th [1]**  25/12
**16 [2]**  23/4 24/10
**16th [1]**  24/7
**17 [3]**  21/12
21/13 30/10
**17th [1]**  24/3
**1983 [1]**  8/9

**2**

**20 [1]**  3/8
**20-24649-CIV-CA
NNON [1]**  1/2
**20-CV-24649-Can
non [1]**  2/7
**2019 [2]**  12/21
12/22
**2020 [10]**  23/3
23/19 24/3 24/4
24/6 24/14 24/19
25/3 25/4 25/10
**2021 [2]**  1/5 19/8
**2022 [1]**  34/8
**2337 [1]**  34/11
**24th [1]**  12/22
**2600 [1]**  1/18

**3**

**30th [1]**  24/14
**313791 [1]**  12/21
**33134 [1]**  1/18
**33199 [1]**  1/21
**33351 [1]**  1/15
**34 [1]**  5/16
**34950 [1]**  34/10
**3rd [2]**  23/19
24/4

**4**

**41 [1]**  1/7
**4800 [1]**  1/15

**5**

**504 [1]**  8/8
**511 [1]**  1/21
**512 [1]**  8/11

**7**

**772-467-2337 [1]**
34/11

**8**

**8th [2]**  1/21 24/9

**9**

**925 [1]**  9/15
**927 [1]**  9/20
**941 [1]**  8/8
**9th [1]**  24/6

**A**

**abilities [1]**  34/5
**above [1]**  34/4
**above-entitled [1]**
34/4
**absence [7]**  4/6
7/12 14/10 14/17
20/11 32/17
33/10
**absences [1]**  4/7
**academic [25]**
4/11 4/13 5/22
5/24 6/24 8/21
8/23 11/7 14/7
14/8 15/16 15/19
16/12 17/7 17/11
18/12 19/25 23/5
23/16 23/18
24/24 24/25 26/6
27/3 32/16
**academically [1]**
21/18
**academics [2]**
19/20 21/19
**accept [3]**  8/17
21/4 28/3
**accepted [2]**
12/5 15/6
**accepting [2]**
11/17 18/11
**Access [1]**  24/17
**accommodate
[10]**  4/8 5/5 6/5
18/16 18/18
22/16 24/11 28/5
29/25 30/1
**accommodated
[14]**  14/10 15/2
18/5 21/11 21/20
26/4 26/13 26/15
26/23 27/5 29/22
30/5 30/6 30/13
**accommodation
[11]**  5/2 6/9 6/15

6/23 7/2 7/19
22/25 23/25
25/14 26/17 33/5
**accommodations
[8]**  4/12 4/24
5/17 6/19 14/13
14/14 19/15 28/1
**according [2]**
6/16 6/16
**accordingly [1]**
9/22
**accurately [1]**
12/18
**accusation [1]**
15/7
**accusations [1]**
32/19
**acknowledge [1]**
10/13
**action [2]**  3/18
29/21
**actions [1]**  16/24
**ADA [6]**  3/19
4/14 5/4 9/2 20/2
28/6
**added [2]**  15/7
18/9
**address [1]**
32/13
**ADJOURNED [1]**
33/21
**adopt [2]**  13/7
13/17
**adverse [3]**
23/16 24/24 27/3
**advisement [2]**
27/13 33/15
**advisers [1]**  5/10
**affidavit [1]**  8/9
**affirmatively [1]**
11/1
**affirmed [2]**  4/3
9/10
**AILEEN [1]**  1/11
**allegation [8]**
6/10 6/11 6/14
17/12 22/15
31/14 31/22 32/6
**allegations [21]**
5/6 6/1 8/14 8/19
11/3 12/9 13/2
13/10 13/11

13/25 15/17
15/23 19/12 20/1
23/16 24/23
26/14 26/22
26/23 28/10
28/16
**alleged [4]**  3/19
7/2 14/18 31/6
**allow [2]**  9/16
21/4
**allowed [16]**  11/9
11/10 14/11
14/25 15/6 20/10
20/15 20/18
20/18 21/6 21/22
27/21 30/6 32/8
33/4 33/10
**allowing [2]**  9/18
15/1
**alone [1]**  25/23
**although [2]**  16/9
32/12
**amended [7]**  3/7
4/25 18/8 24/19
30/11 31/24 32/4
**analogous [1]**
4/4
**analysis [2]**  4/15
29/13
**animus [1]**  6/8
**apartment [1]**
7/10
**apologize [2]**
10/13 16/7
**appeal [10]**  23/2
23/7 24/15 24/18
25/5 25/5 25/10
25/12 28/20 30/2
**appealed [1]**
6/13
**appeals [1]**  24/8
**appearance [1]**
2/9
**APPEARANCES
[1]**  1/13
**applied [1]**  4/15
**appreciate [1]**
33/14
**approach [1]**
2/11
**approved [1]**
32/17

Page 36

Elie Nehme vs. Florida International Univ. Board
Case 1:20-cv-24649-AMC   Document 97   Entered on FLSD Docket 12/14/2022   Page 36 of 41

## A

**April 16th [1]**
24/7
**April 9th [1]**  24/6
**argument [10]**
6/25 10/23 11/16
11/19 12/4 18/11
18/21 22/6 22/11
28/13
**arguments [4]**
11/21 19/17
27/11 33/14
**arose [1]**  21/9
**Associate [1]**
2/18
**Atlantic [1]**  2/17
**attached [17]**
4/17 5/20 6/17
8/8 10/1 11/18
11/23 12/16
13/15 16/11
16/25 17/1 28/17
28/17 28/23
28/23 29/8
**attaches [2]**
13/13 13/20
**attaching [1]**
28/24
**attachment [1]**
31/9
**attachments [2]**
11/4 31/5
**attorneys [1]**  2/9
**audio [2]**  2/25
3/5
**authority [1]**  6/8

## B

**base [2]**  27/20
31/19
**basis [2]**  13/11
30/14
**bear [1]**  29/13
**bearing [1]**  7/3
**benefit [3]**  3/3
3/3 21/14
**board [4]**  1/6 2/8
2/17 30/1
**bolster [1]**  18/1
**briefing [1]**  33/14
**bunch [1]**  17/20
**burden [2]**  29/12

29/14
**bus [1]**  9/18
**buses [1]**  9/18

## C

**C-E-R-T-I-F-I-C-A-T-E [1]**  34/1
**camel's [1]**  26/7
**CANNON [3]**  1/2
1/11 2/7
**Cardiovascular
[2]**  27/18 31/18
**Cells [2]**  27/17
31/18
**Centre [1]**  1/17
**certify [1]**  34/2
**cetera [1]**  14/16
**chain [1]**  22/22
**chaired [1]**  32/12
**challenge [1]**
31/7
**challenges [1]**
31/23
**chance [1]**  6/2
**charged [2]**
19/21 19/23
**chart [2]**  14/18
31/10
**Chief [1]**  4/2
**chronology [2]**
23/22 25/20
**circuit [5]**  4/3 9/2
9/10 10/15 12/24
**circumstances
[2]**  4/5 7/15
**cite [5]**  8/11 9/12
9/17 13/3 29/6
**cited [5]**  3/22 9/6
9/7 21/24 29/5
**cites [5]**  8/6
12/19 12/23
21/25 29/6
**CIV [1]**  1/2
**Civil [1]**  10/2
**claim [9]**  3/15 5/4
5/5 6/5 9/2 15/25
18/18 22/16
22/17
**claimed [1]**  4/7
**claiming [1]**
32/24
**claims [3]**  5/15
9/23 24/17

**clarification [1]**
31/3
**clarify [1]**  32/21
**class [8]**  19/7
19/7 19/8 31/18
31/18 31/19
31/20 31/21
**clear [2]**  20/1
28/21
**clerkship [16]**
5/15 5/18 14/24
15/4 17/17 17/23
18/6 19/12 20/16
20/24 21/8 26/2
26/8 27/1 31/20
32/14
**client [2]**  2/13
16/12
**College [1]**  3/16
**combined [1]**
16/11
**Comm [2]**  23/17
24/25
**command [1]**
22/22
**comment [2]**
22/5 22/11
**commenting [1]**
14/15
**commission [1]**
15/20
**committee [12]**
5/10 15/5 15/5
17/18 17/25 18/7
19/20 20/9 20/25
21/10 30/18
30/19
**committee's [5]**
6/13 6/18 25/2
25/15 26/1
**committees [1]**
11/7
**compact [1]**
12/19
**competency [1]**
19/24
**complaint [44]**
**complete [1]**
32/8
**concede [1]**  17/9
**conceivable [1]**
9/23

**conclusion [1]**
23/11
**conclusively [2]**
5/7 16/11
**conclusory [5]**
8/14 8/18 12/8
13/2 28/16
**condition [1]**
29/22
**conduct [1]**  6/21
**conferenced [2]**
1/10 34/3
**conflict [1]**  13/9
**confronted [1]**
32/15
**contained [1]**
32/19
**contains [1]**  13/8
**content [2]**  28/18
29/3
**contents [3]**
13/22 28/23
28/25
**context [2]**  9/9
27/16
**continued [2]**
17/18 21/7
**contract [3]**
28/24 28/24
28/25
**contradict [12]**
12/6 12/8 12/12
12/15 13/1 14/1
15/9 15/18 18/3
18/22 28/15
32/24
**contradicts [2]**
17/5 17/12
**contrary [1]**  7/21
**contributed [1]**
26/18
**control [1]**  12/15
**Coral [1]**  1/18
**corrective [1]**
22/24
**Counsel's [1]**
18/21
**count [6]**  3/7
3/10 3/15 11/12
18/14 18/17
**court [21]**  1/1
1/24 1/24 2/11

2/16 3/1 4/4 4/8
4/18 5/20 5/23
8/8 10/12 12/24
16/8 19/17 19/19
24/22 27/12 34/9
34/9
**Court's [1]**  33/20
**covered [2]**  4/14
20/2
**CRC [1]**  1/23
**create [1]**  9/21
**credibility [2]**
16/4 29/16
**cross [1]**  19/22
**crossed [1]**  9/23
**CRR [2]**  1/23
34/8
**CV [1]**  2/7

## D

**dad [1]**  7/17
**Dade [2]**  9/9 9/16
**dean [7]**  6/16
6/18 6/20 23/10
24/8 25/9 30/11
**decide [1]**  17/9
**decision [22]**
6/18 6/20 12/22
14/4 20/12 21/13
21/17 23/10
23/11 23/13
24/13 24/15 25/6
25/9 25/15 26/1
26/5 26/5 26/11
27/2 30/2 30/2
**defeated [1]**  8/12
**defendant [12]**
1/16 2/17 11/25
12/1 12/12 13/9
16/21 16/23
28/12 29/9 29/17
30/23
**defendant's [2]**
3/6 18/23
**defendants [2]**
1/7 3/9
**Defense [1]**
13/22
**deficiencies [1]**
5/24
**deliberate [5]**
9/11 22/19 22/20
29/20 30/9

# D

**demonstrates [1]** 11/1
**denial [1]** 28/20
**denied [1]** 18/17
**deny [1]** 31/1
**department [1]** 26/14
**design [1]** 23/9
**designee [1]** 23/12
**determination [1]** 16/5
**determinations [1]** 29/16
**develop [1]** 29/11
**diane [4]** 1/23 1/25 34/8 34/8
**difference [1]** 22/16
**differential [1]** 24/17
**digitally [1]** 34/3
**disability [15]** 3/21 7/6 7/21 21/6 21/11 22/7 23/6 24/18 25/16 26/22 27/9 29/21 30/9 30/13 30/14
**discovery [4]** 8/2 9/1 11/6 11/12
**discriminated [2]** 21/15 30/14
**discrimination [6]** 7/20 22/15 22/18 22/23 26/22 27/9
**discriminatory [2]** 3/21 6/8
**dismiss [18]** 3/7 3/8 3/10 3/14 4/4 5/21 8/9 10/12 10/17 12/1 12/3 16/22 28/4 28/10 29/9 29/14 29/18 31/1
**dismissal [15]** 3/15 3/23 5/9 9/7 9/7 10/4 13/11 18/13 20/3 22/12 23/17 24/25

25/16 25/22 26/21
**dismissed [4]** 9/2 18/12 21/1 22/6
**disparate [5]** 3/15 5/3 9/8 18/17 22/17
**dispute [3]** 31/4 31/22 32/1
**disputed [1]** 28/12
**distinct [2]** 5/4 18/20
**distracted [2]** 14/16 20/20
**distraction [2]** 20/19 20/23
**DISTRICT [10]** 1/1 1/1 1/11 1/24 9/6 12/18 12/22 13/5 13/19 34/9
**Diversity [1]** 24/16
**DIVISION [1]** 1/2
**docket [2]** 3/8 5/1
**document [5]** 13/14 13/21 13/22 24/13 25/11
**dogs [1]** 9/19
**Douglas [2]** 1/17 1/18
**Dr [2]** 32/12 32/18
**drivers [1]** 9/18

# E

**education [4]** 9/8 15/1 15/2 17/18
**element [1]** 7/6
**Eleventh [3]** 4/3 9/10 10/15
**ELIE [2]** 1/3 2/12
**ELIJAH [2]** 1/19 2/19
**Ellis [5]** 9/5 9/12 10/8 10/9 10/16
**ensure [1]** 3/4
**enter [4]** 2/9 9/18 27/13 33/16
**entitled [2]** 29/11

34/4
**entitlement [1]** 8/20
**entry [4]** 3/8 5/1 24/13 25/11
**Equity [1]** 24/16
**ESQ [4]** 1/14 1/14 1/16 1/19
**essential [1]** 4/10
**established [2]** 22/19 22/20
**establishes [1]** 16/11
**et [1]** 14/16
**everybody [1]** 2/2
**evidence [4]** 8/12 9/22 9/25 16/20
**evidentiary [1]** 29/16
**exam [35]**
**exams [5]** 4/8 4/23 7/16 17/20 27/24
**Excellent [1]** 2/23
**exclusive [1]** 5/14
**exclusiveness [1]** 5/2
**excuse [1]** 30/11
**excused [2]** 4/7 7/12
**Exhibit 12-1 [1]** 19/10
**expectation [1]** 9/21
**extent [4]** 26/5 28/15 28/22 29/11
**extremely [1]** 20/20

# F

**F.3d [2]** 8/8 9/20
**face [1]** 27/4
**fact [28]** 8/13 8/24 11/8 11/9 11/10 13/16 14/1 14/16 15/2 15/11 15/18 17/1 17/6 17/9 17/19 17/22 18/1 18/3 18/23

18/25 21/21 23/6 27/6 28/2 28/11 28/18 29/6 30/13
**factors [1]** 11/11
**facts [18]** 3/19 4/16 5/11 5/12 8/17 10/3 12/6 12/13 12/14 12/15 14/3 15/9 18/24 28/16 29/19 30/4 30/22 30/24
**factual [7]** 10/25 16/9 30/24 31/4 31/7 31/22 31/25
**faculty [1]** 5/10
**fail [3]** 14/9 24/4 31/7
**fail-pass [1]** 31/7
**failed [45]**
**failing [1]** 30/15
**fails [3]** 3/17 19/16 20/17
**failure [28]** 4/7 4/12 5/5 6/5 7/1 11/7 16/13 18/4 18/6 18/6 18/13 18/16 18/18 21/10 21/20 22/16 22/25 24/11 26/2 26/3 26/8 26/18 27/5 28/4 29/24 29/25 32/13 32/15
**failures [3]** 5/22 27/16 32/25
**fall [2]** 11/21 19/17
**false [4]** 14/5 15/7 21/19 32/19
**Family [1]** 27/22
**fatal [1]** 4/25
**favor [2]** 12/1 29/17
**favorable [2]** 16/21 30/25
**February 17th [1]** 24/3
**Federal [1]** 10/1
**ferret [1]** 11/6
**field [1]** 19/21
**fills [1]** 9/22

**final [6]** 23/11 24/13 26/4 26/11 27/5 31/3
**finally [1]** 26/20
**findings [1]** 29/17
**finish [2]** 15/1 19/22
**FIU [3]** 19/21 20/12 20/20
**FIU's [1]** 3/16
**FL [4]** 1/15 1/18 1/21 34/10
**flaw [2]** 11/16 11/17
**flesh [1]** 21/22
**fleshed [1]** 27/7
**FLORIDA [9]** 1/1 1/4 1/6 1/20 2/7 2/17 4/1 12/18 12/22
**flsd.uscourts.gov [1]** 1/25
**foregoing [1]** 34/2
**form [1]** 13/11
**format [1]** 3/1
**FORT [3]** 1/2 1/4 34/10
**fours [1]** 4/3
**friend [1]** 8/7
**front [8]** 15/4 17/17 17/24 18/7 20/9 20/25 30/17 30/19
**fundamental [1]** 11/16

# G

**G-R-I-G-G-S [1]** 12/20
**Gables [1]** 1/18
**gaps [1]** 9/22
**general [5]** 1/20 2/18 12/8 13/1 28/16
**Genes [2]** 27/16 31/17
**Georgia [1]** 9/6
**Gill [5]** 8/3 8/7 12/7 12/14 12/14
**Gill's [1]** 13/3
**Glass [1]** 2/5

## G

**gospel [4]** 11/17
11/25 21/4 30/24
**govern [3]** 8/15
12/9 13/2
**grades [1]** 11/6
**graduation [1]**
19/22
**grant [1]** 29/18
**granted [1]** 26/9
**Griffin [1]** 8/4
**Griggs [6]** 12/20
21/23 21/24 22/2
22/3 29/5
**grounds [1]** 3/18
**Gun [1]** 22/1

## H

**HANNAH [14]**
1/14 1/14 2/4
2/12 11/14 13/24
15/15 20/4 22/2
22/10 25/20 28/8
29/23 33/13
**harassment [1]**
24/17
**hearing [18]** 1/10
2/25 5/13 5/17
6/4 6/12 7/8 7/11
7/18 14/22 14/23
19/1 23/1 24/5
24/6 32/11 32/11
32/13
**Helen [1]** 32/12
**here's [1]** 4/25
**hereby [1]** 34/2
**Hiatus [1]** 1/15
**Highway [1]**
34/10
**Hill [1]** 10/15
**history [1]** 16/13
**hone [3]** 16/1
16/8 17/5
**Honestly [1]** 32/4
**Honor [46]**
**HONORABLE [1]**
1/11
**hospital [1]** 7/18
**HW [2]** 23/17
24/25

## I

**IDEA's [1]** 23/12
**II [2]** 11/12 18/14
**impact [2]** 23/16
24/24 26/25 27/3
**impetus [1]**
30/16
**improper [1]**
13/11
**inaccurate [1]**
32/19
**inappropriate [4]**
13/21 16/22
29/10 29/15
**incapable [1]**
16/12
**incident [2]** 15/8
32/18
**Inclusion [1]**
24/16
**incorporate [4]**
11/3 13/18 28/25
29/3
**incorporated [1]**
29/1
**incorrect [1]** 12/2
**indeed [1]** 16/10
**independent [2]**
23/15 24/22
**Indiana [1]** 22/1
**indication [2]**
23/15 24/23
**indifference [5]**
9/11 22/19 22/20
29/20 30/9
**indifferent [2]**
29/21 29/24
**individual [8]**
3/19 4/9 7/4 9/4
10/25 11/2 16/3
28/5
**individuals [1]**
29/24
**initial [2]** 19/14
27/24
**inquiry [2]** 10/25
16/10
**intent [1]** 3/21
**intentional [2]**
22/15 22/17
**internal [1]** 26/14
**internally [3]**

21/15 26/9 26/11
**INTERNATIONAL
[3]** 1/6 1/20 2/8
**interrupt [2]** 16/6
29/23
**investigated [2]**
20/22 26/13
**investigation [2]**
6/21 23/12
**Iqbal [1]** 8/18
**IRIS [2]** 1/19 2/19
**issue [12]** 5/8
7/18 7/24 12/23
21/21 23/6 23/25
25/14 25/24 27/6
28/1 28/21
**issued [1]** 24/16
**issues [4]** 8/25
15/11 20/10
32/16
**items [1]** 26/6

## J

**J.A.M [4]** 3/24
4/2 10/14 10/22
**January 24th [1]**
12/22
**joining [1]** 19/6
**Judd [2]** 8/3 8/7
**JUDGE [2]** 1/11
4/2
**judgment [3]**
4/16 10/10 10/19
**jury [2]** 5/8 10/19
**justification [1]**
21/2

## K

**KCR [1]** 8/7

## L

**lack [3]** 5/2 7/2
9/10
**language [2]**
8/10 24/21
**law [10]** 5/4 5/7
9/3 10/4 12/7
12/19 18/19
22/18 28/21 29/5
**lead [1]** 3/13
**learn [1]** 7/7
22/25
**learned [1]** 7/8

**led [1]** 30/15
**legitimacy [1]**
17/10
**letter [10]** 15/13
16/17 16/19
16/24 16/25 17/1
17/24 18/9 21/3
25/23
**letters [3]** 11/23
11/24 29/4
**levels [1]** 5/10
**light [2]** 16/21
30/25
**limitations [1]**
34/6
**listening [1]** 2/21
**litigant [1]** 8/11
**litigation [1]** 17/3
**load [1]** 16/23
**lodged [1]** 6/18
**lodges [3]** 23/3
23/23 24/11
**LOURDES [2]**
1/16 2/16

## M

**main [1]** 8/3
**mainly [1]** 3/24
**March 3rd [2]**
23/19 24/4
**Marrero [1]** 1/17
**matter [7]** 5/7 9/3
10/4 18/19 20/22
33/15 34/4
**matters [1]** 14/21
**May 13th [3]** 23/3
23/4 24/10
**May 15th [1]**
25/12
**May 8 [1]** 25/9
**May 8th [1]** 24/9
**measure [1]**
22/24
**medical [10]** 3/23
4/5 10/14 15/11
19/5 19/24 20/11
30/17 30/21
32/17
**Medicine [2]** 3/16
27/22
**memorandum [2]**
4/23 6/4
**memorialization
[1]** 6/4

**memorializes [1]**
7/7
**Miami [3]** 1/21
9/9 9/16
**Miami-Dade [2]**
9/9 9/16
**Middle [4]** 12/17
12/22 13/5 13/19
**miller [4]** 1/23
1/25 34/8 34/8
**minimal [2]**
20/19 20/23
**Miss [1]** 2/19
**Miss Iris [1]** 2/19
**missed [1]** 31/21
**misspoke [2]**
10/12 10/16
**missteps [1]**
18/12
**mistake [1]** 23/8
**mitigating [2]**
7/10 7/15
**modifications [1]**
4/12
**Molecules [2]**
27/17 31/17
**moment [4]** 9/14
10/7 15/15 17/8
**Moore's [1]** 4/2
**Morehouse [1]**
9/5
**motion [23]** 1/10
3/6 3/7 3/13 3/14
3/17 4/4 5/21 8/9
10/9 10/11 10/17
11/21 12/2 16/22
27/12 28/4 28/9
28/12 29/9 29/14
29/18 31/1
**Mr. [17]** 2/4 2/13
4/20 4/21 5/25
11/14 13/24
15/15 20/4 22/2
22/10 25/20 28/8
29/23 30/9 30/25
33/13
**Mr. Hannah [11]**
2/4 11/14 13/24
15/15 20/4 22/2
22/10 25/20 28/8
29/23 33/13
**Mr. Nehme [5]**

Page 39

Elie Nehme vs. Florida International Univ. Board
Case 1:20-cv-24649-AMC   Document 97   Entered on FLSD Docket 12/14/2022   Page 39 of 41

**M**

**Mr. Nehme... [5]**
2/13 4/20 4/21
5/25 30/25
**Mr. Nehme's [1]**
30/9
**Ms [9]**   2/4 2/5
11/13 18/10
23/21 25/25
27/14 28/7 33/13
**Ms. [3]**   3/9 22/5
22/11
**Ms. Wydler [3]**
3/9 22/5 22/11
**MSEPC [11]**   4/23
5/13 19/1 19/20
23/2 23/8 24/5
25/5 25/9 26/5
26/10
**MSEPC's [2]**
25/15 26/1
**MSJ [1]**   10/16
**multiple [2]**   4/6
5/23
**muted [1]**   3/5

**N**

**necessary [1]**
19/24
**NEHME [8]**   1/3
2/7 2/12 2/13
4/20 4/21 5/25
30/25
**Nehme's [1]**   30/9
**Neurology [1]**
27/23
**nobody [1]**   23/9
**North [1]**   1/15
**Northern [2]**   9/6
21/25
**notice [5]**   13/16
17/2 22/22 28/19
28/20
**Nova [1]**   3/24
**nowhere [3]**   6/4
7/18 23/5
**number [5]**   3/8
5/1 6/1 11/21
18/24
**number 12 [1]**
5/1
**number 20 [1]**

3/8
**numerous [1]**
32/19

**O**

**Obeso [1]**   32/18
**office [5]**   1/20
21/14 24/16
25/12 30/12
**officers [1]**   7/11
**official [6]**   1/24
6/7 22/21 26/24
26/24 34/9
**opportunity [3]**
15/12 22/24
27/24
**opposition [1]**
8/1
**order [5]**   6/21
16/15 27/13
29/17 33/16
**ordinarily [1]**
16/9
**original [2]**   11/21
26/10
**ostensible [1]**
32/12
**outcome [1]**   6/24
**Outdoor [1]**   22/1
**overlooked [1]**
21/5

**P**

**P-R-O-C-E-E-D-I-
N-G-S [1]**   2/1
**P.A [1]**   1/14
**p.m [1]**   33/21
**page [1]**   8/11
**PAGES [1]**   1/7
**paragraph [23]**
5/16 6/1 6/6 14/3
14/20 15/9 19/1
19/4 20/8 20/9
21/12 21/13 23/3
23/20 24/2 24/8
24/10 25/8 30/7
30/10 32/6 32/10
32/23
**paragraphs [2]**
18/23 31/13
**part [5]**   8/16 8/18
10/3 19/7 20/12
**participating [1]**

2/21
**parties' [1]**   27/10
**pass [4]**   26/8
31/7 32/13 32/15
**passed [3]**   27/17
27/23 32/2
**patently [1]**
21/19
**pattern [1]**   5/24
**PC [1]**   1/21
**people [1]**   29/20
**performance [13]**
5/24 7/9 8/21
8/23 23/5 23/17
23/18 24/24 25/1
26/6 27/1 27/3
28/1
**perhaps [1]**
10/25
**period [5]**   4/21
11/10 19/6 27/21
27/25
**permanence [1]**
6/24
**permitted [1]**
19/5
**person [1]**   30/4
**personnel [1]**
33/20
**PH [1]**   1/18
**PH-4 [1]**   1/18
**PIERCE [3]**   1/2
1/4 34/10
**place [2]**   28/1
30/18
**plaintiff [21]**   1/4
1/14 2/9 2/12
3/16 4/5 4/22
5/13 5/22 9/3
13/7 13/13 13/19
14/1 15/18 22/6
22/25 25/13
27/16 31/4 32/14
**plaintiff's [5]**   7/1
8/21 9/23 13/9
32/13
**platitude [1]**   13/3
**plausibility [1]**
8/19
**plausible [1]**
9/24
**pleader [1]**   8/12

**pleading [8]**   3/20
4/18 10/1 10/3
12/9 13/2 13/13
13/20
**pled [15]**   11/11
12/6 12/13 12/14
12/15 17/15 18/8
18/24 20/21
23/20 28/10
29/19 30/4 30/8
30/22
**plus [2]**   11/3 15/7
**point [13]**   7/2 8/1
14/9 14/12 22/12
22/23 25/17 29/6
29/16 29/17
29/24 31/3 32/22
**points [1]**   8/13
**policies [1]**   7/14
**poor [2]**   5/24 7/8
**position [9]**   7/25
8/20 12/12 12/20
18/23 20/23
21/21 25/13 30/3
**positions [1]**
22/8
**post [1]**   9/8
**post-secondary
[1]**   9/8
**potentially [1]**
17/10
**practice [3]**   19/2
27/20 31/20
**predate [1]**   32/16
**predated [3]**   21/2
32/8 33/10
**predating [1]**
33/3
**predicated [1]**
18/18
**prepared [2]**   7/23
32/18
**pretext [2]**   27/8
29/12
**pretextual [1]**
15/14
**primarily [1]**
30/10
**primary [1]**   28/13
**probation [3]**
5/14 15/19 17/7
**probationary [1]**

27/25
**problem [3]**   4/25
18/2 21/9
**problems [1]**
20/20
**Procedure [1]**
10/2
**proceed [1]**   2/24
**proceedings [2]**
33/21 34/4
**process [1]**   30/1
**proctor [1]**   6/6
**professional [2]**
15/8 32/18
**program [2]**   4/11
19/6
**programs [1]**
19/25
**prohibition [1]**
2/25
**proper [1]**   13/12
**properly [2]**   18/5
26/15
**prove [1]**   29/11
**provost [13]**   6/19
21/14 21/16
23/10 23/11
23/12 25/23
26/11 26/20 27/8
28/20 30/5 30/12
**psychiatry [34]**
5/2 5/18 5/25
14/24 14/24 15/3
15/4 15/13 16/14
16/16 17/16
17/16 17/22
17/23 18/4 18/13
19/10 19/11
20/16 21/8 21/16
24/3 24/12 26/2
26/3 26/8 27/1
27/1 28/2 30/15
30/16 31/20
32/14 32/14
**pure [1]**   31/6
**purposes [3]**
10/3 28/3 28/11
**pursuant [1]**
25/10

**Q**

**qualified [8]**   3/18
4/9 7/4 9/4 10/25

**Q**

qualified... [3]
11/2 16/2 28/5
qualifies [2]  7/4
16/2
qualify [1]  4/14
question [5]  6/25
7/3 10/24 13/24
16/2
quoting [1]  12/25

**R**

races [1]  15/11
raise [1]  25/14
raises [2]  23/25
25/24
raising [1]  31/25
recommendation
[7]  14/5 16/23
17/24 23/2 23/8
24/7 25/9
record [5]  3/4 8/6
17/11 21/25
29/10
recording [1]
2/25
records [2]  5/19
16/11
recovery [2]  10/4
19/16
reference [4]  7/1
13/19 29/1 29/3
referenced [1]
33/16
reflected [2]  31/8
32/3
relay [1]  3/24
reliance [2]  5/1
13/12
relief [1]  8/20
rely [2]  8/2 21/23
remediation [5]
19/11 24/12
27/19 27/24
31/19
remotely [1]  34/6
removed [1]
30/17
repeated [1]
20/13
reply [5]  8/3
11/20 12/4 13/4

19/18
report [5]  15/8
24/16 24/20 25/2
32/18
reporter [3]  1/24
3/1 34/9
reporting [1]
34/6
requested [1]
19/4
requirements [3]
4/11 20/1 22/14
Respiratory [2]
27/18 31/18
response [3]  8/1
16/14 16/15
responsibilities
[1]  19/24
responsibility [1]
19/21
rest [1]  33/18
result [3]  19/11
23/17 24/25
retake [30]  5/3
5/17 6/2 7/9 7/13
8/21 8/23 14/24
15/3 16/14 16/16
17/16 17/23 18/4
18/13 19/3 19/13
20/17 20/18
20/19 20/24
21/20 24/3 24/12
26/3 26/12 28/3
32/2 32/2 32/9
return [2]  19/5
33/10
reveal [1]  9/22
review [3]  5/10
23/15 24/23
reviews [1]  23/4
riders [1]  9/18
rise [1]  8/19
RMR [2]  1/23
34/8
Road [2]  1/15
1/18
Rod [1]  2/12
RODERICK [2]
1/14 1/14
room [2]  20/20
20/23
rule [3]  10/1 13/6

13/6

**S**

S.W [1]  1/21
satisfying [1]
16/12
school [10]  3/23
4/5 6/21 10/14
11/9 11/10 15/11
26/13 30/17
30/21
school's [2]  19/5
26/14
scored [1]  27/23
scores [1]  31/8
screen [1]  2/18
second [17]  3/19
7/6 8/18 16/18
19/1 20/13 20/13
21/2 21/7 22/6
27/17 27/24 32/8
32/9 32/11 33/4
33/11
secondary [1]
9/8
Section [1]  8/9
seeking [1]  3/10
self [6]  11/24
12/12 16/24 29/4
29/8 30/23
self-serving [6]
11/24 12/12
16/24 29/4 29/8
30/23
sentence [1]
32/11
September 14th
[2]  24/19 25/4
September 30th
[1]  24/14
series [1]  15/19
service [1]  9/19
serving [6]  11/24
12/12 16/24 29/4
29/8 30/23
setting [3]  15/15
17/8 28/2
settled [2]  4/9
19/18
shelf [6]  19/10
24/2 24/12 27/22
28/2 32/14
shifting [1]  29/13

Silverman [6]  9/9
9/16 9/19 10/8
10/16 22/21
situation [3]
12/10 12/11
14/16
situations [1]
32/7
skills [1]  19/23
slowly [1]  3/2
someone's [2]
11/6 11/6
South [2]  4/1
34/10
Southeastern [1]
3/24
SOUTHERN [1]
1/1
specific [5]  6/15
6/19 6/23 7/24
15/23
spell [1]  8/5
Spring [1]  10/15
stage [8]  3/10
4/18 9/2 12/2
12/3 18/14 22/12
29/9
stale [1]  14/20
standards [5]
4/13 14/7 14/8
15/17 16/13
standing [1]  11/7
standpoint [1]
31/7
starting [1]  23/22
state [1]  3/17
stated [2]  11/23
12/12
statement [2]
12/7 21/19
statements [5]
13/8 13/9 13/17
29/9 30/23
states [5]  1/1
1/11 12/5 12/19
34/9
step [1]  30/8
sticking [1]  8/1
straight [1]  27/4
straw [1]  26/7
Street [1]  1/21
strictly [1]  14/7

student [4]  4/19
4/21 20/2 20/17
students [1]
19/22
subsequent [2]
23/15 24/22
substantiated [2]
26/15 26/16
substantiation
[1]  6/22
substantively [1]
27/15
successfully [3]
20/13 20/14 21/7
sufficient [2]
4/16 29/19
sufficiently [1]
3/20
summary [2]
4/16 10/10
Sunrise [1]  1/15
supervisory [1]
6/7
Supp [1]  9/15
support [2]  5/21
18/24
supports [2]  8/23
8/24
Supreme [1]
19/19
Surgery [1]
27/23
survey [1]  10/8
survives [1]
25/21
systemically [1]
23/21
systems [5]  19/2
27/18 27/20
31/18 31/19

**T**

technical [2]
4/13 19/25
technological [1]
34/6
Tempest [1]
32/12
terminate [2]
17/21 21/13
terminated [3]
13/17 16/17 21/3
terminating [2]

**T**

**terminating... [2]**
15/10 18/1
**termination [2]**
17/2 28/19
**test [11]** 5/14
6/11 6/15 6/23
14/14 23/1 23/23
27/17 30/7 31/8
31/13
**thank [10]** 2/6
10/6 11/13 11/15
28/7 31/2 33/13
33/13 33/18
33/20
**theories [2]** 5/4
18/20
**thought [1]**
10/11
**threshold [2]** 7/3
8/24
**thus [1]** 24/24
**time [16]** 5/7 5/14
5/25 6/15 6/17
8/22 14/12 21/14
23/22 23/24
24/10 26/22
27/17 27/23
27/25 30/7
**times [1]** 15/23
**transcribing [1]**
3/2
**TRANSCRIPT [1]**
1/10
**transcription [1]**
34/3
**Transit [2]** 9/9
9/16
**treat [1]** 13/21
**treatment [7]**
3/15 5/3 7/20 9/8
18/17 22/17
24/18
**trier [1]** 17/9
**TRUSTEES [3]**
1/6 2/8 2/18
**truth [2]** 11/18
16/25
**truthful [2]** 11/25
13/18
**truthfulness [2]**
13/14 13/21

**twice [2]** 15/20
27/19
**Twombly [1]**
8/16

**U**

**U.S [2]** 1/24
34/10
**ultimate [1]**
21/13
**ultimately [2]**
28/19 29/13
**unilateral [1]**
13/8
**unintelligible [1]**
32/16
**UNITED [3]** 1/1
1/11 34/9
**university [7]** 1/6
2/8 2/17 2/19
3/25 3/25 29/4
**Univisity [1]** 1/20
**upheld [5]** 6/18
6/20 25/9 25/15
30/2
**upholds [2]**
21/16 24/8
**us [1]** 3/13
**USF [5]** 3/25 4/15
4/19 4/22 5/22

**V**

**V-I-T-A-N-I [1]**
12/21
**verdict [1]** 10/20
**versus [9]** 2/7
3/24 3/25 8/3 8/7
9/5 9/9 9/16
10/15
**video [3]** 1/10
2/25 34/3
**video-conferenced [2]** 1/10 34/3
**virtue [1]** 4/23
**Vitani [1]** 12/21
**Vivian [1]** 32/18
**vs [1]** 1/5

**W**

**warranted [1]**
18/14
**warrants [1]**
22/12

**wayside [2]**
11/22 19/18
**Westlaw [1]**
12/21
**wish [1]** 27/11
**withhold [1]**
24/15
**wondering [1]**
31/22
**Wood [3]** 10/15
10/18 10/19
**wrap [1]** 27/12
**WYDLER [12]**
1/16 1/17 2/4 3/9
11/13 18/10 22/5
22/11 23/21
27/14 28/7 33/13
**Wylder [1]** 2/16

**Z**

**Zainulabeddin
[1]** 3/25