# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 31, 2024

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY JG D.C.
Dec 31, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number: 22-13945-AA
Case Style: Elie Nehme v. Florida International University Board of Trustees
District Court Docket No: 1:20-cv-24649-AMC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-13945

_____

ELIE NEHME,

                              Plaintiff-Appellant,

versus

FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-24649-AMC

_____

JUDGMENT

2                                                                  22-13945

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: December 2, 2024

For the Court: DAVID J. SMITH, Clerk of Court

[PUBLISH]

# In the United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-13945

_____

ELIE NEHME,

            Plaintiff-Appellant,

*versus*

FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES,

            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-24649-AMC

_____

2                    Opinion of the Court                    22-13945

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

Elie Nehme did not do well in medical school. All told, he failed nine courses—including six while on academic probation—and was even forced to repeat a full year of classes. His tenure was also marred by a complaint from three professors lamenting his general unprofessionalism. Given these deficiencies, it is no surprise that Florida International University dismissed him for academic underperformance instead of allowing him to complete medical school—and ultimately become a practicing physician.

Nehme does not see it that way. He says that his removal was because of disability discrimination rather than his academic failures. But Nehme's argument fails for a basic reason: he cannot show that he is a "qualified individual" under the Americans with Disabilities Act. Why? He could not meet the university's minimum academic standards, even with reasonable accommodations for his disability. *See* 42 U.S.C. § 12132; 34 C.F.R. § 104.3(*l*)(3). We affirm the district court's grant of summary judgment for the University.

**I.**

Florida International University's medical school curriculum is divided into four years. The first two years involve mainly classroom study, while the last two add hands-on experience in hospitals and clinics. To graduate, students must achieve "overall competency" across nine separate domains, showing that they

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 6 of 15
USCA11 Case: 22-13945    Document: 35-1    Date Filed: 12/02/2024    Page: 3 of 10

22-13945               Opinion of the Court                    3

possess "the skills and knowledge necessary to competently assume the responsibilities of a medical doctor."

The medical school's approach, however, is not as unforgiving as one might assume; significant remediation opportunities are available for students. Even failure is not dispositive, at least to a certain point: students who fail a course "may be offered the opportunity to demonstrate competency with satisfactory performance on a remediation assessment." That second chance usually takes the form of a "comprehensive exam." But passing a remediation exam does not erase the original failure from a student's record, and a second failure is treated as just that—a second failure.

Nehme did not get off to a good start. During his first year, he failed the *Genes, Molecules, and Cells* class, a "basic medical science course introducing the fundamental concepts of biology." And while he passed the remediation exam for that course, the rest of his transcript still revealed problems. In three other courses he showed only "marginal competency." These scores, an associate dean explained, suggested a "significant lack of knowledge in basic sciences."

The second year was no better. In fact, it was worse. Nehme failed *Cardiovascular and Respiratory Systems*, "a basic medical science course introducing foundational concepts of cardiac and pulmonary medicine." And this time, he failed the remediation exam, too. At that point, one of his professors directed him to the medical school's wellness center to see if he qualified for any

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 7 of 15
USCA11 Case: 22-13945   Document: 35-1   Date Filed: 12/02/2024   Page: 4 of 10

4                    Opinion of the Court                    22-13945

accommodations. He did. Diagnoses for attention-deficit hyperactivity disorder and an unspecified anxiety disorder led to two accommodations: fifty percent extra time on exams and a minimally distracting testing room.

Around that same time, the medical school's student evaluation and promotion committee held a hearing on Nehme's academic standing. The members did not like what they heard. They placed Nehme on academic probation and warned him that continued poor performance would trigger further review.

The warning made no difference. A few months later, three different professors complained in a "Professional Incident Report" that Nehme (1) made several requests to delay exams; (2) missed multiple classes without an excuse; and (3) displayed a lack of professionalism regarding a quiz. And to make matters worse, he failed yet another second-year course just a few weeks later. This time it was *Systems Based Practice*, a "basic medical course providing students with [a] fundamental understanding of United States healthcare systems and policies."

The school's promotion committee was not pleased with these developments and scheduled a second hearing with Nehme. In the meantime, Nehme had requested and received voluntary medical leave from January 2018 through April 2018. At the March hearing, which Nehme attended while still on leave of absence, he explained that while he was now feeling much better, medical issues had made it hard for him to attend class before. The committee again extended Nehme grace. Despite its "serious

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 8 of 15
USCA11 Case: 22-13945    Document: 35-1    Date Filed: 12/02/2024    Page: 5 of 10

22-13945               Opinion of the Court                        5

concern" about his performance, the promotion committee allowed Nehme to repeat the second year of medical school and graduate a year later than expected. He remained on academic probation, but when he managed to pass his courses the second time around, he was allowed to start the third year.

That's when clinical clerkships began—and those too went poorly. Though Nehme did receive positive physician evaluations, his exam performance deteriorated. He failed five final exams, scoring below the fifth percentile nationally in (1) *Family Medicine*; (2) *Surgery*; (3) *Neurology*; (4) *Psychiatry*; and (5) the *Psychiatry* remediation. He also had scores below the tenth percentile for the *OB/GYN* exam and the *Neurology* exam retake; these were passing, but qualified as "poor." All told, Nehme scored below the tenth percentile on seven different exams in his third year alone.

This record was not the progress that the promotion committee had hoped to see. Unsurprisingly, Nehme was summoned for a third hearing. At the hearing, Nehme blamed his *Psychiatry* failure on a fire in his neighbor's apartment on the morning of the exam. He added that he had failed his initial *Surgery* exam because he was distracted by his father's medical issues. What he did not claim was that he lacked proper disability accommodations for those exams (or any others). Hearing only weak explanations for two failures, and nothing at all to justify the rest, the promotion committee recommended that Nehme be allowed to voluntarily withdraw from medical school. Barring

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 9 of 15
USCA11 Case: 22-13945   Document: 35-1   Date Filed: 12/02/2024   Page: 6 of 10

6                    Opinion of the Court                    22-13945

that, the committee said, he should be *involuntarily* withdrawn—in other words, dismissed.

Nehme appealed that decision to the school's appeals committee. He reiterated that the fire in his neighbor's apartment and his father's medical issues contributed to his academic shortcomings. And he offered a few new justifications, too: physical therapy after a car accident during his *Family Medicine* clerkship for one, plus the stress of a random drug test one week before the *Psychiatry* remediation. Still absent was any suggestion that he lacked proper accommodations for his disability. Also missing? Any explanation for why he failed the other two final exams. The appeals committee did not find Nehme's arguments persuasive, and recommended that the dean affirm Nehme's dismissal. The dean agreed.

Nehme was not done yet. He appealed to the University's interim provost. It was there that Nehme first claimed that he received improper accommodations for one exam, the *Psychiatry* retake. But he did not dispute the adequacy of his accommodations for the other four exams that he had failed that year. The provost referred Nehme's new lack-of-accommodations claim to the school's Office of Inclusion, Diversity, Equity, and Access, which found "sufficient evidence to support" the claim. In response, the university undertook a full audit of Nehme's record. After reviewing the report, though, the provost saw "no indication that the allegations regarding a lack of accommodations made by Mr. Nehme had an adverse impact on his academic performance."

22-13945                Opinion of the Court                          7

The medical school formally dismissed Nehme on October 16, 2020.

Nehme's complaint, filed a month after his dismissal, raises two claims, each under Title II of the ADA. *First*, that the medical school failed to provide reasonable accommodations for his *Psychiatry* remediation exam, which he says ultimately led to his dismissal. *Second*, that his dismissal was because of illegal disability discrimination. The University moved for summary judgment on both claims, arguing (among other things) that Nehme could not show a violation of the ADA because he was not a "qualified individual" within the meaning of the Act. The magistrate judge recommended that the district court deny the University's motion, but the district court rejected that recommendation. Agreeing with the University that Nehme was not a qualified individual, it granted summary judgment on both counts. Nehme now appeals.

## II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Nehme and drawing all inferences in his favor. *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1172 (11th Cir. 2024). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" such that Florida International University is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Title II of the Americans with Disabilities Act forbids public entities from denying the benefits of their "services, programs, or

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 11 of 15
   USCA11 Case: 22-13945   Document: 35-1   Date Filed: 12/02/2024   Page: 8 of 10

8                    Opinion of the Court                  22-13945

activities" to any "qualified individual with a disability . . . by reason of such disability." 42 U.S.C. § 12132. So for Nehme to establish a violation of the Act, he must show that he (1) has a disability, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

A "qualified individual," in turn, is someone who can meet "the essential eligibility requirements for the receipt of services or the participation in programs or activities" either "with or without reasonable modifications to rules, policies, or practices." 42 U.S.C. § 12131(2). To meet this standard in the postsecondary education context, a student must be able to meet the program's academic standards when she is given reasonable accommodations for her disability. *See* 34 C.F.R. § 104.3(l)(3); *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc).

That burden is not trivial. After all, federal courts are not universities or academic administrators. We therefore must "show great respect for the faculty's professional judgment" when it comes to a "genuinely academic decision"—such as a claimant's "fitness to remain a student." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Indeed, the faculty "must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Id.* at 225 n.11 (quotation omitted).

Here, the decisionmakers were unanimous—the promotion committee, appeals committee, dean, and interim provost all

Case 1:20-cv-24649-AMC   Document 105   Entered on FLSD Docket 12/31/2024   Page 12 of 15
USCA11 Case: 22-13945   Document: 35-1   Date Filed: 12/02/2024   Page: 9 of 10

22-13945                Opinion of the Court                 9

agreed that Nehme did not have the academic skills necessary to succeed, and thus could not be promoted to the fourth year of medical school. They based their decision on Nehme's exceedingly poor academic record, which reflected his inability to meet the medical school's "essential eligibility requirements," even when he received full accommodations. 42 U.S.C. § 12131(2).

The record thoroughly supports the university's conclusion. Setting aside the disputed *Psychiatry* retake, Nehme still failed a total of eight courses. And five of those failures came after he was already on academic probation—a designation marking "unsatisfactory progress toward the medical degree," and one that often serves as a "precursor to dismissal from medical school." The medical school's handbook is plain: a student on probation "may be recommended for dismissal" if her "academic performance does not improve." That is exactly what happened here.

Nehme concedes that he received proper accommodations for all his third-year exams except the *Psychiatry* retake. That means he failed four final exams that year—and scored below the tenth percentile on two others—despite getting fifty percent extra time and a special testing room. That is not the improvement required of students on academic probation. And it shows that Nehme was unable to meet the minimum requirements even when the medical school made "reasonable modifications" to its standard "rules, policies, or practices." 42 U.S.C. § 12131(2).

For his part, Nehme maintains that his failure of the *Psychiatry* exam retake was the only reason that he was called

before the promotion committee and ultimately dismissed. Not so. One of the medical school's associate deans explained that while Nehme's (second) failure of *Psychiatry* was the "initiating event" for the hearing, that did not mean his poor performance on the other exams would not have triggered a review. And the interim provost confirmed that the decision to dismiss Nehme was based on "the technical standards of the discipline" and Nehme's "holistic[]" performance. In short, the medical school expected more of its students than (at least) eight failed courses and nine unexcused absences, with ten final exams showing either marginal competency or poor understanding on top of that.

Florida International University gave Nehme chance after chance to save his medical career—a leave of absence, many exam remediations, and even a full repeat of his second year of medical school. Those second (and third and fourth) chances did not lead to improvements. Nehme seems to think that because the school tolerated his failures for several years, it was legally obligated to keep doing so. But the law does not require medical schools to retain students who cannot perform the coursework, and neither will we.

★    ★    ★

Because Nehme is not a qualified individual under the ADA, a necessary element for both of his claims, he cannot show that his rights were violated. The judgment of the district court is **AFFIRMED**.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 02, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 22-13945-AA
Case Style: Elie Nehme v. Florida International University Board of Trustees
District Court Docket No: 1:20-cv-24649-AMC

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion